# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 1:25-cv-03250-SLS |
| | ) | |
| JPK NewCo LLC, | ) | Bankruptcy Case No. 25-200-ELG |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

## OPPOSITION TO MOTION FOR LEAVE TO APPEAL

Comes now JPK NewCo LLC, debtor-in-possession ("JPK" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 8004(b)(2), and in opposition to the Motion for Leave to File Appeal of an Interlocutory Order, DE #2 (the "Motion"), filed by Developer RE1 LLC and 423 Kennedy St Holdings LLC (collectively, the "Movants" and each a "Movant"), states as follows:

### I.     Introduction

For more than 30 years, this court has held that a chapter 11 bankruptcy proceeding should only be dismissed if the reorganizational effort is both objectively futile and rooted in subjective bad faith. Not coincidentally, this is the standard that has also been embraced by the United States Court of Appeals for the Fourth Circuit. And Title 11 of the United States Code (the "Bankruptcy Code") provides statutory safeguards providing for the application of both of these standards. Yet the Movants, being not the first—and assuredly not the last—creditors to be disheartened by the filing of a bankruptcy petition, ask this Honorable Court to now overturn this well-settled standard and, more abruptly, to do so in the posture of an interlocutory appeal.

Leave to appeal should be denied in this case for two reasons. First, there does not exist a substantial difference of opinion as to the standard for dismissal of a chapter 11 bankruptcy case on bad faith grounds, with case law being topically well settled that such dismissal should only

follow where a debtor's cause is both objectively futile and rooted in subjective bad faith. And, second, the taking of an appeal will not only fail to meaningfully advance the termination of the dispute below but, to the contrary, will create a prism whereby review is sought before there is an ultimate and final determination of objective futility, *vel non*, through the chapter 11 plan confirmation process.

Insofar as bankruptcy appeals—especially those stemming from chapter 11 cases—are rare in this circuit, the latter point merits some emphasis: JPK is a subchapter V debtor, charged with the timely and orderly proposal and confirmation of a plan of reorganization. By definition, if that plan can be confirmed by the bankruptcy court, the reorganizational efforts of JPK will not have been objectively futile. By contrast, if JPK is unable to confirm a plan of reorganization, the chapter 11 case will necessarily sputter, inviting dismissal or conversion to chapter 7. Yet, rather than wait for this process to play out in the bankruptcy court, the Movants have—in what seems an at-best-cynical ploy—both urged the bankruptcy court to defer a hearing on plan confirmation for unrelated reasons and, once granted such deferral, petitioned for leave to appeal denial of their motion to dismiss the bankruptcy case.

The Movants equally spend much of their Motion asserting an absence of discovery below, whilst neglecting to note that (i) they are entitled to extensive discovery in connection with the chapter 11 plan confirmation process; and (ii) the denial of discovery below was simply because they could not—when repeatedly asked—point to a single material factual dispute on which discovery would relevantly be taken. JPK stipulated—for purposes of the underlying motion to dismiss—to every topical allegation of the Movants. The Movants could not identify anything further on which inquiry would be pertinently needed. Yet the Movants, in lieu of using the

2

bankruptcy process to explore a broad swath of pre-confirmation discovery following denial of their motion to dismiss, have elected to petition for leave to appeal.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied, with the Movants being free to pursue an appeal—should they believe such justified—at such a time as the order below becomes a final order.

## II.    Legal Standard

JPK does not disagree with the Movants as to the controlling legal standard for leave to file an interlocutory appeal from a bankruptcy court order. The United States Code provides for such relief only "with leave of court," 28 U.S.C. § 158(a)(3), and governing rules provide for this Honorable Court to adjudicate such a motion, Fed. R. Bankr. P. 8004.

The relief being requested, however, is extraordinary in nature. Specifically, "the appellant must demonstrate 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Simu v. Carvalho (In re Carvalho)*, 2017 U.S. Dist. LEXIS 231000, at *5-6 (D.D.C. Apr. 7, 2017) (quoting *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 78 (E.D. Va. 2000) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978))).

