UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Bankruptcy Case No.: 25-00200-ELG<br>Chapter 11 |
| Developer RE1, LLC and 423 Kennedy St Holdings, LLC.<br><br>*Appellants*. | Civil Action No.: 25-3250 (SLS)<br>Judge Sparkle L. Sooknanan |

# APPELLANTS DEVELOPER RE1, LLC'S AND 423 KENNEDY ST. HOLDINGS, LLC'S BRIEF IN SUPPORT OF INTERLOCUTORY APPEAL

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy") (collectively the "Appellants"), by counsel, hereby file their Opening Brief (the "Brief"). The Appellants have included the accompanying Table of Contents, Table of Authorities, and Memorandum in support.

James D. Sadowski, Esq. (D.C. Bar #446635)
Alexandria J. Smith, Esq. (D.C. Bar #1781067)
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Email: jds@gdllaw.com / ajs@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

# TABLE OF CONTENTS

Appellants Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Brief in Support of Interlocutory Appeal ..... i

Table of Authorities ..... iii

Summary of the Case ..... 1

Jurisdiction ..... 2

Statement of the Issue ..... 2

Standard of Review ..... 2

Statement of the Case ..... 3

A. Condensed Factual Background About the Borrowers, the Loan Documents, and the D.C. Superior Court Cases ..... 3

B. JPK NewCo's Lack of Any Indicia That It is a Legitimate Company ..... 5

C. The First Collusive Efforts to Manufacture Federal Jurisdiction – *JPK NewCo I* ..... 7

D. Condensed Procedural History of JPK NewCo II ..... 8

Legal Argument Summary ..... 8

Legal Standards for Dismissal Trend Toward a Totality of the Circumstances Analysis ..... 10

1. The Fourth Circuit is the Outlier that Employs a Formulaic, Two-Part Test. ..... 10
2. No Prior Decisions From this Circuit Adopt the *Carolin* Approach. ..... 12
3. No Prior Decisions From the D.C. Bankruptcy Court Adopted the *Carolin Approach*. ..... 13
4. The First Circuit Test Assesses the Debtor's Financial Health and Need to Reorganize. ..... 15
5. The Second Circuit Utilizes a Totality of the Circumstances Approach. ..... 16
6. The Third Circuit Test Requires that Financial Distress Be Immediate Enough to Justify Filing. ..... 16
7. The Fifth Circuit Also Utilizes a Totality of the Circumstances Approach. ..... 17
8. The Sixth Circuit Also Utilizes a Totality of the Circumstances Approach. ..... 18
9. The Seventh Circuit Also Utilizes the Totality of the Circumstances Test. ..... 18
10. The Eighth Circuit Also Employs a Totality of the Circumstances Approach. ..... 19
11. The Ninth Circuit Analyzes Various Factors. ..... 20
12. The Eleventh Circuit Uses an "Any Factors" Test. ..... 20
13. The Fourth Circuit is Suffering the Consequences of the *Carolin* Test. ..... 21
14. Further Rejection of the *Carolin* Test. ..... 21

This Court Should Adopt the Totality Approach Employed by the Majority of Circuits ..... 22



8161\0002\4913-0601-1074.v2

The *Carolin T*est Is Inconsistent With the Good Faith Requirement .......... 24
The Bankruptcy Court Misapplied the *Carolin* Test .......... 25
The Decision Below, if Upheld, Would Set a Dangerous Precedent .......... 27
Relief Requested .......... 28
Conclusion .......... 29
Certificate of Compliance With Rule 8014 .......... 31
Certificate of Service .......... 32

## Table of Authorities

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 259 (1975) .......... 28
*American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940) .......... 18
*Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, 148 F.4th 233, 247 (4th Cir. 2025) .......... 21
*Carolin Corporation*, 886 F.2d at 700, 701 .......... 14
*Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 380 (8th Cir. 2000) .......... 19
*Ceder Shore Resort, Inc. v. Mueller*, 235 F.3d 375, 379-81 (8th Cir. 2000) .......... 15
*Developer RE1, et al., v. WCP Fund I, LLC,* (*In re Paret),* Adv. Pro. 24-10023-ELG .......... 5
*Franklin Mortg. & Inv. Co.,* 143 B.R. 295 (Bankr. D.D.C. 1992) .......... 13
*Herlihy v. DBMP, LLC*, 167 F.4th 142, 168 (4th Cir. 2026) .......... 21
*In re 1210-1216 Mass. Ave.*, Civil No. 92-0074 (TAF), 1992 U.S. Dist. LEXIS 8912, at *23 (June 23, 1992) .......... 26
In re 1210-1216 Mass. Ave., Civil No. 92-0074 (TAF), 1992 U.S. Dist. LEXIS 8912, at *6 (June 23, 1992) .......... 12
*In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.) .......... 20
*In re Allen*, 300 B.R. 105 at 124 .......... 15
*In re Allen*, 300 B.R. 105 at HN26 (Bankr. D.D.C. 2003) .......... 10
*In re Allen*, 300 B.R. 105, 123 (Bankr. D.D.C. 2003) .......... 14
*In re Capitol Food Corp.*, 490 F.3d 21, 25-26 (1st Cir. 2007) .......... 15
*In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380-81 (8th Cir. 2000) .......... 22
*In re C-TC 9th Ave. Pshp.*, 113 F.3d 1304, 1310 (2d Cir. 1997) .......... 23
*In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D.S.C. 1995) .......... 11
*In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015) .......... 17
*In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295, 299 (Bankr. D.D.C. 1992) .......... 23, 28
*In re Grieshop,* 63 B.R. 657, 663 (N.D. Ind. 1986) .......... 19
*In re Laguna Assocs. Ltd. Pshp.*, 30 F.3d 734, 738 (6th Cir. 1994) .......... 18
*In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) .......... 14, 17
*In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) .......... 24
*In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir. 1937) .......... 18
*In re LTL Mgmt., LLC*, 64 F.4th 84, 100-01 (3d Cir. 2023) .......... 16



8161\0002\4913-0601-1074.v2

*In re LTL Mgt., LLC, 64 F.4th 84 (3d Cir. 2023)* ........ 17
*In re Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013) ........ 20
*In re Meltzer*, 516 B.R. 504, 516 (Bankr. N.D. Ill. 2014) ........ 25
*In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987) ........ 11
*In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir. 1988) ........ 20
*In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *12-13 (Apr. 13, 1995) ........ 12
*In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627 ........ 8
*In re Silberkraus*, 253 B.R. 890, 905 (C.D. Cal. Bankr. Ct. 2000) ........ 24
*In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) ........ 11
*Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823 (1969) ........ 23
*Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986) ........ 11, 13
*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940) ........ 18
*U.S.I. Props. Corp. v. M.D. Constr. Co.,* 860 F.2d 1, 6 (1st Cir. 1988) ........ 24

**Statutes**

11 U.S.C. § 1112(b)(1) ........ 8
11 U.S.C. § 1112(b)(4) ........ 8
11 U.S.C. § 524(g) ........ 21
28 U.S.C. § 1359 ........ 23
28 U.S.C. § 158 ........ 2
28 U.S.C. § 158(a)(3) ........ 2
886 F.2d at 701 ........ 10

**Rules**

Fed. R. Civ. Proc. 11 ........ 27

**Treatises**

2 L. King, *Collier on Bankruptcy* § 301.05[1] (15th ed. 1979) ........ 11

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Bankruptcy Case No.: 25-00200-ELG<br>Chapter 11 |
| Developer RE1, LLC and 423 Kennedy St Holdings, LLC.<br><br>*Appellants*. | Civil Action No.: 25-3250 (SLS)<br>Judge Sparkle L. Sooknanan |