In making such a showing of exceptional circumstances, it is incumbent upon the Movants to conjunctively demonstrate, in connection with the order from which an appeal is being taken, that: ". . . (1) the 'order involves a controlling question of law;' (2) 'as to which there is substantial ground for difference of opinion;' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Carvalho*, 2017 U.S. Dist. LEXIS 231000, at *5-6 (quoting *Law Offices of Mark Kotlarsky, Esq. Pension Plan v. Neese*, 2014 U.S. Dist. LEXIS 125308, at *4 (D. Md. Sept. 8, 2014) (quoting 28 U.S.C. § 1292(b)); citing D.C. LBR

8003-1). "If any of these three elements is unsatisfied, leave to appeal cannot be granted." *In re Carvalho*, 2017 U.S. Dist. LEXIS 231000 at *5-6 (quoting *Neese*, 2014 U.S. Dist. LEXIS 125308, at *4).

### III.    Pertinent Elements of Chapter 11 Process

Three idiosyncrasies of chapter 11 bankruptcy law are particularly relevant to adjudication of the Motion: (i) the good faith requirements that must be satisfied for a chapter 11 plan of reorganization to be confirmed; (ii) the expedient manner in which a chapter 11 plan must be proposed in a case proceeding under subchapter V; and (iii) the myriad opportunities for parties in interest to conduct discovery. The Movants do not address two of these reorganization-centric legal points in their brief, and somewhat elide over the third, thereby coming short of offering context rather relevant to the ruling below.

As a starting point, chapter 11 cases are reorganizational in nature, with debtors yearning not to liquidate—as under chapter 7 of the Bankruptcy Code—but, rather, to confirm a plan of reorganization that will govern their respective future relations with creditors, including making appropriate provisions for the adjudication and repayment of relevant debts. *See generally FCA United States LLC v. New City Historic Auto Row LLC*, 2022 U.S. App. LEXIS 32856, at *4 (7th Cir. Nov. 29, 2022) ("The purpose of a Chapter 11 bankruptcy is to allow a business to reorganize its debts and assets.") (citing *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 587 U.S. 370 (2019)); 11 U.S.C. § 101, *et seq.*

To confirm a plan of reorganization, a debtor in chapter 11 must show—among myriad other things—that the plan proponent is in compliance with the Bankruptcy Code, that the plan itself is in compliance with the Bankruptcy Code, and that "[t]he plan has been proposed in good faith. . ." 11 U.S.C. § 1129(a). So a bankruptcy case brought in bad faith, or with designs at odds

with those enshrined in the Bankruptcy Code, cannot—by legal definition—end in the confirmation of a plan of reorganization proposed by the correlative debtor.

Entities meeting the statutory definition of a "small business" are permitted to petition for chapter 11 relief under the provisions of subchapter V thereof. 11 U.S.C. § 1182(1). Putting aside some restrictions and caveats no party alleges to be applicable *sub judice*, a "small business" for bankruptcy purposes is an entity "engaged in commercial or business activities" that owes creditors not more than $3,424,000.00 in obligations. 11 U.S.C. § 101(51D).[1]

When a small business seeks to reorganize under subchapter V of chapter 11, the case moves with breakneck speed, with there being a statutory requirement that a plan be proposed within 90 days of the debtor petitioning for bankruptcy relief. 11 U.S.C. § 1189(b). *See also In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 340 (Bankr. S.D. Fla. 2020) (". . . to balance the special new powers available to small business debtors, Congress granted creditors a very important protection: the requirement that a Subchapter V case proceed expeditiously.").

Notwithstanding that expedient pace, however, the chapter 11 process—inclusive of proceedings under subchapter V—is replete with opportunities for parties to take wide-reaching discovery. Applicable rules permit any party in interest to conduct an examination—through subpoena or otherwise—into "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition; (C) any matter that may affect the administration of the debtor's estate; or (D) the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b)(1).

---

[1] Somewhat bizarrely, the Movants are presently challenging—in the bankruptcy court—whether or not JPK qualifies as being "engaged in commercial of business activities," on the seeming theory that a legal entity formed and existing for purposes of lending monies, holding promissory notes, and servicing debts, does not meet this definitional standard. That motion is still pending, with the Movants presently being in the process of taking discovery thereupon (something discussed in greater detail *infra*). Accordingly, that issue is not presently ripe for appeal (interlocutory or otherwise), insofar as no ruling has been occasioned as of yet.