## SUMMARY OF THE CASE

The Chapter 11 petition was filed by JPK NewCo, LLC ("JPK NewCo") for the improper purpose of delaying civil litigation pending in the D.C. Superior Court. In December of 2022, the Appellants filed suit against JPK NewCo's two owners and its related company and individuals: the WCP Fund I, LLC ("WCP Fund"), DP Capital, LLC d/b/a Washington Capital Partners ("WCP"), Daniel Huertas, Russell Drazin, and SF NU LLC ("SF NU") (the "Lender Defendants").[1] Mr. Huertas controls the WCP Fund and the WCP. The WCP Fund and SF NU are the co-owners of JPK NewCo. The Lender Defendants colluded to manufacture federal jurisdiction to try to have the U.S. Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") revisit and reverse prior decisions that did not favor them in two consolidated D.C. Superior Court cases. JPK NewCo's formation, the first involuntary petition involving JPK NewCo that was later dismissed (24-000262-ELG) ("*JPK NewCo I*"), and this second bankruptcy case are all part of an improper scheme to manufacture bankruptcy jurisdiction so that the Appellants' state law claims are adjudicated in Bankruptcy Court. JPK

[1] SF NU was later added as a Defendant by amendment.

NewCo is not now, and never has been, a legitimate business that needed bankruptcy protection. The Appellants' position is that given a choice between the Fourth Circuit's standard for dismissal and the standards adopted by a majority of the other circuits, the Bankruptcy Court applied the wrong standard for dismissing a bankruptcy petition filed in bad faith.

## JURISDICTION

The Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 158, which provides district courts with jurisdiction to hear appeals from certain "interlocutory orders and decrees" "with leave of court". 28 U.S.C. § 158(a)(3). On July 2, 2026, the Court granted Appellants' leave to appeal the Bankruptcy Court's September 2, 2025, Order Denying Motion to Dismiss Case Filed in Bad Faith (Bankr. ECF # 59). *See* Court's Memorandum Opinion (ECF # 14).

## STATEMENT OF THE ISSUE

This Brief addresses the single question this Court designated for interlocutory review: whether the Bankruptcy Court applied the correct standard in determining whether JPK NewCo's petition should be dismissed for lack of good faith. *See* Court's Mem. Op. (ECF # 14).

## STANDARD OF REVIEW

Once an interlocutory appeal is accepted, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See Midland Funding LLC v. Thomas*, 606 B.R. 687, 692 (W.D. Va. 2019). Specifically, the district court reviews the bankruptcy judge's findings of fact under the clear error standard. *Id.* at 687. In contrast, the bankruptcy court's conclusions of law are subject to *de novo* review. *Id.*

## Statement of the Case

### A. Condensed Factual Background About the Borrowers, the Loan Documents, and the D.C. Superior Court Cases[2]

This is a dispute between two related real-estate development entities -- 423 Kennedy and RE1 (the "Appellants" or "Borrowers") -- and the Lender Defendants. Both Borrowers had multiple loans secured by deeds of trust, and both Borrowers were current on their loan obligations in 2022. As their loan maturity dates approached, both Borrowers were in the process of refinancing the loans through MainStreet Bank, which refinance would have paid the WCP Fund in full. At no point prior to December 8, 2022, did the WCP assert that either Borrower was in default or include default penalties in its payoff statements.

After learning of the pending refinancings, Mr. Huertas began taking actions to obstruct both projects. In October 2022, the WCP stopped funding construction draws for 423 Kennedy, citing dissatisfaction with an unrelated project involving another developer. The WCP knew that withholding draws would halt construction. Despite the Borrowers being current on their loans, Mr. Huertas tried to pressure Mel Negussie, a principal of both entities, to cover a $700,000 shortfall on a separate and unrelated development at 2507 I Street NW.

On December 8, 2022, Mr. Huertas threatened (in a phone call with Mr. Negussie) that a wealthy investor involved in the 2507 I Street project would "make trouble" for Mr. Negussie on all of his projects unless he arranged for the shortfall to be covered. When Mr. Negussie refused, WCP "withdrew" all prior payoff statements and issued unsigned Notices of Default for each project that did not specify the alleged defaults and threatened foreclosure. On the same day,

[2] Appellant's Motion to Dismiss filed in the Chapter 11 case (ECF #19 in 25-00200-ELG) contains a more comprehensive factual and procedural background.

WCP issued new payoff statements demanding over $2 million in newly imposed default interest and penalties -- charges that had not appeared on any earlier payoff statements.

The WCP's counsel, Russel Drazin, who also served as trustee under the deeds of trust, acted on behalf of the WCP despite an inherent conflict of interest. Mr. Drazin attempted to retroactively justify the default declarations by identifying - after the fact - technical or minor issues, such as alleged cross-defaults or slightly late payments, among other alleged defaults. The Borrowers contend that these justifications were pretextual and intended to conceal the true motivation for declaring the defaults.

Procedurally, the Borrowers filed separate but nearly identical lawsuits in D.C. Superior Court beginning in December 2022 after the WCP Fund improperly asserted that the loans were in default, and later tried to foreclose on the properties in the cases known as *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.,* Case No. 2023-CAB-004260 (D.C. Super. Ct.) and *Developer RE1, LLC v. the WCP Fund I, LLC, et al.,* 2022-CAB-005935 (D.C. Super Ct.). In both cases the Borrowers sought and obtained temporary restraining orders ("TROs") from different D.C. Superior Court judges that prohibited the Lender Defendants from foreclosing on the properties until after the Borrowers' lender liability claims were decided. The two cases were consolidated in June 2024 (the "Consolidated Cases"). Unbeknownst to the Borrowers, after the D.C. Superior Court cases had been pending for years, the Lender Defendants created JPK NewCo and arranged for some, but not all, of the Borrowers' loan documents to be transferred to that entity around April 15-16, 2024.

On July 3, 2024, at 6:04 pm, the Borrowers noted the depositions of all of the Lender Defendants and of multiple fact witnesses (employees of the WCP) to take place back-to back on July 8-9, 2024. Just a few hours later (11:50 pm), the Lender Defendants filed a notice of

removal of the Consolidated Cases resulting in the Adversary Proceeding entitled *Developer RE1, et al., v. WCP Fund I, LLC, (In re Paret),* Adv. Pro. 24-10023-ELG.[3] This was the first time the Borrowers learned about the existence of JPK NewCo.

The evidence available to date indicates that the WCP formed JPK NewCo, transferred some of the Borrowers' loan documents, and set up a single, separate, fictitious loan, with an unknown entity, that could not be repaid, to manufacture JPK NewCo's insolvency. It is obvious from the timing of the first notice of removal ad JPK NewCo's involuntary bankruptcy that those filings were intended to prevent the Borrowers from taking depositions and to further ensure that the September 9, 2024, trial did not take place in the D.C. Superior Court.

## B. JPK NewCo's Lack of Any Indicia That It is a Legitimate Company

JPK NewCo was formed more than a year after the D.C. Superior Court cases were filed. Since its formation, JPK NewCo has conducted no legitimate business. It has no employees, it generates no income from sales, it produces no goods, and it provides no services. JPK NewCo's principal place of business is the WCP's offices in McLean, VA – an address that is also shared with the WCP Fund and where Mr. Huertas' office is located. Until April 15, 2024, JPK NewCo existed simply as a shell entity. On April 15, 2024, the WCP Fund and SF NU, while still defendants in the Consolidated Cases, assigned some of their interests in the Borrower's loan documents to JPK NewCo. Although assignment documents indicate that the

[3] The initial basis for removal was the fact that Charles Paret, a debtor in an involuntary bankruptcy case that two of the Lender Defendants initiated after Mr. Paret sued Mr. Huertas in D.C. Superior Court, had alleged that he was involved in a partnership with Mr. Huertas, and that partnership included sharing in the profits of the loan documents of various properties. *See In re Paret,* Case No. 23-00217-ELG at ECF #132.

assignments were "for value received," given that JPK NewCo had no money and provided no services, it appears that these assignments were actually for no consideration.