The Movants in this case never sought to conduct an examination under Rule 2004. They did, however, have occasion (and seize upon said occasion) to take the Debtor's examination in the earliest days of the case, when a statutory meeting of creditors was convened by the Office of the United States Trustee. 11 U.S.C. 341(c).

Applicable rules also permit discovery to be taken in connection with any "contested matter" where there exists any factual dispute that may be explored through traditional civil discovery. Fed. R. Bankr. P. 9014(c). The Movants' pending objection to JPK's designation as a small business has invited such discovery. Similarly, if the Movants object to confirmation of JPK's plan of reorganization (which was filed well before the 90 day deadline), such would also invite the taking of discovery. However, in bankruptcy—just as in civil litigation—the discovery taken must be relevant to the correlative contested matter. *See, e.g.*, *Lawrence Arms Assocs. v. Shur (In re Shur)*, 225 B.R. 295, 298 (Bankr. E.D.N.Y. 1998) ("Sought for discovery must be 'relevant to the subject matter involved in the pending action.'") (citing Fed. R. Civ. P. 26(b)(1); Fed. R. Bankr. P. 7026); *Weisberg v. Webster*, 749 F.2d 864, 868 (D.C. Cir. 1984) ("Discovery must be relevant to the subject matter involved in the pending action") (citing Fed. R. Civ. P. 26(b)(1)).

## IV.    History of JPK

While largely irrelevant to the narrow issues raised in the Motion, the history of JPK does merit some brief discussion. Formed in 2024 by two entities in the lending business, JPK acquired various promissory notes on which the Movants are respectively obligated, secured by real estate owned by the Movants. JPK has also engaged in unrelated borrowing and lending activities with third parties.

The notes on which the Movants are obligated were both fully matured at the time they were obtained by JPK and were the subject to pending litigation at the same time, with the Movants endeavoring to urge that certain consumer lending standards be applied to commercial transactions and working to overturn more than half a century of case law concerning the role of trustees serving under deeds of trust in the District of Columbia. The litigation created a prism whereby JPK's parent companies had a desire to separate the promissory notes on which the Movants are obligated from the parent companies' other lending assets, essentially siloing the troubled assets.

This practice is not particularly unusual in nature, with entities regularly looking to harbor troubled assets in special purpose subsidiaries. If anything, the activities of JPK are somewhat novel insofar as the entity elected to not merely hold troubled assets but, too, to use its formation to create a vehicle for the arbitrage of monies through unsecured borrowing and lending activity (with the Debtor's larger parent company being almost exclusively in the secured lending business).

Critically, however, while the formation of JPK was a business decision aimed at isolating troubled assets holding potential *in rem* liability, no one feigns the creation of the Debtor to have resulted in the transfer of any personal liabilities on the part of any parties in interest. The Movants make reference to so-called "Texas Two Step" bankruptcies. *See* Motion, DE #2, at § I(c), p. 3. A "Texas Two Step" is a somewhat novel creature of Lone Star law, in which an entity spins off both assets and liabilities into a new company, with the goal of firewalling those liabilities from healthy assets retained by the old company. *See generally Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, 148 F.4th 233 (4th Cir. 2025) ("Bestwall II").

Case law is uniform that so-called "Texas Two Step" corporate divisions are wholly permissible, being express creatures of state law. *LTL Mgmt., LLC v. Those Parties Listed on*

*Appendix A to Complaint (In re LTL Mgmt., LLC)*, 64 F.4th 84, 108 (3d Cir. 2023) ("LTL I"). And while there does exist some dispute as to how far along existentially-threatening litigation must be before a spun-off company may petition for bankruptcy relief, *id.*, *passim*; *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 182 (4th Cir. 2023) ("Bestwall I"), the current consensus is that no temporal waiting period exists between the creation of a spun off company and the petitioning for bankruptcy relief, *id.*, with case law acknowledging that the Bankruptcy Code "'. . . contemplates 'the need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation.'" *LTL I*, 64 F.4th at 102 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. 1999)).