On June 3, 2024, when the discovery period in the Consolidated Cases was nearing completion, Shaheen Sariri, a friend of Mr. Huertas, "loaned" JPK NewCo $50,000, which JPK NewCo, despite having no income or assets other than assigned notes that would yield no income due to the TRO Orders in the Consolidated Cases, was supposed to repay, in full, with 10.55% annual interest, two months later on August 3, 2024. The first payment was due on July 1, 2024. Given that JPK NewCo had no ability to repay this "loan" to Mr. Sariri, it is obvious that this "loan" was a sham. Indeed, it was never intended that JPK NewCo would repay this loan. Rather, the purpose of this "loan" was to cause JPK NewCo to incur a debt to a single individual, Mr. Sariri, so Mr. Sariri could then initiate an involuntary bankruptcy against JPK NewCo, thereby giving the Lender Defendants another potential ground to allow the Bankruptcy Court, which they perceive as a friendlier forum, to have jurisdiction over all or part of the Borrowers' claims. JPK NewCo received the "loan" from Mr. Sariri on June 21, 2024. On June 25, 2024, JPK NewCo loaned the remaining $26,000 to an entity known as Energy Morroco, LLC, a loan that was not scheduled to be repaid (other than a $325 interest payment to be made each month) until December 21, 2024 -- well after the "loan" from Mr. Sariri was due to be paid in full. The purpose of the loan to Energy Morroco, LLC, was to give JPK NewCo the appearance of carrying on some type of legitimate business activity.

All available information to date indicates that the plan to create federal jurisdiction through the loan from Mr. Sariri and a subsequent bankruptcy filing by JPK NewCo was created and carried out on the advice of the Lender Defendants' and JPK NewCo's then-attorney, Maurice VerStandig. Given that on July 1, 2024, when the first payment to Mr. Sariri came due,

JPK NewCo had (by design) no cash on hand to repay the "loan", it failed to make its first payment to Mr. Sariri.

C. THE FIRST COLLUSIVE EFFORTS TO MANUFACTURE FEDERAL JURISDICTION – *JPK NEWCO I*

Allegedly as a result of a default under the manufactured Sariri note, on July 23, 2024, Mr. Sariri filed an involuntary Chapter 11 petition against JPK NewCo. *See In Re: JPK NewCo, LLC,* Case No. 24-00262-ELG ("*JPK NewCo I*"). The U.S. Trustee's office moved to dismiss *JPK NewCo I* as a bad faith filing. *See JPK NewCo I;* ECF # 37. In its opposition, the WCP Fund admitted that JPK NewCo was created as a separate entity to "to firewall any liability [to the Borrowers] from reaching WCP or its various co-defendants." *See* ECF #56 at 6, ¶¶ 15 (WCP Opposition filed in *JPK NewCo I*). The WCP fund also represented that JPK NewCo was formed with the intent of being ". . . focused on addressing multiple litigation claims and thusly likely sheltering WCP and SNL from the ultimate economic reach of the subject litigation claims." *Id.* ¶ 18. The Bankruptcy Court issued a Scheduling Order permitting discovery and setting an evidentiary hearing on the U.S. Trustee's motion to dismiss. Before the motion to dismiss was decided, however, JPK NewCo and the U.S. Trustee's office signed off on a consent order dismissing *JPK NewCo I*. The sole basis listed for dismissal was JPK NewCo's failure to pay quarterly fees to the U.S. Trustee's office. *See* ECF # 85 in *JPK NewCo I.*

After *JPK NewCo I* was dismissed, the Borrowers renewed their motion for remand of the Consolidated Cases, which the Lender Defendants again opposed. *See* ECF ## 46 and 51 in 24-10023-ELG. After a hearing, the Bankruptcy Court remanded the Consolidated Cases back to D.C. Superior Court on May 12, 2025. *See* ECF # 64 in 24-10023-ELG.

D. <u>CONDENSED PROCEDURAL HISTORY OF JPK NEWCO II</u>

On May 27, 2025, JPK NewCo again sought relief from the D.C. Superior Court and filed a voluntary Chapter 11 petition (25-00200-ELG) ("*JPK NewCo II*") and an adversary proceeding over the same claims (25-10015-ELG), then re-removed the Consolidated Cases as an adversary proceeding (25-10037-ELG). The Borrowers moved to dismiss *JPK NewCo II* for being filed in bad faith. *See JPK NewCo II;* ECF # 19. The Bankruptcy Court heard oral argument on the Motion to Dismiss for Bad Faith from the parties on July 30, 2025 and July 31, 2025. On September 2, 2025, the Bankruptcy Court issued its Order Denying the Motion to Dismiss. This appeal followed.

On August 20, 2025, the Borrowers filed a motion for abstention and to dismiss the new adversary proceeding and a motion for remand of the re-removed Consolidated Cases. *See* ECF ##25-26 in 25-10015-ELG and #10 in 25-10037-ELG. The Bankruptcy Court denied those motions at a hearing on September 5, 2025. Thereafter, the Appellants filed a Motion for Withdrawal of the Reference as to both adversary proceedings, and those motions are currently pending before this Court. *See* Case. Nos. 25-mc-00160 and 26-mc-00161.

## <u>LEGAL ARGUMENT SUMMARY</u>

The good faith filing requirement exists to protect the integrity of the bankruptcy system. There is no definition of "good faith" in the Bankruptcy Code; the finding is fact-specific. *See In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627, at *5 (Bankr. E.D. Va. June 13, 2007), opinion corrected, No. 07-10252 SSM, 2007 WL 2110314 (Bankr. E.D. Va. July 17, 2007). On a request by a party in interest, after notice and hearing, the Court may dismiss or convert a Chapter 11 case to a case under Chapter 7, whichever is in the best interests of the creditors and the estate for "cause". 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) contains a non-exhaustive list of circumstances that may constitute "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(4). While

courts agree that a Chapter 11 petition filed in bad faith may be dismissed for cause under § 1112(b), there are three different approaches to the bad faith analysis: (i) objective futility must be shown; (ii) objective futility is a factor to be considered; and (iii) objective futility is not part of the analysis.

The Fourth Circuit's *Carolin* test, requiring both objective futility and subjective bad faith, is the only test that requires objective futility as a threshold prong. *See Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir. 1989). The remaining circuits simply either do not consider objective futility, or consider objective futility as but one element to be considered (which element is described as the financial health of the debtor in some instances). While the U.S. Supreme Court recently declined to reconcile the differences in approach,[4] there is a clear trend among the circuit courts holding that a finding of objective futility is not a threshold element for dismissal and that a totality of the circumstances is the more appropriate analysis. *See, e.g., In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380 (8th Cir. 2000); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); *In re Laguna Assocs. Ltd. P'shp.*, 30 F.3d 734, 738 (6th Cir. 1994); *Franklin Mortg. & Inv. Co.,* 143 B.R. 295 (Bankr. D.D.C. 1992); *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir. 1937).