JPK, however, is not now—and never has been—an entity created under, or existing pursuant to, Texas law. JPK is, rather, a District of Columbia limited liability company. No one feigns any personal liabilities to have passed from JPK's parent companies to JPK upon the Debtor's formation. Rather, JPK—through its capitalization with promissory notes on which the Movants are obligated, alongside an assignment of correlative deeds of trust—simply inherited assets that are alleged to carry *in rem* liabilities. If the Movants had any valid claims against JPK's parent companies before the creation of JPK, the Movants would still hold those claims. No personal liability was transferred. To the contrary, it is only a group of troubled assets that were taken off the parent companies' balance sheets and placed on that of JPK.

Finally, it merits brief notation that JPK takes issue with the manner in which the Movants have characterized litigation in the District of Columbia Superior Court, including the suggestion that a trial was nearing in that venue. This is a demonstrably counterfactual assertion upon which the Movants have sometimes relied despite, more recently, acknowledging that adjudication of their claims will proceed more expeditiously in the bankruptcy court. For instant purposes, such is

assuredly immaterial to the narrow question of whether or not to permit an interlocutory appeal to be taken. Yet, with all parties in agreement that disputes will need to be ultimately decided by one court or another, through one process or another, it does seem important to observe that the Movants have now both (i) acknowledged JPK's selection of the more expedient forum; and (ii) through the instant Motion—and other, related actions—taken seemingly every step possible to frustrate the expedient adjudication of their claims on the merits. It very much at least appears that the Movants do not want the bankruptcy court—a tribunal expert in the adjustment of the debtor/creditor relationship—to play any role in the adjudication of their claims premised upon the laws governing the adjustment of the debtor/creditor relationship.

## V.    Argument

### a. There Does Not Exist a Material Disagreement as to the Controlling Legal Standard

That creditors dislike a bankruptcy filing is hardly a new or novel revelation. Scarce are the creditors of a person or entity who relish seeing a petition for chapter 11 relief docketed in any bankruptcy court. And numerous are the qualms of creditors about the Congressionally-vested protections that accompany the filing of such a petition. So it almost-necessarily follows that creditors have long endeavored to search for mechanisms through which to secure the dismissal of bankruptcy cases. Problematically for the Movants, however, the precedent of this Honorable Court, alongside the United States Bankruptcy Court for the District of Columbia, has long been clear that dismissal of a chapter 11 case requires either (i) invocation of a statutory ground of dismissal; or (ii) a showing of both objective futility *and* subjective bad faith.

As a starting point, the Bankruptcy Code itself lays out numerous grounds upon which a reorganizational case may be dismissed. 11 U.S.C. § 1112(b)(4). These include the gross mismanagement of a bankruptcy estate by a debtor, 11 U.S.C. § 1112(b)(4)(B); failure to meet

filing requirements, 11 U.S.C. § 1112(b)(4)(F); a debtor's failure to sit for an initial examination at a meeting of creditors, 11 U.S.C. § 1112(b)(4)(H); and a failure to timely confirm a plan of reorganization, 11 U.S.C. § 1112(b)(4)(J).

The Movants in this case, however, cannot in good faith allege JPK to have run afoul of any strictures of the foregoing codified provision, so they have instead urged that the pending bankruptcy be dismissed for an unenumerated reason: bad faith. Insofar as dismissals for bad faith are outside the statutory confines of the Bankruptcy Code, such necessarily constitute rare and extraordinary forms of relief, greatly limited by the narrowing confines of case law.

This Honorable Court long ago recognized that two possible standards control efforts to dismiss chapter 11 petitions on bad faith grounds: (i) objective futility; or (ii) objective futility accompanied by an added showing of subjective bad faith. *In re 1210-1216 Mass. Ave.*, 1992 U.S. Dist. LEXIS 8912, at *6 (June 23, 1992). *See also In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *13 (Apr. 13, 1995) (affirming a bankruptcy court ruling based on the premise that dismissal is appropriate where a case is objectively futile). In so doing, this Honorable Court relied—quite heavily—on the Fourth Circuit standard for bad faith filings, set forth in the matter of *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). *In re 1210-1216 Mass. Ave.*, 1992 U.S. Dist. LEXIS 8912, at *6.