The Bankruptcy Court erred when it applied the *Carolin* test -- and by focusing solely on objective futility -- in deciding that JPK NewCo's petition should not be dismissed for bad faith. This Court should decline to adopt the *Carolin* test and instead hold that a Chapter 11 petition may be dismissed upon a showing of bad faith utilizing a totality of the circumstances test, without a separate, threshold requirement of objective futility. The Court should adopt this

[4] *Off. Comm. of Asbestos Claimants v. Bestwall LLC, 71 F.4th 233 (4th Cir. 2025), cert. denied, 225 L. Ed. 22 231 (2026)*;

standard for two reasons: (1) most circuits and well-reasoned decisions reject or deviate from the *Carolin* test altogether as being too rigid; and (2) the *Carolin* test is inconsistent with the good faith requirement and permits a bad-faith filing to survive so long as some reorganization is conceivable.

Alternatively, even if this Court determines that the *Carolin* test applies, the Court should find that Bankruptcy Court erred in how it applied the *Carolin* test to the facts of this case. Under *Carolin*, objective futility is a substantive inquiry into whether the petition bears "some relation to the statutory objective of resuscitating a financially troubled debtor," not a threshold -- and dispositive -- requirement for dismissal. *Carolin,* 886 F.2d at 701. The Bankruptcy Court here reduced that inquiry to whether the Debtor's plan merely contains the elements required by 11 U.S.C. § 1190. Under this flawed interpretation of *Carolin*, any debtor that files a facially complete plan with the possibility of reorganization will always survive a bad-faith challenge. The D.C. Bankruptcy Court previously rejected this interpretation of *Carolin* in *In re Allen*, 300 B.R. 105, 123 at HN26 (Bankr. D.D.C. 2003).

LEGAL STANDARDS FOR DISMISSAL TREND TOWARD A TOTALITY OF THE CIRCUMSTANCES ANALYSIS

Although there is no controlling precedent in this circuit as to the legal standard that should be applied to determine whether a petition was filed in good faith, most circuits do not require a showing of objective futility and instead utilize a totality of the circumstances analysis, a multi-factor style analysis, or an "any factor goes" analysis. It is unmistakable that circuits are trending away from the rigid, two-pronged *Carolin* test.

1. The Fourth Circuit is the Outlier that Employs a Formulaic, Two-Part Test.

The Fourth Circuit is the minority approach, requiring a showing of objective futility and subjective bad faith to dismiss a petition for bad faith. In *Carolin,* the Fourth Circuit used a two-

pronged inquiry that looked at findings of objective futility and subjective bad faith in deciding whether to dismiss or convert a Chapter 11 case. *Carolin,* 886 F.2d at 701 ("We turn now to the specific objects of the required two-pronged inquiry and to the evidence required to establish each."). The *Carolin* decision noted that courts presented with the question of bad faith have uniformly held that: "[G]enerally, an implicit prerequisite to the right to file [a Chapter 11 petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal . . . ." *Carolin,* 886 F.2d at 698 (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) and 2 L. King, *Collier on Bankruptcy* § 301.05[1] (15th ed. 1979). The *Carolin* decision further noted that:

> We agree with the other courts that have so held and conclude that a good faith filing requirement is implicit in several specific provisions of the bankruptcy code, interpreted in light of established policy considerations underlying the code's provision of bankruptcy protection. …. [A] good faith requirement[:] *prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way* or to achieve reprehensible purposes. Moreover, a good faith standard *protects the jurisdictional integrity of the bankruptcy courts* by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Id.* at 698 (italic emphasis added) (citing *Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986)). To make a finding of bad faith, a totality of the circumstances inquiry is required, and no single factor is considered determinative and any conceivable list of factors is not exhaustive. *Id.* at 701 (citing *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987); *see also In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D.S.C. 1995) ("In making a determination regarding allegations of bad faith, the Court must examine the totality of the facts of the case."). Notwithstanding the foregoing, *Carolin* adopted a stringent, two-prong approach which requires both objective futility and subjective bad faith be shown in order to dismiss a filing for bad faith. *Carolin,* 886 F.2d at 700-01. The objective futility inquiry is designed to

ensure that the petition "has some relation to the statutory objective of resuscitating a financially troubled [debtor]." *Id.* at 701. The subjective bad faith inquiry is designed to ascertain whether the petitioner's real motivation is to abuse the reorganization process and cause hardship or delay to creditors without an intent or ability to reorganize. *Id.*

2. <u>No Prior Decisions From this Circuit Adopt the *Carolin* Approach.</u>

The Bankruptcy Court grounded its adoption of *Carolin* in two decisions of this Court. *See* Memorandum Opinion on Motion to Dismiss (ECF # 92 in JPK NewCo II). In *1210-1216 Massachusetts Ave.,* this Court noted that the Bankruptcy Court cited two lines of cases: those defining bad faith as being a petition filed with organization is objectively futile and those cases requiring both objective futility and subjective bad faith on the part of the petitioner. *In re 1210-1216 Mass. Ave.,* Civil No. 92-0074 (TAF), 1992 U.S. Dist. LEXIS 8912, at *6 (June 23, 1992). While the Bankruptcy Court adopted *Carolin* in the underlying case, this Court made clear that this Circuit has not adopted the *Carolin* standard. *Id.* at *15. *1210-1216 Massachusetts Ave.* noted that while the Bankruptcy Court found objective futility, objective futility did not stand alone and there was subjective bad faith. *Id.* at *16.

A few years later, this Court reiterated that the standard for bad faith in this Circuit remains unsettled. *In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *12-13 (Apr. 13, 1995). The Court noted courts in this jurisdiction have employed two standards: (1) a bankruptcy petition is filed in bad faith when reorganization is objectively futile and (2) a bankruptcy petition is filed in bad faith when there is subjective bad faith on the part of the debtor. *Id.* at *13-15. In the underlying case, the Bankruptcy Court found that the petition was not objectively futile. *Id.* at *13. Importantly, in *Rudd*, this Court noted that the Bankruptcy Court proceeded with analyzing both objective futility and subjective bad faith of the debtor and determined that the debtor's

motive was not improper despite the presence of several factors considered in *Franklin Mortgage*.[5] *Id.*

3. <u>No Prior Decisions From the D.C. Bankruptcy Court Adopted the *Carolin* Approach.</u>

The two D.C. Bankruptcy Court decisions cited by the Bankruptcy Court did not adopt the *Carolin* test as the governing standard. In *Franklin*, the Bankruptcy Court noted that even though Chapter 11 does not contain a specific "good faith" requirement, "courts have consistently imposed such a requirement by way of implication." *Franklin*, 143 B.R. at 299. In *Franklin*, the Debtor was formed prior to the bankruptcy for the purpose of owning commercial real estate in Palm Beach, Florida, which was subject to a foreclosure action by the secured lender. In granting the secured lender's motion to dismiss, the Bankruptcy Court applied a balancing test of the eight factors evidencing bad faith established by the Fifth Circuit in *Little Creek Development*. *Id.* The eight *Little Creek Development* factors include:

> (a) whether the debtor has one asset, (b) whether the asset is encumbered by secured liens, (c) whether the debtor has any business operations, (d) *whether the debtor has few unsecured creditors with small claims,* (e) *whether the debtor and one creditor had litigated to a standstill in state court,* (f) whether bankruptcy was the only viable way to forestall loss of the property, (g) *whether there were any allegations of wrongdoing by the debtor or its principals*, and (h) *whether the debtor suffers from "new debtor syndrome."*

*Id.* pp. 299-300 (italic emphasis added). The *Franklin* decision also cited to Section 1112(b) of the bankruptcy code. *Id.* ("I agree that the broad 'for cause' language in [11 U.S.C.] section

---

[5] In FN 37 of its Order, the Bankruptcy Court notes that the underlying unpublished bankruptcy opinion clearly evidences the bankruptcy court's application of the *Carolin* test analysis. If that were the case, under *Carolin* there would be no reason for the bankruptcy court to have gone ahead with analyzing the subjective bad faith prong of the *Carolin* test if the objective futility prong had not been met.