Contextually, it is well settled that there is a strong "federal public policy . . . to assure access to the right of a person, including a business entity, to seek federal bankruptcy relief as authorized by the Constitution and enacted by Congress." *In re Intervention Energy Holdings*, LLC, 553 B.R. 258, 265 (Bankr. D. Del. 2016). And, as explained by the *Carolin Corp.* Court, the emphasis on objective futility is accordingly quite important in passing judgment on a creditor's early effort to derail a bankruptcy case:

> Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing.

*Carolin Corp*., 886 F.2d at 701. *See also Coleman v. Cmty. Tr. Bank (In re Coleman)*, 426 F.3d 719, 727 (4th Cir. 2005) (reaffirming the policy rationale).

That this standard has been so long embraced by this Honorable Court and courts within the Fourth Circuit is thusly little wonder. And while the Movants certainly endeavor to suggest that a more complex, detail-dependent test ought to be established, they necessarily endeavor to cloud this longstanding and well-settled precedent in so doing.

At bottom, there is not a "substantial ground for difference of opinion" as to whether objective futility must be shown to dismiss a chapter 11 case on bad faith grounds. *In re Carvalho*, 2017 U.S. Dist. LEXIS 231000, at *5-6. As the Movants themselves acknowledge, the requisite "difference of opinion" must be one between courts, not merely between parties. *See* Motion, DE #2, at § IV(B), p. 8 (citing *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 79 (E.D. Va. 2000)). There may be some room—in light of this Honorable Court's own precedent—to argue whether or not a showing of objective futility must also be accompanied by one of subjective bad faith, but that is irrelevant to the case at bar insofar as the bankruptcy court's

ruling below is expressly premised upon the reorganizational efforts of JPK not being objectively futile.[2]

Since leave to appeal an interlocutory order is only to be afforded where all three conjunctive elements of the *Carvalho* test are met (something with which the Movants agree), the lack of a substantial ground for difference of opinion is facially dispositive of the Motion. The second element of the test is plainly not satisfied *sub judice*. And while such assuredly does not preclude the Movants from appealing once a final order is in place, efforts to lodge an interlocutory appeal in the interim are accordingly misplaced.

### b.  Appeal Will Not Advance the Disposition of the Matter Below

The more jarring problem with the Motion is found in the third element of the *Carvalho* test: no matter the outcome of an appeal, if allowed, such will not advance the termination of JPK's bankruptcy case. To the contrary, the very issue upon which the Movants base their appeal is one that will need to be taken up at plan confirmation: good faith. And the Movants' myriad complaints about not being afforded discovery on their motion below, when they could not identify a single potentially-disputed fact that would merit exploration through discovery, is also belied by the reality that the Movants are afforded ample opportunity to take discovery on the issue of good faith in connection with plan confirmation.

As noted *supra*, confirmation of a chapter 11 plan requires a showing of good faith, as well as showing of compliance with the rigors of the Bankruptcy Code. So, to the extent the Movants

---

[2] As noted in the Motion, the bankruptcy court issued an oral ruling, in which it was indicated a written opinion may follow if an appeal is to be taken. It is hoped time will be allowed for such a written opinion to be docketed and made a part of the record on appeal. As will be reflected in a transcript, however, the ruling clearly turned on observation of the fact that JPK's bankruptcy is not objectively futile and, to the contrary, appears to be well within the normative contours of a case where a plan of reorganization addresses the maladies that invited the petition for bankruptcy relief in the first instance.

wish to allege an absence of good faith, the issue is already one that is present in the bankruptcy case and that can be explored as the bankruptcy case moves toward confirmation. This is, no doubt, very likely why objective futility is the core consideration in assessing the existence of bad faith petition: the Bankruptcy Code already contains self-executing provisions that doom the efforts of a debtor, at the time of plan confirmation, if reorganizational efforts are not rooted in good faith.

It necessarily follows that the paradigm created by the Movants here is somewhat troubling: in lieu of following the strictures of the Bankruptcy Code and precedent, by addressing questions of good faith in the prism of plan confirmation, the Movants have (i) secured an indefinite stay of plan confirmation (on what now appear to be rather-likely pretextual grounds), over the Debtor's objection; and (ii) moved for leave to take an appeal where, even if leave to appeal is granted, and even if the order below were reversed, such would only invite a universe in which the question of good faith—a condition precedent to plan confirmation—would still need to be addressed by the bankruptcy court in a context not dissimilar to that a hearing on plan confirmation would already occasion. It is, quite genuinely, unclear why the Movants would elect—much less suggest to this Honorable Court—such a path. The Bankruptcy Code already furnishes them with an opportunity to challenge good faith at confirmation; in lieu of following this statutory allowance—buttressed by the demand that a hearing on confirmation follow quickly in Subchapter V cases—the Movants have insisted on delaying a confirmation hearing and endeavoring to take an interlocutory appeal.