1112(b) supports the view that a debtor's lack of good faith may constitute cause for dismissal of a chapter 11 petition").

Critically, after applying the *Little Creek Development* factors, the Bankruptcy Court acknowledged the split of authority over whether motions to dismiss for bad faith should be evaluated by applying a subjective motive analysis, an objective feasibility analysis, or a hybrid analysis. The Bankruptcy Court specifically noted that the *Carolin* court requires that both objective futility and subjective bad faith be present. *Id.* at 302 (*citing Carolin*, 886 F.2d at 700, 701). The Bankruptcy Court plainly stated that where a "new debtor syndrome" and the unfair delay of creditors is present, it makes no sense to require objective futility. *Franklin,* 143 B.R. at 302.

Eleven years later, the Bankruptcy Court expounded upon the "good faith" test in *In re Allen*, 300 B.R. 105, 123 (Bankr. D.D.C. 2003) and held that the totality of the circumstances justified a finding of bad faith. Specifically, the court noted that even when courts use the "good faith" test in addressing cause for dismissal or lifting of the stay in a bankruptcy case, the test is met when, objectively, the debtor has abused the bankruptcy system. *Id.* As to the bad faith analysis, the *Carolin* test was not used by the Bankruptcy Court. Instead, it relied on *In re Lilley* and the "totality of the circumstances" test. *Id. quoting In re Lilley*, 91 F.3d 491 at 496 ("'…good faith is a term incapable of precise definition.' As a result, we believe that 'the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court.' We therefore join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances.").

Importantly, *Allen* explicitly declined to follow the dicta of *Carolin* (that a case may not be dismissed for lack of good faith if there is a realistic possibility of reorganization) for the

reasons articulated in *Ceder Shore Resort, Inc. v. Mueller*, 235 F.3d 375, 379-81 (8th Cir. 2000). *Allen*, 300 B.R. 105 at 124 *(citing Ceder Shore*) ("After considering the purposes and policies underlying the Bankruptcy Code, we decline to adopt the *Carolin* test and hold that a Chapter 11 petition may be dismissed for bad faith alone where the circumstances warrant."). In holding that possible reorganization cannot cure a petition filed in bad faith, *Allen* cites to cases across the Fourth, Eighth, and Eleventh Circuits. *Id.* at 124. *Allen* states that even if reorganization is possible, that cannot cure a petition that was filed in bad faith or that otherwise constitutes an abuse of the bankruptcy system. *Id. Allen* strayed even further from *Carolin*, plainly stating that the *Carolin* court failed to recognize that hopelessness of reorganization is but one subset of bad faith filings, further underscoring why this Court should not adopt the *Carolin* test. *Id.* at HN 26. *Allen* relied on the totality of the circumstances analysis and examined the circumstances surrounding the petition as opposed to the formulaic test articulated in *Carolin*. The *Allen* approach plainly aligns with the majority of circuits that are trending away from *Carolin*, as the Court will see in the circuit court summaries that follow.

4. <u>The First Circuit Test Assesses the Debtor's Financial Health and Need to Reorganize.</u>

The First Circuit primarily considers the debtor's degree of financial distress when determining whether a petition is filed in bad faith. In *In re Capitol Food Corp.*, 490 F.3d 21, 25-26 (1st Cir. 2007), the First Circuit noted that Congress intended to afford debtors a "breathing spell" from collection efforts, harassment, and foreclosure actions. *Id.* at 25-26. Since the filing of bankruptcy results in an automatic stay, this "time out" is designed to limit creditor's rights against the debtor to ultimately advance the prospects for successful reorganization. This "time-out" typically delimits a creditor's contractual rights against the debtor in order to advance the prospects for a successful reorganization. *Id.* at 26. In the First

Circuit, the good faith filing requirement centers around the debtor's *bona fide* need for breathing room to reorganize. *Id.*

5. <u>The Second Circuit Utilizes a Totality of the Circumstances Approach.</u>

Like the majority of circuits, the Second Circuit does not require a showing of objective futility of reorganization to mandate dismissal. The finding of subjective bad faith alone is sufficient. *See Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 567 (D. Conn. 2016) (finding the Eleventh Circuit's approach in *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) more persuasive than the Fourth Circuit's approach in *Carolin*). In *In Re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997), the Second Circuit noted the following factors used in analyzing subjective bad faith:

> (1) the debtor has only one asset; (2) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default; (3) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors; (4) the timing of the filing evidences an intent to delay or frustrate legitimate collection efforts; (5) the debtor has little or no cash flow; (6) the debtor cannot meet current expenses; (7) the debtor has no employees.

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (italic emphasis added) (citing to the *Pleasant Pointe* factors used in *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828 (W.D. Ky. 1992)).

6. <u>The Third Circuit Test Requires that Financial Distress Be Immediate Enough to Justify Filing.</u>

Similar to the First Circuit, the Third Circuit's analysis hinges on the purpose of the debtor's petition and financial health. According to *In re LTL Mgt., LLC*, two inquiries are particularly relevant: (1) whether the petition serves a valid bankruptcy purpose, and (2) whether a petition is filed merely to obtain a tactical litigation advantage. *In re LTL Mgmt., LLC*, 64 F.4th 84, 100-01 (3d Cir. 2023) (citing *Integrated Telecom*, 384 F.3d at 119-20). Valid

bankruptcy purposes include preserving a going concern or maximizing the value of the debtor's estate. *Id.* (citing *Integrated Telecom*, 384 F.3d at 128). The determination of bad faith is "a fact intensive determination better left to the discretion of a bankruptcy court." *See, e.g.*, *In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996); (applying a "totality of the circumstances" standard for determining bad faith under 11 U.S.C § 303).

The Third Circuit reinforced the enduring rule that a good-faith filing of a Chapter 11 petition requires financial distress on the part of the debtor. *See In re LTL Mgt., LLC*, 64 F.4th 84, 101 (3d Cir. 2023) (*quoting In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004)). The Third Circuit departed even further from the Fourth Circuit by making clear that good-faith filing of a Chapter 11 petition requires the debtor show that financial distress is not only readily apparent, but "immediate enough to justify filing." *Id.* at 102.

7. The Fifth Circuit Also Utilizes a Totality of the Circumstances Approach.

The Fifth Circuit also follows the majority of circuits and does not require a showing of objective futility of reorganization and subjective bad faith. The finding of subjective bad faith alone is sufficient to dismiss a petition for bad faith in the Fifth Circuit. In analyzing subjective bad faith, the Fifth Circuit balances eight factors, analogous to a totality approach. The *Franklin* decision quoted the eight bad faith factors from the Fifth Circuit's decision in *Little Creek Development,* so those factors will not be repeated here. *See* Part 3, supra. *Little Creek Development* not only noted the "clean hands" requirement for a debtor, but also noted "the bankruptcy court's responsibility to enforce a standard of good faith":

> A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest . . . These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization. . . .

*Little Creek Development*, 779 F.2d at 1072 (citing *American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940) (*quoting SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)).

8. The Sixth Circuit Also Utilizes a Totality of the Circumstances Approach.

The Sixth Circuit follows the majority trend and does not require a showing of objective futility and subjective bad faith. The Sixth Circuit has emphasized that "good faith is an amorphous notion, largely defined by factual inquiry." *In re Laguna Assocs. Ltd. P'shp.*, 30 F.3d at 738 (quoting *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988)). While no single factor is dispositive, the Sixth Circuit included the following eight factors in its analysis in *Laguna*:

> (1) the debtor has one asset, (2) the pre-petition conduct of the debtor has been improper, (3) there are only a few unsecured creditors, (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court, (5) (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford, (6) the filing of the petition effectively allows the debtor to evade court orders, (7) the debtor has no ongoing business or employees, and (8) the lack of possibility of reorganization.

*Id.* at 738. When evaluating these factors, the Sixth Circuit found that the debtor in *Laguna* filed its petition in bad faith. *Id.* The debtor was created at the eleventh hour, was not engaged in ongoing business, lacked sufficient cash flow, had few unsecured creditors, and claimed as its sole asset an encumbered property. *Id.*

9. The Seventh Circuit Also Utilizes the Totality of the Circumstances Test.

Like the Second, Fifth, and Sixth Circuits, the Seventh Circuit uses a totality of the circumstances test. According to the Seventh Circuit, good faith depends on the facts and circumstances presented. *See In re Loeb Apartments, Inc.*, 89 F.2d 461 at 463. Courts have found that bad faith may exist where the following factors are present:

> 1. The debtor has few or no unsecured creditors. 2. There has been a previous bankruptcy petition by the debtor or a related entity. 3. The pre-petition conduct of the debtor has been improper. 4. The petition effectively allows the debtor to evade court orders. 5. There are few debts to non-moving creditors. 6. The petition was filed on the eve of foreclosure. 7. The foreclosed property is the sole or major asset of the debtor.8. The debtor has no ongoing business or employees. 9. There is no possibility of reorganization. 10. The debtor's income is not sufficient to operate. 11. There was no pressure from non-moving creditors. 12. Reorganization essentially involves the resolution of a two-party dispute. 13. A corporate debtor was formed and received title to its major assets immediately before the petition and 14. The debtor filed solely to create the automatic stay.

*In re Grieshop,* 63 B.R. 657, 663 (N.D. Ind. 1986).

10. The Eighth Circuit Also Employs a Totality of the Circumstances Approach.

Like the Second, Fifth, Sixth, and Seventh Circuits, the Eighth Circuit follows the majority approach and uses a totality of the circumstances test. When asked to adopt the *Carolin* standard, the Eight Circuit wholly declined to do so. *See In re Cedar Shore Resort, Inc.*, 235 F.3d at 380. In *Cedar Shore*, the debtor argued that since it proposed a confirmable reorganization plan, the bankruptcy should not have dismissed its petition as a matter of law and thus requested that the circuit court adopt the test articulated in *Carolin*. *Id.* at 380. Importantly, *Cedar Shore* noted:

> Although many courts cite *Carolin* for its holding that the Code contains an implicit good faith requirement, few courts outside the Fourth Circuit have adopted its rule that a case should not be dismissed where there is a chance of reorganization. *But see In re Boynton*, 184 B.R. 580, 583 (Bankr. S.D. Cal. 1995). Instead, many courts have held that bad faith alone is sufficient to warrant dismissal, regardless of the possibility of reorganization. *See, e. g., Phoenix Piccadilly*, 849 F.2d at 1393-94; *In re ACI Sunbow, LLC*, 206 B.R. 213, 217-21 (Bankr. S.D. Cal. 1997). The leading commentator in this area has stated that the Carolin rule "embraces some significant difficulties" and "misperceives the purpose of the good faith standard." *See* L. King, 7 Collier of Bankruptcy, P1112.07[6][a-b] (Eleventh Circuit's reasoning in *Phoenix Piccadilly* that "a court need not suffer the continuance of a bad faith chapter 11 case even if the debtor has a remote chance of rehabilitation is persuasive"). Under this view, "the taint of a petition filed in bad faith must naturally

> extend to any subsequent reorganization proposal," and "the possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith." *Phoenix Piccadilly*, 849 F.2d at 1395 (citations omitted).

*Cedar Shore,* 235 F.3d at 380-81. The Eighth Circuit declined to adopt *Carolin* and recognized precisely what Appellants assert in the instant case – that any debtor who files bankruptcy in bad faith should not be rewarded with the protections of Chapter 11. *Id.* at 381. Debtors should instead act in conformity with the Bankruptcy Code's underlying principles of equity and fairness. *Id.*

11. The Ninth Circuit Analyzes Various Factors.

Similar to the Eleventh Circuit, the Ninth Circuit considers all the facts and circumstances surrounding the filing of a bankruptcy petition. Although there does not appear to be a specific list of factors analyzed, the Ninth Circuit considers any factors that evidence an intent to abuse the judicial process and the underlying purposes of the reorganization provisions of the Bankruptcy Code. *See In re Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013) (citing *In re Phoenix Piccadilly, Ltd.*), 849 F.2d 1393, 1394 (11th Cir. 1988)).

12. The Eleventh Circuit Uses an "Any Factors" Test.

In *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir. 1988), the Eleventh Circuit chose not to include a list of bad faith factors, noting instead that:

> There is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'

*Phoenix Picadilly,* 849 F.2d at 1394*, (citing In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.) at 674)).

13. <u>The Fourth Circuit is Suffering the Consequences of the *Carolin* Test.</u>

Not only have the majority of circuits deviated from the *Carolin* test, but *Carolin* itself has become a source of tension within the Fourth Circuit. *See Herlihy v. DBMP, LLC*, 167 F.4th 142, 168 (4th Cir. 2026) (King, J., dissenting) ("Third, the majority's effort to distort the reality of this case by way of our *Carolin* precedent and 11 U.S.C. § 524(g) is as circular as it is illogical. It makes no sense to conclude that the Debtor has been acting within the contours of a legitimate Chapter 11 bankruptcy — because it is seeking a 'reorganization' to establish a § 524(g) trust — without first addressing the 'bad faith' that already infects its Chapter 11 bankruptcy petition. Again, the majority overlooks the issue of 'bad faith' by burying its head in the sand and ruling that the Debtor's invocation of § 524(g) — a tool for debtors in Chapter 11, rather than an underlying purpose for pursuing bankruptcy — can save the day."); *see also Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, 148 F.4th 233, 247 (4th Cir. 2025) (King, J., dissenting) ("Bestwall entered bankruptcy not because it was financially distressed, but because its parent corporation, Georgia-Pacific, sought to evade tort liability for harm caused by decades of manufacturing and selling dangerous products containing asbestos. Through a corporate sleight-of-hand maneuver known as the 'Texas Two-Step,' Georgia-Pacific restructured itself to isolate its asbestos liabilities into a newly created entity, Bestwall LLC. It then used that shell entity to file for Chapter 11 bankruptcy.").

14. <u>Further Rejection of the *Carolin* Test.</u>

In 2024, members of Congress introduced bipartisan legislation, entitled Ending Corporate Bankruptcy Abuse Act (the "ECBA Act"), directly addressing the "Texas Two-Step" maneuver. *See* Ending Corporate Bankruptcy Abuse Act of 2024 (H. R. 9110). The ECBA Act proposes amending Section 1112(b) to include dismissal of petitions that are objectively futile or are filed in subjective bad bath. *Id.* The disjunctive language ("or") directly repudiates

*Carolin*'s disjunctive "and" requirement. The proposed legislation also includes presumptions against petitions if the court determines that a debtor manufactured the venue for the case. *Id.*

## THIS COURT SHOULD ADOPT THE TOTALITY APPROACH EMPLOYED BY THE MAJORITY OF CIRCUITS

Of the five circuits that have ruled on which test to employ when conducting a bad faith analysis, the Fourth Circuit is the only circuit that requires a showing of objective futility as a threshold prong. Because a solid majority of circuits have either rejected *Carolin* or trended away from it, this Court should determine that the totality of the circumstances approach should have been used. Outside the Fourth Circuit, courts have increasingly rejected the formulaic approach in *Carolin* and instead focus on various factors to determine whether a debtor is attempting to achieve a legitimate objective or instead using bankruptcy for corporate maneuvering. *See Cedar Shore*, 235 F.3d at 380-81 (8th Cir. 2000) ("Although many courts cite *Carolin* for its holding that the Code contains an implicit good faith requirement, few courts outside the Fourth Circuit have adopted its rule that a case should not be dismissed where there is a chance of reorganization [citations omitted]. Instead, many courts have held that bad faith alone is sufficient to warrant dismissal, regardless of the possibility of reorganization [citations omitted].").

As other courts have recognized, the *Carolin* test does not account for the intent of a plan filed in bad faith. Contrary to the Appellees' assertion that intent is irrelevant and intent does not change the bad faith analysis[6], it is imperative that a bankruptcy court look beyond the four

[6] *See* July 30, 2025 Tr. at p. 24, lines 1-21 ("You can assume for today's purposes that an attorney advised entities to put certain assets into a special purpose entity with cognizance that it would soon thereafter seek to reorganize in bankruptcy…You can assume for today's purposes that that was done because for whatever reason those entities thought that anything that may infect those assets was better adjudicated by a court with expertise in the matter of the secured

corners of the petition when analyzing whether the petition should be dismissed as a bad faith filing. Whether a Chapter 11 case was filed in bad faith generally cannot be determined by any direct evidence of motive, but can be inferred from the "surrounding circumstances". *Franklin*, 143 B.R. at 299. Under the Bankruptcy Court's interpretation of *Carolin*, the "surrounding circumstances" are irrelevant so long as a reorganization is plausible. *See* Mem. Op. on Motion to Dismiss (Bankr. ECF # 92). Under this interpretation, virtually any facially complete plan could survive a bad faith motion to dismiss. This analysis turns the good faith standard on its head. The evaluation of a debtor's motive in filing its petition is central to the determination of good faith. *Id.* The good faith standard applied to bankruptcy petitions should "further[s] the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *See In re C-TC 9th Ave. Pshp.*, 113 F.3d 1304, 1310 (2d Cir. 1997) (*quoting In re Little Creek Dev. Co*., 779 F.2d 1068, 1071 (5th Cir. 1986)).

Additionally, the good faith doctrine is a safeguard against abuse and misuse of process. *See Franklin Mortg.*, 143 B.R. at 299. This is consistent with the longstanding principle that parties cannot manufacture federal jurisdiction over civil actions – a principle that is codified in federal law. Under 28 U.S.C. § 1359, federal courts do not have jurisdiction over civil actions "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359 (italic emphasis added). In *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823 (1969), the U.S. Supreme Court outlined the history and purpose of this statute prohibiting collusion to create federal jurisdiction. In *Kramer,*

---

debtor/creditor relationship…You can assume that I had an evil grin on my face when I gave the advice, if that helps in any way, shape or form, but it doesn't change the analysis.").

a contract between a Haitian company and a Panamanian company was assigned to a Texas attorney to create federal jurisdiction. The *Kramer* court noted that:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such "manufacture of Federal jurisdiction" was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Kramer,* 394 U.S. at 828-829 (italic emphasis added); *see also U.S.I. Props. Corp. v. M.D. Constr. Co.,* 860 F.2d 1, 6 (1st Cir. 1988) ("[P]arties may legitimately try to obtain the jurisdiction of federal courts, as long as they lawfully qualify under some of the grounds that allow access to this forum of limited jurisdiction. On the other hand, using a strawman, *or sham transactions, solely for the creation of otherwise unobtainable jurisdiction, is clearly forbidden* both by statute and by the policies that underlie diversity jurisdiction.") (italic emphasis added).

## THE *CAROLIN* TEST IS INCONSISTENT WITH THE GOOD FAITH REQUIREMENT

Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith. *See Little Creek*, 779 F.2d at 1071. The circumstances surrounding the filing of a Chapter 11 petition ultimately informs us as to its purpose. A standard under which proven bad faith is excused so long as reorganization is conceivable does not protect the integrity of the system and will only attract abusive filers moving forward. Collusive conduct to manufacture federal jurisdiction, forum shopping, and delaying pending litigation should not be condoned, but rather should be condemned. *Id.*; *see also In re Silberkraus*, 253 B.R. 890, 905 (C.D. Cal. Bankr. Ct. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, *forum shop,* or obtain a tactical advantage regarding litigation ongoing in a nonbankruptcy forum – whether that nonbankruptcy forum is a state court or a

federal district court.") (italic emphasis added); *In re Meltzer*, 516 B.R. 504, 516 (Bankr. N.D. Ill. 2014) ("The filing of an involuntary case shortly before a hearing in related litigation strongly suggests the case was filed only to stall the hearing."). The underlying purpose of Chapter 11 is to rehabilitate the debtor and offer a fresh start. JPK NewCo is not a legitimate debtor with a business that needs a fresh start -- it is an alter ego of the Lender Defendants that was created to try to prevent the Borrowers' claims from being decided in D.C. Superior Court.

There is also no legitimate bankruptcy purpose here, and JPK NewCo has no legitimate business operations to reorganize. The WCP Fund, the WCP, and Mr. Huertas transferred loan documents for no consideration with the understanding that JPK NewCo would first use those transfers to as a basis for dismissal, then later file for bankruptcy at some point when it suited their objectives. The collusion to manufacture federal jurisdiction was orchestrated to frustrate the Borrowers' from pursuing their claims in D.C. Superior Court. To give the protections and benefits of Chapter 11 -- especially the benefits of subchapter V -- to JPK NewCo under these circumstances would be an abuse of the purposes of the Bankruptcy Code.

## THE BANKRUPTCY COURT MISAPPLIED THE *CAROLIN* TEST

Even if this Court determines that the Fourth Circuit test is the appropriate standard, the Bankruptcy Court misapplied the objective futility prong of the *Carolin* test. According to *Carolin*, objective futility is "designed to insure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled debtor," concentrating on whether "there is no going concern to preserve and no hope of rehabilitation." *See Carolin* at 701. The standard for finding objective futility is no "realistic possibility" of reorganization. *In re 1210-1216 Mass. Ave.,* at *21.

Objective futility is not a facial review of whether plan documents exist or satisfy statutory formatting requirements. Instead, it requires looking beyond the plan's four corners to assess whether the petition substantively serves chapter 11's rehabilitative purpose. *See In re Rudd,* 1995 U.S. Dist. LEXIS 7855 at *13 (citing *Franklin Mortgage*, 143 Bankr. at 302 (objective futility inquiry involves a feasibility analysis)). Here, the Bankruptcy Court misstated the standard and conflated compliance with the statutory formatting requirements with realistic reorganization. *See* Mem. Op. on Motion to Dismiss (Bankr. ECF # 92) ("Without making any specific findings, the Court notes that the Plan is not patently unconfirmable on its face as it contains (i) the history of the Debtor, (ii) a liquidation analysis, and (iii) projections, as required by § 1190.").

A facial-document-completeness test is not what *Carolin* requires. Objective futility must be determined based on a review of the underlying facts and circumstances applicable to that particular debtor. *In re 1210-1216 Mass. Ave.*, 1992 U.S. Dist. LEXIS 8912, at *23. Here, it is clear that JPK NewCo's plan is objectively futile. JPK NewCo was formed as a litigation vehicle, not a business. The entity has no employees, operations, or revenue, none of which was considered by the Bankruptcy Court. The plan, as the Bankruptcy Court noted, is entirely contingent on litigating against the Appellants, and the only meaningful funding source are the Notes at issue in the Superior Court litigation filed by the Appellants. Importantly, JPK NewCo <u>does not</u> contemplate reorganization. Its plan proposes only to prosecute litigation and distribute proceeds, which is indistinguishable from a Chapter 7 liquidation (as the plan itself acknowledges). There is only $55,172.43 in undisputed claims which could arguably be satisfied outside of bankruptcy. Plainly, recovery depends on defeating Appellants. The plan's sole

viability turns on disputed binary litigation and does not establish a "realistic possibility" of reorganization.[7]

Rule 9014(c) makes the discovery provisions of the Federal Rules of Civil Procedure presumptively applicable in contested matters, and Rule 9014(d) requires an evidentiary hearing whenever there are disputed issues of material fact. Here, the Bankruptcy Court's reasoning was inherently circular. It denied discovery into the JPK NewCo's subjective intent on the ground that it never reached the subjective component of the bad-faith inquiry, yet it reached that conclusion only because it applied an erroneously restrictive standard in evaluating objective futility. As a result, Appellants were precluded from obtaining evidence directly relevant to the Debtor's purpose in filing the petition. *See Franklin*, 143 B.R. at 299 ("[w]hether a case was filed in bad faith generally cannot be determined by direct evidence, but it may be inferred from surrounding circumstances".).

THE DECISION BELOW, IF UPHELD, WOULD SET A DANGEROUS PRECEDENT

If forming a company that exists only on paper is allowed as a permissible means of seeking bankruptcy protection and obtaining federal jurisdiction, creditors can avoid state court proceedings whenever they want to by creating a sham company to manufacture federal jurisdiction. The bad faith filing of a bankruptcy petition should be condemned, not incentivized, especially when dealing with a court of equity -- just like any other bad faith filing (of any kind) with a court can and should be punished. *See e.g.,* Fed. R. Civ. Proc. 11 (allowing punishment for bad faith filings); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 259 (1975) (allowing attorney fee-shifting when the successful party's opponent

[7] One need not look further than JPK NewCo's Monthly Operating Reports to see that is has conducted no business since *JPK NewCo II* was filed. *See* ECF ## 26, 27, 46, 68, 87-89, 90. in *JPK NewCo II.*

has acted in bad faith and recognizing the bad faith exception as an "assertion of inherent power in the courts").

## RELIEF REQUESTED

This Court should hold that the Bankruptcy Court must consider factors that evidence an intent to abuse the judicial process and the purposes of reorganization. *See Phoenix Picadilly,* 849 F.2d at 1394. Appellants propose that this Court adopt the factors outlined by the Fifth Circuit in *Little Creek Development* that have been routinely relied upon by other courts. In reality, there is very little difference among the circuits in the actual criteria applied or in the weight given to any particular factor. *See Franklin* at 143 B.R. at 299. While the Court may use the *Little Creek* factors as a guide, the Court should ultimately look to the totality of all the facts and circumstances in determining whether a petition was filed in bad faith. *See id.* at 299 (*citing Carolin*).

A totality of the circumstances analysis is crucial to a bad faith determination. In this case, it is particularly important to analyze what occurred pre-petition. *Id.* at 300 ("An important circumstance involved here is DeMarco's transfer of the real property to the debtor prior to the debtor's bankruptcy filing."). It is evident here that the Lender Defendants colluded in order to channel ordinary contract and tort litigation into a federal court. Prior to filing bankruptcy, these parties strategically arranged for some of the Appellants' loan documents, by assignment, to be transferred to JPK NewCo during the course of pending state court litigation solely for the purpose of creating federal jurisdiction. As the trial date in the Consolidated Cases approached, JPK NewCo conveniently became "insolvent" of for the express purposes of improperly invoking federal jurisdiction for tactical reasons – to avoid litigating purely state law claims in

the D.C. Superior Court. Under the Bankruptcy Court's misapplication of the *Carolin* test, those actions are irrelevant since JPK NewCo's plan complies with the basic statutory requirements.

The bad faith factors help illustrate that JPK NewCo was created, from its inception, with the understanding that there would eventually be a bankruptcy filing, whether voluntary or involuntary. Here, JPK NewCo's only creditor made a "loan" to JPK NewCo one month prior to the filing of *JPK NewCo I*. A bankruptcy filing by JPK NewCo was inevitable as the company existed only on paper and had no revenue and no business operations at the time the "loan" was made to it. In fact, the purported "business operations" of JPK NewCo appear to also have been manufactured. Part of the "loan" to Mr. Sariri was used to fund a loan by JPK NewCo to Energy Morocco. This loan appears to have been made in an veiled effort by JPK NewCo to give the appearance of having some business operations since it has no business operations, no expenses, no cash flow, and no employees. JPK NewCo then consented to the an involuntary filing on August 6, 2024. This "friendly" involuntary filing was conveniently manufactured so the Lender Defendants could have an additional basis to argue that there was federal jurisdiction over the claims in the Consolidated Cases. Then, Special Counsel for JPK NewCo even conceded that bankruptcy for JPK NewCo was contemplated in the arguments he made before the Bankruptcy Court.

## CONCLUSION

JPK NewCo was formed, and was involved in two bankruptcy cases, for improper, bad faith purposes. The Bankruptcy Court erred by confining its bad faith analysis to the four corners of the petition and the proposed plan and adopting the *Carolin* test, which is a minority approach. Most circuits use a totality of the circumstances analysis in determining bad faith. For these reasons, and for any reasons that may be advanced at any hearing to be set on this appeal,

the Appellants' respectfully request that the Court: (a) find that the Bankruptcy Court erred by using the *Carolin* test instead of using a totality of the circumstances analysis in determining whether JPK NewCo's petition should have been dismissed for bad faith; (b) remand the case with instructions that the Bankruptcy Court must: (i) evaluate JPK NewCo's good faith under a totality-of-the-circumstances analysis, considering all relevant pre-petition and post-petition facts and circumstances bearing on JPK NewCo's purpose in filing for bankruptcy, and (ii) not limit its review to the allegations contained within the petition or by applying the restrictive *Carolin* test; and (c) instruct the Bankruptcy Court that a finding of subjective bad faith, standing alone, is sufficient to dismiss a bankruptcy petition for bad faith. Alternatively the Court could find that the Bankruptcy Court misapplied the *Carolin* test.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 30, 2026

/s/ Alexandria J. Smith

James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 452-1400 ext. 5407
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

## CERTIFICATE OF COMPLIANCE WITH RULE 8014

This document complies with FBRP 8014 because this brief contains no more than 13,000 words, not including the parts of the document exempted by FBRP 8015.

This document complies with the typeface requirements of FBRP 8015 and the type style requirements of FBRP 8015 because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, Font size 12.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 30, 2026

/s/ Alexandria J. Smith

James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 452-1400 ext. 5407
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of July, 2026, a true copy of Appellants Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Brief In Support of Interlocutory Appeal was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ Alexandria J. Smith
Alexandria J. Smith