In so doing, the Movants urge that they were entitled to discovery on their original motion below. Yet, as noted *passim*, this argument misses that (i) the Movants could not identify any issues on which discovery needed to be taken, and thereby could not identify any relevant subject area for discovery; and (ii) the Movants are entitled to discovery in connection with the plan confirmation process. These are both palpably troubling omissions.

On the first point, the Movants are proceeding in a manner analogous to a civil litigant who urges a Rule 12(b)(6) motion ought to be denied because discovery is needed to form the foundation of a cause of action. Yet case law is express that one is only entitled to seek civil discovery if there already exists a good faith basis to allege a cognizable claim for relief. *Citizens for Responsibility & Ethics in Wash. v. United States DOJ*, 298 F. Supp. 3d 151, 156 (D.D.C. 2018).[3] Even accepting all of the allegations of the Movants as true (and even with the Debtor conceding all of the allegations of the Movants, for purposes of the motion to dismiss below), the Movants could not muster a cogent theory as to why the bankruptcy case should be dismissed. And there was accordingly no area of factual dispute into which discovery would have been beneficial or needed, meaning any discovery would have fallen outside the permissive contours of Rule 26.[4]

On the second point, the Movants are ignoring that they are *already* taking discovery in the bankruptcy case, with the chapter 11 proceeding having survived their motion to dismiss, and that they are entitled to take even more discovery in connection with JPK's efforts to confirm a plan of reorganization. This is not a minor omission from the Motion; this is a glaring problem with the entire theory upon which appellate relief is being sought. The Movants are bemoaning that they needed discovery below, whilst altogether failing to mention that they are taking—and are entitled to continue taking—discovery below.

---

[3] This is a slightly clunky analogy insofar as it is a defendant who brings a traditional civil motion to dismiss, while it is the Movants who brought the motion to dismiss in the bankruptcy court. These are different types of motions to dismiss. The analogy is simply intended to show that one must allege facts capable of forming an entitlement to relief, before one is allowed to take discovery thereupon. This is not an effort to conflate two very different kinds of motion that both happen to bear the nomenclature of "dismissal."

[4] The Movants, of course, still could have sought discovery under Federal Rule of Bankruptcy Procedure 2004. Why they did not do so is at-best unclear.

Indeed, this is where the civil litigation analogy set forth above goes from being "clunky," *see, supra,* n.3, to outright crumbling. In a traditional civil suit, failure to prevail on a Rule 12(b)(6) motion equates to a denial of access to discovery. Yet in bankruptcy, the Movants' failure to prevail on their motion below only invites the continuation of a process in which they are entitled to take ample discovery.

It is thusly somewhat unclear how adjudication of an interlocutory appeal would advance termination of the bankruptcy case. Regardless of whether the Motion is granted, the Movants will be entitled to take discovery in the bankruptcy court and will be entitled to use that discovery to attack good faith at a hearing on plan confirmation. Yes, they seemingly wish to have multiple bites at the proverbial apple, desiring to first attack good faith (again) in the context of a motion to dismiss on remand, and to then attack good faith (for a third time) in the context of a confirmation hearing. But such desires do not amount to the efficient advancement of a case's conclusion and, much to the contrary, are suggestive of a dilatory desire to slow the expedient pace of subchapter V unless and until such a time as the Movants become convinced they have done everything possible to derail JPK's reorganizational aspirations.

## VI.    Conclusion

WHEREFORE, JPK respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: September 30, 2025          By:          /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.
                                                       Bar No. MD18071
                                                       The VerStandig Law Firm, LLC
                                                       9812 Falls Road, #114-160
                                                       Potomac, Maryland 20854
                                                       Phone: (301) 444-4600
                                                       mac@mbvesq.com
                                                       *Counsel for JPK NewCo LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig