UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Bankruptcy Case No.: 25-00200-ELG<br>Chapter 11 |
| Developer RE1, LLC and 423 Kennedy St Holdings, LLC.<br><br>*Appellants.* | Civil Action No.: 25-3250 (SLS)<br>Judge Sparkle L. Sooknanan |

# JOINT APPENDIX

Table of Contents


| Item No. | Date | ECF No. | Document Description | Appendix Page Nos. |
|---|---|---|---|---|
| | | | | |
| 1 | 5/27/2025 | 1 | Voluntary Petition filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 001-045 |
| 2 | 5/27/2025 | 5 | Statement Regarding No Federal Tax Returns filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 046 |
| 3 | 6/3/2025 | 16 | Corporate Ownership Statement filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 047-048 |
| 4 | 6/23/2025 | 19 | Motion to Dismiss Case Filed in Bad Faith filed by James D. Sadowski of Greenstein DeLorme & Luchs, P.C. on behalf of 423 Kennedy St Holdings LLC and Developer RE1 | 049-087 |
| 5 | 7/15/2025 | 26 | Monthly Operating Report for May 2025 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 088-098 |
| 6 | 7/23/2025 | 27 | Monthly Operating Report for June 2025 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 099-108 |
| 7 | 7/23/2025 | 29 | Opposition to Motion to Dismiss Case Filed in Bad Faith filed by Maurice VerStandig on behalf of WCP Fund I LLC | 109-138 |

| | | | | |
|---|---|---|---|---|
| 8 | 7/24/2025 | 30 | Opposition to Motion to Dismiss Case Filed in Bad Faith filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 139-140 |
| 9 | 7/28/2025 | 31 | Chapter 11 Small Business Subchapter V Plan filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 141-176 |
| 10 | 7/31/2025 | 37 | Notice of Filing of Transcript from the Meeting of Creditors filed by James D. Sadowski of Greenstein DeLorme & Luchs, P.C. on behalf of 423 Kennedy St Holdings LLC and Developer RE1 | 177-178; [179-220] |
| 11 | 7/31/2025 | 40 | PDF with Audio File Re: Hearing Held on 7/30/2025 for Motion to Dismiss | 221 |
| 12 | 7/31/2025 | 41 | PDF with Audio File Re: Hearing Held on 7/31/2025 for Motion to Dismiss | 222 |
| 13 | 8/19/2025 | 46 | Monthly Operating Report for July 2025 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 223-233 |
| 14 | 9/2/2025 | 59 | Order Denying Motion to Dismiss Case | 234 |
| 15 | 9/16/2025 | 63 | Notice of Appeal to District Court filed by Alexandria J. Smith of Greenstein DeLorme & Luchs, P.C. on behalf of 423 Kennedy St Holdings LLC and Developer RE1 | 235-236 |
| 16 | 9/16/2025 | 65 | Motion for Leave to Appeal filed by Alexandria J. Smith of Greenstein DeLorme & Luchs, P.C. on behalf of 423 Kennedy St Holdings LLC and Developer RE1 | 237-252 |
| 17 | 9/17/2025 | 66 | Transmittal of the Notice of Appeal to District Court via email notification filed on behalf of 423 Kennedy St Holdings LLC and Developer RE1 | 253-254 |
| 18 | 9/22/2025 | 68 | Monthly Operating Report for August 2025 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 255-266 |
| 19 | 10/14/2025 | 71 | Movants' Motion to Compel – Movants' Motion to Compel Discovery Responses filed by Jeremy Williams of Kutak Rock LLP on behalf of 423 Kennedy St Holdings LLC | 267-272 |
| 20 | 2/20/2026 | 87 | Monthly Operating Report for January 2026 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 273-284 |
| 21 | 3/18/2026 | 88 | Monthly Operating Report for February 2026 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 285-294 |
| 22 | 4/21/2026 | 89 | Monthly Operating Report for March 2026 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 295-303 |

| | | | | |
|---|---|---|---|---|
| 23 | 5/20/2026 | 90 | Monthly Operating Report for April 2026 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 304-312 |
| 25 | 6/12/2026 | 92 | Memorandum Opinion on Motion to Dismiss | 313-324 |
| 24 | 6/22/2026 | 95 | Monthly Operating Report for May2026 filed by Jeffrey Orenstein of Wolff & Orenstein LLC on behalf of JPK NewCo, LLC | 325-333 |
| 26 | 7/16/2026 | 99 | Transcript Order Submitted Re: Hearing Held on 7/30/2025 and 7/31/2025 for Motion to Dismiss [Transcript purchased by Alexandria J. Smith of Greenstein DeLorme & Luchs, P.C. on behalf of 423 Kennedy St Holdings LLC and Developer RE1]. Transcript will be filed with the Court upon receipt of the same. | 334-337 |
| | 7/30/2025 | | Transcript from 7/30/25 Status Hearing and Hearing on Motion to Dismiss filed by 423 Kennedy St. Holdings LLC and Developer RE1 LLC before Honorable Elizabeth J. Gunn | [338-369] |
| | 7/31/2025 | | Transcript – from 7/31/25 Hearing on Motion to Dismiss before Honorable Elizabeth L. Gunn | [370-442] |

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: August 17, 2026

/s/ Jams D. Sadowski

James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone: (202) 452-1400 ext. 5407
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of August, 2026, a true copy of the Joint Appendix was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of Columbia

Case number (*If known*): ______________________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

**1. Debtor's name**

JPK NewCo, LLC

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

______________________

**3. Debtor's federal Employer Identification Number** (EIN)

99-1758059

**4. Debtor's address**

**Principal place of business**

8401 Greensboro Drive
Number Street

Suite 960

McLean VA 22102
City State ZIP Code

Fairfax County
County

**Mailing address, if different from principal place of business**

______________________
Number Street

______________________
P.O. Box

______________________
City State ZIP Code

**Location of principal assets, if different from principal place of business**

______________________
Number Street

______________________

______________________
City State ZIP Code

**5. Debtor's website** (URL)

______________________

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: ______________________

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☑ None of the above

B. *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

2291

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11. *Check **all** that apply*:
  - ☑ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
  - ☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

- ☐ No
- ☑ Yes. District District of Columbia When 06/23/2024 (MM / DD / YYYY) Case number 24-00262-ELG

District ______ When ______ (MM / DD / YYYY) Case number ______

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

- ☑ No
- ☐ Yes. Debtor ______ Relationship ______

District ______ When ______ (MM / DD / YYYY)

Case number, if known ______

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? ____________________

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other ____________________

**Where is the property?** ____________________
Number Street

____________________

City State ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency ____________________

Contact name ____________________

Phone ____________________

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☑ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☑ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 05/27/2025
MM / DD / YYYY

✘ /s/ Daniel Huertas
Signature of authorized representative of debtor

Daniel Huertas
Printed name

Title Manager

**18. Signature of attorney**

✘ /s/ Jeffrey M. Orenstein
Signature of attorney for debtor

Date 05/27/2025
MM / DD / YYYY

Jeffrey M. Orenstein
Printed name

Wolff & Orenstein LLC
Firm name

15245 Shady Grove Road Suite 465 - North
Number Street

Rockville
City

MD
State

20850-4231
ZIP Code

3012507232
Contact phone

jorenstein@wolawgroup.com
Email address

448325
Bar number

DC
State

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia (State)

Case number (If known): ______________________

☐ Check if this is an amended filing

# Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

## Part 1: Summary of Assets

1. ***Schedule A/B: Assets–Real and Personal Property*** (Official Form 206A/B)

| | |
|---|---|
| 1a. **Real property:** Copy line 88 from *Schedule A/B* | $ 0.00 |
| 1b. **Total personal property:** Copy line 91A from *Schedule A/B* | $ 3,111,937.52 |
| 1c. **Total of all property:** Copy line 92 from *Schedule A/B* | $ 3,111,937.52 |

## Part 2: Summary of Liabilities

| | |
|---|---|
| 2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D) Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D* | $ 0.00 |
| 3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F) | |
| 3a. **Total claim amounts of priority unsecured claims:** Copy the total claims from Part 1 from line 6a of *Schedule E/F* | $ 0.00 |
| 3b. **Total amount of claims of nonpriority amount of unsecured claims:** Copy the total of the amount of claims from Part 2 from line 6b of *Schedule E/F* | +$ 55,172.43 |
| 4. **Total liabilities** Lines 2 + 3a + 3b | $ 55,172.43 |

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ______________________

☐ Check if this is an amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

| | **Name of creditor and complete mailing address, including zip code** | **Name, telephone number, and email address of creditor contact** | **Nature of the claim** (for example, trade debts, bank loans, professional services, and government contracts) | **Indicate if claim is contingent, unliquidated, or disputed** | **Amount of unsecured claim** If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 1 | Shaheen Sariri<br>Hirfschler Fleicher, PC<br>1676 International Drive, Suite 1350<br>McLean, VA, 22101 | | | | | | 55,172.43 |
| 2 | Developer RE1 LLC<br>Greenstein Delorme & Luchs, PC<br>801 17th Street, NW, Suite 1000<br>Washington, DC, 20006 | | | Disputed<br>Unliquidated<br>Contingent | | | 0.00 |
| 3 | 423 Kennedy St Holdings, LLC<br>1629 K Street NW<br>Suite 300<br>Washington, DC, 20006 | | | Disputed<br>Unliquidated<br>Contingent | | | 0.00 |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ______________________

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

**12/15**

**Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.**

**For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.**

## Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| **All cash or cash equivalents owned or controlled by the debtor** | **Current value of debtor's interest** |
|---|---|
| 2. **Cash on hand** | $ 0.00 |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | United Bank | Checking | 8 7 0 0 | $ 935.00 |
| 3.2. | | | | $ |

4. **Other cash equivalents** *(Identify all)*

| | | |
|---|---|---|
| 4.1. | | $ |
| 4.2. | | $ |

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. **$ 935.00**

## Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

**Current value of debtor's interest**

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | | $ |
| 7.2. | | $ |

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1.______ $______
8.2.______ $______

9. **Total of Part 2.**
Add lines 7 through 8. Copy the total to line 81. $______

**Part 3: Accounts receivable**

10. **Does the debtor have any accounts receivable?**
☑ No. Go to Part 4.
☐ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts receivable**

11a. 90 days old or less: ______ (face amount) – ______ (doubtful or uncollectible accounts) = ........➔ $______

11b. Over 90 days old: ______ (face amount) – ______ (doubtful or uncollectible accounts) = ........➔ $______

12. **Total of Part 3**
Current value on lines 11a + 11b = line 12. Copy the total to line 82. $______

**Part 4: Investments**

13. **Does the debtor own any investments?**
☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|
| 14. **Mutual funds or publicly traded stocks not included in Part 1** | | |
| Name of fund or stock: | | |
| 14.1. | | $ |
| 14.2. | | $ |
| 15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** | | |
| Name of entity: / % of ownership: | | |
| 15.1. ______ ____% | | $ |
| 15.2. ______ ____% | | $ |
| 16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1** | | |
| Describe: | | |
| 16.1. | | $ |
| 16.2. | | $ |

17. **Total of Part 4**
Add lines 14 through 16. Copy the total to line 83. $______

**Part 5:** **Inventory, excluding agriculture assets**

18. **Does the debtor own any inventory (excluding agriculture assets)?**
- ☑ No. Go to Part 6.
- ☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| ______________ | MM / DD / YYYY | $______ | ______ | $______ |
| 20. **Work in progress** | | | | |
| ______________ | MM / DD / YYYY | $______ | ______ | $______ |
| 21. **Finished goods, including goods held for resale** | | | | |
| ______________ | MM / DD / YYYY | $______ | ______ | $______ |
| 22. **Other inventory or supplies** | | | | |
| ______________ | MM / DD / YYYY | $______ | ______ | $______ |

23. **Total of Part 5**
Add lines 19 through 22. Copy the total to line 84. $______

24. **Is any of the property listed in Part 5 perishable?**
- ☐ No
- ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
- ☐ No
- ☐ Yes. Book value ______ Valuation method______ Current value______

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

**Part 6:** **Farming and fishing-related assets (other than titled motor vehicles and land)**

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**
- ☑ No. Go to Part 7.
- ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| ______________ | $______ | ______ | $______ |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| ______________ | $______ | ______ | $______ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| ______________ | $______ | ______ | $______ |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| ______________ | $______ | ______ | $______ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |
| ______________ | $______ | ______ | $______ |

33. **Total of Part 6.**
Add lines 28 through 32. Copy the total to line 85. $__________

34. **Is the debtor a member of an agricultural cooperative?**

- ❑ No
- ❑ Yes. Is any of the debtor's property stored at the cooperative?
  - ❑ No
  - ❑ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

- ❑ No
- ❑ Yes. Book value $________ Valuation method ________ Current value $________

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

- ❑ No
- ❑ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

- ❑ No
- ❑ Yes

## Part 7: Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

- ☑ No. Go to Part 8.
- ❑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | $______ | ______ | $______ |
| 40. **Office fixtures** | $______ | ______ | $______ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | $______ | ______ | $______ |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1__________ | $______ | ______ | $______ |
| 42.2__________ | $______ | ______ | $______ |
| 42.3__________ | $______ | ______ | $______ |

43. **Total of Part 7.**
Add lines 39 through 42. Copy the total to line 86. $__________

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

- ❑ No
- ❑ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

- ❑ No
- ❑ Yes

## Part 8: Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

- [x] No. Go to Part 9.
- [ ] Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 | $ | | $ |
| 47.2 | $ | | $ |
| 47.3 | $ | | $ |
| 47.4 | $ | | $ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 | $ | | $ |
| 48.2 | $ | | $ |
| **49. Aircraft and accessories** | | | |
| 49.1 | $ | | $ |
| 49.2 | $ | | $ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| | $ | | $ |

51. **Total of Part 8.**
Add lines 47 through 50. Copy the total to line 87. $

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

- [ ] No
- [ ] Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

- [ ] No
- [ ] Yes

Debtor JPK NewCo, LLC Case number (if known)______________________
Name

## Part 9: Real property

54. **Does the debtor own or lease any real property?**
- ☑ No. Go to Part 10.
- ☐ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| **Description and location of property** Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | **Nature and extent of debtor's interest in property** | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|---|
| 55.1 | | $______ | ______ | $______ |
| 55.2 | | $______ | ______ | $______ |
| 55.3 | | $______ | ______ | $______ |

56. **Total of Part 9.**
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. $______

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
- ☐ No
- ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

## Part 10: Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**
- ☑ No. Go to Part 11.
- ☐ Yes. Fill in the information below.

| **General description** | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** ______ | $______ | ______ | $______ |
| 61. **Internet domain names and websites** ______ | $______ | ______ | $______ |
| 62. **Licenses, franchises, and royalties** ______ | $______ | ______ | $______ |
| 63. **Customer lists, mailing lists, or other compilations** ______ | $______ | ______ | $______ |
| 64. **Other intangibles, or intellectual property** ______ | $______ | ______ | $______ |
| 65. **Goodwill** ______ | $______ | ______ | $______ |

66. **Total of Part 10.**
Add lines 60 through 65. Copy the total to line 89. $______

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**
- ☐ No
- ☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☐ No
- ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

## Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.
- ☐ No. Go to Part 12.
- ☑ Yes. Fill in the information below.

| | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 71. **Notes receivable** Description (include name of obligor) | | | | |
| See continuation sheet | 3,111,002.52 Total face amount | – | 0.00 doubtful or uncollectible amount = → | $ 3,111,002.52 |

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

| | | |
|---|---|---|
| | Tax year | $ |
| | Tax year | $ |
| | Tax year | $ |

73. **Interests in insurance policies or annuities** $

74. **Causes of action against third parties (whether or not a lawsuit has been filed)** $

**Nature of claim**

**Amount requested** $

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** $

**Nature of claim**

**Amount requested** $

76. **Trusts, equitable or future interests in property** $

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership
$
$

78. **Total of Part 11.** $ 3,111,002.52
Add lines 71 through 77. Copy the total to line 90.

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

Debtor JPK NewCo, LLC Case number (if known)

Name

**Part 12: Summary**

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | | Current value of real property |
|---|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $935.00 | | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | | |
| 88. **Real property.** *Copy line 56, Part 9.* ➔ | | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $3,111,002.52 | | |
| 91. **Total.** Add lines 80 through 90 for each column. 91a. | $3,111,937.52 | + 91b. | $0.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. 3,111,937.52 ........ $3,111,937.52

## Continuation Sheet for Official Form 206 A/B

**71) Notes receivable**

| General description | Total face amount | Doubtful or uncollectible amount | Current value |
|---|---|---|---|
| Junior Lien on 419-423 Kennedy St NW, Washington, DC | 2,169,087.98 | 0.00 | 2,169,087.98 |
| Junior Lien on 55501 1st St NW, Washington DC | 911,426.88 | 0.00 | 911,426.88 |
| Energy Morocco LLC | 30,487.66 | 0.00 | 30,487.66 |

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ____________

☐ Check if this is an amended filing

# Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible.**

1. **Do any creditors have claims secured by debtor's property?**
   ■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

**Part 1: List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

*Column A* **Amount of claim** Do not deduct the value of collateral.

*Column B* **Value of collateral that supports this claim**

**2.1 Creditor's name** ____________

**Creditor's mailing address** ____________

**Creditor's email address, if known** ____________

**Date debt was incurred** ____________

**Last 4 digits of account number** ____________

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Specify each creditor, including this creditor,

**Describe debtor's property that is subject to a lien**

**Describe the lien** ____________

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

$____________ $____________

**2.2 Creditor's name** ____________

**Creditor's mailing address** ____________

**Creditor's email address, if known** ____________

**Date debt was incurred** ____________

**Last 4 digits of account number** ____________

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
  ☐ No. Specify each creditor, including this creditor, and its relative priority.
  ☐ Yes. The relative priority of creditors is specified on lines _____

**Describe debtor's property that is subject to a lien**

**Describe the lien** ____________

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

$____________ $____________

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.** $____________

**Fill in this information to identify the case:**

Debtor: JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ____________

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B*)* and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.**

## Part 1: List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   - ☑ No. Go to Part 2.
   - ☐ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** **Priority creditor's name and mailing address**<br><br>**Date or dates debt was incurred** ____________<br><br>**Last 4 digits of account number** ____________<br><br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____) | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim:**<br><br>**Is the claim subject to offset?**<br>☐ No<br>☐ Yes | $____________ | $____________ |
| **2.2** **Priority creditor's name and mailing address**<br><br>**Date or dates debt was incurred** ____________<br><br>**Last 4 digits of account number** ____________<br><br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____) | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim:**<br><br>**Is the claim subject to offset?**<br>☐ No<br>☐ Yes | $____________ | $____________ |
| **2.3** **Priority creditor's name and mailing address**<br><br>**Date or dates debt was incurred** ____________<br><br>**Last 4 digits of account number** ____________<br><br>**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____) | **As of the petition filing date, the claim is:** *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim:**<br><br>**Is the claim subject to offset?**<br>☐ No<br>☐ Yes | $____________ | $____________ |

**Part 2: List All Creditors with NONPRIORITY Unsecured Claims**

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

**Amount of claim**

**3.1 Nonpriority creditor's name and mailing address**
423 Kennedy St Holdings, LLC
1629 K Street NW
Suite 300
Washington, DC 20006

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**

$ Unknown

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**3.2 Nonpriority creditor's name and mailing address**
Developer RE1 LLC
Greenstein Delorme & Luchs, PC
801 17th Street, NW, Suite 1000
Washington, DC 20006

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

**Basis for the claim:**

$ Unknown

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**3.3 Nonpriority creditor's name and mailing address**
Shaheen Sariri
Hirfschler Fleicher, PC
1676 International Drive, Suite 1350
McLean, VA 22101

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:**

$ 55,172.43

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**3.4 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:**

$ ____

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

**3.5 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:**

$ ____

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

**3.6 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:** *Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Basis for the claim:**

$ ____

**Date or dates debt was incurred** ____
**Last 4 digits of account number** ____

**Is the claim subject to offset?**
- ☐ No
- ☐ Yes

## Part 3: List Others to Be Notified About Unsecured Claims

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| | Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1. | 423 Kennedy St Holdings LLC, c/o Mel Negussie, Resident Agent<br>1629 K Street NW<br>Suite 300<br>Washington, DC, 20006 | Line 3.1<br>❑ Not listed. Explain: | |
| 4.2. | Charles Paxton Paret<br>343 First Street<br>Berryville, VA, 22611 | Line 3.1<br>❑Not listed. Explain | |
| 4.3. | Developer RE1 LLC c/o Mel Negussie, Resident Agent<br>1629 K Street NW<br>Suite 300<br>Washington, DC, 20006 | Line 3.2<br>❑Not listed. Explain | |
| 4.4. | Greenstein Delorme & Luchs, P.C. attn: James D. Sadowski, Esq.<br>801 17th Street N.W.<br>Suite 1000<br>Washington, DC, 20006 | Line 3.1<br>❑Not listed. Explain | |
| 41. | Hirschler Fleischer attn: Kristen E. Burgers, Esq.<br>1676 International Drive<br>Suite 1350<br>McLean, VA, 22102 | Line 3.3<br>❑Not listed. Explain | |
| 4.5. | Wendell W. Webster, Trustee<br>1101 Connecticut Ave., NW<br>Suite 402<br>Washington, DC, 20036 | Line 3.1<br>❑Not listed. Explain | |
| 4.6. | | Line ____<br>❑Not listed. Explain | |
| 4.7. | | Line ____<br>❑Not listed. Explain | |
| 4.8. | | Line ____<br>❑Not listed. Explain | |
| 4.9. | | Line ____<br>❑Not listed. Explain | |
| 4.10. | | Line ____<br>❑Not listed. Explain | |
| 4.11. | | Line ____<br>❑Not listed. Explain | |

Debtor JPK NewCo, LLC
Name
Case number (*if known*)

## Part 4: Total Amounts of the Priority and Nonpriority Unsecured Claims

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | | $ 0.00 |
| 5b. **Total claims from Part 2** | 5b. | + | $ 55,172.43 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | | $ 55,172.43 |

Case 25-03250-SLS Document 20 Filed 08/12/25 Page 26 of 446

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ____________________ Chapter 11

☐ Check if this is an amended filing

# Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

1. **Does the debtor have any executory contracts or unexpired leases?**

■ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☐ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| | **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| **2.1** | **State what the contract or lease is for and the nature of the debtor's interest** | |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |
| **2.2** | **State what the contract or lease is for and the nature of the debtor's interest** | |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |
| **2.3** | **State what the contract or lease is for and the nature of the debtor's interest** | |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |
| **2.4** | **State what the contract or lease is for and the nature of the debtor's interest** | |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |
| **2.5** | **State what the contract or lease is for and the nature of the debtor's interest** | |
| | **State the term remaining** | |
| | **List the contract number of any government contract** | |

**Fill in this information to identify the case:**

Debtor name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ____________________

❑ Check if this is an amended filing

Official Form 206H

# Schedule H: Codebtors

**12/15**

**Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.**

1. **Does the debtor have any codebtors?**
   - ❑ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.
   - ☑ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |
| 2.1 | Russell Drazin | 4400 Jennifer Street, N.W.<br>Suite 2<br>Washington, DC 20015 | 423 Kennedy St Holdings, LLC | ❑ D<br>☑ E/F<br>❑ G |
| 2.2 | WCP Fund I LLC | 8401 Greensborgo Drive<br>Suite 960<br>McLean, VA 22102 | 423 Kennedy St Holdings, | ❑ D<br>☑ E/F<br>❑ G |
| 2.3 | SF NU, LLC | 1455 Research Blvd<br>Suite 510<br>Rockville, MD 20850 | 423 Kennedy St Holdings, | ❑ D<br>☑ E/F<br>❑ G |
| 2.4 | Daniel Huertas | 8401 Greensboro Drive<br>Suite 960<br>McLean, VA 22102 | 423 Kennedy St Holdings, | ❑ D<br>☑ E/F<br>❑ G |
| 2.5 | | | | ❑ D<br>❑ E/F<br>❑ G |
| 2.6 | | | | ❑ D<br>❑ E/F<br>❑ G |

**United States Bankruptcy Court**

**IN RE:** Case No.__________________

JPK NewCo, LLC Chapter 11

# LIST OF EQUITY SECURITY HOLDERS

| Registered name and last known address of security holder | Shares (Or Percentage) | Security Class (or kind of interest) |
|---|---|---|
| WCP Fund I LLC<br>8401 Greensboro Drive Suite 960, McLean, VA 22102 | 70.56 | |
| SF NU, LLC<br>1455 Research Blvd. Ste 510, Rockville, MD 20850 | 29.44 | |

**Fill in this information to identify the case and this filing:**

Debtor Name JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (*If known*): ______________________

# Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

**12/15**

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration________________________________

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 05/27/2025
MM / DD / YYYY

✘ /s/ Daniel Huertas
Signature of individual signing on behalf of debtor

Daniel Huertas
Printed name

Manager
Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name: JPK NewCo, LLC

United States Bankruptcy Court for the: District of Columbia

Case number (If known): ____________________

☐ Check if this is an amended filing

# Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy 04/25

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

## Part 1: Income

1. **Gross revenue from business**

☑ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From ________ MM / DD / YYYY | to | Filing date | ☐ Operating a business<br>☐ Other | $________ |
| **For prior year:** | From ________ MM / DD / YYYY | to | ________ MM / DD / YYYY | ☐ Operating a business<br>☐ Other | $________ |
| **For the year before that:** | From ________ MM / DD / YYYY | to | ________ MM / DD / YYYY | ☐ Operating a business<br>☐ Other | $________ |

2. **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From ________ MM / DD / YYYY | to | Filing date | ________ | $________ |
| **For prior year:** | From ________ MM / DD / YYYY | to | ________ MM / DD / YYYY | ________ | $________ |
| **For the year before that:** | From ________ MM / DD / YYYY | to | ________ MM / DD / YYYY | ________ | $________ |

Case 25-00206-ELG 3250-SLS Document 50 Filed 08/17/25 Page 31 of 446

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

## Part 2: List Certain Transfers Made Before Filing for Bankruptcy

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers—including expense reimbursements—to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $8,575. (This amount may be adjusted on 4/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| | Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|---|
| 3.1. | Creditor's name | | $ | ❑ Secured debt<br>❑ Unsecured loan repayments<br>❑ Suppliers or vendors<br>❑ Services<br>❑ Other |
| 3.2. | Creditor's name | | $ | ❑ Secured debt<br>❑ Unsecured loan repayments<br>❑ Suppliers or vendors<br>❑ Services<br>❑ Other |

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $8,575. (This amount may be adjusted on 4/01/28 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| | Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | Insider's name<br>**Relationship to debtor** | | $ | |
| 4.2. | Insider's name<br>**Relationship to debtor** | | $ | |

Debtor JPK NewCo, LLC
Name

Case number (*if known*)______________________

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1. | ______________________ Creditor's name | | __________ | $__________ |
| 5.2. | ______________________ Creditor's name | | __________ | $__________ |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| ______________________ Creditor's name | | __________ | $__________ |
| | Last 4 digits of account number: XXXX– ________ | | |

## Part 3: Legal Actions or Assignments

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None

| | Case title / Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Case title** Developer RE1 LLC vs. DP Capital LLC, et al. **Case number** 24-10023-ELG | Adversary Proceeding - Debtor is not presently a party to the litigation but believes that it is a necessary party and will be added to the case. For that reason, the Debtor makes this disclosure here. | U.S. Bankruptcy Court for the District of Columbia 333 Constitution Ave., N.W. Washington, DC 20001 | ☐ Pending ☐ On appeal ☑ Concluded |
| 7.2. | **Case title** Developer RE1 LLC, et al . v. DP Capital, LLC, et al. **Case number** 2022-CAB-005935 | | Superior Court for the District of Columbia 500 Indiana Avenue, N.W. Washington, DC 20001 | ☑ Pending ☐ On appeal ☐ Concluded |

Debtor JPK NewCo, LLC
Name
Case number (*if known*)______________________

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| ______________________ Custodian's name | ______________________ | $__________ |
| | **Case title** ______________________ | **Court name and address** ______________________ Name |
| | **Case number** ______________________ | |
| | **Date of order or assignment** ______________________ | |

## Part 4: Certain Gifts and Charitable Contributions

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1. ______________________ Recipient's name | | __________ | $__________ |
| | | __________ | $__________ |
| **Recipient's relationship to debtor** ______________________ | | | |
| 9.2. ______________________ Recipient's name | | __________ | $__________ |
| | | __________ | $__________ |
| **Recipient's relationship to debtor** ______________________ | | | |

## Part 5: Certain Losses

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br>List unpaid claims on Official Form 106A/B (*Schedule A/B: Assets – Real and Personal Property*). | Date of loss | Value of property lost |
|---|---|---|---|
| | ______________________ | __________ | $__________ |

Debtor JPK NewCo, LLC Case number (*if known*)
Name

## Part 6: Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | Wolff & Orenstein, LLC<br>**Address**<br>15245 Shady Grove Road<br>Suite 465N<br>Rockville, MD 20850<br>**Email or website address**<br>wolawgroup.com<br>**Who made the payment, if not debtor?**<br>WCP Fund I, LLC as capital contribution to Debtor | | 3/18/25 | $ 9,500.00 |
| 11.2. | Wolff & Orenstein, LLC<br>**Address**<br>15245 Shady Grove Road<br>Suite 465 North<br>Rockville, MD 20850<br>**Email or website address**<br>wolawgroup.com<br>**Who made the payment, if not debtor?**<br>WCP Fund I, LLC as capital contribution to Debtor | | 5/9/25 | $ 20,000.00 |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $ |
| **Trustee** | | | |

Case 1:25-cv-03250-SLS Document 20 Filed 08/17/25 Page 35 of 446

Debtor JPK NewCo, LLC
Name

Case number (*if known*)____________________

**13. Transfers not already listed on this statement**

List any transfers of money or other property—by sale, trade, or any other means—made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1. | __________ | | ______ | $______ |
| | **Address** | | | |
| | **Relationship to debtor** | | | |
| | __________ | | | |
| | **Who received transfer?** | | ______ | $______ |
| 13.2. | __________ | | | |
| | **Address** | | | |
| | **Relationship to debtor** | | | |
| | __________ | | | |

**Part 7: Previous Locations**

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| | Address | Dates of occupancy | |
|---|---|---|---|
| 14.1. | | From ______ | To ______ |
| 14.2. | | From ______ | To ______ |

Debtor JPK NewCo, LLC
Name
Case number (*if known*)

**Part 8:** **Health Care Bankruptcies**

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

— diagnosing or treating injury, deformity, or disease, or

— providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.1. | Facility name | | |
| | | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?**<br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |

| | Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|---|
| 15.2. | Facility name | | |
| | | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. | **How are records kept?**<br>*Check all that apply:*<br>☐ Electronically<br>☐ Paper |

**Part 9:** **Personally Identifiable Information**

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained.

Does the debtor have a privacy policy about that information?

☐ No

☐ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| | EIN: |

Has the plan been terminated?

☐ No

☐ Yes

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

**Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| | Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|---|
| 18.1. | Name | XXXX–____ | ☐ Checking ☐ Savings ☐ Money market ☐ Brokerage ☐ Other____ | | $____ |
| 18.2. | Name | XXXX–____ | ☐ Checking ☐ Savings ☐ Money market ☐ Brokerage ☐ Other____ | | $____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| Name | Address | | ☐ No ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| Name | Address | | ☐ No ☐ Yes |

Debtor JPK NewCo, LLC
Name
Case number (if known)

## Part 11: Property the Debtor Holds or Controls That the Debtor Does Not Own

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| Name | | | $ |

## Part 12: Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑ No
☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| | Name | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| Case number | | | |

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Name | Name | | |

Debtor JPK NewCo, LLC
Name

Case number (*if known*)

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| Name | Name | | |

## Part 13: Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1. | Name | | EIN: ______<br>**Dates business existed**<br>From ______ To ______ |
| 25.2. | Name | | EIN: ______<br>**Dates business existed**<br>From ______ To ______ |
| 25.3. | Name | | EIN: ______<br>**Dates business existed**<br>From ______ To ______ |

Debtor JPK NewCo, LLC
Name
Case number (*if known*)

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| | Name and address | Dates of service |
|---|---|---|
| 26a.1. | Christina Araujo<br>Name<br>8401 Greensboro Drive, Suite 960, McLean, VA 22102 | From _______<br>To _______ |
| 26a.2. | Name | From _______<br>To _______ |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☑ None

| | Name and address | Dates of service |
|---|---|---|
| 26b.1. | Name | From _______<br>To _______ |
| 26b.2. | Name | From _______<br>To _______ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| | Name and address | If any books of account and records are unavailable, explain why |
|---|---|---|
| 26c.1. | Christina Araujo<br>Name<br>8401 Greensboro Drive, Suite 960, McLean, VA 22102 | |

Case 25-00206 Document 20 Filed 08/17/25 Page 41 of 446

Debtor JPK NewCo, LLC
Name

Case number (if known)

| Name and address | If any books of account and records are unavailable, explain why |
| --- | --- |
| 26c.2. Name | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

| Name and address |
| --- |
| 26d.1. Name |

| Name and address |
| --- |
| 26d.2. Name |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
| --- | --- | --- |
| | | $ |

| Name and address of the person who has possession of inventory records |
| --- |
| 27.1. Name |

Debtor JPK NewCo, LLC
Name

Case number (if known)________________

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| ____________ | ______ | $____________ |

**Name and address of the person who has possession of inventory records**

27.2. ______________________
Name

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| WCP Fund I LLC | 8401 Greensboro Drive Suite 960, McLean, VA 22102 | Member | 70.56 |
| SF NU, LLC | 1455 Research Blvd. Ste 510, Rockville, MD 20850 | Member | 29.44 |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| | | | ________ To ________ |
| | | | ________ To ________ |
| | | | ________ To ________ |
| | | | ________ To ________ |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1. ______________ Name | ______________ | ________ | |
| | | ________ | |
| | | ________ | |
| | | ________ | |
| | | ________ | |

**Relationship to debtor**

______________________

Debtor JPK NewCo, LLC
Name

Case number (if known)

**Name and address of recipient**

30.2
Name

**Relationship to debtor**

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | EIN: |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

## Part 14: Signature and Declaration

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 05/27/2025 MM / DD / YYYY

✘ /s/ Daniel Huertas
Signature of individual signing on behalf of the debtor

Printed name Daniel Huertas

Position or relationship to debtor Manager

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No
☑ Yes

Debtor Name JPK NewCo, LLC Case number (if known)

## Continuation Sheet for Official Form 207

**11) Payments related to bankruptcy**

| | | | | |
|---|---|---|---|---|
| **Wolff & Orenstein, LLC** | **15245 Shady Grove Road Suite 465N, Rockville, MD 20850** | **$23,000.00** | **7/24/24** | **Paid by Debtor through Verstandig Law Firm** |
| **See Attached SOFA Part 6, Question 11** | | **$0.00** | | |

**423 Kennedy St Holdings LLC, c/o Mel Negussie**
**1629 K Street NW**
**Suite 300**
**Washington, DC 20006**

**423 Kennedy St Holdings, LLC**
**1629 K Street NW**
**Suite 300**
**Washington, DC 20006**

**Charles Paxton Paret**
**343 First Street**
**Berryville, VA 22611**

**Daniel Huertas**
**8401 Greensboro Drive**
**Suite 960**
**McLean, VA 22102**

**Developer RE1 LLC**
**Greenstein Delorme & Luchs, PC**
**801 17th Street, NW, Suite 1000**
**Washington, DC 20006**

**Developer RE1 LLC**
**1629 K Street NW**
**Suite 300**
**Washington, DC 20006**

**Developer RE1 LLC c/o Mel Negussie, Resident**
**1629 K Street NW**
**Suite 300**
**Washington, DC 20006**

**Greenstein Delorme & Luchs, P.C.**
**attn: James Sadowski**
**801 17th Street N.W.**
**Suite 1000**
**Washington, DC 20006**

Case 25-10320-SLS Document 20 Filed 08/12/25 Page 46 of 446

**Hirschler Fleischer attn: Kristen E. Burgers,**
**1676 International Drive**
**Suite 1350**
**McLean, VA 22102**

**Russell Drazin**
**4400 Jennifer Street, N.W.**
**Suite 2**
**Washington, DC 20015**

**SF NU, LLC**
**1455 Research Blvd**
**Suite 510**
**Rockville, MD 20850**

**Shaheen Sariri**
**Hirfschler Fleicher, PC**
**1676 International Drive, Suite 1350**
**McLean, VA 22101**

**WCP Fund I LLC**
**8401 Greensborgo Drive**
**Suite 960**
**McLean, VA 22102**

**Wendell W. Webster, Trustee**
**1101 Connecticut Ave., NW**
**Suite 402**
**Washington, DC 20036**

United States Bankruptcy Court
District of Columbia

In re: JPK NewCo, LLC

Debtor(s)

Case No.

Chapter 11

**Verification of Creditor Matrix**

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date: 05/27/2025

/s/ Daniel Huertas
Signature of Individual signing on behalf of debtor

Manager
Position or relationship to debtor

Case 25-00200-ELG Doc 50 Filed 08/12/25 Entered 08/12/25 Page 48 of 446

**LOCAL OFFICIAL FORM NO. 10**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re JPK NewCo, LLC | ) | |
| | ) | Case No. ______________ |
| | ) | |
| ________________________________, | ) | Chapter 11 |
| | ) | |
| Debtor(s). | ) | |

**DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR**

Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ **Flat Fee**

For legal services, I have agreed to accept ........................................................ $______________

Prior to the filing of this statement I have received ............................................ $______________

Balance Due ........................................................................................... $______________

☑ **Hourly Fee**

For legal services, I have agreed to accept and I received a retainer of. ................... $ 20,000.00

The undersigned shall bill against the retainer at an hourly rate of ............................ $ 510.00

[Or attach firm hourly rate schedule] as such rate may change over time based on periodic increases. Hourly rate for member Jeffrey M. Orenstein $510.00; for associate Matthew E. Abbott $310.00; for paralegal Jesse Wolff $150.00

Debtor has agreed to pay all approved fees and expenses exceeding the amount of the retainer, subject to those fees and expenses being approved by the court (when court approval is required) for work performed in a chapter 11 case or chapter 13 case. Payments of fees and expenses exceeding the retainer, other than payment of amounts approved for payment by court order, will be disclosed by a supplemental Rule 2016(b) statement.

☐ ***Pro Bono* Representation**

I have agreed to provide services without compensation.

*************************************************************

The debtor ☑ has ☐ has not agreed to reimburse expenses.

The source of the compensation paid to me was:

☐ Debtor ☑ Other (specify) WCP Fund I, LLC as capital contribution to Debtor

The source of compensation to be paid to me is:

☑ Debtor ☐ Other (specify)

With respect to the compensation described herein:

☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with another person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case (other than services excluded by the paragraph below) including:

Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

Representation of the debtor in adversary proceedings and other contested bankruptcy matters;

[Other provisions as needed]

By agreement with the debtor(s), the above-disclosed fee does not include the following services:

CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to

05/27/2025 — *Date*

/s/ Jeffrey M. Orenstein (#448325) — *Signature of Attorney*

Wolff & Orenstein LLC — *Name of law firm*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | * | |
| JPK NewCo, LLC | * | Case No. 24-00262-ELG (Chapter 11) |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STATEMENT REGARDING NO FEDERAL TAX RETURNS

I, Daniel Huertas, am of lawful age, have personal knowledge of the facts set forth herein, and am competent to testify to the matters stated herein.

1. I am the principal of WCP Fund I LLC which is an owner of JPK NewCo, LLC (the "Debtor") and the Manager of the Debtor.

2. The Debtor was formed on February 1, 2024.

3. Having no income or expenses to report in tax year 2024, the Debtor has not yet been required to file any Federal tax returns and has not yet filed any Federal tax returns.

Pursuant to 28 U.S.C. § 1746, under penalties of perjury, I certify that the foregoing statements are true and correct.

\s\ Daniel Huertas
Daniel Huertas

Case 1:25-cv-03250-SLS Document 20 Filed 08/17/25 Page 51 of 446

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | * | |
| JPK NewCo, LLC | * | Case No. 25-00200-ELG<br>Chapter 11 (Subchapter V) |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

CORPORATE OWNERSHIP STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 1007 and 7007.1, and to enable the Judges to evaluate possible disqualification or recusal, the undersigned certifies that the following are entities, other than the debtor or a governmental unit, that directly or indirectly own 10% or more of any class of the Debtor's equity interests:

WCP Fund I LLC
8401 Greensboro Drive
Suite 960
McLean, Virginia 22102
70.56%

SF NU, LLC
1455 Research Blvd.
Suite 510
Rockville, Maryland 20850
29.44%

Respectfully submitted,

[signature on following page]

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#428335)
Wolff, & Orenstein, LLC
15245 Shady Grove Road
North Lobby, Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com

Proposed Attorneys for JPK NewCo, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 3rd day of June, 2025, a copy of the foregoing was sent via the Court's CM/ECF system to:

Kristen E Burgers, Esq.
Hirschler Fleischer
1676 International Drive
Suite 1350
Tysons, VA 22102
kburgers@hirschlerlaw.com

Kristen S. Eustis, Esq.
Office of the United States Trustee
1725 Duke Street
Ste 650
Alexandria, VA 22314
Kristen.S.Eustis@usdoj.gov

\s\ Jeffrey M. Orenstein
Jeffrey M. Orenstein

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br>Chapter 11 |

**DEVELOPER RE1, LLC'S AND 423 KENNEDY ST. HOLDINGS, LLC'S**
**MOTION TO DISMISS CHAPTER 11 PETITION FILED IN BAD FAITH**

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy") (collectively the "Borrowers"), each a party-in-interest in this case, by counsel, move this Court to dismiss the Chapter 11 bankruptcy petition filed by JPK NewCo, LLC ("JPK NewCo") for cause under 11 U.S.C. § 1112(b). The Borrowers have included the accompanying Table of Contents, Table of Authorities, and Memorandum in support.

James D. Sadowski, Esq.
D.C. Bar #446635
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

# TABLE OF CONTENTS

Memorandum in Support of Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Motion to Dismiss Chapter 11 Petition Filed in Bad Faith ............ 1

A. Executive Summary ............ 1

B. Jurisdiction and Venue ............ 2

C. Preliminary Matters ............ 2

D. Detailed Factual Background About the Borrowers, the Loan Documents,and the D.C. Superior Court Cases ............ 3

E. Factual Background Regarding *JPK NewCo I* and the Formation of JPK NewCo. ............ 17

F. The Legal Standards for Dismissing A Petition That Was Filed In Bad Faith ............ 25

1. The Prior Decisions From this Court. ............ 26
2. The Second Circuit Test Used for Bad Faith ............ 27
3. The Third Circuit Test Used for Bad Faith. ............ 27
4. The Fourth Circuit Test Used for Bad Faith. ............ 28
5. The Fifth Circuit Test Used for Bad Faith. ............ 29
6. The Eleventh Circuit "Any Factors" Test Used for Bad Faith. ............ 29
7. Additional Cases Addressing Bad Faith. ............ 30

G. Legal Argument ............ 31

H. Conclusion ............ 34

# TABLE OF AUTHORITIES

Cases

*American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138 (1940) .......... 31
*Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989) .......... 29
*Corto v. National Scenery Studios,* 705 A.2d 615 (D.C. 1997) .......... 32
*Franklin Mortg. & Inv. Co.*, 143 B.R. 295 (Bankr. D.D.C. 1992) .......... 27
*In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.) .......... 31
*In re Blue Chip Cap., DC, LLC*, 600 B.R. 735 (Bankr. D.D.C. 2019) .......... 28
*In Re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997) .......... 28
*In re Dunes Hotel Assocs.*, 188 B.R. 162 (Bankr. D.S.C. 1995) .......... 30
*In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015) .......... 29
*In re G–2 Realty Trust*, 6 B.R. 549 (Bankr. D. Mass. 1980) .......... 35
*In re Griffieth,* 209 B.R. 823 (N.D.N.Y. 1996) .......... 32
*In re Hammonds*, 139 B.R. 535 (Bankr. D. Col. 1992) .......... 32
*In re Lilley*, 91 F.3d 491 (3d Cir. 1996) .......... 29
*In re LTL Mgt., LLC*, 64 F.4th 84 (3d Cir. 2023) .......... 29
*In re Meltzer*, 516 B.R. 504 (Bankr. N.D. Ill. 2014) .......... 34
*In re Natural Land Corp.*, 825 F.2d 296 (11th Cir. 1987) .......... 30
*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) .......... 31
*In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627 .......... 27
*In re Serfass,* 325 B.R. 901 (Bankr. M.D. Fla. 2005) .......... 35
*In re Silberkraus*, 253 B.R. 890 (C.D. Cal. Bankr. Ct. 2000) .......... 34
*In Re Spagnolia,* 199 B.R. 362 (Bankr. W.D. Ky. 1995) .......... 32
*In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir. 1985) .......... 30
*Industrial Insurance Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124 (6th Cir. 1991) .......... 32
*Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823 (1969) .......... 32
*Little Creek Development Co.,* 779 F.2d 1068, 1073 (5th Cir. 1986) .......... 28
*McDow v. Smith*, 295 B.R.69, 79-81 n. 22 (Bankr. E.D. Va. 2003) .......... 31
*Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828 (W.D. Ky. 1992) .......... 29
*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434 (1940) .......... 31
*U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1 (1st Cir. 1988) .......... 33
*Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop.*, 441 A.2d 956 (D.C. 1982) .......... 32

Statutes

11 U.S.C. § 1112(b)(1) .......... 27

28 U.S.C. § 1359 .......... 32

Treatises

2 L. King, *Collier on Bankruptcy* § 301.05[1] (15th ed. 1979) .......... 30

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br>Chapter 11 |

**MEMORANDUM IN SUPPORT OF**
**DEVELOPER RE1, LLC'S AND 423 KENNEDY ST HOLDINGS, LLC'S**
**MOTION TO DISMISS CHAPTER 11 PETITION FILED IN BAD FAITH**

## A. EXECUTIVE SUMMARY

The Chapter 11 petition was filed by JPK NewCo for the improper purposes of delaying civil litigation pending in the D.C. Superior filed by the Borrowers against JPK NewCo's two owners and its related company and individuals: the WCP Fund I, LLC ("WCP Fund"), DP Capital , LLC d/b/a Washington Capital Partners ("WCP"), Daniel Huertas, Russell Drazin, and SF NU LLC ("SF NU") (the "Lender Defendants"). The Lender Defendants have colluded to manufacture federal jurisdiction to try to have this Court revisit and reverse prior decisions that did not favor them in two consolidated D.C. Superior Court cases. Mr. Huertas controls the WCP Fund and the WCP. The WCP Fund and SF NU are the co-owners of JPK NewCo. JPK New Co's formation, the first involuntary petition by JPK New Co that was later dismissed (24-000262-ELG) ("*JPK NewCo I*"), and this second bankruptcy case are all part or an improper scheme to create federal jurisdiction so that the Borrowers' state law claims are adjudicated in this Court. All available evidence to date shows that the scheme to create federal jurisdiction was recommended to the Lender Defendants by proposed special counsel for JPK NewCo, Maurice VerStandig. JPK NewCo is not now, and never has been, a legitimate business that needs bankruptcy protection. As a result, the Court should dismiss this case for cause.



8161\0002\4934-0098-3376.v1

## B. Jurisdiction and Venue

1. The Court has authority to hear and decide this matter under 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue of these proceedings and over this motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Borrowers are parties-in-interest that have standing to seek dismissal of this case. The Borrowers have been listed as creditors of JPK NewCo with "Disputed Unliquidated Contingent" claims. ECF # 1 at 6.

## C. Preliminary Matters

4. For many of the background facts about JPK NewCo, the Borrowers rely in large part, but not entirely, upon the facts set forth in The United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b) filed on September 23, 2024 in *JPK NewCo I*. ECF # 37 in *JPK NewCo I*.

5. The Borrowers, just like the U.S. Trustee's office in *JPK NewCo I*, have not had any opportunity to take discovery in this case. The Borrowers also do not have copies of documents that JPK NewCo provided to the U.S. Trustee's office as part of the initial debtor interview in *JPK NewCo I*, which documents informed the U.S. Trustee's office about seeking a dismissal of *JPK NewCo I*. For those reasons, and because JPK NewCo will almost certainly be contesting this motion, the Borrowers will be serving written discovery requests under Rule 9014 and seeking a scheduling order to allow for the taking of depositions, to set other discovery deadlines, and to schedule an evidentiary hearing.



8161\0002\4934-0098-3376.v1

## D. Detailed Factual Background About the Borrowers, the Loan Documents, and the D.C. Superior Court Cases

6. Although the Court has some familiarity with JPK NewCo and a prior motion to dismiss that was filed that included serious allegations of bad faith by JPK NewCo., the Borrowers are including a comprehensive summary of the D.C. Superior Cases, what happened to those cases after removal and a recent remand decision, and the prior dismissed case involving JPK NewCo, so that there is a comprehensive record of that history in this case.

RE1 and 423 Kennedy.

7. The Borrowers are sole-purpose limited liability companies that were formed to develop different real estate projects in the District.

8. RE1, which is partially owned by Mel Negussie, is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

9. 423 Kennedy, which is co-owned by two members -- Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner), is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

10. The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

The Loan Documents.

11. On December 23, 2021, the WCP helped facilitate RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

12. On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WCP Fund. Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

13. As part of the 423 Kennedy refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.

14. The loans to RE1 and 423 Kennedy were secured by a first and second promissory note and a first and second deed of trust recorded against the respective properties. The WCP Fund later assigned one or more of the deeds of trust to SF NU.

RE1 and 423 Kennedy Begin the Process to Refinance Their Loans

15. In September of 2022, RE1 and 423 Kennedy began the process of refinancing their loans. By early November of 2022, the Borrowers were well into the process of refinancing their loans with Main Street Bank, and those refinancings would have resulted in the WCP Fund being paid in full for both projects.

16. As part of the refinancing process, in October of 2022 the WCP sent multiple payoff statements to 423 Kennedy. None of those payoff statements alleged that 423 Kennedy was in default, nor did any of those payoff statements list any late charges or default charges.

17. By November 3, 2022, the Borrowers had made all payments due under the loan documents and the WCP's own records evidenced that fact. Up to that time, there was no claim made by anyone that any of the loan documents were in default.

The Lender Defendants Starve 423 Kennedy of Construction Draw Funds.

18. By October 6, 2022, even though 423 Kennedy had paid all amounts due to the WCP Fund under the notes, the relationship between 423 Kennedy and the WCP started to sour



8161\0002\4934-0098-3376.v1

Case 2025-CV-03250-SLS Document 20 Filed 08/12/25 Page 61 of 446

when Mr. Huertas informed Mr. Negussie that the WCP would stop funding construction draws to 423 Kennedy.

<u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents.</u>

19. Around October 24, 2022, the WCP sent Payoff Statements listing the amounts needed to pay the balances owed under the 423 Kennedy loans. Those statements did not include any charges for "Default Interest" or "Default Penalties". By that date both Borrowers had made all payments to the WCP Fund that were due under the loan documents, and at that time there again was no allegation that any default existed under any of the loan documents.

20. On November 3, 2022, Mr. Huertas emailed 423 Kennedy to inquire about the status of the payoff of the loans, in which he stated that WCP "would not provide any construction loan draws to 423 Kennedy". Mr. Huertas knew that if the WCP did not fund construction draws, the 423 Kennedy development project, which was 75-80% complete, could not be completed.

21. On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy restating that WCP would not release any more construction draws. By that date, the Lender Defendants also knew that the Borrowers were in the process of securing alternative financing for both properties with Main Street Bank, and that the Borrowers expected to close on the new refinancing loans in December of 2022.

22. On November 20, 2022, the WCP transmitted another two Payoff Statements to 423 Kennedy because the WCP knew that 423 Kennedy was attempting to go to closing on a refinancing loan. At that time there was still no claim made that any default existed under either of the loan documents. None of those Payoff Statements included "Default Interest" or "Default Penalties", or any other amount based upon any claim that 423 Kennedy was in default.



8161\0002\4934-0098-3376.v1

23. On November 30, 2022, RE1 made a request by email to the WCP for the payoff figures for both of its loans. That same day, RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022. The next day, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP would agree to extend the maturity date for the RE1 loans for six to twelve months. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

24. Around December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the RE1 notes for six to twelve months if RE1 paid down the notes by $500,000 to $750,000. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. *Id.* Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

The Lender Defendants Demand that the Borrowers Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".

25. By December 8, 2022, the Borrowers had made all payments due under the notes and the WCP's records reflected that fact. That same day, Mr. Huertas called Mr. Negussie. During that call, Mr. Huertas told Mr. Negussie that the lender and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out. For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project". SF NU is believed to have a financial interest in the 2507 I Street Project.

26. During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including RE1. Mr. Huertas further stated that the 2507 I Street



8161\0002\4934-0098-3376.v1

Project has "turned out very bad" and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is "pissed off with the quality of the work done", and that this investor "is very wealthy and will make life hard for you", and "has now bought the notes" and another project financed by WCP, and that WCP is "defaulting the loans." Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

27. During that call, Mr. Huertas further told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if that did not happen, then the Lender Defendants and the unnamed investor "would make trouble for you on all of your other projects".

28. In response, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on an unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to harm either Mr. Negussie or his related business projects.

29. After Mr. Negussie refused to accede to Mr. Huertas' threats, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place RE1 and 423 Kennedy in default under their loan documents with the WCP Fund.

Mr. Huertas Follows Up on His Threats, the WCP Demands Payment of More than $2.3 Million in "Default Interest" and "Default Penalties", and Threatens Foreclosure.

30. Later that day, Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy, and RE1 by arranging for Leslie Calderas, a WCP Servicing

Manager, to send a letter entitled "Notice of Default" to RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.

31. Each Notice of Default did not contain any legal basis or other explanation for how or why either RE1 or 423 Kennedy had defaulted under any of the loan documents. With each Notice of Default, the WCP included new Payoff Statements (one for each loan).

32. The Payoff Statements sent to by the WCP to RE1 included a demand for payment of "Default Interest" of $276,776.00 and a "Default Penalty" of $357,900.00 under the first loan and "Default Interest" of $40,522.67 and a "Default Penalty" of $52,400.00 for under the second loan.

33. The new Payoff Statement sent by the WCP to 423 Kennedy included a demand for payment of "Default Interest" of $456,927.95 and a "Default Penalty" of $868,969.30 under the first loan and payment of "Default Interest" of $97,130.67 and a "Default Penalty" of $125,600.00 under the second loan.

Mr. Huertas "Lawyers Up", Asks the WCP's Attorney (Mr. Drazin) to Come Up with A Cover Story, and Mr. Drazin Follows Those Orders.

34. Immediately after receiving default notices, Mr. Negussie called Mr. Huertas to inquire as to the basis for why the WCP was suddenly now claiming that the Borrowers were in default, but Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to contact the WCP's counsel, Mr. Drazin.

35. On information and belief, that same day Mr. Huertas called Mr. Drazin and told him to scour through every provision of the loan documents to come up with a cover story to justify the decision to declare that the Borrowers were in default when in fact all of the loans were current. As instructed, Mr. Drazin then sent to Borrowers' counsel a series of emails over a

Case 1:25-cv-03250-SLS Document 1-20 Filed 08/13/25 Page 65 of 446

period of several days in which Mr. Drazin kept coming up with different, additional claims as to why the Borrowers were in default under the loan documents.

36. As of the date he was instructed by Mr. Huertas to go find defaults, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the Borrowers and to the lender under the deed of trust, and that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to the Borrowers. Nevertheless, Mr. Drazin willfully ignored his fiduciary duty to the Borrowers and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

37. Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to the Borrowers, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of Default Notices to RE1 and 423 Kennedy on December 8, 2022.

38. The Lender Defendants knew that by improperly alleging that the Borrowers were in default under the loan documents, and by adding $2.5 million more in "Default Interest" and "Default Penalt[ies]", the Borrowers would not be able to go to closing on any refinance loans. The Lender Defendant deliberately interfered with the refinancing of the loans with Main Street Bank to prevent the Borrowers from being able to refinance the loans and to improperly pressure them to pay someone else's debt (*i.e.*, for the 2507 I Street Project).

39. The WCP and the WCP Fund refused to withdraw the default notices, refused to issue clean payoff statements, and refused to withdraw their foreclosure threats. They also deliberately sabotaged the 423 Kennedy project by refusing to fund construction draws. They timed their interference with the Borrowers refinancing of the loans during the approaching Christmas and New Year's holiday periods to make it impossible for them to close on any

refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any refinancing indefinitely so that they could try to foreclose on the two properties.

The Value of the Two Properties Owned by RE1 and 423 Kennedy

40. By the end of December 2022, the property owned by 423 Kennedy had been improved by 423 Kennedy and was 75-80% complete. 423 Kennedy had constructed a mixed use, six level building with thirty-three residential units and one commercial unit comprising 36,512 square feet. The 423 Kennedy project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

41. Around December of 2022, the property owned by 423 Kennedy had a current value of $11.9 million, and the property owned by RE1 had a current value of $4 million.

RE1 and 423 Kennedy File Lawsuits With the D.C. Superior Court.

42. 423 Kennedy filed its first lawsuit on December 15, 2022 against the WCP, the WCP Fund, Mr. Huertas, and Mr. Drazin ("the WCP Defendants") in the case known as *423 Kennedy St Holdings, LLC. v. the WCP Fund, et al.*, Case No. 2022-CAB-005903 (D.C. Super. Ct.) ("*423 Kennedy I*").

43. RE1 filed its lawsuit against the WCP Defendants on December 16, 2022 in the case known as *Developer RE1, LLC v. the WCP Fund I, LLC, et al.*, 2022-CAB-005935 (D.C. Super Ct.).[1]

44. On December 23, 2022, RE1 and 423 Kennedy each filed a Motion for a Temporary Restraining Order that asked the D.C. Superior Court judges to enjoin the WCP Defendants from going forward with any foreclosure.

[1] Filing the *423 Kennedy I* case before the RE1 case was the priority because the loan documents for 423 Kennedy had an earlier maturity date.

45. On January 12 ,2023, RE1 filed a First Amended Complaint to correct a few typographical errors. The WCP Defendants filed an Opposition to RE1's TRO Motion on January 17, 2023, with a Reply filed by RE1 on January 24, 2013.

The First TRO Hearing in *423 Kennedy I.*

46. The TRO Motion filed in *423 Kennedy I* was set for a hearing on February 7, 2023. The judge at that hearing determined that because an actual foreclosure notice had not been issued, there was no threat of imminent harm to 423 Kennedy, which resulted in *423 Kennedy I* being dismissed, without prejudice.

47. Because it seemed unlikely that another judge would grant a TRO to RE1 given the "lack of imminent harm" decision in *423 Kennedy I*, and to facilitate settlement discussions, RE1 voluntarily withdrew its TRO Motion on February 28, 2023.

Initial Settlement Talks After the First TRO Decision.

48. On March 20, 2023, the parties met at Mr. Drazin's office in the District, and after that first meeting the parties exchanged various settlement proposals by email, but no agreement was reached as the parties were very far apart on the economic terms and on the issues of whether the disputes could be settled together on a global basis.

The Motion to Dismiss Filed in the RE1 Case is Denied.

49. The WCP Defendants moved to dismiss RE1's First Amended Complaint on January 16, 2023, which RE1 opposed on February 16, 2023. No reply was filed, and the motion to dismiss was not denied by Judge Ebony Scott until an oral ruling at the Initial Scheduling Conference on March 24, 2023. Judge Scott later issued a Track II Scheduling Order that set a discovery closed deadline of August 10, 2023 along with a subsequent order dated April 7, 2023 that memorialized her oral decision to deny the motion to dismiss.

The Lender Defendants Issue Foreclosure Notice for Both Properties.

50. The initial threats of foreclosure by the WCP turned into a reality. On June 23, 2023, SF NU sent RE1 a notice of foreclosure sale and the WCP Fund sent a Notice of Foreclosure to 423 Kennedy. Both foreclosure notices were signed by Mr. Drazin. The foreclosure sales for the two properties were both scheduled for July 25, 2023 (at 2:00 p.m. for RE1 and 2:10 p.m. for 423 Kennedy) at the office of Harvey West Auctioneer's, Inc.

RE1 Renews Its TRO Motion and 423 Kennedy Files a New Lawsuit and TRO Motion Against the Lender Defendants.

51. On July 11, 2023, RE1 filed a renewed TRO Motion to stop the foreclosure on its property.

52. On July 12, 2023, the Borrowers sent a joint letter to Mr. VerStandig demanding that the foreclosure notices be withdrawn and that Mr. Drazin resign as trustee due to his conflict of interest. Neither demand was met. The next day, 423 Kennedy filed a new case against the WCP Defendants in *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.*, Case No. 2023-CAB-004260 (D.C. Super. Ct.) ("*423 Kennedy II*"). In *423 Kennedy II*, 423 Kennedy added affirmative claims against Mr. Drazin for breach of his fiduciary duty as Trustee and seeking declaratory judgments that (a) Mr. Drazin could not serve as trustee and (b) that the foreclosure notice that he issued was invalid.[2]

53. RE1 took the deposition of Mr. Huertas on July 18, 2023. At his deposition, Mr. Huertas was unable to explain how RE1 was in default under its loan documents. In response to

[2] The *423 Kennedy II* claims included: breach of contract (Count I); tortious interference with business relations (Count II); breach of the duty of good faith and fair dealing (Count III); breach of fiduciary duty by the Trustee (Count IV), for declaratory judgment and injunctive relief to stop the foreclosure (Count V); declaratory judgment (Mr. Drazin cannot serve as Trustee and the foreclosure notice is invalid) (Count VI), and that the loan documents contain unenforceable liquidated damages provisions that constitute a penalty (Count VII).

multiple questions about the basis for the alleged defaults, all that Mr. Huertas could say, in conclusory fashion, was that: "the borrower was in default" without providing any explanation as to the basis for the default under the loan documents. Near the end of that day's testimony, Judge Milton Lee's chambers sent an email to all counsel notifying them that he had set a hearing on 423 Kennedy's TRO Motion for Friday, July 21, 2023 at 1:00 pm.

<u>The Hearing on 423 Kennedy's TRO Motion and Order Granting That Motion.</u>

54. Mr. Negussie gave testimony on behalf of 423 Kennedy at the TRO hearing before Judge Milton Lee on Friday, July 21, 2023, which testimony largely mirrored the allegations in the complaint in *423 Kennedy II*. The Lender Defendants did not rebut Mr. Negussie's testimony, either by submitting a contrary affidavit or by calling a witness that gave contrary testimony. The Lender Defendants called one accounting department witness whose testimony primarily consisted of authenticating a record of 423 Kennedy's loan payments kept by the WCP.

55. On Monday, July 24, 2023, Judge Milton Lee issued an order granting 423 Kennedy's TRO Motion. In that order, Judge Lee credited Mr. Negussie's testimony; rejected nearly all the arguments made by the Lender Defendants, and determined that 423 Kennedy was likely to prevail on the merits as to its claims.

<u>The Hearing on RE1's TRO Motion and Decisions Granting that Motion.</u>

56. On July 24, 2023, Judge Scott issued an order setting a hearing RE1's Renewed TRO Motion for July 25, 2023 at 10:30 a.m. Mr. Negussie gave testimony on behalf of RE1 at that hearing. Once again, the Lender Defendants did not rebut Mr. Negussie's testimony, either by submitting a contrary affidavit or by calling a witness that gave contrary testimony at the hearing. The Lender Defendants again called the same accounting department witness, whose



8161\0002\4934-0098-3376.v1

testimony again primarily consisted of authenticating a record of RE1's loan payments kept by the WCP.

57. After excusing the parties during a recess, Judge Scott issued an oral decision granting RE1's TRO Motion and determining that RE1 was likely to prevail on the merits as to its claims. At that hearing the Lender Defendants requested that Judge Scott set a trial date, which she reserved for September 9, 2024.[3] Judge Scott later memorialized her oral decision granting the TRO Motion in a written order dated August 15, 2023.

The Discovery "Cease Fire" and Private Mediation with JAMS.

58. After the two TRO decisions, the parties agreed to put the brakes on taking any further depositions and responding to pending discovery requests and instead focus their efforts on trying to resolve their disputes through a private mediation with JAMS. To allow for that mediation, the parties sought joint extensions of the Scheduling Order deadlines on both cases. The mediation first scheduled to take place in mid-December 2023 was rescheduled to early 2024.

59. The Borrowers and the WCP Defendants attended two mediation sessions with a retired judge with JAMS. The first session took place in person on January 9, 2024 at JAMS' office, but no agreement was reached, so a second session was scheduled for January 25, 2024 via Zoom. The second session, however, ended abruptly when Mr. Huertas unilaterally decided that negotiations were over.

60. After the second session, the Borrowers sent multiple additional settlement proposals to Lender Defendants' counsel by email, but those proposals were mostly met with

[3] Judge Scott noted that it was unusual for her to schedule a trial date so early in the case (trial dates are not usually set until after a pre-trial conference), but she was persuaded by the Lender Defendants to set an expedited trial date of September 9, 2024.

silence -- sometimes for several weeks -- and/or a rejection (by email) without any counterproposal. The Lender Defendants finally responded to a March 4, 2024 proposal on March 29, 2024, but in that response they moved in an opposite direction from prior proposals.

RE1 Files a Second Amended Complaint.

61. On March 1, 2024, RE1 filed an unopposed Motion for Leave to File a Second Amended Complaint to more closely mirror the claims in *423 Kennedy II* and to add SF NU as defendant because SF NU (not the WCP Fund) issued the foreclosure notice to RE1.

62. The motion for leave was granted on March 7, 2024. SF NU was served with the Second Amended Complaint on March 26, 2024. The WCP Defendants filed an Answer to the Second Amended Complaint along with a Counterclaim (filed by the WCP Fund) on April 2, 2024.

The Lender Defendants Create JPK NewCo, and Transfer Some Loan Documents to It.

63. Unbeknownst to the Borrowers, the Lender Defendants had created JPK NewCo and arranged for some, but not all, of the Borrowers' loan documents to be transferred to that entity around April 15-16, 2024. By that date, settlement discussions were over.

The Lender Defendants Start Creating More Roadblocks in the Superior Court Cases.

64. On April 21, 2024, less than a week after some loan documents were transferred to JPK NewCo, SF NU filed a motion to dismiss the Second Amended Complaint in RE1 case. In the motion to dismiss, SF NU claimed that JPK NewCo was an indispensable party because "JPK NewCo owns the note, and holds the rights arising under the correlative deed of trust."

65. The Lender Defendants used the fact that they transferred some loan documents to JPK NewCo as a basis for the entire RE1 case to be dismissed. In hindsight, it is clear that the Lender Defendants wanted RE1 to amend its complaint to include JPK NewCo because they were planning to put JPK NewCo into bankruptcy, but RE1 did not take the bait.

66. On April 23, 2024, RE1 filed a motion to dismiss the WCP Fund's Counterclaim as untimely. On May 6, 2024, RE1 filed an opposition to SF NU's motion to dismiss.

67. On May 7-8, 2024, 423 Kennedy served its first set of interrogatories and requests for the production of documents on the Lender Defendants. In interrogatory answers (dated June 7, 2024), the WCP Defendants disclosed that they were "knowledgeable about [JPK NewCo's] acquisition of the promissory note and deed of trust, from WCP."

68. On June 7, 2024, the parties filed a joint motion to consolidate the two cases, and on June 11, 2024, the Judge Scott issued an order consolidating the two cases, designating the RE1 case (2022-CA-005935-B) as the lead case in which all future filings should be made.

69. At no time during discovery did the Lender Defendants produce any documents: (a) about the formation of JPK NewCo.; (b) showing how and for what consideration JPK NewCo acquired "the promissory note and deed of trust from the WCP"; or (c) documents showing any related communications concerning those transactions. The Lender Defendants also never produced a privilege log or any copies of any legal bills for the services of Mr. VerStandig.

70. The Lender Defendants also did not serve any discovery requests on 423 Kennedy, nor did they note any depositions, even though a trial was scheduled for September 9, 2024. The Lender Defendants also did not assert any counterclaim against 423 Kennedy for the amounts allegedly due under the loan documents.

71. The facts listed in paragraphs 64-70 are all "tells" that the Lender Defendants never really planned to go to trial on September 9, 2024 because they had secretly transferred the rights under some of the Borrower's loan documents to JPK NewCo and were planning to put JPK NewCo into bankruptcy.

72. On June 26, 2024, the Clerk's office sent notice of the Trial Readiness hearing that was set for September 6, 2024.

73. On July 3, 2024 at 6:04 pm, the Borrowers noted the depositions of all of the Lender Defendants and of multiple fact witnesses (employees of the WCP) to take place back-to back on July 8-9, 2024. Just a few hours later (11:50 pm), the Lender Defendants filed a notice of removal of the now consolidated cases resulting in the Adversary Proceeding entitled *Developer RE1, et al., v. WCP Fund I, LLC,* (*In re Paret),* Adv. Pro. 24-10023-ELG ("Removed AP Case").

74. During the next few days, the Lender Defendants "flooded the zone" by filing multiple additional motions and notices in the Removed AP Case. *See* ECF Nos. 3-9 (filed in Adv. Pro. 24-10023-ELG).

75. It is obvious from the timing that the Lender Defendants filed a notice of removal to prevent the Borrowers from taking deposition, then later put JPK NewCo into bankruptcy to ensure further that the September 9, 2024 trial did not take place.

76. On July 21, 2024, the Borrowers moved to remand the Removed AP Case to the D.C. Superior Court, arguing, *inter alia*, that the removal was untimely. *See* ECF # 13 (filed in Adv. Pro. 24-10023-ELG).

### E. FACTUAL BACKGROUND REGARDING *JPK NEWCO I* AND THE FORMATION OF JPK NEWCO.

77. On July 23, 2024 (at 8:51 a.m.), the same morning that a hearing was being held in the Removed AP Case (at 10:00 a.m.), Shaheen Sariri ("Sariri") filed an involuntary Chapter

11 Petition against JPK NewCo through counsel, Kristen Burgers. The Involuntary Petition stated that Sariri was owed $51,443.52 under a Promissory Note. ECF # 1 in *JPK NewCo I*. [4]

78. The Involuntary Summons was issued by the Clerk's Office on July 24, 2024 and a Certificate of Service of the Involuntary Petition and Summons was filed on July 25, 2024. ECF ## 3-4 in *JPK NewCo I*.

79. The Certificate of Service states that Ms. Burgers served copies of the Summons and Involuntary Petition on JPK NewCo by first-class mail, postage prepaid, on July 25, 2024. ECF # 4 in *JPK NewCo I*.

80. On August 6, 2024, JPK NewCo consented to the Involuntary Petition and elected to proceed under subchapter V of Chapter 11 of the Bankruptcy Code. ECF # 6 in *JPK NewCo I*.

81. An Order for Relief was entered on August 7, 2024. ECF # 8 in *JPK NewCo I*.

82. On August 20, 2024, WCP Fund, Mr. Huertas, the other defendants and JPK NewCo, as debtor-in possession, all through counsel Mr. VerStandig, filed an opposition to the motion to remand the Removed AP Case. *See* ECF# 20 (filed in Adv. Pro. 24-10023-ELG). That opposition argued, among other things, that the "litigation will have a momentous impact upon the administration of two separate bankruptcy estates, while also being likely dispositive of [JPK NewCo's] ability to reorganize." *Id.* p. 1.

83. On August 28, 2024, the Court held a hearing on the motion to remand and determined that it did have jurisdiction over the Removed AP Case, but that all proceedings in it should be stayed pending resolution of an expected motion to dismiss this bankruptcy case, among other reasons.

---

[4] Many of the facts in paragraphs 77- 105 have been copied, in whole or in part, from the U.S. Trustee's Motion to Dismiss *JPK NewCo I*. *See* ECF # 37 *in JPK NewCo I*. Based upon all information available to the Borrowers thus far, the Borrowers believe those facts to be accurate.

JPK NewCo's Lack of Any Indicia That It is a Legitimate Company and the Lender Defendants' Collusive Efforts to Create Federal Jurisdiction.

84. JPK NewCo was formed more than a year after the D.C. Superior Court cases were filed. Since its formation, JPK NewCo has conducted no legitimate business. It has no employees, it generates no income from sales, it produces no goods, and it provides no services.

85. JPK NewCo's principal place of business is the WCP's offices in McLean, VA – an address that is also shared with the WCP Fund and where Mr. Huertas' office is located. Until April 15, 2024, JPK NewCo existed simply as a shell entity.

86. On April 15, 2024, the WCP Fund and SF NU, while still defendants in the Consolidated Cases, assigned some or all their interests in the RE1 loan and the 423 Kennedy loan to JPK NewCo. Although the assignment documents indicate that the assignments were "for value received," given that JPK NewCo had no money and provided no services, it appears that these assignments were actually for no consideration.

87. On June 3, 2024, when the discovery period in the Consolidated Cases was nearing completion, Shaheen Sariri, a friend of Mr. Huertas, "loaned" JPK NewCo $50,000, which JPK NewCo, despite having no income or assets other than assigned notes that would yield no income due the TRO Orders in the Consolidated Cases, was supposed to repay, in full with 10.55% annual interest, two months later on August 3, 2024. The first payment was due on July 1, 2024. A true and correct copy of the Sariri Note was attached as Exhibit 1 to the U.S. Trustee's motion to dismiss *JPK NewCo I*. ECF # 37-1 in ***JPK NewCo I*.**

88. Given that JPK NewCo had no ability to repay this "loan" to Mr. Sariri, it is obvious that this "loan" was a sham. Indeed, it was never intended that JPK NewCo would repay this loan. Rather, the purpose of this "loan" arrangement was to cause JPK NewCo to incur a debt to a single individual, Mr. Sariri, so Mr. Sariri could then initiate an involuntary

bankruptcy against JPK NewCo, thereby giving the Lender Defendants another potential ground to allow this Court, which they perceive as a friendlier forum, to have jurisdiction over all or part of the Borrowers' claims.

89. Once JPK NewCo received the "loan" from Mr. Sariri on June 21, 2024, it dispersed those funds as follows. First, on June 25, 2024, it gave $23,000 to Mr. VerStandig to hold until the involuntary bankruptcy was filed at which time it would be used to retain bankruptcy counsel for JPK NewCo. At some time after JPK NewCo transferred this money to Mr. VerStandig, but before this bankruptcy case was commenced, Mr. VerStandig contacted Jeffrey Orenstein to arrange for him to represent JPK NewCo once the involuntary petition was filed.[5]

90. Second, on June 25, 2024, JPK NewCo loaned the remaining $26,000 to an entity known as Energy Morroco, LLC,[6] a loan that was not scheduled to be repaid (other than a $325 interest payment to be made each month) until December 21, 2024 (well after the "loan" from Mr. Sariri was due to be paid in full). A true and correct copy of the Energy Morroco Loan Agreement was attached as Exhibit 2 to the U.S. Trustee's motion to dismiss JPK NewCo I. *See* ECF # 37-2 in *JPK NewCo I.*

91. The purpose of the loan to Energy Morroco, LLC, was to give JPK NewCo the appearance of carrying on some type of legitimate business activity.

92. All available information to date indicates that the plan to create federal jurisdiction through the loan from Mr. Sariri and a subsequent bankruptcy filing by JPK NewCo

---

[5] Mr. Orenstein has acknowledged that he was contacted by Mr. VerStandig in early 2024 regarding the potential representation of one of Mr. VerStandig's clients in a Chapter 11 filing.

[6] The Note signed by Energy Morroco LLC identifies it as a Delaware LLC. Delaware and District of Columbia online public records show that the entity is named Energy Morocco (one "r", not two) LLC. The Note is dated June 24, 2024.

Case 1:25-cv-03250-SLS Document 1-20 Filed 09/23/25 Page 77 of 446

was created and carried out on the advice of the Lender Defendants' and JPK NewCo's attorney, Mr. VerStandig.

93. Given that on July 1, 2024, when the first payment to Mr. Sariri came due, JPK NewCo had (by design) no cash on hand to repay the "loan", it failed to make its first payment to Mr. Sariri. Then, on July 23, 2024, Mr. Sariri filed an involuntary Chapter 11 petition against JPK NewCo. There is no evidence that any demand for payment was ever made by Mr. Sariri.

94. Before JPK NewCo was served with the involuntary petition (*see* ECF # 4 in *JPK NewCo I*), Mr. VerStandig contacted Mr. Orenstein to obtain his banking information in order to wire Mr. Orenstein the $23,000 that Mr. VerStandig was holding for JPK NewCo.[7]

95. The next day, on July 24, 2024, the Court issued the summons in this bankruptcy case. *See* Doc. 3 in *JPK NewCo I*.

96. That same day, on July 24, 2024, a day before JPK NewCo was served with the involuntary petition, Mr. VerStandig wired the $23,000 to Mr. Orenstein to be used as a retainer for Mr. Orenstein's representation of JPK NewCo.

97. On July 25, 2024, a day after Mr. Orenstein received the retainer to represent JPK NewCo in this bankruptcy case, Mr. Sariri served, by regular mail, a copy of the summons and involuntary petition, on JPK NewCo. *See* ECF # 4 in *JPK NewCo I*.

98. Mr. Orenstein's engagement agreement with JPK NewCo is dated as of July 30, 2024. A true and correct copy of the engagement agreement was attached as Exhibit 3 to the U.S. Trustee's motion to dismiss *JPK NewCo I*. *See* ECF # 37-3 in *JPK NewCo I*.

[7] Although service was legally accomplished on July 25, 2024, that service was by regular mail, so JPK NewCo could not have actually received service by regular mail on July 25, 2024. *See* ECF # 4 in *JPK NewCo I*.

99. On August 6, 2024, JPK NewCo answered the involuntary petition and consented to be a debtor in this case. *See* ECF # 6 in *JPK NewCo I*.

100. On August 6, 2024, Mr. Orenstein filed an application to be employed as NewCo's bankruptcy counsel. *See* ECF # 5 in *JPK NewCo I*. On that same date, Mr. VerStandig filed an application to be employed as special counsel for JPK NewCo, to represent it in the Consolidated Cases. *See* ECF # 12 in *JPK NewCo I*. As of August 6, 2024, JPK NewCo was not a party in the Consolidated Cases.

101. On August 20, 2024, the Borrowers filed an Objection to the Application to Employ Mr. Orenstein and his firm. *See* ECF # 14 in *JPK NewCo I*. Doc. No. 14.

102. On August 26, 2024, the Borrowers filed an Objection to the Application to Employ Special Counsel. *See* ECF # 15 in *JPK NewCo I*.

103. On September 4, 2024, the U.S. Trustee filed and Objection to the Application to Employ Mr. Orenstein, an Objection to the Application to Employ Mr. VerStandig as Special Counsel, and a Motion to Return Compensation. *See* ECF ## 20-22 in *JPK NewCo I*.

104. On September 17, 2024, the U.S. States Trustee filed a Supplemental Opposition to the Applications and the Motion to Return Compensation. *See* ECF ## 31 in *JPK NewCo I*.

105. On September 18, 2024, Mr. VerStandig filed his Reply in Support of Application to Approve Employment of Maurice B. VerStandig, Esq. and The VerStandig Law Firm As Special Counsel To JPK NewCo LLC and Opposition To Motion For Return Of All Compensation Received From Or On Behalf Of Debtor. *See* ECF #34 in *JPK NewCo I*.

106. On September 18, 2024, Mr. Orenstein and Wolff & Orenstein, LLC filed their Opposition to Motion for Return of all Compensation Received from or on Behalf of the Debtor. *See* ECF #35 in *JPK NewCo I*.

107. On September 23, 2024, the U.S. Trustee filed a motion to dismiss *JPK NewCo I* for cause under 11 U.S.C. § 1112(b). *See* ECF #37 in *JPK NewCo I.*

108. At a hearing on September 25, 2024 regarding the motions to employ (and the motion to disgorge) the Court granted the applications to employ Mr. Orenstein and Mr. VerStandig and thereafter Mr. Orenstein filed additional documents on behalf of JPK NewCo. *See* ECF # 41 in *JPK NewCo I* (audio file from the hearing).

109. Mr. Sariri and the WCP Fund each filed separate Oppositions to the U.S. Trustee's motion to dismiss. JPK NewCo's opposition incorporated the opposition filed by the WCP Fund. *See* ECF ## 48 (Mr. Sariri's Opposition), and 56 (WCP Fund's forty-page Opposition), and 58 (JPK NewCo' Opposition) in *JPK NewCo I.*

110. The WCP Fund has admitted that JPK NewCo was created as a separate entity to "to firewall any liability [to the Borrowers] from reaching WCP or its various co-defendants." *See* ECF #56 at 6, ¶¶ 15 (WCP Opposition filed in 24-00262). The WCP fund also represented to this Court that JPK NewCo was formed to be ". . . focused on addressing multiple litigation claims and thusly likely sheltering WCP and SNL from the ultimate economic reach of the subject litigation claims." *Id.* ¶ 18.

111. The Borrowers filed a Statement in Support of the US Trustee's motion to dismiss on October 14, 2024. *See* ECF ## 57 in *JPK NewCo I.*

112. At a status hearing on October 16, 2024 on the U.S. Trustee's motion to dismiss, the parties generally discussed the discovery schedule and the Court set two dates for an evidentiary hearing starting on January 28, 2025 and continuing January 30, 2025 (if needed).

113. Toward the end of the October 16, 2024 status hearing, Special Counsel *in JPK NewCo I* mentioned that "yesterday" JPK Newco received a first quarterly fee invoice from the

Case 1:25-cv-03250-SLS Document 20 Filed 10/02/25 Page 50 of 446

U.S. Trustee's office for the first quarterly fee and suggested that it was "equity's" position that "no quarterly fee has come due or will come due." *See* ECF # 59 in *JPK NewCo I* (starting at 0:06:40 into the recording).

114. At a status conference on November 6, 2024, the January 2025 evidentiary hearing dates were moved to February 4 and 6, 2025 due to Mr. Ornstein's unavailability on January 30, 2025. At that hearing the Court declined to set any Plan hearings giving the pendency of the U.S. Trustee's motion to dismiss, so February 4, 2025 was set as the new status conference for the Plan. *See* ECF # 69 in *JPK NewCo I* (audio recording from the hearing).

115. The Court entered a Scheduling Order for the deadlines as to the U.S. Trustee's motion to dismiss on November 13, 2024, but that order was later modified by an amended scheduling order on January 7, 2025 that continued the discovery completion date to March 4, 2025. *See* ECF ## 70 and 76 in *JPK NewCo I.*

116. On February 25, 2025, *JPK NewCo I* was dismissed without prejudice in a Consent Order Granting the U.S. Trustee's motion to dismiss. The sole basis listed for dismissal was JPK NewCo's failure to pay quarterly fees to the U.S. Trustee's office. *See* ECF ## 85 in *JPK NewCo I.*

The WCP Fund Inserts Conditions in the Proposed Settlement Agreement (in the Charles Paret Chapter 7 Case) to Bootstrap Its Arguments About Federal Jurisdiction in the Removed Cases.

117. On March 28, 2025, The Chapter 7 Trustee in the Charles Paret involuntary bankruptcy case filed a Motion for Approval of Settlement Agreement Pursuant to Fed. R. Bankr. P. 9019. *See* ECF # 158 in 23-00217-ELG.

118. The Settlement Agreement involved the proposed resolution of claims in a Third Amended Complaint, in which it was alleged by the Chapter 7 Trustee, *inter alia*, that a partnership existed between Mr. Paret and Mr. Huertas involving fourteen different properties

and twenty-one limited liability companies. *See* ECF #38 in 23-10025 (Line filing copy of the Third Amended Complaint) at 8-9 (listing the properties) and 11-2 (listing the LLCs) (the "Paret AP Case").

119. Mr. Huertas, the WCP Fund, and the WCP contested the claims in the Paret AP Case at every stage, denying, among other things, that any partnership existed, *See, e.g.,* ECF ## 3, 15, and 41 in 23-10025 (multiple motions to dismiss fled by Mr. Huertas, the WCP Fund, and the WCP).

120. Despite vehemently contesting the partnership claims in the Paret AP Case, as part of the proposed settlement, Mr. Huertas, the WCP Fund and the WCP propose giving Mr. Paret a "limited partnership interest" in the two properties owned by the Borrowers and no other properties. *See* ECF # 158-1 in 23-00217-ELG (proposed Settlement Agreement), Sections 3-4.

121. The Borrowers and four other parties in interest have filed an objection to the proposed settlement. *See* ECF ## 162-165 in 23-00217-ELG.

## F. THE LEGAL STANDARDS FOR DISMISSING A PETITION FILED IN BAD FAITH

On a request by a party in interest, after notice and hearing, the Court may dismiss or convert a chapter 11 case to a case under chapter 7, whichever is in the best interests of the creditors and the estate for "cause". 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) contains a non-exhaustive list of circumstances that may constitute "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(4). The Fourth Circuit has noted that courts are duty bound to conduct an inquiry, if requested, to determine whether a petition has been filed in good faith. *See In re United States Optical, Inc.*, 1999 U.S. App. LEXIS 6960 at *15-16 (4th Cir. 1993) (involving an involuntary petition).



8161\0002\4934-0098-3376.v1

There is no definition of "good faith" in the Bankruptcy Code; the finding is fact-specific. *See In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627, at *5 (Bankr. E.D. Va. June 13, 2007), opinion corrected, No. 07-10252 SSM, 2007 WL 2110314 (Bankr. E.D. Va. July 17, 2007). While multiple bankruptcy courts have held that a bankruptcy petition can be dismissed when the petition was filed in bad faith, the courts have used different, but similar, standards. For the Court's convenience, and because the Borrowers could not find a D.C. Circuit decision addressing the issue, the Borrowers have included a summary of the various standards that have been used when considering whether to dismiss a petition filed in bad faith.

1. <u>The Prior Decisions From this Court.</u>

In *Franklin Mortg. & Inv. Co.*, 143 B.R. 295 (Bankr. D.D.C. 1992), Judge Martin S. Teel noted that even though Chapter 11 does not contain a specific "good faith" requirement, "courts have consistently imposed such a requirement by way of implication." *Franklin* 143 B.R. at 299 (Bankr. D.D.C. 1992) (collecting cases). The *Franklin* decision further noted that "[w]hether a case was filed in bad faith generally cannot be determined by direct evidence, but it may be inferred from surrounding circumstances. *Id.* In *Franklin*, the Debtor was formed prior to the bankruptcy for the purpose of owning commercial real estate on Worth Avenue in Palm Beach, Florida, which was subject to a foreclosure action by the secured lender. In granting the secured lender's motion to dismiss, Judge Teel applied the eight factors evidencing bad faith established by the Fifth Circuit in *Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986). *Id.* The eight *Little Creek Development* factors include:

> (a) whether the debtor has one asset, (b) whether the asset is encumbered by secured liens, (c) whether the debtor has any business operations, (d) *whether the debtor has few unsecured creditors with small claims,* (e) *whether the debtor and one creditor had litigated to a standstill in state court,* (f) whether bankruptcy was the only viable way to forestall loss of the property, (g) *whether there were any allegations of wrongdoing by*



8161\0002\4934-0098-3376.v1

Case 1:25-cv-03250-SLS Document 20 Filed 10/17/25 Page 83 of 446

> *the debtor or its principals*, and (h) *whether the debtor suffers from "new debtor syndrome."*

*Id.* pp. 299-300 (italic emphasis added). The *Franklin* decision also cited to Section 1112(b). *Id.* ("I agree that the broad 'for cause' language in section 1112(b) supports the view that a debtor's lack of good faith may constitute cause for dismissal of a chapter 11 petition"). *See also In re Blue Chip Cap., DC, LLC*, 600 B.R. 735, 736–38 (Bankr. D.D.C. 2019) (noting that "[T]he bankruptcy courts are inherently empowered to dismiss cases in order to protect their jurisdictional integrity" and finding that "[t]he evidence established cause for dismissing the case under 11 U.S.C. § 1112(b)(1)", which included a lack of good faith).

2. <u>The Second Circuit Test Used for Bad Faith</u>

The Second Circuit used a multi-factor test to determine bad faith in *In Re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997), where it noted the following factors used in an analogous case:

> (1) the debtor has only one asset; (2) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default; (3) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors; (4) *the timing of the filing evidences an intent to delay or frustrate legitimate collection efforts;* (5) *the debtor has little or no cash flow*; (6) the debtor cannot meet current expenses; (7) *the debtor has no employees.*

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (italic emphasis added) (citing to the *Pleasant Pointe* factors used in *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828 (W.D. Ky. 1992).

3. <u>The Third Circuit Test Used for Bad Faith.</u>

*In re Forever Green Ath. Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015) the third circuit applied a "totality of the circumstances" test to the involuntary petition context. The factors the *Forever Green* court listed were:

> (1) whether the creditors satisfied the statutory criteria for filing the petition; (2) *whether the petition was meritorious*; (3) whether the creditors made reasonable inquiry into the relevant facts and pertinent law before filing; (4) whether there was evidence of preferential payments to certain creditors; (5) *whether the filing was motivated by ill will or a desire to harass;* (6) *whether the filing was used to obtain a disproportionate advantage*; (7) *whether the filing was used as a substitute for customary debt-collection procedures.*

*Forever Green*, 804 F.3d at 336 (collecting cases) (italic emphasis added). The determination of bad faith is "a fact intensive determination better left to the discretion of a bankruptcy court." *See, e.g.*, *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) (applying a "totality of the circumstances" standard for determining bad faith under 11 U.S.C § 303). More recently, the third circuit announced a new rule that good-faith filing of a Chapter 11 petition requires the debtor to show it is facing financial distress "immediate enough to justify filing." *In re LTL Mgt., LLC*, 64 F.4th 84 (3d Cir. 2023).

4. The Fourth Circuit Test Used for Bad Faith.

In *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), in deciding whether to dismiss or convert a Chapter 11 case, the fourth circuit looked at findings of objective futility and subjective bad faith. The *Carolin Corp.* decision noted that courts presented with the question of bad faith have uniformly held that: "[G]enerally, an implicit prerequisite to the right to file [a Chapter 11 petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal . . . ." *Carolin Corp.*, 886 F.2d at 698 (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) and 2 L. King, *Collier on Bankruptcy* § 301.05[1] (15th ed. 1979). The *Carolin Court* further noted:

> We agree with the other courts that have so held and conclude that a good faith filing requirement is implicit in several specific provisions of the bankruptcy code, interpreted in light of established policy considerations underlying the code's provision of bankruptcy protection. …. [A] good faith requirement[:] *prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without*



8161\0002\4934-0098-3376.v1

> *benefiting them in any way* or to achieve reprehensible purposes. Moreover, a good faith standard *protects the jurisdictional integrity of the bankruptcy courts* by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Id.* p. 698 (citing *Little Creek Development)*. To make a finding of bad faith, no single factor is considered determinative and any conceivable list of factors is not exhaustive. *Id.* p. 701 (citing *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987); *see also In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D.S.C. 1995) ("In making a determination regarding allegations of bad faith, the Court must examine the totality of the facts of the case.").

5. <u>The Fifth Circuit Test Used for Bad Faith.</u>

The *Franklin* decision correctly quoted the eight bad faith factors from the fifth circuit's decision in *Little Creek Development,* so those factors will not be repeated here. *Little Creek Development* not only noted the "clean hands" requirement for a debtor, but also noted "the bankruptcy court's responsibility to enforce a standard of good faith":

> A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest . . . These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization. . . .

*Little Creek Development,* 779 F.2d at 1072 (citing *American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)).

6. <u>The Eleventh Circuit "Any Factors" Test Used for Bad Faith.</u>

In *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988), the eleventh circuit chose not to include a list of bad faith factors, noting instead that:

> There is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the

> reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'

*Phoenix Picadilly,* 849 F.2d at 1394, *(citing In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.) at 674)).

7. Additional Cases Addressing Bad Faith.

In *McDow v. Smith*, 295 B.R.69, 79-81 n. 22 (Bankr. E.D. Va. 2003) a bankruptcy judge aggregated (from a combination of cases) the lists of bad faith factors that are typically considered:

> (1) The debtor's concealment or misrepresentation of assets; (2) the debtor's lack of candor and completeness in his statements and schedules; (3) *whether the debtor has sufficient resources to repay his debts;* (4) *whether the debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud*, misconduct, or gross negligence; (5) *whether the debtor's petition is part of a deliberate and persistent pattern of evading a single creditor;* (6) *whether the debtor is overutilizing the protection of the Code to the detriment of his creditors*; (7) whether the debtor reduced his creditors to a single creditor prior to filing the petition; (8) *the debtor's lack of attempt to repay creditors;* (9) *the debtor's payment of debts to insider creditors;* (10) *the debtor's procedural gymnastics that have the effect of frustrating creditors;* and (11) *the unfairness of the debtor's use of the bankruptcy process.*

*McDow*, 295 B.R. at 79-81 (citing *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126-27 (6th Cir. 1991), *In re Griffieth*, 209 B.R. 823 (N.D.N.Y. 1996), *In Re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995), and *In re Hammonds*, 139 B.R. 535, 541 (Bankr. D. Col. 1992)).

The D.C. Court of Appeals has found that an involuntary petition was filed in bad faith when it as filed "for the sole purpose of thwarting [Borrower's] rights to have its claims litigated in the D.C. Superior Court." *See, e.g., Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop.*, 441 A.2d 956, 962 (D.C. 1982); *see also Corto v. National Scenery Studios*, 705 A.2d

Case 1:25-cv-03250-SLS Document 1-20 Filed 09/12/25 Page 57 of 446

615, 620 (D.C. 1997) ("The filing of successive bankruptcy petitions [by the debtor's family members] with the clear intent of forestalling the legal proceeding constitutes bad faith.").

## G. Legal Argument

Parties Cannot Collude to Create Federal Jurisdiction.

The longstanding principle that parties cannot manufacture federal jurisdiction over civil actions is codified in the U.S. Code. Under 28 U.S.C. § 1359, federal courts do not have jurisdiction over civil actions "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359 (italic emphasis added). In *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823 (1969), the U.S. Supreme Court outlined the history and purpose of this statute prohibiting collusion to create federal jurisdiction. In *Kramer,* a contract between a Haitian company and a Panamanian company was assigned to a Texas attorney to create federal jurisdiction. The *Kramer* court noted that:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties. Such "manufacture of Federal jurisdiction" was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors.

*Kramer,* 394 U.S. at 828-829 (italic emphasis added); *see also U.S.I. Props. Corp. v. M.D. Constr. Co.,* 860 F.2d 1, 6 (1st Cir. 1988) ("[P]arties may legitimately try to obtain the jurisdiction of federal courts, as long as they lawfully qualify under some of the grounds that allow access to this forum of limited jurisdiction. On the other hand, using a strawman, *or sham transactions, solely for the creation of otherwise unobtainable jurisdiction, is clearly forbidden* both by statute and by the policies that underlie diversity jurisdiction.") (italic emphasis added).

Collusion by the WCP Fund, the WCP, Mr. Huertas, and SF NU to channel ordinary contract and tort litigation into a federal court is exactly what is going on here. They colluded to arrange for some of the Borrowers loan documents, by assignment, to be transferred to JPK NewCo, then created the "insolvency" of JPK NewCo for the express purposes of improperly invoking federal jurisdiction for tactical reasons – to avoid litigating purely state law claims pending in D.C. Superior Court.

<u>There are Numerous Indicators of Bad Faith Here</u>.

JPK NewCo was created, from its inception, with the understanding that there would eventually be a bankruptcy filing, whether voluntary or involuntary. Here, JPK NewCo's only creditor made a "loan" to JPK NewCo one month prior to the filing of *JPK NewCo I*. A bankruptcy filing by JPK NewCo was inevitable as the company existed only on paper and had no revenue and no business operations at the time the "loan" was made to it. In fact, the purported "business operations" of JPK NewCo appear to also have been manufactured. Part of the "loan" to Mr. Shariri was used to fund a loan by JPK NewCo to Energy Morocco. This loan appears to have been made in an veiled effort by JPK NewCo to give the appearance of having some business operations. JPK NewCo then consented to the an involuntary filing on August 6, 2024. This "friendly" involuntary filing was conveniently manufactured so the Lender Defendants could have an additional basis to argue that there was federal jurisdiction over the claims in the Consolidated Cases. Mr. VerStandig conceded that bankruptcy for JPK NewCo was contemplated in arguments he has made on behalf of WCP Fund, Mr. Huertas, the WCP, and SF NU in the Removed AP Case.

The Court must "preserve its jurisdictional integrity". *Little Creek Development*, 779 F.2d at 1072 (internal citations omitted). Collusive conduct to manufacture federal jurisdiction,

forum shop, and delay pending litigation should not be condoned, but rather should be condemned, by this Court, whose very foundation rests on enforcing equitable principles. *Id.*; s*ee also In re Silberkraus*, 253 B.R. 890, 905 (C.D. Cal. Bankr. Ct. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, *forum shop,* or obtain a tactical advantage regarding litigation ongoing in a nonbankruptcy forum – whether that nonbankruptcy forum is a state court or a federal district court.") (italic emphasis added); *In re Meltzer*, 516 B.R. 504, 516 (Bankr. N.D. Ill. 2014) ("The filing of an involuntary case shortly before a hearing in related litigation strongly suggests the case was filed only to stall the hearing.").

The WCP Fund, the WCP, SF NU, and Mr. Huertas are all bad actors here. They transferred loan documents for no consideration with the understanding that JPK NewCo would first use those transfers to as a basis for dismissal, then later file for bankruptcy at some point when it suited their objectives. The collusion to manufacture federal jurisdiction was orchestrated to frustrate the Borrowers' from pursuing their claims in the Consolidated Cases in the forum of their choice. To give the protections and benefits of Chapter 11 -- especially the benefits of subchapter V -- to JPK NewCo under these circumstances would be an abuse of the purposes of the Bankruptcy Code. The underlying purpose of Chapter 11 is to rehabilitate the debtor and offer a fresh start. JPK NewCo is not a legitimate debtor with a business that needs a fresh start -- it is an alter ego of the WCP Fund, the WCP, Mr. Huertas, and SF NU that was created to try to prevent the Borrowers' claims from being decided in D.C. Superior Court. There is no legitimate bankruptcy purpose here. JPK NewCo has no legitimate business operations to reorganize.

<u>The Burden Has Shifted to JPK NewCo.</u>

Because the Borrowers have established a prima facie case that "cause" exists to dismiss this case, the burden shifts to JPK NewCo to demonstrate that "unusual circumstances" exist that

Case 2025-cv-03250-SLS Document 1-20 Filed 09/12/25 Page 90 of 446

establish that dismissing the case is not in the best interests of creditors. *See* 11 U.S.C. § 1112(b)(2). For the Section 1112(b)(2) exception to apply, the Court must find and specifically identify unusual circumstances establishing that dismissing the case is not in the best interests of creditors and the estate. *Id.* The Borrowers do not believe that any unusual circumstances can be found here. This was a collusive bankruptcy case filed to try to gain a tactical advantage and to try to deny the Borrowers from having their claims adjudicated in D.C. Superior Court. This filing was designed to benefit the participants in the scheme and no one else.

<u>The Court Could Liken The Consolidated Cases to a Two-Party Dispute</u>.

While the Borrowers are separate companies, their claims are nearly identical, with the sole difference being that 423 Kennedy has a breach of contract claim due to the failure to fund construction draws. The claims in the two cases were also consolidated, and the interests of the Borrowers are aligned. The Lender Defendants are also all controlled by Mr. Huertas and the WCP Fund, and their interests, too, are aligned. Bankruptcy courts are not supposed to be deciding what are effectively two-party disputes in state court. *In re G–2 Realty Trust*, 6 B.R. 549, 552–53 (Bankr. D. Mass. 1980); *In re Serfass,* 325 B.R. 901, 906 (Bankr. M.D. Fla. 2005) ("Generally, the courts do not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation *is still pending* in a non-bankruptcy forum prior to the commencement of the case.") (italic emphasis added).

## H. <u>CONCLUSION</u>

JPK NewCo was formed, and filed the instant petition, for improper, bad faith purposes. There is no valid reason for this case to continue under Chapter 11. For these reasons, and for any reasons that may be advanced at the evidentiary hearing to be set on this motion, the

Case 1:25-cv-03250-SLS Document 20 Filed 10/02/25 Page 91 of 446

Borrowers respectfully request that this case be dismissed, with prejudice, for cause as being filed in bad faith.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: June 23, 2025

/s/ James D. Sadowski
James D. Sadowski, VSB No. 38326
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails: jds@gdllaw.com
*Counsel for Creditors Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2025, a true copy of the foregoing Motion to Dismiss Chapter 11 Petition Filed in Bad Faith was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☑ | ☐ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** — $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow** — + $ 0.00

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month** — = $ 935.00

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** — $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 0.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 0

27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00

30. How much have you paid this month in other professional fees? $ 0.00

31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 935.00 |

35. Total projected cash receipts for the next month: $ 0.00

36. Total projected cash disbursements for the next month: - $ 0.00

37. Total projected net cash flow for the next month: = $ 0.00



**Appendix - 090**

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- [x] 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- [ ] 39. Bank reconciliation reports for each account.
- [x] 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- [ ] 41. Budget, projection, or forecast reports.
- [ ] 42. Project, job costing, or work-in-progress reports.



Print Save As... APPENDIX - 091 Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

**OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION**
**MONTHLY OPERATING REPORT**
**CHAPTER 11 - BUSINESS DEBTORS**
**Form 2-A**
**COVER SHEET AND QUESTIONNAIRE**

For Month Ended May-25

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document: Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| x | | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. Disbursements Summary for the Month (Form 2-D) |
| x | | 4. Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. Balance Sheet (Form 2-F) |
| x | | 6. Profit and Loss Statement (Form 2-G) |
| x | | 7. Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. Bank Statements for All Bank Accounts |
| x | | 9. Bank Statement Reconciliations for all Bank Accounts |

**QUESTIONNAIRE**

Please answer the questions below:

| Question | Yes | No |
|---|---|---|
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 7/2/2025 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

10:05 AM
07/02/25
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of May 31, 2025

| | | May 31, 25 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 935.00 |
| **Total Checking/Savings** | | 935.00 |
| **Other Current Assets** | | |
| **1230 Notes Receivable** | | |
| **Energy Morocco LLC** | 26,000.00 | |
| **Total 1230 Notes Receivable** | | 26,000.00 |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 46,000.00 |
| **Total Current Assets** | | 46,935.00 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,127,449.86** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |

10:05 AM
07/02/25
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of May 31, 2025

| | May 31, 25 |
|---|---|
| **Equity** | |
| **SF NU, LLC** | 899,861.88 |
| **WCP Fund I LLC** | 2,177,587.98 |
| **Total Equity** | 3,077,449.86 |
| **TOTAL LIABILITIES & EQUITY** | **3,127,449.86** |

Case 1:25-cv-03250-SLS Document 20 Filed 08/11/25 Page 99 of 446

10:06 AM
07/02/25
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### May 27 - 31, 2025

| | May 27 - 31, 25 |
|---|---|
| **Net Income** | **0.00** |

Case 25-00206-ELG Doc 26 Document Filed 08/17/25 Page 100 of 446

10:08 AM

07/02/25

# JPK NewCo LLC
## Statement of Cash Flows
### May 27 - 31, 2025

| | May 27 - 31, 25 |
|---|---|
| **Cash at beginning of period** | 935.00 |
| **Cash at end of period** | **935.00** |

**UNITED BANK**

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 05/31/2025 |
| **Page:** | 1 of 1 |

6025 W18493REG05312504024 01 000000000 222445 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

## Customer Care Information

Phone: 800.327.9862

Mailing Address: P.O. Box 393, Charleston, WV 25322-0393

Visit Us Online: BankWithUnited.com

6025 0006025 0001-0001 0000000000000000

## FREE BUSINESS CHECKING

**Account Number:** [redacted]8700

## Balance Summary

| | |
|---|---|
| **Beginning Balance as of 05/01/25** | **$935.00** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 05/31/25** | **$935.00** |
| Number of Days in Statement Period | 31 |
| Low Balance | $935.00 |
| Average Balance | $935.00 |
| Average Collected Balance | $935 |

## Overdraft\Return Item Fees

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC

**Appendix - 097**

THIS FORM IS PROVIDED TO HELP YOU BALANCE YOUR BANK STATEMENT

CHECKS OUTSTANDING—NOT CHARGED TO ACCOUNT

| No. | $ | | No. | $ | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Checks Outstanding | $ | |

The balance should agree with your checkbook balance after deducting any service charge and adding any interest earned shown on this statement.

BANK BALANCE SHOWN IN THIS STATEMENT $ ______

ADD DEPOSITS NOT CREDITED IN THIS STATEMENT + $ ______

TOTAL $ ______

SUBTRACT CHECKS OUTSTANDING - $ ______

BALANCE $ ______

**In case of errors or questions about your electronic transfers.**

Write us at:
United Processing Center
500 Virginia Street, East
P. O. Box 393
Charleston, WV 25322-0393

Call: 800.327.9862

Email us through the "Contact Us" link on our website: www.BankWithUnited.com

**Electronic Fund Transfers (Consumer Accounts Only)**

In case of errors or questions about your electronic fund transfers, if you think your statement or receipt is wrong or if you need more information about a transfer listed on a statement or receipt, please contact us as soon as possible by visiting your nearest United Bank branch or by calling 800-327-9862. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. You must:

1. Tell us your name and account number;
2. Describe the error or the transfer about which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information; and
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. After we hear from you, we will determine whether an error occurred within 10 business days (5 business days for United Check Card point-of-sale transactions and 20 business days if the transfer in question occurred within 30 days of your initial deposit to that account, i.e., a "new" account) and will correct any error promptly.

If we need more time, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or foreign-initiated transfer) to investigate your complaint or question. If we decide to do this we will recredit your account for the amount you think is in error, minus a maximum of $50, so that you have use of the funds during our investigation. If we ask you to put your complaint in writing and we do not receive it within 10 business days, we may not credit your account. We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error or that the error occurred in a manner or amount different than you originally described, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you think your statement shows transfers that you did not make, tell us as soon as possible. If you do not inform us within 60 days after the statement was mailed or made available to you, you may not get back any money you lost after 60 days. This will occur if we can prove that we could have stopped the transaction(s) with proper notification from you within the 60 days.

EQUAL HOUSING LENDER

Member FDIC

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

❑ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ____________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ❑ | ❑ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ❑ | ❑ |
| 3. Have you paid all of your bills on time? | ☑ | ❑ | ❑ |
| 4. Did you pay your employees on time? | ❑ | ❑ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ❑ | ❑ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ❑ | ❑ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ❑ | ❑ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ❑ | ❑ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ❑ | ❑ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ❑ | ☑ | ❑ |
| 11. Have you sold any assets other than inventory? | ❑ | ☑ | ❑ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ❑ | ☑ | ❑ |
| 13. Did any insurance company cancel your policy? | ❑ | ☑ | ❑ |
| 14. Did you have any unusual or significant unanticipated expenses? | ❑ | ☑ | ❑ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ❑ | ☑ | ❑ |
| 16. Has anyone made an investment in your business? | ❑ | ☑ | ❑ |

Debtor Name JPK NewCo LLC Case number 25-00200

17. Have you paid any bills you owed before you filed bankruptcy? ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*. + $ 0.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC  Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** *(Exhibit F)* $ 0.00

## 5. Employees

26. What was the number of employees when the case was filed? 0

27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00

30. How much have you paid this month in other professional fees? $ 0.00

31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 935.00 |

35. Total projected cash receipts for the next month: $ 0.00

36. Total projected cash disbursements for the next month: - $ 0.00

37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- [x] 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- [ ] 39. Bank reconciliation reports for each account.
- [x] 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- [ ] 41. Budget, projection, or forecast reports.
- [ ] 42. Project, job costing, or work-in-progress reports.



Print Save As... **APPENDIX - 102** Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

## OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION
## MONTHLY OPERATING REPORT
## CHAPTER 11 - BUSINESS DEBTORS
### Form 2-A
## COVER SHEET AND QUESTIONNAIRE

For Month Ended: Jun-25

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|---|
| x | | 1. | Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. | Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. | Disbursements Summary for the Month (Form 2-D) |
| x | | 4. | Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. | Balance Sheet (Form 2-F) |
| x | | 6. | Profit and Loss Statement (Form 2-G) |
| x | | 7. | Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. | Bank Statements for All Bank Accounts |
| x | | 9. | Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 7/18/2025 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

3:43 PM
07/18/25
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of June 30, 2025

| | | Jun 30, 25 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 935.00 |
| **Total Checking/Savings** | | 935.00 |
| **Other Current Assets** | | |
| **1230 Notes Receivable** | | |
| **Energy Morocco LLC** | 26,000.00 | |
| **Total 1230 Notes Receivable** | | 26,000.00 |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 46,000.00 |
| **Total Current Assets** | | 46,935.00 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,127,449.86** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |

3:43 PM
07/18/25
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of June 30, 2025

| | Jun 30, 25 |
|---|---|
| **Equity** | |
| **SF NU, LLC** | 899,861.88 |
| **WCP Fund I LLC** | 2,177,587.98 |
| **Total Equity** | 3,077,449.86 |
| **TOTAL LIABILITIES & EQUITY** | **3,127,449.86** |

3:44 PM
07/18/25
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January through June 2025

| | Jan - Jun 25 |
|---|---|
| **Net Income** | **0.00** |

3:45 PM

07/18/25

# JPK NewCo LLC
# Statement of Cash Flows
## June 2025

| | Jun 25 |
|---|---|
| **Cash at beginning of period** | 935.00 |
| **Cash at end of period** | **935.00** |

UNITED BANK

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 06/30/2025 |
| **Page:** | 1 of 1 |

6208 W18493REG07012505165 01 000000000 323504 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

**Customer Care Information**

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

6208 0006208 0001-0001 0000000000000000

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 06/01/25** | **$935.00** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 06/30/25** | **$935.00** |
| Number of Days in Statement Period | 30 |
| Low Balance | $935.00 |
| Average Balance | $935.00 |
| Average Collected Balance | $935 |

**Overdraft\Return Item Fees**

| **Fee Type** | **Total For This Period** | **Total Year-To-Date** |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-200-ELG |
| | ) | (Chapter 11) |
| JPK NEWCO LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION OF WCP FUND I LLC TO**
**DEVELOPER RE1, LLC'S AND 423 KENNEDY ST. HOLDINGS,**
**LLC'S MOTION TO DISMISS CHAPTER 11 PETITION FILED IN BAD FAITH**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

# TABLE OF CONTENTS

I. Introduction ..... 1

II. Statement of Relevant Facts ..... 4

a. Real Estate Loans and Defaults ..... 4

b. Litigation & Mediation ..... 4

c. Formation of a Special Purpose Entity ..... 6

d. JPK Business Operations ..... 7

e. 2024 Bankruptcy ..... 8

f. Litigation ..... 8

III. Argument: This is Not a Bad Faith Bankruptcy ..... 9

a. Adoption of the Fourth Circuit Standard Would Require the Motion be Denied ..... 11

i. This Case is Not Objectively Futile ..... 13

ii. This Case is Not a Byproduct of Subjective Bad Faith ..... 14

iii. This Court Should Adopt the *Bestwall* Standard ..... 16

b. Adoption of the Third Circuit Standard Would Also Require the Motion be Denied ..... 18

c. A Totality of Circumstances Analysis Would Also Require the Motion be Denied ..... 21

IV. Conclusion ..... 25

## TABLE OF AUTHORITIES

**Cases**

*15375 Mem'l Corp. v. BEPCO, LP (In re 15375 Mem'l Corp.)*,
589 F.3d 605 (3d Cir. 2009) .......... 19

*Carolin Corp. v. Miller*,
886 F.2d 693 (4th Cir. 1989) .......... *passim*

*Coleman v. Cmty. Tr. Bank (In re Coleman)*,
426 F.3d 719 (4th Cir. 2005) .......... 17

*Duggan v. Highland-First Ave. Corp.*,
25 B.R. 955 (Bankr. C.D. Cal. 1982) .......... 22

*Emp. v. AIG Fin. Prods. Corp. (In re AIG Fin. Prods. Corp.)*,
2024 U.S. Dist. LEXIS 155142 (D. Del. Aug. 28, 2024) .......... 20, 21

*In re Aldrich Pump LLC*,
2023 Bankr. LEXIS 3043 (Bankr. W.D.N.C. Dec. 28, 2023) .......... 14

*In re Little Creek Dev. Co.*,
779 F.2d 1068 (5th Cir. 1986) .......... 22

*In re LTL Mgmt. LLC*,
2024 U.S. App. LEXIS 18437 (3d Cir. July 25, 2024) .......... 18, 20, 21

*In re SGL Carbon Corp.*,
200 F.3d 154 (3d Cir. 1999) .......... 20

*In re Thirtieth Place, Inc.*,
30 B.R. 503 (9th Cir. BAP 1983) .......... 15

*LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*,
64 F.4th 84, 108 (3d Cir. 2023) .......... *passim*

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*,
384 F.3d 108 (3d Cir. 2004) .......... 19

*Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*,
52 F.3d 127 (6th Cir. 1995) .......... 22

Case 25-00205-ELG-32500-S29 Document 26 Filed 08/07/25 Page 116 of 446

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
860 F.2d 1 (1st Cir. 1988) ........ 12

**Statutes**

11 U.S.C. § 362 ........ 9

28 U.S.C. § 1334 ........ 12

**Rules**

Federal Rule of Evidence 408 ........ 5

Case 25-01200-ELG-325 Doc 29 Document 20 Filed 08/07/25 Page 117 of 446

Comes now WCP Fund I LLC ("WCP"), the largest equity holder of JPK NewCo LLC ("JPK" or the "Debtor"), by and through undersigned counsel, in opposition to Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Motion to Dismiss Chapter 11 Petition Filed in Bad Faith (the "Motion," as found at DE #19, with the proponents thereof being known as "DRL" and "423 Kennedy" and being collectively known as the "Movants"), and states as follows:

## I. Introduction

Commencing on page 31 of the Motion's 35 pages,[1] the Movants finally turn to making a legal argument—one that ultimately spans a grand total of four pages. Therein, after a lengthy and frequently pejorative regurgitation of an oft-immaterial litigation history, DRL and 423 Kennedy urge that (i) JPK has colluded to create federal jurisdiction; (ii) JPK bears indicia of being a bad faith debtor under a hybrid application of factors from various courts; (iii) JPK and its principals are reprehensible entities that ought to be treated as such; (iv) a burden shift has occurred under Section 1112 of Title 11 of the United States Code (the "Bankruptcy Code"); and (v) this is a two-party dispute. The Movants are uniformly errant in connection with each and every one of these contentions.[2]

The Movants' jurisdictional attack misses that precedent well establishes the filing of a bankruptcy petition, and correlative commencement (or removal) of litigation, is *not* an improper creation of federal jurisdiction. To the contrary, and as explained in some detail by the Fourth Circuit in *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168

---

[1] Page number references are to those imprinted on the foot of each page, not those found in the ECF-generated header.

[2] While the former three arguments are discussed in detail throughout this brief, the latter two are only touched upon in this introductory section insofar as scant ink is devoted to these contentions by the Movants in their Motion.

(4th Cir. 2023), the filing of a bankruptcy petition—and exercise of jurisdiction attendant thereto—is nothing more than the exercise of rights already extant under controlling law. Holding otherwise would be to not merely greatly reduce the scope of bankruptcy courts' work but, too, to plainly ignore jurisdictional grants expressly made by Congress in Title 28 of the United States Code.

Nor is JPK a bad faith debtor based on any of the cited factors or any combination thereof. The Movants manifestly mischaracterize the operations of the Debtor, suggesting that being a noteholder and lender is not sufficient to warrant being recognized as an entity conducting legitimate business affairs. And, with no small quotient of irony, the Movants' broadside premised upon "new debtor syndrome" seems to miss that, due almost exclusively to the Movants' own dilatory tactics, JPK was well more aged than most supermarket cabernets before initiating this chapter 11 case.

Similarly, while caged as part of the larger "bad faith" argument, it merits notation that the assault of 423 Kennedy and DRL, on the principals and affiliates of JPK, is fervently misplaced. Two entities that refuse to pay their debts as they come due, that have vibrant histories of missing promissory note payments, that struggle to tend to the barest obligations of property ownership, and that seem to prize suing an attorney in furtherance of a pronounced effort to scorch earth, are accusing well-regarded members of the local community of being "bad actors." Motion, DE #19, at p. 33. Worse, these claims are being made without the adornment of any allegations that, if true, would come anywhere near supporting such. That the Movants dislike the Debtor and its affiliates is assuredly unsurprising; that the Movants feel the need to propagate playground insults on a federal docket is unfortunate.

As to the burden shift suggested by the Movants, such is assuredly never reached insofar as the Motion comes well shy of establishing cognizable statutory "cause." Yet, even if, *arguendo*,

such a shift were to occur, the Motion's scant—if not non-existent—attention to salient points is noteworthy: this is a case in which it is overwhelmingly likely that a plan will be timely confirmed; where such confirmation will be to the benefit of "creditors and the estate," 11 U.S.C. § 1112(b)(2); where there are no ills necessitating a timely cure; and where JPK's actions are more than reasonably justified.

Equally, neither is this case a two party dispute nor is the existence of a two party dispute grounds upon which to dismiss a bankruptcy case. That there are two movants—who show no indicia of wishing to assume status as one another's alter ego—is sufficiently dispositive here; the existence of at least one other creditor makes the reality all the more manifest. Yet, equally, the bemoaning of a "two party dispute" is not something that has ever much gained traction in this Honorable Court or most other bankruptcy courts for a simplistic reason oft-recited by a neighboring judge: if two-party disputes were improper fodder for bankruptcy, the overwhelming majority of chapter 13 cases would be summarily dismissed.

More macroscopically, it bears observation that the Movants urge a legitimately formed entity, holding promissory notes and deeds of trust, and engaged in both lending and borrowing activity, ought not be permitted to seek bankruptcy protection. Such is an extraordinary assertion by any estimation and, notably, one that no other party in interest has cared to advance in this case. And, at the core of this assertion appears to be little more than a pronounced dislike for the prospect of claims concerning the debtor/creditor relationship being adjudicated by a court topically expert in the adjudication of claims concerning the debtor/creditor relationship. This is, no doubt, a woeful and troubling proposition, with DRL and 423 Kennedy seemingly suggesting that neither the Bankruptcy Code nor vast collections of case law thereunder ought to apply when, as here, two creditors really, really do not want to see their claims administered by a bankruptcy court.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II. Statement of Relevant Facts

### a. Real Estate Loans and Defaults

1. In December 2021, WCP loaned $4,103,000.00 to DRL, with the subject loan being memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes").

2. The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property").

3. Similarly, in March 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the subject loan being memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes")

4. The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property").

5. Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity.

### b. Litigation & Mediation

6. DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they each brought

suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their business relations.

7. The two respective complaints are colorful in nature, with one expressly alleging that "Money is the Root of All Evil," and one accusing WCP of corruption.

8. In light of the two complaints and correlative motions for injunctive relief, the District of Columbia Superior Court entered injunctions prohibiting the defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust.

9. Following the entry of these injunctions, all parties agreed to mediate before a retired Superior Court judge, with DRL and 423 Kennedy sharing a common principal (albeit not having purely overlapping equity membership).

10. During the course of two formal mediation sessions, certain potential resolutions were discussed whereby 423 Kennedy and/or DRL would release claims in exchange for participating in a share of loan profits.[3]

11. As part of the aforesaid negotiations, WCP introduced the idea of transferring certain promissory notes into a so-called "special purpose entity," so ownership interests in the negotiable instruments could be ultimately divided pursuant to a settlement agreement without (i) having to sever the notes themselves into multiple pieces; and/or (ii) needing to offer DRL and/or 423 Kennedy an ownership interest in WCP or any of its co-defendants.

12. The two formal mediation sessions were held with a retired judge on January 9, 2024 and January 25, 2024.

[3] For the avoidance of doubt, this statement is *not* offered to "prove or disprove the validity or amount of a disputed claim," Fed. R. Evid. 408(a), and, to the contrary, WCP and WCP's co-defendants in the subject litigation strongly deny any and all liability. Rather, these discussions are shared to offer a complete contextual understanding of how JPK came into existence.

**c. Formation of a Special Purpose Entity**

13. Shortly following the second mediation session, WCP and SF NU, LLC ("SNL") formally created JPK, with the entity being registered on February 1, 2024.

14. JPK was created on the advice of counsel, with then-present cognizance the entity could be used to either facilitate an amicable resolution to the pending litigation and/or as a mechanism of siloing troubled assets so as to remove those assets, and their accompanying putative liabilities, from the balance sheets of WCP and SNL.

15. Specifically, insofar as a good faith analysis of the claims in the Superior Court litigation reveals relief to be sought in the form of an *in rem* setoff against liability due and owing on the four promissory notes, transferring the two junior notes into a separate entity effectively serves to firewall any liability from reaching WCP or its various co-defendants.

16. While WCP and its co-defendants remain liable for any damages that may exceed a setoff of the two notes held by JPK, reasoned analysis of the subject litigation suggests it is exceedingly unlikely liability could extend to such a level.

17. At the time JPK was formed, there existed a cognizance that the entity may seek bankruptcy protection should settlement efforts fail.

18. JPK is not a Texas limited liability company and was not formed pursuant to a so-called "divisional merger" of WCP and/or SNL, but JPK's creation does resemble what is colloquially known as a "Texas Two Step" insofar as JPK absorbed assets carrying alleged *in rem* liability and thereby siloed the likely reach of the subject claims from the balance sheets of WCP and SNL.

**d. JPK Business Operations**

19. JPK was capitalized by WCP and SNL through contribution of the two junior promissory notes and assignment of the correlative deeds of trust, with membership interests being given as consideration for the contribution of the promissory notes.

20. The formation and capitalization of JPK is reflected in the entity's operating agreement.

21. Following its formation, JPK needed funds to engage counsel and operate, with the expectation JPK would be joined in the litigation pending in the Superior Court.

22. To procure such funds, JPK borrowed $50,000.00 from a third party.

23. The third party lender was advised that JPK may use part or all of the loan proceeds to engage counsel, including the potential engagement of insolvency counsel; the third party was not misled as to the very distinct potential of JPK seeking to reorganize in bankruptcy.

24. A portion of the loan proceeds were transferred to the IOLTA account of WCP's litigation counsel, to be held pending anticipated engagement to represent JPK in the litigation.

25. The remaining loan proceeds were loaned to an unrelated third party in an effort to make a profit from interest (as a company owned by lenders would be wont to do).

26. JPK's borrowing funds from a third party, and lending funds to a third party, were both done on the advice of counsel, albeit with JPK's manager exercising discretion as to the third parties with whom said transactions were undertaken.

27. Should JPK recover monies from the loan extended to a third party, or the two secured promissory notes with which JPK was capitalized by WCP and SNL, JPK would be able to use such funds in future business operations, including through the making of new loans to third parties in the District of Columbia metropolitan area.

**e. 2024 Bankruptcy**

28. In July 2024, an involuntary petition for chapter 11 relief was filed against JPK by a friendly creditor, with JPK thereafter being adjudicated a debtor in August 2024 and the case being dismissed, by consent, in February 2025. *See In re JPK NewCo LLC*, Case No. 24-262-ELG (Bankr. D.D.C. 2024).

29. The dismissal of JPK's original bankruptcy case stemmed from a niche dispute concerning the payment of quarterly fees to the United States Trustee where a case is commenced as a "traditional" chapter 11 proceeding but thereafter converted to one under Subchapter V. *Id.* at DE #85.

30. The dismissal of JPK's original bankruptcy was expressly without prejudice and, in setting forth certain administrative deadlines related to the closure of affairs in that case, the dismissal order specifically noted such deadlines "shall not be construed as a bar to the Debtor sooner petitioning for Chapter 11 relief should the Debtor so elect." *Id.*

**f. Litigation**

31. The Movants' claims against JPK, WCP, SNL and others are currently pending in the District of Columbia Superior Court, where the action has been stayed by the presiding judge on account of JPK's bankruptcy filing. *See Developer RE1 LLC, et al. v. DP Capital LLC, et al.*, Case No. 2022-CAB-005935 (D.C. Sup. Ct. 2022); Order, attached hereto as Exhibit A.

32. As of the filing of this opposition brief, the Movants have not sought relief from the automatic stay enshrined in Section 362 of the Bankruptcy Code so as to allow the Superior Court litigation to proceed. *See* Docket, *passim*.

33. The Debtor has, however, commenced an adversary proceeding, in this Honorable Court, aimed at effectuating the efficient and expedient resolution of the Movants' core claims.

*See JPK NewCo LLC, et al. v. Developer RE1 LLC, et al.*, Case No. 25-10015-ELG (Bankr. D.D.C. 2025).

34. As of the filing of this brief, the Movants have not docketed a responsive pleading in the adversary proceeding, despite their time to do so having long-since elapsed, and, rather, have filed a motion to stay and suspend deadlines. *Id.* at DE #5. As noted *passim*, this appears to be part of a pattern and practice whereby the Movants habitually seek to stay or continue matters that could lead to the adjudication of their claims, creating an unusual (albeit not unheard of) paradigm whereby it is the Debtor—not the impacted creditor base—that is looking to have creditor claims promptly adjudicated through the bankruptcy process.

## III. Argument: This is Not a Bad Faith Bankruptcy

Dozens of times each year, this Honorable Court is confronted with the chapter 11 case of a single asset real estate entity facing imminent foreclosure. For better or worse, such cases—alongside closely-related proceedings concerning single asset landlords committed to Superior Court receivership—form a vibrant majority of the local reorganization docket. Yet, with a few particularly-colorful exceptions normally involving the outright forging of documents (or manufacture of doors that open only to brick walls), these matters are scantly—if ever—challenged as bad faith filings, even when a debtor has acquired real estate with the proceeds of a short term loan and promptly defaulted thereupon. Of course a single asset real estate entity is permitted to seek bankruptcy relief; Section 362 of the Bankruptcy Code even provides special provisions for the temporal obligations of such debtors. So it necessarily strikes as problematic for the Movants to now suggest that a lender—holding not one but three separate loans, made to three separate entities—ought not be permitted access to the same reorganizational toolbox. That the lender in

question has been in existence for far longer than many single asset real estate entities only makes the Motion all the more befuddling.

The core thesis of the Motion is that an entity holding quantitatively few assets, with but only three creditors, must suffer some ill-defined probationary period—of seemingly at least fifteen months—before petitioning for bankruptcy relief and affording itself of the protections associated therewith. In so contending, the Movants—notably without ever invoking the actual verbiage—appear to take aim at so-called "Texas Two Step" bankruptcies, suggesting an entity enmeshed in potentially-costly litigation ought not be permitted to spin off the impacted assets into a new company that will likely avail itself of the synergies and efficiencies of bankruptcy protection. Yet case law is plain that such a maneuver is entirely permissible, no matter the standard applied. While certain such cases have failed and been found to be exercises in bad faith, the failures have never been attributable to (i) the underlying corporate divestiture or (ii) a young entity not being permitted entry into bankruptcy court; the failures, rather, have almost always been idiosyncratically tied to the financial health of the petitioning debtors.

Identifying the appropriate standard, however, is somewhat more difficult. It has been 33 years since this Honorable Court spoke to the onus requisite to dismiss a chapter 11 case as a bad faith filing, in the context of a published opinion. That opinion— *In re Franklin Mortg. & Inv. Co*., 143 B.R. 295 (Bankr. D.D.C. 1992)—is neither a district nor circuit-level holding and predates the recent wave of Third and Fourth Circuit holdings addressing fact patterns more analogous to what is instantly manifest. So while review of JPK's case under the *Franklin Mortgage* standard is most certainly addressed herein, this brief will first address the more modern holdings of nearby circuits, with those holdings appearing more temporally influential than a one-

Case 25-01205-EL-03250-S29 Document 20 Filed 08/07/25 Page 127 of 446

off opinion released by Judge Teel the day before Michael Jordan, Larry Bird, and David Robinson led the "Dream Team" to victory over Germany in the group stage of the Barcelona Olympics.

**a. Adoption of the Fourth Circuit Standard Would Require the Motion be Denied**

Scantly two years ago, the Fourth Circuit reaffirmed a longstanding and well-settled doctrine providing that in order for a chapter 11 case to be dismissed on bad faith grounds, "the complaining party must show both 'subjective bad faith' and the 'objective futility of any possible reorganization.'" *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 182 (4th Cir. 2023) (quoting *LTL I*, 64 F.4th at 98 n.8 (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989))). In so holding, the appellate court addressed the case of an entity formed pursuant to a so-called "Texas Two Step" for the transparent purposes of abiding a divisional merger counterparty's "desire to pursue its non-asbestos-related business apart from asbestos-related litigation or a bankruptcy proceeding while keeping its assets available to satisfy any asbestos-related liabilities, if required." *Bestwall*, 71 F.4th at 183.

*Bestwall* may actually be the precedent most analogous to the instant case. While JPK certainly is not in the asbestos business, and is not being actively accused of contributing to tens of thousands of deaths and chronic illnesses, JPK is being accused of being the byproduct of a transaction aimed at allowing a spun off entity, holding troubled assets, to avail itself of the jurisdictional protections of the Bankruptcy Code. In *Bestwall*, creditors asserted such an effort to be improper, urging asbestos litigation to belong in the courts in which it was commenced and to be outside the purview of the bankruptcy court. *Id.* at 180 ("The Claimant Representatives also assert that Old GP impermissibly sought to manufacture jurisdiction in the bankruptcy court which could prevent this Court from exercising 'related to' jurisdiction. We disagree with the Claimant Representatives' argument and the dissent's acceptance of that argument.").

The Fourth Circuit, confronted with this strenuous objection to the propriety of garnering bankruptcy jurisdiction through a strategic corporate split, roundly rejected the creditors' argument by observing bankruptcy jurisdiction to have been available to the original, pre-merger entity and to have simply passed, through the corporate split, to the new company:

> . . . Old GP, New GP, and Bestwall did not manufacture jurisdiction via their Texas divisional merger. This is evident because without the restructuring, the asbestos claims would have remained with Old GP. And, if Old GP had filed for bankruptcy, the bankruptcy court would have had jurisdiction over those claims as it does over the same claims here.
>
> Thus, as Bestwall and New GP point out, "the corporate restructuring leaves the jurisdictional result the *same*."

*Id.* at 181 (citing 28 U.S.C. § 1334(b); *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 6 (1st Cir. 1988)) (internal citation omitted) (emphasis in original).

This is a critical point insofar as it appears to undermine the Movants' working theory that JPK has worked to "manufacture federal jurisdiction." Motion, DE #19, at p. 31. The Motion posits that "[c]ollusion by the WCP Fund, the WCP, Mr. Huertas, and SF NU to channel ordinary contract and tort litigation into a federal court is exactly what is going on here." *Id.* at p. 32. Yet this contention misses that (i) the Superior Court litigation has been stayed; (ii) as of present, the Superior Court litigation has not been removed (though it certainly may later be removed); and (iii) WCP or SNL could have removed the Superior Court litigation to this Honorable Court had either entity itself filed for bankruptcy protection, as highlighted by the *Bestwall* Court.

Indeed, as in *Bestwall*, jurisdiction in this Honorable Court was not *manufactured*; jurisdiction that was invokable by both WCP and SNL was merely passed to JPK through capitalization of the new entity with the transfer of promissory notes bearing alleged *in rem* liability. When JPK received putatively troubled assets from its two equity holders, JPK received, too, the jurisdictional rights and entitlements that come with holding putatively troubled assets.

These rights and entitlements flowed with the promissory notes in a manner no different than the correlative deeds of trust or the rights to be paid by the obligors thereunder. The jurisdictional rights and entitlements cannot be severed from the assets to which they attach and, accordingly, necessarily flow with ownership.

#### i. This Case is Not Objectively Futile

Using the *Bestwall* test, the first conjunctive rigor of a bad faith finding is objective futility. This prong traces back to *Carolin Corp*., where the Fourth Circuit observed that ". . . even if subjective bad faith in filing could properly be found, dismissal is not warranted if futility cannot also be found." *Carolin Corp*. 886 F.2d at 701.

Here, the JPK bankruptcy is most certainly not objectively futile. The Debtor holds three promissory notes: an unsecured note for slightly more than $50,000.00 and two secured notes that total over $3 million. While JPK's debt to one creditor is not disputed, the Debtor's *in rem* obligations on the two secured notes are heavily disputed. If JPK prevails *at all* in in its claims against DRL and 423 Kennedy (claims that are currently being litigated through an adversary proceeding in this Honorable Court and that may also play out through the claims objection process), JPK will be able to pay all of its debts in cash and/or kind, emerging from chapter 11 as a healthy company.

Moreover, and without seeking to prematurely adjudicate the merits, *vel non*, of the adversary claims brought by JPK, there is good reason to believe JPK will prevail. DRL and 423 Kennedy do not dispute failing to pay the at-issue promissory notes at maturity, nor do they seem to dispute having failed to make numerous interest payments in a timely fashion, nor do they seem to dispute that their failure to pay taxes and other municipal obligations caused senior liens to accrue upon their respective properties in contravention of the deeds of trust. DRL and 423

Kennedy are certainly welcome to continue to argue that these breaches were too slight to give rise to defaults, and that the terms of commercial debt instruments should be construed with the same borrower-friendly allowances as those of consumer debt instruments. But it is genuinely difficult to posit that DRL and 423 Kennedy have so great a chance of ultimately succeeding on these contentions as to leave JPK, in turn, with liabilities that wholly exceed the value of JPK's assets and thereby render JPK unable to reorganize.

JPK needs only a modest return on the two secured notes to successfully emerge from bankruptcy; the unsecured note will, in time, produce a return of both principal and interest capable of getting JPK on the proverbial right foot. So while JPK certainly believes it is entitled to every single dollar of the secured notes on which DRL and 423 Kennedy are obligated, the conservative reality is that if JPK were to collect only $100,000.00—a sum less than 1/31st the scheduled value of those assets—JPK would, in turn, be comfortably able to pay all claims in full and successfully reorganize with a so-called "100% plan."

**ii. This Case is Not a Byproduct of Subjective Bad Faith**

Insofar as there can be no finding of objective futility, analysis of subjective bad faith is immaterial given the conjunctive nature of the two prongs of the *Bestwall* test. *See, e.g.*, *In re Aldrich Pump LLC*, 2023 Bankr. LEXIS 3043, at *64 (Bankr. W.D.N.C. Dec. 28, 2023) (". . . a Chapter 11 case may be dismissed as a bad faith filing only when the bankruptcy reorganization is both (i) objectively futile and (ii) filed in subjective bad faith.") (emphasis in original). Yet even if inquiry were made into this realm, the facts *sub judice* certainly do not evidence subjective bad faith, instead pointing to an honest lending company that is seeking to reorganize in the court that, somewhat ironically, is so frequently called upon to lend aid to lenders' counterparties in their hours of greatest need.

The Fourth Circuit has explained, of the subjective bad faith standard, that the rigor's aim is to:

> . . . determine whether the petitioner's real motivation is "to abuse the reorganization process" and "to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities."

*Carolin Corp*., 886 F.2d at 702 (quoting *In re Thirtieth Place, Inc*., 30 B.R. 503, 505 (9th Cir. BAP 1983)).

If the emphasis on an intent or ability to actually reorganize appears redundant to the inquiry focused on objective futility, such is neither coincidence nor folly: "Evidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*. Indeed it could be that some of the courts ostensibly holding that dismissal is warranted upon a finding of either have considered that proof of either implicitly proves both." *Carolin Corp.*, 886 F.2d at 701.

JPK most certainly has both an intent and an ability to reorganize its financial activities, as discussed above. Equally tellingly, however, the JPK bankruptcy has scantly invited any delay or harm to its putative creditors. While the consolidated Superior Court cases have only marginally advanced over the past year (with a duo of rulings on motions to dismiss), the lion's share of the delay has been directly occasioned by the Movants' own seemingly kneejerk insistence on consistently demanding stays and continuances. Yes, the automatic stay has now caused the Superior Court litigation to be sidelined for just over a month, but (i) JPK has been working to address the underlying issues through an adversary proceeding (which, counterproductively, the Movants are seeking to have indefinitely stayed); and (ii) either or both of the Movants would, of course, be free to simply remove the Superior Court litigation to this Honorable Court and accordingly be rid of any delays occasioned by the automatic stay.

To be sure, any objective review of the docket herein and the Superior Court docket reveals that it is JPK—not the Movants—that has been endeavoring, time and again, to advance adjudication of the Movants' theories of relief. JPK is a Subchapter V debtor that wants nothing more than to be rid of these Damoclean swords. DRL and 423 Kennedy, by contrast, have repetitively sought continuances, moved for stays, and insisted that the subject claims should not and ought not be adjudicated unless and until DRL and 423 Kennedy think the time and locale right.

**iii. This Court Should Adopt the *Bestwall* Standard**

Familiarly, that this Honorable Court is surrounded by the Fourth Circuit, much as the Vatican is surrounded by Rome, does not render this Honorable Court subject to Fourth Circuit precedent. And one need not look beyond questions of corporate small business debtors receiving a discharge from liabilities that would otherwise hang like an anvil around the neck of a natural person, or of a bankruptcy court's ability to entertain moot proceedings devoid of a case or controversy, to find fertile ground to question the Fourth Circuit's guidance on emerging hot button insolvency issues. But the line of cases commenced with *Carolin* and following through *Bestwall* stands in necessary distinction to these more infamous pronouncements for the simple reason that the policy rationale is both compelling and sound. While adoption of *any* of the standards discussed herein would result in the Motion being denied, it does seem the *Bestwall* standard is that best suited for the District of Columbia Circuit.

Core to *Carolin* and *Bestwall* is the requirement that a case be both objectively futile *and* brought in subjective bad faith for dismissal to be granted on bad faith grounds. There is a compelling bankruptcy-centric rationale for this two-pronged rigor:

> Such a test obviously contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort

> so motivated might nevertheless yield a successful rehabilitation. Just as obviously, it contemplates that it is better to risk the wastefulness of a probably futile but good faith effort to reorganize than it is to risk error in prejudging its futility at the threshold. We believe that such a stringent test is necessary to accommodate the various and conflicting interests of debtors, creditors, and the courts that are at stake in deciding whether to deny threshold access to Chapter 11 proceedings for want of good faith in filing.

*Carolin Corp.*, 886 F.2d at 701. *See also Coleman v. Cmty. Tr. Bank (In re Coleman)*, 426 F.3d 719, 727 (4th Cir. 2005) (reaffirming the policy rationale).

This case exemplifies the soundness of the Fourth Circuit's reasoning. Where, as here, a motion to dismiss on bad faith grounds is lodged at the outset of a case, suspicions and innuendo have a tendency to supplant facts and reality. A challenge to plan confirmation can be rooted in the provisions of a plan of reorganization and the record established during a bankruptcy case's pendency; an out-of-the-gate motion to dismiss is rooted in little more than raw speculation, so often fomented by the creditor(s) most angered by a debtor's election to invoke chapter 11 protections in the first instance. And, as is all-too-familiar to this Honorable Court, ever scarce are the creditors who delight in being notified that a bankruptcy case has been commenced.

Here, the facts proffered by the Movants—an almost-cynically one-sided recitation of their ongoing efforts to avoid repaying loans whilst continuing to enjoy the collateral posted as security for those same loans—are actually immaterial to the Motion. The merits, *vel non*, of DRL and 423 Kennedy's contentions concerning WCP and other entities do not meaningful bear on the eligibility of JPK to seek to reorganize in chapter 11. But the hyperbolically skewed, and wantonly selective retelling of recent history speaks to why it is that case law so firmly admonishes such matters are to be considered at the confirmation stage—and not in the earliest days—of a reorganization case.

Indeed, *Carolin*, *Bestwall*, and *Coleman* seemingly contemplate this very situation: if there exists conflict amongst interested parties, and so much as a colorable possibility of a debtor

Case: 25-3250 Document: 25 Filed: 08/07/2025 Page: 134 of 446

succeeding in reorganizing through chapter 11, why should such efforts be stymied at the behest of those interested parties who wish otherwise? If there is a cognizable path forward, why should aspersions cast in the earliest days of a case prematurely doom that path? Parties in interest will have the full cadre of arguments available at the time of confirmation and, especially in a Subchapter V case such as this, that time is not too far into the future. Assuredly a debtor deserves at least the opportunity to enshrine a theory of reorganization into the body of a plan and permit that plan to be balloted.

**b. Adoption of the Third Circuit Standard Would Also Require the Motion be Denied**

In two intimately-related—and much-analyzed—cases, the Third Circuit has recently had occasion to establish (and then refine) its position on Texas Two Step bankruptcies. From a conglomerate no less ubiquitous than Johnson & Johnson has come *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 64 F.4th 84, 108 (3d Cir. 2023) ("LTL I") and *In re LTL Mgmt. LLC*, 2024 U.S. App. LEXIS 18437 (3d Cir. July 25, 2024) ("LTL II"). Both of these cases address that blue chip entity's efforts to spin off talc-centric liabilities through a divisional merger and then place the resulting entity in chapter 11. And while both efforts have failed, the reasoning behind such failures is of particular import, as the Third Circuit has crafted a standard that might keep one particular debtor out of bankruptcy but that, if applied to the instant case, would assuredly permit JPK to reorganize.

In creating LTL Management, "J&J's stated goal was to isolate the talc liabilities in a new subsidiary so that entity could file for Chapter 11 without subjecting Old Consumer's entire operating enterprise to bankruptcy proceedings." *LTL I*, 64 F.4th at 93. The divisional merger was accomplished in October 2021, *id.* at 95, with a bankruptcy filing ensuing a scant two days later, *id.* at 97.

In addressing the ensuing motion to dismiss LTL's first bankruptcy on bad faith grounds, the Third Circuit found a two prong inquiry to control:

> "[T]wo inquiries . . . are particularly relevant": "(1) whether the petition serves a valid bankruptcy purpose[;] and (2) whether [it] is filed merely to obtain a tactical litigation advantage." Valid bankruptcy purposes include "preserv[ing] a going concern" or "maximiz[ing] the value of the debtor's estate." Further, a valid bankruptcy purpose "assumes a debtor in financial distress."

*LTL I*, 64 F.4th at 100-01 (quoting *15375 Mem'l Corp. v. BEPCO, LP (In re 15375 Mem'l Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009) (citing *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 119-20 (3d Cir. 2004));[4] *Integrated Telecom*, 384 F.3d at 128).

The problem in *LTL I* was not that the debtor was formed two days before seeking bankruptcy relief, or even that the debtor was holding assets alleged to have contributed to the death of thousands of people. The problem, rather, was the funding agreement underlying the divisional merger at the heart of LTL's inception: the debtor had "roughly $61.5 billion" in assets and, as such, did not suffer from the scantest of financial distress. *LTL I*, 64 F.4th at 108. Indeed, ". . . LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future." *Id.*

The Third Circuit did, however, expressly address the propriety of the transaction that created LTL: "No one doubts that the state-law divisional merger passed talc liabilities to LTL. Why in bankruptcy would we recognize the effectiveness of this state-law transaction, but at the same time ignore others that augment LTL's assets, such as its birth gift of the Funding Agreement?" *Id.* at 105.

---

[4] This is not a typographical error; "NMSBPCSLDHB, L.P." is the actual name of the lead party to the cited case.

Stated otherwise: that LTL was created with the intent of entering bankruptcy in 48 hours was not—and is not—an issue. Indeed, the Third Circuit even ". . . recognize[d] the Code contemplates 'the need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation.'" *LTL I*, 64 F.4th at 102 (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. 1999)). Rather, that LTL had $61.5 billion of assets, and no cognizable liabilities that would cause that enormous liquid reserve to be depleted, was the problem.

Notably, however, even that concern would be walked back somewhat by the Third Circuit in *LTL II*. There, after seeing its first bankruptcy dismissed, LTL restructured its funding agreement so the company would only have access to a meager $30 billion. *LTL II*, 2024 U.S. App. LEXIS 18437, at *7. And while the Third Circuit found this was still far too much available cash for a debtor that did not face litigation posing an existential threat or a realistic prospect of inviting a liability in excess of this amount, the court did nonetheless hedge its previous ruling: "when future insolvency is a realistic possibility based on meaningful evidence—not just the result of a highly speculative 'worst-case' scenario—a mass-tort defendant has a viable case for bankruptcy." *Id.* at *14.

With this foundation, the United States District Court for the District of Delaware reaffirmed, less than a year ago, that ". . . a company need not wait 'until after a massive judgment has been entered against it' before filing for bankruptcy." *Emp. v. AIG Fin. Prods. Corp. (In re AIG Fin. Prods. Corp.)*, 2024 U.S. Dist. LEXIS 155142, at *25 (D. Del. Aug. 28, 2024) (citing *SGL*, 200 F.3d at 164). The *EMP* holding—from a court within the Third Circuit, on the heels of the two LTL cases—is particularly noteworthy, as it reaffirms not merely that a solvent debtor can seek bankruptcy protection when confronted with ominous litigation but, too, that seeking to

combine the expenses of litigation defense with the expenses of bankruptcy administration can be fodder enough to establish a "valid reorganizational purpose" sufficient to overcome allegations of bad faith, *id.* at *28, even if the bankruptcy is otherwise motivated by efforts to "obtain tactical advantages" in ongoing litigation, *id.* at *30.

JPK, of course, does not have $61.5 billion, or even $30 billion. JPK has $935.00 in a checking account and a little over $20,000 in a lawyer's trust account. JPK is assuredly not highly solvent with cash. In fact, JPK is facing litigation seeking *in rem* relief that, if afforded, would decimate the two largest assets of JPK and leave JPK without any realistic prospects of being able to pay its debts or operate on a go-forward basis.

So, unlike in *LTL I* and *LTL II*, the Debtor here is not flush with cash. And unlike in those cases, the Debtor here is already facing litigation that poses an existential risk; there is not merely a highly-speculative concern that such litigation might be filed years down the road. Rather, JPK enters bankruptcy with a "valid reorganizational purpose:" resolving the Movants' claims in a manner that permits JPK to foreclose on its collateral and apply the proceeds thereof to the retirement of debts in accord with the priority scheme established by the Bankruptcy Code.

Just as this Honorable Court is not in the Fourth Circuit, this Honorable Court is, too, not in the Third Circuit. Yet even if the *LTL* standard were applied, this case would not meet the criteria of being a bad faith filing and the Motion would merit denial.

**c. A Totality of Circumstances Analysis Would Also Require the Motion be Denied**

DRL and 423 Kennedy note that there is also a "totality of the circumstances," or "surrounding circumstances," test that has been utilized by some courts. Motion, DE #19, at pp. 26-27. This is the test adopted by this Honorable Court during the aforementioned Barcelona Olympiad, when a dormant District of Columbia company was suddenly quit-claimed a Florida

Case 25-03250-SDG Document 20 Filed 08/01/25 Page 138 of 446

real estate asset so as to dirty the chain of title and frustrate efforts to record a pocket deed. *Franklin Mortg. & Inv. Co*., 143 B.R. at 297.

The "totality of the circumstances" test is an eight prong, disjunctive analysis used to assess the motivations of a debtor entering chapter 11:

> [1.] The debtor has one asset, such as a tract of undeveloped or developed real property.
>
> [2.] The secured creditors' liens encumber this tract.
>
> [3.] There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or make adequate protection payments . . . .
>
> [4.] Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.
>
> [5.] The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation . . . .
>
> [6.] Bankruptcy offers the only possibility of forestalling loss of the property.
>
> [7.] There are sometimes allegations of wrongdoing by the debtor or its principals.
>
> [8.] The 'new debtor syndrome,' in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies . . . bad faith cases.

*Franklin Mortg. & Inv. Co.*, 143 B.R. at 299-300 (citing *In re Little Creek Dev. Co*., 779 F.2d 1068, 1073 (5th Cir. 1986); *Duggan v. Highland-First Ave. Corp*., 25 B.R. 955, 961 (Bankr. C.D. Cal. 1982)). *Compare Franklin Mortg. & Inv. Co.*, 143 B.R. at 299-300 *with Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995) (showing the *Franklin Mortgage* factors to be largely—albeit not entirely—the same as those used by another court applying the "totality of the circumstances" test).

Here, JPK does not have just one asset; the Debtor has three assets of cognizable value, all of which are promissory notes and none of which are real estate assets (though two of the notes

are secured by real estate assets). The Debtor also has an admittedly-*de minimis* amount of cash. So the first prong of the totality of the circumstances test is plainly not satisfied.

Similarly, this is not a case where there are any secured creditors (except to the extent DRL and 423 Kennedy have *in rem* relief against two of the three promissory notes). So it cannot be said that any liens are encumbering any tracts of land owned by JPK; to the contrary, it is the liens of JPK that encumber tracts of land (and the improvements thereupon) owned by third parties.

As for the third prong, there is very much an available stream of cash that can be used to sustain a plan of reorganization: as soon as JPK can foreclose on the deeds of trust securing two of the three promissory notes, JPK will have access to monies to pay creditors. Similarly, JPK will have additional cash flow when the unsecured promissory note is collected upon (something it is believed JPK is actively endeavoring to do). These are funds that JPK can use to make payments in accord with the governing priority scheme, to reorganize, and to assess potential future lending opportunities as a reorganized debtor.

Concerning the fourth criterion, this is not a case involving small claims. DRL and 423 Kennedy are asserting *in rem* claims the Movants seem to value at more than $3 million. Even an undisputed noteholder is due north of $55,000.00, which is a noteworthy sum of money in the prism of a Subchapter V bankruptcy proceeding.

The fifth prong also militates against a finding of bad faith. Not only is there no property to be foreclosed in this case, but the Superior Court litigation is not between JPK and "one creditor." There are, rather, two distinct entities making claims against JPK's assets; the two entities may share common counsel, and a common principal, but are backed by separate investors, own property at separate locations, have different construction-centric aspirations, and have gone

Case 25-01006-EL-G3250 Doc 29 Document 26 Filed 08/07/25 Page 140 of 446

out of their way—in myriad court filings—to insist they are absolutely *not* affiliates of one another.[5]

The sixth consideration is, likewise, resolved in favor of the Debtor. Bankruptcy is not the sole means through which JPK can forestall a loss of property. Rather, quite plainly, JPK can defend the Movants' claims on the merits. DRL and 423 Kennedy are endeavoring to apply consumer lending rigors to commercial loans, to upend decades of well-settled case law on the role of trustees under deeds of trust, and to urge that their myriad payment-centric and lien-centric defaults ought to be forgiven because someone allegedly got mad during a phone call—months *after* the first several defaults occurred.

As for the seventh factor, there are not actually allegations of wrongdoing against JPK (aside from having the temerity to embrace chapter 11). The allegations of wrongdoing against JPK's two members are, as discussed above, tenuous and legally-troubled. DRL and 423 Kennedy are trying to impose consumer lending standards on commercial transactions and suggesting a commercial lender is not only forbade from declaring defaults upon late payments and the accrual of senior liens but, indeed, engages in acts of tortious interference by making such declarations. These may well suffice as "allegations" of wrongdoing, but it is difficult to credit them as much more.

Finally, this is also not a case where there is so-called "new debtor syndrome," since JPK plainly fails the qualifying test of being a "a one-asset entity." *Franklin Mortg. & Inv. Co.*, 143

[5] Lest this point appear contextually obtuse: DRL, 423 Kennedy, and a third entity under common control, are all cognizant that relevant loan documents provide a default by one affiliate constitutes a default by related affiliates. DRL and 423 Kennedy are not in a position to deny each other's defaults, let alone to deny the defaults of a third related entity, so they have steadily insisted that they are not actually affiliates. The point is largely immaterial given the abundance of other defaults under the at-issue loan documents, but it is one that does prove meritorious in showing the creditors in this case are well estopped from suggesting the existence of a two-party dispute.

B.R. at 300. Equally, JPK existed for well over a year before this case was filed. Anecdotally, the Debtor is of an age well more advanced than many of the single asset real estate entities that so often petition for chapter 11 relief in this Honorable Court.

Indeed, *none* of the *Franklin Mortgage* factors weigh in favor of finding this case to be a bad faith bankruptcy filing. To the contrary, the "totality of the circumstances" test reveals only that JPK does not fall into any of the notable categories traditionally encompassing bad faith debtors and, rather, presents as the variety of debtor whose chapter 11 case ought not raise concerns at the outset.

**IV. Conclusion**

WHEREFORE, WCP respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature and Certificate of Service on Following Page]*

Case 25-cv-03250-SLS Document 20 Filed 08/07/25 Page 142 of 446

Respectfully submitted,

Dated: July 23, 2025 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of July, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | * | |
| JPK NewCo, LLC | * | Case No. 25-00200-ELG<br>(Chapter 11 - Subchapter V) |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEBTOR'S OPPOSITION OF TO
DEVELOPER RE1, LLC'S AND 423 KENNEDY ST. HOLDINGS,
LLC'S MOTION TO DISMISS CHAPTER 11 PETITION FILED IN BAD FAITH

JPK NewCo, LLC, Debtor and Debtor-in-Possession (the "Debtor"), by JEFFREY M. ORENSTEIN and WOLFF & ORENSTEIN, LLC, joins in the Opposition of WCP Fund I LLC to Developer RE1, LLC's and 423 Kennedy St. Holdings, LLC's Motion To Dismiss Chapter 11 Petition Filed In Bad Faith (the "Opposition") and adopts the arguments set forth in the Opposition.

Respectfully submitted,

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#428335)
Wolff, & Orenstein, LLC
15245 Shady Grove Road
North Lobby, Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com

Attorneys for JPK NewCo, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on the 24th day of July, 2025, a copy of the foregoing was sent via the Court's CM/ECF system to:

Kristen S. Eustis, Esq.
Office of the United States Trustee
1725 Duke Street,
Suite 650
Alexandria, VA 22314
Kristen.S.Eustis@usdoj.gov

Stephen A. Metz, Subchapter V Trustee
Offit Kurman, P.A.
7501 Wisconsin Ave, Suite 1000W
Bethesda, MD 20814
smetz@offitkurman.com

Kristen E. Burgers, Esq.
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, VA 22102
kburgers@hirschlerlaw.com

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD 20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
jds@gdllaw.com

\s\ Jeffrey M. Orenstein
Jeffrey M. Orenstein

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Attorneys for JPK NewCo, LLC

Case 25-00200-ELG-13250-SBS Document 116 Filed 08/07/25 Page 145 of 446

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | * | |
| JPK NewCo, LLC | * | Case No. 25-00200-ELG<br>(Chapter 11 Subchapetr V) |
| Debtor | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION

JPK NewCo, LLC (the "Debtor") the debtor in possession herein, proposes the following Chapter 11, Subchapter V, Plan of Reorganization (the "Plan") pursuant to §1190 and §1191 of Title 11 of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's formation and operations is attached hereto as **Appendix A**.

**All Creditors and Interest Holders should refer to Articles I through III of this Plan for information regarding the precise treatment of their Claims. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one. This Plan is a proposal by the Debtor and is subject to Bankruptcy Court approval after opportunity for objections and a hearing. Please refer to a Scheduling Order to be entered by the Bankruptcy Court for important information regarding Plan voting and objection deadlines.**

DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

A. Definitions

Unless the context otherwise specifies or requires, the following terms shall have the meanings herein specified, such definitions to be applicable equally to the singular and plural forms of such terms and to all genders:

423 Kennedy shall mean 423 Kennedy St Holdings LLC.

423 Kennedy Note shall mean the Commercial Deed of Trust Note in the original principal amount of $1,256,000.00 executed by 423 Kennedy on or about March 31, 2022.

Administrative Expense Claim shall mean any Claim which is entitled to administrative priority status pursuant to §§ 503(b), 507(a)(2) and 1192(e) of the Bankruptcy Code, including, without limitation, any Claim arising from the assumption of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, fees and expenses of the Subchapter V Trustee and any Professionals employed by the Debtor, and any taxes incurred during the pendency of this Bankruptcy Case.

Allowed with respect to any Claim shall mean: (i) a Claim against the Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance is made

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

by the Debtor or a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder or (iii) any Claim expressly Allowed by a Final Order or pursuant to the Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

Adversary Proceeding shall mean the litigation filed in this Court captioned as JPK NewCo LLC, et al. v. Developer RE1, LLC, et al. Adversary Proceeding No. 25-10015-ELG..

Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and any amendments thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Columbia or any other court having jurisdiction over the Debtor's Chapter 11 case or any proceeding arising under this Chapter 11 Case.

Bankruptcy Rules shall mean (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under § 2075 of Title 28 of the United States Code, (ii) the Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of Title 28 of the United States Code, (iii) the Local Rules of the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-00205-ELG Doc 3 Filed 08/01/25 Page 148 of 446

as in effect on the Petition Date, together with all amendments and modifications thereto to the extent applicable to this case or proceedings herein, as the case may be.

Chapter 11 Case shall mean the above-captioned Subchapter V bankruptcy proceeding initiated by the filing of the Debtor's Petition.

Claim shall have the meaning ascribed to such term in § 101(5) of the Bankruptcy Code.

Class shall mean any class in which Allowed Claims are classified pursuant to Articles II and III of this Plan.

Confirmation Date shall mean the date the entry of the Confirmation Order becomes a Final Order.

Confirmation Order shall mean the Order of the Bankruptcy Court in this Chapter 11 Case confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code.

Creditor shall mean the Holder of a Claim, within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Claims, and Priority Tax Claims.

Debtor shall mean JPK NewCo, LLC, the debtor in possession in this Chapter 11 Case.

Developer RE1 shall mean Developer RE1 LLC.

Developer RE1 Note shall mean the Commercial Deed of Trust Note in the original principal amount of $524,000.00 executed by Developer RE1 on or about December 24, 2021.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

DIP shall mean debtor in possession which in this Case is JPK NewCo, LLC, as it has continued in possession of its assets and operated its business during the course of this Chapter 11 Case.

DIP Financing shall mean the advance of funds that, with the approval of the Bankruptcy Court, the Debtor may receive from WCP as a revolving line of credit in the maximum amount of $100,000.00, with interest accruing at the rate of Prime plus three percent (3%), and secured by a 1st priority lien on all of the Debtor's assets.

Disposable Income shall mean the income or other receipts received or to be received by the Debtor that is not reasonably necessary to be expended for the payment of amounts necessary for the continuation, preservation, operation, or litigation efforts of the business of the Debtor.

Effective Date shall mean the first business day following the date that is thirty (30) days after the entry of the Confirmation Order.

Energy Morocco shall mean Energy Morocco LLC.

Energy Morocco Note shall mean the Commercial Promissory Note in the original principal amount of $26,000.00 executed by Energy Morocco on or about June 24, 2024.

Executory Contracts shall mean all contracts and unexpired leases to which the Debtor is a party and which are executory within the meaning of § 365 of the Bankruptcy Code.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Final Order shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek reconsideration or rehearing thereof or file a petition for certiorari has expired.

Holder shall mean (a) as to any Claim, (i) the owner or Holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or Holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, (iii) if the owner or Holder of such Claim has assigned or transferred the Claim to a third party and the Debtor has received sufficient written evidence of such assignment or transfer, the assignee or transferee; or (iv) any subrogee of a Holder of a Secured Claim; and (b) as to any interest, the record owner or Holder of such interest as of the Effective Date.

Impaired shall mean any Claim or Interest that is impaired within the meaning of § 1124

Interests shall mean, to the extent applicable to this Chapter 11 Case, the interest of any Holder of stock or membership interests in the Debtor.

Mr. Sariri shall mean Shheen Sariri.

Note Litigation shall mean the litigation filed in the Superior Court of the District of Columbia captioned as Developer RE1, LLC v. DP Capital, LLC, et al. and 423 Kennedy St Holdings, LLC v. DP Capital, LLC, et al. that was subsequently consolidated as Case No. 2022-CAB-005935.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-00205-EL-G3250-SBS Document 25 Filed 08/07/25 Page 151 of 446

Notes shall mean the 423 Kennedy Note and the Developer RE1 Note that are the subject of the Note Litigation.

Petition shall mean the Voluntary Petition filed by the Debtor on May 27, 2025 .

Petition Date shall mean May 27, 2025.

Plan shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as it hereafter may be modified, amended or supplemented.

Post-Petition shall mean any event occurring on or after the Petition Date.

Pre-Petition shall mean any event occurring before the Petition Date.

Priority Claim shall mean any Allowed Claim of a person holding a Claim entitled to priority pursuant to Bankruptcy Code §507(a) other than an Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8).

Priority Tax Claim shall mean any Allowed Claim of a governmental unit pursuant to Bankruptcy Code § 507(a)(8); provided, however, any Claims for penalties asserted by governmental units shall not be a Priority Tax Claim.

Professionals shall mean persons, including attorneys, accountants, the Trustee, and other professionals, retained or appointed in the Chapter 11 case or to be compensated pursuant to §§ 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code and order of the Bankruptcy Court.

Secured Claim shall mean a secured Claim pursuant to § 506 of the Bankruptcy Code, and shall mean an Allowed Claim in an amount equal to the present value of the applicable

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Creditor's interest in the Debtor's interest in the Property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Bankruptcy Court.

SF NU shall mean SF NU, LLC.

Trustee shall mean Stephen Metz, the Subchapter V trustee appointed in this Chapter 11 case pursuant to § 1183 of the Bankruptcy Code.

Unsecured Claim shall mean any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or a Secured Claim, including (i) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (ii) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the estate's interest in the Debtor's property securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (iii) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (iv) any Claim designated as an Unsecured Claim elsewhere in the Plan.

WCP shall mean WCP Fund I LLC.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

B. Terms of Construction

Capitalized terms used in this Plan shall have the meaning set forth herein. In the event a capitalized term is not defined herein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules. In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code. The terms of this Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes hereof and of the Bankruptcy Code.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

ARTICLE I
TREATMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. Except with respect to Cure Claims pursuant to § 365 of the Bankruptcy Code, which shall be provided for in the Plan, any party claiming an Administrative Expense Claim shall file an application to approve its asserted Administrative Claim for services provided through the Confirmation Date not later than thirty (30) days after the Effective Date. *For the avoidance of doubt, and unless stated otherwise in this*

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

*Plan, no Claim described herein shall be entitled to treatment as an Administrative Expense Claim unless (1) the Claim is on account of assumption of an executory contract or unexpired lease; (2) the Bankruptcy Court previously entered a Final Order granting administrative expense status to such Claim; or (3) the Claimant files an application to approve its asserted Administrative Claim priority status and the Bankruptcy Court enters a Final Order with respect to such application after notice and an opportunity for hearing.*

1.1. Administrative Expense Claims. Pursuant to § 1191(e) of the Bankruptcy Code, and subject to entry of Orders allowing Administrative Expense Claims, each Holder of an Allowed Administrative Expense Claim shall receive distributions on account of their Allowed Administrative Claim. All fees and expenses requested by the Holder of an Allowed Administrative Expense Claim for services provided through the Effective Date are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code. For services provided after the Confirmation Date, a notice shall be filed with the Bankruptcy Court setting out fees and expenses incurred with a copy served on all parties in interest (the 'Notice"). Absent an objection filed within thirty (30) days of the Notice, or an agreement between the Debtor and the administrative claimant to pay the Allowed Administrative Claim at a later time, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

1.2. Estimated Amount of Administrative Expense Claims and Treatment. As of the filing of this Plan, the Debtor estimates that it will have the following Administrative Expense Claims (without altering the requirement of parties to seek Bankruptcy Court approval of all Administrative Expense Claims): (a) legal fees for Debtor's counsel, Wolff & Orenstein, LLC of an estimated $25,000.00; (b) fees for the Subchapter V Trustee of an estimated $15,000.00; (b) legal fees for Debtor's special counsel, The VerStandig Law Firm, LLC of an estimated $30,000.00[1] and (d) and other Administrative Expense Claims estimated to be less than $5,000.00. Administrative professional fees incurred prior to the Effective Date shall be paid on the later of the Effective Date, or upon approval by the Bankruptcy Court, from funds held by the Debtor. Amounts due to Wolff & Orenstein, LLC will be paid, in part, from the Fifteen Thousand Four Hundred Sixty-Two Dollars ($15,462.00) held in its trust account and from other funds held or acquired by the Debtor. Each Allowed Administrative Expenses Claim shall be paid within thirty days of the entry of an Order approving the Administrative Expense Claim unless other arrangements are agreed to between the Debtor and the Administrative Expense Claimant.

[1] The VerStandig Law Firm, LLC will primarily be involved in issues related to the Note Litigation and the Adversary Proceeding; however, because of its knowledge of the history of the Note litigation, The VerStandig Law Firm, LLC, likely will be involved in other aspects of the case as well. It is anticipated that the fees for services provided by The VerStandig Law Firm, LLC will substantially exceed $30,000 because The VerStandig Law Firm, LLC, will be representing parties other than the Debtor. The $30,000.00 estimate is the share of the total fees that are anticipated being charged to the Debtor for services providing a benefit to the Debtor.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

1.3. Priority Tax Claims. Each Holder of an Allowed Priority Tax Claim shall receive from the Debtor, on account of such Allowed Priority Tax Claim, distributions that total the aggregate amount of the Allowed Priority Tax Claim, which distributions shall be made in equal quarterly payments with the first distribution to be made on the first day of the month following the Effective Date[2] and every three months thereafter until paid in full, which shall occur not later than five (5) years from the Petition Date, which shall be July 23, 2029; or (b) under such other terms as may be agreed upon by both the Holder of such Priority Tax Claim and the Debtor or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. There are no known Priority Tax Claims.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1. General Overview. The Debtor has classified all Claims and Interests in accordance with §§ 1122, 1123 and 1190 of the Bankruptcy Code. A chart detailing each Class of Claims or Interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**. A Claim is in a particular Class for purposes of voting on, and of receiving distributions pursuant to the Plan only to the extent such Claim has not been paid, released or otherwise settled prior to the Effective Date. The table in Section 2.2 below

---

[2] For example, if the Effective Date is October 23, 2025, the first payment would be due November 1, 2025.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-00205-ELG Document 25 Filed 08/07/25 Page 157 of 446

identifies each Class of Claims under the Plan and whether such Class is Impaired or Unimpaired.

2.2. Designation of Classes. This Plan provides for the establishment of the following Classes of Claims or Interests as provided in § 1122 of the Bankruptcy Code:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Allowed General Unsecured Claims | Impaired | Yes |
| 2 | Equity Interests | Unimpaired | No |

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1 Class 1 – Allowed General Unsecured Claims: In full and complete satisfaction, discharge and release of the Class 1 Claims, the Debtor shall pay the Holders of Allowed Class 1 Claims, without interest, their pro-rata shares of all available projected disposable income, paid semi-annually beginning sixty (60) days after the Effective Date and continuing during the term of this Plan. Pending resolution of the Note Litigation, payments to Holders of Allowed Class 1 Claims shall total no less than $5,000.00 each semi-annual period and will be paid by drawing on the DIP Financing if other funds are not then available. Class 1 General Unsecured Claims that are undisputed total $55,172.43 as of the Petition Date. In addition, there are two scheduled general unsecured claims that have not been assigned a value because they are disputed and unliquidated. Holders of Class 1 General Unsecured Claims are expected to receive one hundred

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

percent (100%) of the principal amount of their Allowed Claims with interest at the contract rate, but only if the Debtor is successful in the Note Litigation. Class 1 is impaired and therefore the Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

3.2 Class 2 – Equity Interests: On the Effective Date, the legal, equitable and contractual rights of the Debtor in its assets and properties shall be retained unaltered. Class 2 is Unimpaired. As a result, pursuant to § 1126(f) of the Bankruptcy Code, the holders of the equity interests in the Debtor are conclusively deemed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF PLAN

4.1. Vesting of Property in the Debtor Free and Clear. Except as otherwise provided in this Plan or the Confirmation Order, all property of the Debtor's estate shall, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vest in the Debtor as of the Effective Date free and clear of any Claim of any Creditor provided for by this Plan.

4.2. Corporate Governance. Upon the Effective Date, the day-to-day operations of the Debtor shall continue to be overseen by its Members. To the extent applicable to a case under Subchapter V, the Debtor will amend its governing documents to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-03250-SLS Document 26 Filed 08/07/25 Page 159 of 446

4.3. Source of Payments. The sources and value of funds and assets for distribution is as follows:

(a) The collection of the amounts due under the Energy Morocco Note.

(b) The collection of the amounts due under the Notes **which shall be pursued through the Note Litigation and, to the extent necessary, removal of litigation in the District of Columbia Superior Court that has been stayed by operation of this bankruptcy case and Order of the Superior Court. Specifically, the Debtor will pursue collection upon the notes through one or more adversary proceedings and, simultaneously, work with related parties in interest to defend any attacks upon the notes or upon the ability of the Debtor to foreclosure.**

**(c)** DIP Financing. WCP shall make advances to the Debtor from time to time with existing balances not to exceed $100,000.00 at any time. The amounts advanced shall accrue interest at the rate of Prime plus 3% per annum and shall be secured by a first-priority lien on and against all of the Debtor's assets. The liens and security interests granted to WCP under this Plan shall become and are duly perfected without the necessity for the execution, filing or recording of financing statements, security agreements and other documents which might otherwise be required pursuant to applicable non-bankruptcy law for the creation or perfection of such liens and security interests. Notwithstanding the foregoing, WCP may, in its sole discretion, file such financing statements, security agreements, mortgages, deeds of trust, notices

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages consistent with this Plan, and all such documents shall be deemed to have been filed or recorded at the time of and on the Effective Date.

4.4. Plan Term. Except as otherwise set forth in the Plan, the term of the Plan begins on the Effective Date and ends on the sixtieth (60th) month subsequent to that date.

4.5. Disposable Income and Plan Funding. The Debtor's regular disposable income is not calculable at this time because, it substantially depends upon the results of the Note Litigation. As addressed in Section 4.3 above, the sources of funds are the collection of the amounts due under the Energy Morocco Note and the Notes, and will be supplemented by DIP Financing to the extent necessary to make the required $5,000.00 in total semi-annual payments to Holders of Allowed Class 1 Claims.

4.6. Option to Pay Claims Sooner Than Projected. In the event that the Debtor obtains funds that are sufficient to satisfy its obligations under this Plan sooner than projected, the Debtor may opt to pay any or all creditors early.

ARTICLE V
DISTRIBUTIONS UNDER THE PLAN

5.1. General. If the Debtor is able to recover the amounts due under the Notes, Unsecured Creditors holding Allowed Claims will receive payment of their Claims in full. If the Debtor is unable to recover the amounts due under the Notes, Holders of Allowed Claims will be paid pro rata from the Debtor's Disposable Income in accordance with the priorities set forth in

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

the Bankruptcy Code and this Plan. In either event, the Debtor's Plan provides that creditors will not receive less in this Chapter 11 Case than they would have received if this Chapter 11 Case was converted to Chapter 7 because the Debtor's only assets are the Notes which would be collected and distributed in either Chapter 7 or under this Plan, and because there would be no DIP Financing supplement in Chapter 7. In addition, the amounts to be distributed under Chapter 7 would be reduced to the extent of the Chapter 7 Trustee's legal fees and commissions.

5.2. Delivery of Distributions and Time Bar to Payment. The Bankruptcy Code provides, among other things, that if the Plan is approved on a consensual basis, the Debtor shall make distributions provided for in the Plan. In the event the Plan is approved on a non-consensual basis, however, the Bankruptcy Code requires that, unless otherwise provided in the Plan or order of the Bankruptcy Court, the Trustee shall make disbursements under the Plan. Because disbursements by a Trustee (or other third party) increase the administrative costs under or in connection with the Plan, the Debtor intends to seek approval of the Bankruptcy Court to self-disburse distributions to Holders of Allowed Claims, whether confirmed on a consensual or non-consensual basis. To the extent the Bankruptcy Court requires the Trustee disburse distributions under the Plan, distributions to Holders of General Unsecured Claims could potentially be reduced on account of estimated administrative costs. Further, in the event the Bankruptcy Court directs the Trustee to make distributions to Holders of Allowed Claims,

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Holders of Allowed Claims must provide the Trustee a Form W-9 form before such distributions commence.

The Debtor (or the Trustee if applicable) shall stop payment on any distribution check that is not cleared through the account upon which such check is drawn within ninety (90) days of the date of distribution. Distribution checks shall be mailed to the addresses given in Proofs of Claim filed herein, or, as to those Creditors who did not file a Proof of Claim, to the addresses listed in the Debtor's Schedules, unless the Debtor receives other instructions in writing from such Creditor(s). All funds which are not distributed as a result of stopped checks shall become property of the Debtor for use in subsequent distributions. It shall be the obligation of each Creditor to provide written notice to the Debtor of any change of the Creditor's address.

5.3. Disputed Claims.

(a) A disputed Claim is a Claim that has not been Allowed or that has been disallowed by Final Order and, either:

(i) A Proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) No Proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent or unliquidated.

(b) Delay of Distribution on a Disputed Claim. No distribution will be made on a disputed Claim unless the Claim is Allowed by a Final Order.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

(c) Settlement of Disputed Claims. The Debtor shall have the power and authority to settle and compromise a disputed Claim with Bankruptcy Court approval and compliance with the Bankruptcy Rule 9019.

ARTICLE VI
PAYMENTS TO CREDITORS UNDER THE PLAN

Unless otherwise provided in the Plan, funds received by the Debtor or otherwise included in this Plan shall be used to pay the following Claims in the priority indicated:

6.1. Except as provided in § 1191(e) of the Bankruptcy Code, all Claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth in Article I, Article III and **Appendix B**.

6.2. Pursuant to § 1191(e) of the Bankruptcy Code, the payment of Claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth Article I and **Appendix B**.

6.3. All Secured Claims, if any, shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth in Article III and **Appendix B**.

6.4. *Parra-passu* with the foregoing Claims, sums received by the Debtor shall be paid, on a pro-rata basis, to Allowed General Unsecured Claims as set forth in Article III and **Appendix B**.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

6.4. In accordance with § 1191 of the Bankruptcy Code and the terms of the Plan, the holders of equity interests in the Debtor shall retain their interests in the Debtor as set forth in Article III and **Appendix B**.

ARTICLE VII
<u>TRUSTEE COMPENSATION</u>

The Trustee shall be paid for services rendered in this Chapter 11 Case as a Holder of an Administrative Expense Claim under § 507 of the Bankruptcy Code, and shall be paid by the Debtor as set forth in Section 1.2. All fees and expenses requested by the Trustee are subject to review and approval by the Bankruptcy Court under §§ 329 and 330 of the Bankruptcy Code. The Debtor, Creditors, and any party-in-interest reserve the right to object to the extent and amount of the Trustee Compensation. Debtor estimates the Administrative Expense Claim in favor of the Trustee will be approximately $10,000.00.

For services provided after the Confirmation Date, the Trustee shall file a Notice and serve a copy the Notice on all parties in interest. Absent an objection filed within thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

## ARTICLE VIII
## COMPENSATION TO DEBTOR'S PROFESSIONALS

8.1 The Debtor's attorney, Wolff & Orenstein, LLC, shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 507 of the Bankruptcy Code and pursuant to Section 1.2 of this Plan. All fees and expenses requested by the Debtor's attorney are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Debtor estimates the Administrative Expense Claim in favor of Wolff & Orenstein, LLC to be approximately $25,000.00.

For services provided after the Confirmation Date, Wolff & Orenstein, LLC shall file the Notice and serve a copy the Notice on all parties in interest. Absent an objection filed within thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

8.2 The Debtor's special counsel, The VerStandig Law Firm, LLC, primarily charged with representing the Debtor in the Note Litigation and issues relating to the Note Litigation, shall be paid for the services rendered to the Debtor herein as an Administrative Expense Claim under § 507 of the Bankruptcy Code and pursuant to Section 1.2 of this Plan. All fees and expenses requested by the Debtor's special counsel, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Debtor estimates the Administrative Expense Claim in favor of The VerStandig Law Firm, LLC to be approximately $30,000.00.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

For services provided after the Confirmation Date, The VerStandig Law Firm, LLC, shall file the Notice and serve a copy the Notice on all parties in interest. Absent an objection filed within thirty (30) days of the Notice, such amounts shall be paid by the Debtor (or the Trustee) within thirty (30) days of the expiration of the thirty (30) day objection period or, in the event of the filing of an objection, within thirty (30) days of the resolution of the objection.

ARTICLE IX
LIQUIDATION ANALYSIS

Section 1190(1)(B) of the Bankruptcy Code dictate that the Debtor provide a liquidation analysis of its assets. On their face, and as reflected in the Schedules filed by the Debtor in this case, the amounts due under the Energy Morocco Note and the Notes that are the subject of the Note Litigation exceed $2,400,000.00. Because the amounts due under the Notes are tied up in, and impacted by the Note Litigation, it is difficult to determine what amounts will ultimately be realized from the Notes. In Chapter 11 or in a case under Chapter 7 where the Notes would be liquidated by a Chapter 7 Trustee, the value of the Notes would be determined only as a result of the Note Litigation. The Debtor presently has no other assets. In addition, semi-annual minimum payment will be provided through the DIP Financing which would not be available in a case under Chapter 7. The Debtor proposes to pay allowed Claims in full and, for that reason, Creditors will not receive less under this Plan than they would receive in a case under Chapter 7 of the Bankruptcy Code.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

ARTICLE X
**EXECUTORY CONTRACTS**

10.1. Rejection. Pursuant to § 365 of the Bankruptcy Code, the Debtor rejects each executory contract and unexpired lease, effective upon the Effective Date of this Plan, unless (i) it has been previously assumed by Order of the Bankruptcy Court, (ii) is listed by the Debtor as an assumed lease or executory contract, or (iii) is otherwise assumed in this Plan. The Debtor is not aware of the existence of any executory contracts or unexpired leases, does not intend to assume any executory contracts or unexpired leases, and for that reason, rejects and executory contracts or unexpired leases that may be determined to exist.

10.2. Rejection Damages. Any Claim for damages against the Debtor arising from the rejection by the Debtor of any executory contract or unexpired lease pursuant to this Article or during the pendency of the Debtor's Chapter 11 Case shall be forever barred and shall not be enforceable against the Debtor or its property or interests in property, and no Holder of any such Claim shall participate in any distribution under the Plan with respect to such Claim, unless a proper Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease under the Plan is filed with the Bankruptcy Court and served on the Trustee and the Debtor no later than thirty (30) days after the Effective Date and the Claim is Allowed. Any Allowed rejection damage Claim shall be treated as a Class 1 General Unsecured Claim.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

ARTICLE XI
GENERAL PROVISIONS

11.1. Effect of Confirmation.

(a) Binding on Debtor and Creditors. Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon the Confirmation Date, bind the Debtor, each and every Creditor of this estate and each party in interest, whether or not the Claim of such Creditor or party is provided for by the Plan and whether or not such Creditor or party has accepted or has rejected the Plan.

(b) Injunction against Interference with Plan. Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(c) Default. An event of default under the Plan shall occur if the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than ten (10) days after the time specified in the Plan for such payment or other performance. Upon the occurrence of default, the United States Trustee or Creditor affected by the default shall provide Debtor's attorney, with a copy to the Trustee, of a written notice of default and a ten (10) day opportunity to cure or to move to obtain from the Bankruptcy Court an extension of time to cure the default, or a determination that no default occurred. In the event the Debtor fails to cure the default or seek and obtain an extension to cure from the

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-00205-ELG Document 3 Filed 08/07/25 Page 169 of 446

Bankruptcy Court, either or both of which shall constitute an "Event of Default," the affected Creditor shall be entitled to enforce its/their state court rights and remedies under applicable state law.

(d) Injunction against Certain Actions. Except upon an Event of Default under this Plan or, in the case of an Allowed Secured Claim, the governing loan documents, as of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against the Debtor, or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or any of its property or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (c) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law.

(e) Rights of Action. On and after the Confirmation Date, the Debtor shall have the right and standing to enforce for the benefit of the Debtor and its Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

Case 25-00205-ELG Doc 35 Filed 08/07/25 Page 170 of 446

that arose before or after the Petition Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

11.2. Discharge. If the Plan is confirmed as a consensual plan pursuant to 11 U.S.C. § 1191(a), on the Confirmation Date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c); or (iii) of a kind specified in § 1141(d)(6)(B). However, if the Plan is confirmed on a non-consensual basis pursuant to 11 U.S.C. § 1191(b), the Debtor will receive its discharge upon the payment of its final distribution in accordance with §1192.

11.3. Waiver of Certain Fees. Except as otherwise set forth in this Plan, all Holders of Allowed Unsecured or Allowed Priority Tax Claims, waive all penalties, default interest and/or late fees that may have accrued on their Claims.

11.4. Professional Fees and Expenses. Except as otherwise provided herein, all fees for services rendered and expenses incurred after the Confirmation Date by Professionals engaged by the Debtor shall be paid by the Debtor in the ordinary course of business without the necessity of filing fee applications or seeking approval of the Bankruptcy Court.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

11.5. Setoffs. The Debtor reserves all rights to offset a mutual debt owed to any Creditor against such Creditor's Allowed Claim or against any distribution required to be made by the Debtor to such Creditor with respect to an Allowed Claim.

11.6. Modification of Plan. The Debtor reserves the right, in accordance with § 1193 the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan.

11.7. Withdrawal or Revocation. The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur for any reason, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim or Interest by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

11.8. Notices. Any notices to or requests of the Debtor or the Trustee by parties in interest under or in connection with this Plan shall be in writing and occur by electronic mail and served either by (i) regular first-class mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

The Debtor:

JPK NewCo, LLC
c/o Daniel Huertas
8401 Greensboro Drive
Suite 960
McLean, Virginia 221002

with copies to:

Jeffrey M. Orenstein, Esq.
Wolff & Orenstein, LLC
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
jorenstein@wolawgroup.com

The Trustee:

Stephen A. Metz, Subchapter V Trustee
Offit Kurman, P.A.
7501 Wisconsin Ave, Suite 1000W
Bethesda, MD 20814

11.9. Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.10. Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

11.11. Appendices. The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

11.12. Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.13. Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the District of Columbia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise providing in this Plan.

11.14. Notice of Effective Date. The Debtor will file a Notice of Effective Date within seven days of the Effective Date.

11.15. Substantial Consummation. Not later than 14 days after the Plan of the Debtor is substantially consummated, the Debtor shall file with the Bankruptcy Court and serve on the Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

11.16. Progress Reports. As required under Local Rule 3022-1(d), the Debtor will file, and serve upon the U.S. Trustee, a progress report six (6) months after the entry of the confirmation order and every six (6) months thereafter, each report detailing the progress made towards full administration of the Plan, to include distributions made to-date and any other substantial activities that would impede full administration.

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

ARTICLE XII
PLAN PROPOSED IN GOOD FAITH

The Debtor represents that it is within the Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

ARTICLE XIII
JURISDICTION OF THE BANKRUPTCY COURT

13.1 The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, this Chapter 11 case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a) To hear and determine any motions for the assumption or rejection of Executory Contracts, and the allowance of any Claims resulting therefrom;

(b) To determine any and all adversary proceedings, applications and contested matters;

(c) To hear and determine any objection to any Claims;

(d) To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(e) To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

(f) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(g) To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(h) To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(j) To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

(k) To recover all assets of the Debtor and property of the estate, wherever located;

(l) To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(m) To enforce and interpret the discharge of Claims and Interests affected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

(n) To hear any other matter consistent with the provisions of the Bankruptcy Code;

(o) To enter a final decree closing this Chapter 11 case; and

(p) To hear and determine such other issues as the Bankruptcy Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

DATED: July 28, 2025

JPK NewCo, LLC

\s\ Daniel Huertas
By: Daniel Huertas, Manager

\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#428335)
Wolff, & Orenstein, LLC
15245 Shady Grove Road
North Lobby, Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com

Counsel for JPK NewCo, LLC

Wolff & Orenstein, LLC
Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, Maryland 20850
(301) 250-7232
jorenstein@wolawgroup.com
Proposed attorneys for JPK NewCo, LLC

APPENDIX A
(Debtor's History)

1. General Background

A. Debtor's Business and Commercial Activities.

i. Formation of the Debtor

The Debtor was formed on February 1, 2024, when its Articles of Organization were filed with the Corporations Division of the District of Columbia. At the time of its formation, WCP Fund I LLC ("WCP") and SF NU, LLC ("SFNU") were the Debtor's sole owners and remain its sole owners today. As addressed in more detail below, the Debtor was created on the advice of counsel, with then-present cognizance the Debtor might be used to either facilitate an amicable resolution to the pending litigation involving WCP and SFNU, and/or as a mechanism of siloing troubled assets so as to remove those assets, and their accompanying putative liabilities, from the balance sheets of WCP and SFNU.

JPK was capitalized by WCP and SFNU through contribution of two junior promissory notes held by WCP and SFNU respectively, and assignment of the correlative deeds of trust, with membership interests in the Debtor being given to WCP and SFNU as consideration for the contribution of the promissory notes. The formation and capitalization of the Debtor is reflected in its Operating Agreement.

ii. The Contributed Notes

In December 2021, WCP loaned $4,103,000.00 to Developer RE1 LLC ("DRL"), with the subject loan being memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). Similarly, in March 2022, WCP loaned $9,945,693.00 to 423 Kennedy St Holdings LLC ("423 Kennedy"), with the subject loan being memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, inter alia, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four - let alone all four - notes at maturity. As a result, both DRL and 423 Kennedy were advised that foreclosure would be pursued.

iii. Pre-Petition Litigation & Mediation

DRL and 423 Kennedy asserted that they did not believe that their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled. As a result, they each brought suit in the District of Columbia Superior Court (the "Superior Court")

to enjoin those foreclosures, alleging the declared defaults to have amounted to tortuous interference with their business relations. The two cases were captioned Developer RE1, LLC v. DP Capital, LLC, et al. (the "DRL Litigation") and 423 Kennedy St Holdings, LLC v. DP Capital, LLC, et al. (the "423 Kennedy Litigation") and were consolidated in the Superior Court as Case No. 2022-CAB-005935 (the "Note Litigation"). The respective complaints are colorful in nature, with one expressly alleging that "Money is the Root of All Evil," and one accusing WCP of corruption. In the course of the Note Litigation, the Superior Court entered injunctions prohibiting the defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust. Following the entry of these injunctions, the parties to the Note Litigation agreed to mediate before a retired Superior Court judge. During the course of two formal mediation sessions, certain potential resolutions were discussed whereby 423 Kennedy and/or DRL would release claims in exchange for participating in a share of loan profits. As part of the aforesaid negotiations, WCP introduced the idea of transferring certain promissory notes into a so-called "special purpose entity," so ownership interests in the negotiable instruments could be ultimately divided pursuant to a settlement agreement without (i) having to sever the notes themselves into multiple pieces; and/or (ii) needing to offer DRL and/or 423 Kennedy an ownership interest in WCP or any of its co-defendants. Shortly after the conclusion of the second mediation session , and consistent with those discussions, the Debtor was formed as that "special purpose entity." The Note Litigation has been stayed by Order of the Superior Court.

iv. The Debtor's Business Operations

Following its formation, the Debtor needed funds to engage counsel and to operate, with the expectation the Debtor would be joined in the Note Litigation. To procure such funds, the Debtor borrowed $50,000.00 from Shaheen Sariri ("Mr. Sariri"). At the time the loan was made, Mr. Sariri was advised that the Debtor may use part or all of the loan proceeds to engage counsel, including the potential engagement of insolvency counsel. A portion of the loan proceeds were transferred to the IOLTA account of The VerStandig Law Firm, LLC (VLF"), WCP's litigation counsel, to be held pending VLF's anticipated engagement to represent the Debtor in the litigation. The Debtor loaned the remaining proceeds to Energy Morocco LLC ("EM"), an unrelated third party, in an effort to make a profit from interest on the loan. The funds that were deposited with VLF were subsequently transferred to Wolff & Orenstein, LLC ("W&O") as a retainer in the Debtor's prior bankruptcy case and were consumed in that bankruptcy case. The loan from EM has come due, but has not yet been paid. The Debtor has made demand upon EM for payment of the amounts due. Until the amounts due are collected, the Debtor does not have available funds to make additional loans at this time and required a capital contribution from WCP in order to fund the retainer for the present bankruptcy case.

B. The Motion to Dismiss

On June 23, 2025, DRL and 423 Kennedy filed a Motion to dismiss this Chapter 11 case (the "Dismissal Motion") A hearing on the Dismissal Motion has been set for July 30, 2025 and a response to the Dismissal Motion is due on or before July 25, 2025. At the Debtor's Section 341 meeting that was conducted on June 30, 2025, counsel for the Movants indicated his intention to conduct discovery, and has now served Requests for Production of Documents and Interrogatories. A hearing on the Motion to Dismiss is scheduled for July 30, 2025.

C. The Debtor's Adversary Proceeding

On May 28, 2025, the Debtor, along with WCP, SF NU, and Russell Drazin, filed its own Complaint against DRL and 423 Kennedy to initiate Adversary Proceeding No. 25-10015-ELG (the "Adversary Proceeding"). As addressed in more detail below, the Debtor's Plan will primarily provide for repayment to creditors from the proceeds of the Notes that it holds. Thus, the more it is able to collect from DLR and 423 Kennedy, the more it will be able to pay its own creditors. DLR and 423 Kennedy have asserted that the Debtor is not the proper holder of the Notes that evidence the indebtedness from those parties. For the Debtor to effectively reorganize, the Debtor (i) must establish that it properly holds both promissory notes, with all attendant rights under the correlative deeds of trust; (ii) must establish that neither promissory note is burdened by any claims for setoff; (iii) and must remove the cloud placed upon the quality and enforceability of these debt instruments. It is for this reason that, seeking relief under 11 U.S.C. § 542 of the Bankruptcy Code and other equitable relief, the Debtor filed the Complaint to initiate the Adversary Proceeding. The Court issued its Summons on May 29, 2025, and the Summons and Complaint were duly served. With the deadline for filing an Answer coming due, DRL and 423 Kennedy filed a Motion to stay the Adversary Proceeding. That motion remains pending before the Court.

D. The Debtor's Prospects for Reorganization

The Debtor has no tax obligations, no priority debt, and no secured debt. Pre-Petition, the Debtor's only liabilities were the liability to Mr. Sariri, and unliquidated in rem claims asserted by the plaintiffs in the Note Litigation. The loan the Debtor made to EM has come due but has not yet been paid. The Debtor has made demand for payment and anticipates being able to collect those amounts from EM. The Debtor will be able to use the funds received from EM to satisfy, in whole or in part, the administrative claims in this bankruptcy case and to use any balance to fund its payment to unsecured creditors. The Debtor's ability to repay the balance of the amounts due to creditors is a factor of its ability to collect the amounts due on the Notes and, for that reason, is wholly dependent on the results of the Note Litigation. The degree of success in the Note Litigation will determine what portion, up to 100%, the Debtor will be able to pay to its unsecured creditors. The Debtor is confident that it will be able to maintain operations during the course of the Note Litigation and that it will complete its reorganization as proposed in this Plan.

APPENDIX B
(Classification and Treatment of Claims)

| Class No. | Description of Claims In Class | Total Amount of Claims In Class | Proposed Treatment Under Plan (Including Whether Impaired | Estimated Percentage Recovery |
|---|---|---|---|---|
| 1 | Allowed General Unsecured Claims | $55,172.43 | Paid from disposable income - semi-annual distributions commencing 60 days after the Effective Date - Impaired | 100% |
| 2 | Equity Interests | $0 | Retained - Unimpaired | n/a |
| - | Post-Confirmation Administrative Claims | undetermined | Paid pursuant to 30-Day notice provision Set forth in Plan | 100% |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br><br>Purported Chapter 11 |
| JPK NEWCO, LLC, ET AL.,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEVELOPER RE1, LLC. ET AL.,<br><br>*Defendants.* | Adv. Pro. No. 25-10015-ELG |

# NOTICE OF FILING OF TRANSCRIPT FROM THE MEETING OF CREDITORS

Attached as Exhibit 1 is a transcript from the meeting of creditors held on June 30, 2025. This transcript may be used and referenced at the hearing set for today at 1:00 p.m.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 31, 2025

/s/ James D. Sadowski
James D. Sadowski, DC Bar. No. 446635
Alexandria J. Smith, DC Bar. No. 1673542
801 17th Street, N.W. - Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400 ext. 5407
Email: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Defendants Developer RE1, LLC and 423 Kennedy St. Holdings, LLC*

8161\0002\4903-7977-8905.v1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2025, a true copy of this Notice of Filing of Transcript from the Meeting of Creditors was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: | . Case No. 25-00200-ELG |
| | . Chapter 11 |
| JPK NEWCO, LLC, | . |
| | . Washington, D.C. |
| Debtor. | . June 30, 2025 |
| . . . . . . . . . . . . . . . | . |

MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF THE BANKRUPTCY CODE
BEFORE KRISTEN S. EUSTIS, ESQ.
OFFICE OF THE UNITED STATES TRUSTEE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Wolff & Orenstein, LLC<br>By: JEFFREY M. ORENSTEIN, ESQ.<br>15245 Shady Grove Road<br>Suite 465<br>Rockville, Maryland 20852 |
| For Office of the U.S. Trustee: | U.S. Department of Justice<br>By: KRISTEN S. EUSTIS, ESQ.<br>1725 Duke Street<br>Suite 650<br>Alexandria, Virginia 22314 |
| For Subchapter V Trustee: | Offit Kurman, P.A.<br>By: STEPHEN A. METZ, ESQ.<br>7501 Wisconsin Avenue<br>Suite 1000W<br>Bethesda, Maryland 20814 |
| For Shaheen Sariri: | Hirschler Fleischer<br>By: KRISTEN E. BURGERS, ESQ.<br>1676 International Drive<br>Suite 1350<br>Tysons, Virginia 22102 |
| For 423 Kennedy St Holdings LLC and Developer RE1 LLC: | Greenstein DeLorme & Luchs, P.C.<br>By: JAMES D. SADOWSKI, ESQ.<br>801 17th Street, Northwest<br>Suite 1000<br>Washington, District of Columbia 20006 |

Case 1:25-cv-03250-SLS Document 20 Filed 08/17/26 Page 184 of 446


Also Present: Daniel Huertas
Debtor Representative

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

(Proceedings commenced at 11:03 a.m.)

MS. EUSTIS: Good morning. This is the 341 meeting of creditors in the case of JPK NewCo, LLC, case number 25-200, pending in the United States Bankruptcy Court for the District of Columbia. My name's Kristen Eustis. It is June 30th, 2025, and it is approximately 11:03 a.m.

Counsel for the debtor, can you please identify yourself and your client for the record?

MR. ORENSTEIN: Yes. Good morning. Jeff Orenstein on behalf of JPK NewCo. With me this morning is Daniel Huertas. He is the manager -- he's the manager associated with WCP Fund, which is one of the majority owner of JPK.

MS. EUSTIS: Thank you. And I can confirm for the record that I have reviewed a photocopy of Mr. Huertas' identification. And he is who -- he is who he says he is.

Steve Metz, can you please identify yourself for the record?

MR. METZ: Good morning. This is Steve Metz, the subchapter V trustee.

MS. EUSTIS: Thank you.

Ms. Burgers.

MS. BURGERS: Good morning. This is Kristen Burgers of Hirschler Fleischer on behalf of Shaheen Sariri, a creditor in this case.

MS. EUSTIS: Thank you.

And Mr. Sadowski.

MR. SADOWSKI: Good morning. James Sadowski, counsel for developer RE1 LLC and 423 Kennedy St Holdings LLC.

MS. EUSTIS: Thank you.

And is anyone else on the line that would like to identify themselves for today's meeting?

Okay. Hearing none. Mr. Huertas, the audio of this meeting is being recorded. A transcript is available for a fee. First, I will ask questions of you, and then I will allow creditors, one at a time, to ask you questions about the debtor's financial affairs.

And for everyone on the line, please mute yourself if you are not speaking. And please identify yourself prior to initially asking questions.

(Debtor representative sworn.)

MS. EUSTIS: And can you please state your name and your current address? Your business address is fine.

MR. HUERTAS: Daniel Huertas. 8401 Greensboro Drive, Suite 960, McLean, Virginia 22102.

MS. EUSTIS: Thank you. And did you attend the initial debtor interview in connection with this case?

MR. HUERTAS: Yes.

MS. EUSTIS: And to the best of your knowledge and belief, have all of the schedules and the statement of financial affairs been filed in this case?

MR. HUERTAS: Yes.

MS. EUSTIS: And did you review the statements and schedules before they were filed?

MR. HUERTAS: Yes.

MS. EUSTIS: And did you sign the statements and schedules before they were filed?

MR. HUERTAS: Yes.

MS. EUSTIS: And to the best of your knowledge and belief, the information that's contained therein is true and correct?

MR. HUERTAS: Yes. That's correct.

MS. EUSTIS: And prior to filing for bankruptcy, where did the debtor maintain its bank account?

MR. HUERTAS: The bank account is maintained in United Bank.

MS. EUSTIS: Okay. And that's currently a debtor-in-possession account, correct?

MR. HUERTAS: It is a separate account, as requested by the bankruptcy court. We follow all the steps -- instructions that we -- that we received from you.

MS. EUSTIS: Okay. Great.

MR. ORENSTEIN: Just to clarify, this is Jeff Orenstein. Just to clarify, for the record, in the prior bankruptcy case, the debtor's bank account was closed, and a DIP account was opened. That account remained opened as of the

filing of this case, and the debtor continued to use that account with the permission from the Office of the United States Trustee. That will continue to be the DIP account, and no second DIP account is being opened.

MS. EUSTIS: Great. Thank you. And that's the one at United Bank, correct?

MR. ORENSTEIN: Correct.

MS. EUSTIS: Okay. Thank you.

And Mr. Huertas, what does the debtor do? What's the nature of its business?

MR. HUERTAS: The debtor is in the business of doing lending. Business purpose loans.

MS. EUSTIS: Okay. And when and where was the business formed?

MR. HUERTAS: The business was formed in or around February 2024.

MS. EUSTIS: And where, if you recall.

MR. HUERTAS: I'm trying to recall. I -- I -- I -- I don't recall exactly in which entity was -- in which state the entity was formed.

MS. EUSTIS: Okay.

MR. HUERTAS: Sorry about that.

MS. EUSTIS: That's okay. Why did the debtor have to file for bankruptcy?

MR. HUERTAS: We had to file for in the bankruptcy as

due to the ongoing litigation that we had. The difficulty in collecting debts that we had for JPK NewCo.

MS. EUSTIS: Okay. And where is the business located?

MR. HUERTAS: That's a question that, again, I -- I -- I don't remember whether this is a DC LLC or this is a Virginia LLC.

MS. EUSTIS: Okay. Okay.

MR. HUERTAS: I don't recall that.

MS. EUSTIS: I apologize. I meant --

MR. HUERTAS: Yes.

MS. EUSTIS: -- what is the business address for it, for the entity.

MR. HUERTAS: Sorry. Repeat the question.

MS. EUSTIS: Sure. Is there a business address? Where does it operate out of.

MR. HUERTAS: It operates out of 8401 -- sorry about that. I thought you meant the -- where the LLC is.

MS. EUSTIS: That's okay.

MR. HUERTAS: It's 8401 Greensboro Drive, Suite 960. McLean, Virginia 22102.

MS. EUSTIS: Okay. Thank you.

MR. ORENSTEIN: And again, this is Jeff Orenstein. Just for the record, it was formed in the District of Columbia.

MS. EUSTIS: Okay. Thank you.

MR. ORENSTEIN: It's a DC LLC.

Case 1:25-cv-02500-SLS Document 20 Filed 08/17/25 Page 190 of 446


MS. EUSTIS: Thank you.

And does the debtor rent the space in which it operates, the Greensboro Drive space?

MR. HUERTAS: The debtor is located -- operating there. It's currently not paying rent.

MS. EUSTIS: Okay. Is there a lease agreement, though?

MR. HUERTAS: There is no agreements.

MS. EUSTIS: Okay. Does the debtor have any employees?

MR. HUERTAS: No employees.

MS. EUSTIS: And who's in charge of the day-to-day operations of the debtor?

MR. HUERTAS: I am.

MS. EUSTIS: Okay. And who are the owners of the debtor?

MR. HUERTAS: The owners of the debtor are -- and open then -- it will be WCP Fund I, LLC.

MS. EUSTIS: Uh-huh.

MR. HUERTAS: And SF NU, LLC.

MS. EUSTIS: Okay. And do you know -- do you know the percentage split of ownership?

MR. HUERTAS: Yes. WCP Fund I is 70.56 percent. SF NU is 29.44 percent.

MS. EUSTIS: Okay. Thank you. And are there any

Case 25-01250-ELG Document 1 Filed 08/17/25 Page 191 of 446


other officers or directors of the debtor?

MR. HUERTAS: No.

MS. EUSTIS: Has there been any change in the ownership of the debtor within the last year?

MR. HUERTAS: No.

MS. EUSTIS: Has there been any change in compensation of any of the owners or beneficial owners of the debtor within the last year?

MR. HUERTAS: No.

MS. EUSTIS: Does the debtor have an interest in any other business entity?

MR. HUERTAS: No.

MS. EUSTIS: Who maintains the books and records of the business?

MR. HUERTAS: We utilize resources that we have in Washington Capital Partners to help and assist in the maintenance of the books.

MS. EUSTIS: Okay. And what is their name?

MR. ORENSTEIN: Christina Araujo.

MS. EUSTIS: Okay.

MR. HUERTAS: Last name is spelled A --

MR. ORENSTEIN: For the record, that's spelled --

MR. HUERTAS: Oh, go ahead, Jeff. Go ahead.

MR. ORENSTEIN: For the record, that's spelled A-R-A-U-J-O. And Ms. Araujo appeared with us at the IDI.

Case 25-10250-EGS Doc 37 Document 201 Filed 08/17/25 Page 192 of 446


MS. EUSTIS: Okay. Thank you.

And has the debtor filed its tax returns for 2024?

MR. HUERTAS: I -- I am not hundred percent sure. That would be a question for Christina. I'm not a hundred percent sure.

MS. EUSTIS: Okay.

MR. HUERTAS: I want to assume yes, but I'm not a hundred percent sure.

MR. ORENSTEIN: To clarify that, no, the debtor did not file tax returns because no returns were due.

MR. HUERTAS: Thank you, Jeff.

MS. EUSTIS: No returns were due?

MR. ORENSTEIN: Yes. There was no income in 2024, so they were not obligated to file a return.

MS. EUSTIS: Okay.

MR. ORENSTEIN: And a statement was filed to that effect on the docket with the initial filing.

MS. EUSTIS: Okay.

MR. ORENSTEIN: Or I should say with the small business document.

MS. EUSTIS: Okay. Do you intend on retaining an accountant in this case, Mr. Huertas?

MR. HUERTAS: The question is do I intend to retain an accountant for this case?

MS. EUSTIS: Correct. Do you?

MR. HUERTAS: Do I intend in the future? I do. Once we figured out our income situation, I will.

MS. EUSTIS: Okay.

MR. ORENSTEIN: And we're aware that -- again, Jeff Orenstein. We're aware that, if that time comes, that an application will have to be filed to employ that individual.

MS. EUSTIS: Great. Thank you.

Has the debtor loaned any money to any of its owners within the last year?

MR. HUERTAS: No.

MS. EUSTIS: Has the debtor repaid any loan to any of its owners within the last year?

MR. HUERTAS: No.

MS. EUSTIS: Have any of its owners loaned any money to the debtor within the last year?

MR. HUERTAS: No.

MR. ORENSTEIN: Again, to clarify, for the record, there was not a loan, but there was a contribution to capital made by WC Partners.

MS. EUSTIS: Okay. All right. And Mr. Huertas, you understand that, going forward, you need the Court's permission prior to infusing any cash into the debtor now that the debtor is in bankruptcy?

MR. HUERTAS: Yes.

MS. EUSTIS: And has the debtor sold or transferred

any property within the last year?

MR. HUERTAS: No.

MS. EUSTIS: All right. Does the debtor have any secured debt?

MR. HUERTAS: Secured debt? No. Actually, I'm -- I'm sorry. I'm thinking about we do have a secure loan for -- in favor to Mr. Sariri.

MS. EUSTIS: Okay. And does that require monthly payments, or was that a balloon note?

MR. HUERTAS: That did required monthly payments.

MS. EUSTIS: Okay. And has the debtor been able to make those payments to Mr. Sariri?

MR. HUERTAS: Unfortunately, we haven't been able to.

MS. EUSTIS: Okay. And is the debtor currently generating any revenue?

MR. HUERTAS: Currently, we're not able, as the -- some of the loans that we have are not paying or not paying off yet. So we don't have revenue coming through.

MS. EUSTIS: Okay.

MR. ORENSTEIN: Kristen, Jeff Orenstein, again. Just to correct the record, I'm not sure if Mr. Huerta has misunderstood, but to my knowledge, the loan to Mr. -- or the loan from Mr. Sariri is not secured. It's unsecured.

And also with regard to payments due to the debtor, which you asked about, I'm not sure what exactly your question

was, but there is a obligation due to the debtor from Energy Morocco which has matured. Has not been paid. And a demand letter has been sent to Energy Morocco.

MS. EUSTIS: Okay.

MR. ORENSTEIN: But it has not been received. So that's why there's no income yet.

MS. EUSTIS: Okay.

MR. HUERTAS: Yeah, I -- I -- I apologize. I -- when looked at the debt, that the outstanding loan we had, and sorry. I meant, it -- it is unsecured debt.

MS. EUSTIS: Okay. When was the demand letter sent to Energy Morocco, if you recall, Mr. Huertas?

MR. HUERTAS: Yes. We sent up the request.

MS. EUSTIS: I apologize. I didn't catch that. Can you repeat that, please?

MR. HUERTAS: Yeah. We -- we sent up the request.

MS. EUSTIS: And when was that?

MR. HUERTAS: Sorry. That was in the last few weeks.

MS. EUSTIS: Oh, okay. Thank you. Has the debtor had to borrow any money since filing for bankruptcy?

MR. HUERTAS: We didn't borrow any more money, but we made a contribution. But we didn't borrow money.

MR. ORENSTEIN: And that's the contribution I talked about earlier from WCP, and that was pre-petition.

MS. EUSTIS: Okay. But post-petition, there has been

no contributions and no borrowing of money?

MR. ORENSTEIN: No.

MS. EUSTIS: Okay. Mr. Huertas, what's the plan in this case to pay back the debtor's creditors?

MR. HUERTAS: I mean, the plan is to collect the amounts that are due under the two notes. And we have two notes, again Developer RE1 and 423 Kennedy St Holdings. And -- and to use the funds to pay debts and continue with operations.

MS. EUSTIS: Okay.

MR. ORENSTEIN: Kristen, Jeff Orenstein. The plan that was filed in the first case is largely the plan that's going to be filed in this case. We obviously have to update some things. But substantively, it's going to be the same plan.

MS. EUSTIS: Okay.

MR. ORENSTEIN: And I'm sure you'll ask this question, but I anticipate that will be filed within the ninety days and maybe even before the status conference.

MS. EUSTIS: Great. So you will not be seeking an extension of that deadline?

MR. ORENSTEIN: We will not, unless something crazy happens that I can't anticipate.

MS. EUSTIS: Okay. Never say never, Mr. Orenstein.

MR. ORENSTEIN: Exactly. That's why I didn't say that.

MS. EUSTIS: All right. Well, I have no further questions for Mr. Huertas.

Ms. Burgers, do you have any questions?

MS. BURGERS: I do not, Kristen, in the cases.

MS. EUSTIS: Okay. And Mr. Sadowski.

MR. SADOWSKI: Yes. Do I begin?

MS. EUSTIS: Please.

MR. SADOWSKI: Hey. Mr. Huertas, good morning, again. Jim Sadowski speaking.

You mentioned the business purpose. Sorry. In answer to the question, why did you file for bankruptcy, that there was "ongoing litigation", is that litigation the litigation involving Developer RE1 and 423 Kennedy St Holdings? Is that the litigation you're referring to as ongoing litigation?

MR. HUERTAS: No. I -- Is your question why we formed JPK NewCo?

MR. SADOWSKI: No. Mr. Eustis asked you --

MR. HUERTAS: What's your question?

MR. SADOWSKI: -- why the debtor filed for bankruptcy, and you gave an answer, part of which was because of the ongoing litigation. And I'm trying to find out what ongoing litigation you were referring to when you made that statement.

MR. HUERTAS: I'm trying to think your question. Again, we are a company that hasn't been able to collect our debts. And it -- our last -- we're trying to figure this out

Case 25-10250-E Document 2 Filed 08/17/25 Page 198 of 446


and as a result file for bankruptcy.

MR. SADOWSKI: You didn't answer my question.

MR. ORENSTEIN: The debtor's not involved in --

MR. SADOWSKI: Yeah.

MR. ORENSTEIN: Yeah, the debtor's not involved in any litigation, other than the litigation that your clients are involved in, if that's your question.

MR. SADOWSKI: Yeah. Well, I'd like to get an answer from Mr. Huertas.

Is that correct, Mr. Huertas? The ongoing litigation that you're referring to was a litigation involving Developer RE1 and 423 Kennedy, correct?

MR. HUERTAS: That's not correct. The -- I can't already answer your question. Like I said, it was --

MR. SADOWSKI: Then what other ongoing litigation was the debtor involved with besides the litigation between 423 Kennedy and Developer RE1?

MR. ORENSTEIN: Yeah. Mr. Huertas, he's not asking you why you filed. He said that when you answered --

MR. HUERTAS: Okay.

MR. ORENSTEIN: -- why you filed, you said, among other reasons, because of litigation. And he's asking you if the litigation with his client is the litigation you're referring to.

MR. HUERTAS: No. I -- I'm sorry. It was -- I -- I

misspoke. Sorry about that.

MR. SADOWSKI: So the debtor didn't file because of ongoing litigation, or it did?

MR. HUERTAS: I'm sorry. You're confusing me. I already said that I misspoke. So right now, we're not collecting the monies that are due to us, and we are forced to file for bankruptcy.

MR. ORENSTEIN: And Mr. Huertas --

MR. SADOWSKI: And how did you --

MR. ORENSTEIN: This is Jeff. This is Jeff Orenstein. He's asking you if JPK is involved in litigation with anyone other than --

MR. HUERTAS: No.

MR. ORENSTEIN: Developer RE1 and 423 Kennedy. That's what he's asking you.

MR. HUERTAS: Yeah. The answer is no. We don't have any other litigation.

MR. SADOWSKI: Okay. And thank you. You also mentioned that one of the reasons that the company filed for bankruptcy was it "had difficulty in collecting debts". What efforts did JPK NewCo take to collect any debts before it filed for bankruptcy?

MR. HUERTAS: I mean, we go through the normal procedures to collect debts. Unfortunately, we were not able to collect debts and collect our payments. So it's been --

Case 25-00250-ELG Doc 37-1 Document 20 Filed 08/17/26 Page 200 of 446


it's been difficult to collect the payments.

MR. SADOWSKI: Well, what was the normal course of collecting debts for JPK NewCo?

MR. HUERTAS: Customary. We send payment requests and in expectation of payments. Payments haven't come through.

MR. SADOWSKI: Okay. And did the JPK NewCo -- and the debts that you were trying to collect, that the debtor was trying to collect, were the two promissory notes, correct? One to Developer 1 and one to 423 Kennedy? Were those the debts that they were trying to collect?

MR. HUERTAS: I mean, we have -- I believe we have three loans. We have those two unsecured claims, and we also have the smaller one that we sent a payment request.

MR. SADOWSKI: Okay. The smaller one was Energy of Morocco (sic)? Is that the smaller one?

MR. HUERTAS: That's correct.

MR. SADOWSKI: Okay. Okay. So let's start with that one. What efforts before filing for bankruptcy did JPK NewCo make to try to collect the smaller debt?

MR. HUERTAS: We sent a payment -- a payment request, like I said before.

MR. SADOWSKI: Yeah. Okay. Is that the only effort it made?

MR. HUERTAS: That's the big -- that's one of the bigger things that we did is sent a payment request and

expecting payment.

MR. SADOWSKI: Okay. Now, with respect to the other debt that JPK NewCo was having, is that the debt that JPK was having difficulty collect, or were there others?

MR. HUERTAS: Which debt?

MR. SADOWSKI: Well, in response to Ms. Eustis' questions about why the debtor filed for bankruptcy, you mentioned ongoing litigation, which we've covered, and a difficulty in collecting debts. And you use the word plural, D-E-B-T-S, debts. So what difficulty was JPK NewCo having in collecting any debts, other than the one to Energy of Morocco (sic)?

MR. HUERTAS: I think it's definitely the plan. We plan to collect the amounts that are due under the two notes that we have against Developer RE1 and 423 Kennedy St. As soon as we have those, that will pay off the debts, and we continue with operations.

MR. SADOWSKI: Okay. Now, let's talk about that. Why did you need to form a new company to collect the debts? Why couldn't WCP Fund or SF NU just collect those debts on their own?

MR. HUERTAS: Back in February 2024, under the advice of counsel, we were negotiating a settlement of -- of that such litigation over the troubled assets. So it was informed yesterday and for it was going back in February 2024.

MR. SADOWSKI: Okay. So after it was formed in February 2024, what effort did JPK NewCo make to collect the two promissory notes?

MR. HUERTAS: We sent up the request, actually. As I recall, we sent up the request for -- for --

MR. SADOWSKI: Are you sure about that, or are you just kind of guessing?

MR. HUERTAS: I mean, it's been so long, I -- without going into the record, I think that's what happened. So I don't have -- I don't have that information in front of me. But I think that's what happened. We sent a demand letter to request those payment -- those loans to be paid off. I'm not a hundred percent --

MR. SADOWSKI: And who did you send that to me? And who did that demand letter get sent to?

MR. HUERTAS: To the debtors.

MR. SADOWSKI: And who are they?

MR. HUERTAS: The developer.

MR. ORENSTEIN: Mr. Huertas, this is Jeff Orenstein. Are you guessing about what happened, or is this what you know actually happened?

MR. HUERTAS: I -- I'm not entirely sure. I'm not entirely sure how it happened.

MR. ORENSTEIN: Okay. If you're not sure, then you shouldn't speculate. If you know the answer, please tell them.

But if you're not sure, tell them you're not sure.

MR. HUERTAS: Yeah, I'm not sure, Mr. Sadowski.

MR. SADOWSKI: Okay. Besides sending payoff requests, and you're not sure about, to collect the debts, what other efforts, if any, did JPK make to collect debts from either Developer RE1 or 423 Kennedy?

MR. HUERTAS: I -- I don't recall what everything -- what other efforts were made.

MR. SADOWSKI: Okay. But JPK NewCo didn't file a claim against either of those two borrowers, right? Didn't file any litigation?

MR. HUERTAS: I don't recall what efforts were made.

MR. SADOWSKI: Okay. Wouldn't that be the natural course after sending a payoff request and then not getting paid? Wouldn't that be the next step, or is there something else you might have done?

MR. HUERTAS: I don't recall how those were made.

MR. SADOWSKI: Okay. The ownership breakdown of the entity you described, and I'm just going to use the number seventy percent, twenty-nine percent or seventy percent, thirty percent, how did the persons who formed JPK NewCo decide to use those particular amounts of percentage ownership?

MR. HUERTAS: Those amounts were used to based on their percentage of ownership.

MR. SADOWSKI: I get that, but why didn't WCP Fund get

forty percent and SF NU get sixty percent? Why did you choose 70.56 and 29.44?

MR. HUERTAS: Those amounts were used within a percentage of ownership.

MR. SADOWSKI: But you don't know why those numbers were used?

MR. HUERTAS: I -- I'm sorry, but those amounts were used based on the percentage of ownership.

MR. SADOWSKI: So you don't know why?

MR. HUERTAS: I'm answering the question. Those amounts were used based on the percentage of ownership.

MR. SADOWSKI: Yeah, I understand that. We know that. Everybody knows those amounts were used. The question is why were those amounts used? Do you know the answer?

MR. HUERTAS: Because those were the loans used for that percentage of ownership.

MR. SADOWSKI: Who came up with that formula?

MR. HUERTAS: That was a percentage of ownership of each loan. So --

MR. SADOWSKI: Right. And who decided to use those numbers?

MR. HUERTAS: -- I don't know (indiscernible) your question. Sorry.

MR. SADOWSKI: Okay. Who can answer that question?

MR. HUERTAS: I don't -- I don't have that answer. I

don't know what question you're asking, Mr. Sadowski. But those percentages were used based on the percentage of ownership.

MR. SADOWSKI: Of the debtor? Okay. So you don't know why the numbers were used. You don't know who came up with the numbers. What do you know about those two numbers, other than that they were used? Do you know anything else about it?

MR. HUERTAS: That was a percentage split. I don't know -- I don't know. I'm sorry. You're asking a question that I'm answering to you. That was a percentage of split.

MR. SADOWSKI: Right. You keep telling me that, but you're not telling me who came up with those numbers and why those numbers were used. So you don't know the answer to that; is that right?

MR. HUERTAS: I'm answering the question. Those were percentages of the numbers for each entity.

MR. SADOWSKI: Well, I get that, Mr. Huertas. But why didn't you use ninety-nine percent WCP Fund and one percent SF NU? Why didn't you use those numbers instead?

MR. HUERTAS: Because that was not the percentage attributed to each entity.

MR. SADOWSKI: Okay. Well, that's what --

MR. HUERTAS: The percentage for them was (indiscernible) each.

MR. SADOWSKI: -- I'm trying to get at. Okay. So why did you attribute 70.56 to WCP Fund when forming SF NU?

MR. HUERTAS: That was the percentage of the interest in those loans for what I have in there. I don't know how else to answer your question. I'm sorry, Mr. Sadowski. That was a percentage from the each (indiscernible).

MR. SADOWSKI: Okay. So all right. So I think that -- I think that's what I'm getting at, Mr. Huertas. So WCP Fund had seventy percent interest in the loans to 423 Kennedy? Is that what you're saying?

MR. HUERTAS: WC (sic) Fund I has 70.56 percent interest on the loans that -- the unsecured claims of JPK NewCo.

MR. SADOWSKI: Okay. So how did that -- how did you figure that number out? How did you figure out that WCP Fund had 70.5 percent interest in the loans?

MR. HUERTAS: I'm sorry. The (indiscernible).

MR. SADOWSKI: Did you in the math? Did you --

MS. EUSTIS: Gentlemen, I need --

MR. HUERTAS: That -- that (indiscernible).

MS. EUSTIS: Excuse me. Mr. Huertas, I really need you to wait until Mr. Sadowski finishes asking his question before you answer and for the both of you not to interrupt one another because I am recording this. And if someone requests a transcript, it's going to be very difficult to discern what is

being said when you are talking over one another.

So Mr. Huertas, if you could please repeat what you just said, I would appreciate it.

MR. HUERTAS: It is a percentage of interest and is a percentage of interest for each entity on JPK NewCo.

MR. SADOWSKI: Yeah. I still don't know that there's an answer to the question why 70.56 percent. Why --

MR. HUERTAS: I believe I --

MR. SADOWSKI: -- that number was used?

MR. HUERTAS: I believe I answered to the best of my knowledge, sir.

MR. SADOWSKI: Okay. What is the basis for your knowledge of that answer? How do you know that?

MR. HUERTAS: I had already answered your question.

MR. SADOWSKI: Okay. I don't think you did. Okay. So let's talk about the formation of JPK NewCo. At some point, WCP Fund and SF NU decided to do this. Okay. And when was that? Decided to form this company? When was that?

MR. HUERTAS: The company was formed on or about February 2024.

MR. SADOWSKI: Okay. And who was making the decisions for SF NU about how it would participate in this new entity?

MR. ORENSTEIN: This is Jeff Orenstein speaking. The 341 is about the financial affairs of JPK, and I'm not really sure what these questions have to do with the financial affairs

of JKP. I know that there is ongoing litigation between the parties, and this seems to me to be questions that are more involved in some of the issues raised in the litigation and really not appropriate for a 341 meeting.

MR. SADOWSKI: Okay. I understand, Mr. Orenstein.

Mr. Huertas, do you have an answer?

MR. HUERTAS: I don't have an answer for you, sir. Sorry.

MR. SADOWSKI: All right. Well, if you had to pick up the phone and call SF NU today, who would you call?

MR. HUERTAS: It -- I -- I'm sorry. I'm going to ask my lawyer.

Is that something that is related to this case, Jeff?

MR. ORENSTEIN: I mean, you can tell him who the owner of SF NU is if you know.

MR. HUERTAS: My -- I don't have the -- I don't know who the ownership group is on SF NU, other than my point of contact as SF NU.

MR. SADOWSKI: And who is the point of contact?

MR. HUERTAS: The point of contact of SF NU is Jason Shrensky.

MR. SADOWSKI: And has he been the only point of contact for SF NU throughout the life of the debtor?

MR. HUERTAS: Yes.

MR. SADOWSKI: Mr. Orenstein, in one of the schedules.

It mentions that JPK is not a defendant. I think that needs to be corrected because they were added as a defendant as a result of a decision that Judge Gunn made, just FYI.

MR. ORENSTEIN: Okay. I appreciate that. We can change that.

MR. SADOWSKI: That's on the -- yeah, that's on the -- that's okay. It's on the schedules page 28, I think.

MR. ORENSTEIN: On the statement of financial affairs?

MR. SADOWSKI: Sorry, Jeff. Give me a second. Where it lists litigation within the year, I think --

MR. ORENSTEIN: Okay.

MR. SADOWSKI: -- you may have just copied the schedule from last time, which resulted in that, which was probably true at that time. They hadn't been --

MR. ORENSTEIN: Yeah, we --

MR. SADOWSKI: The first time -- yeah. Yeah.

MR. ORENSTEIN: Yeah, we tried to go over everything and catch anything, but we might have missed that. So we'll amend that. Thank you for bringing that to my attention.

MR. SADOWSKI: Yeah. No problem.

Mr. Huertas, has JPK NewCo paid any legal bills since its formation?

MR. HUERTAS: Has JPK NewCo pay any legal bills since formation? Is that a question?

MR. SADOWSKI: Correct.

MR. HUERTAS: Can you please repeat the question?

MR. SADOWSKI: Yeah. Yes. Has JPK NewCo paid any legal bills since its formation?

MR. HUERTAS: Yes.

MR. SADOWSKI: Okay. And who did JPK NewCo pay legal bills to?

MR. HUERTAS: I'll be Jeff at this point, but so we pay our legal bills to -- to the legal representative.

MR. SADOWSKI: Okay. Was that Mr. Orenstein? Is that somebody else?

MR. HUERTAS: Yes. We pay -- Jeff, please confirm if I haven't, but I think we pay Jeff. This is Orenstein.

MR. ORENSTEIN: Yeah, just to clarify that, Mr. Sadowski, and I think it's in the papers in this case, even. But if not, certainly in the last case, there was originally a payment that was made to the VerStandig Law Firm when it was anticipated that there was going to be litigation. When the bankruptcy ensued, money was transferred from Mr. VerStandig trust account to my firm. My firm then used that money in the course of the case, based upon an order entered by the Court approving those fees.

And in this case, as I know we disclosed in the employment application, and we talked about this earlier, there was a capital infusion from WCP in order to pay the retainer that's disclosed in my case. Those are the fees that have been

paid to me.

I'm not aware of legal fees being paid to anybody else. But Mr. Huertas, you can correct the record if I'm wrong about that.

MR. HUERTAS: No, Jeff is correct.

MR. SADOWSKI: Okay. The only legal fees that have been paid by JPK were to Mr. Orenstein, his firm, right?

MR. HUERTAS: That's correct.

MR. SADOWSKI: Okay. Now, at the time JPK NewCo was being formed -- sorry. Let me ask it a different way. Were there any appraisals done on the properties that were owned by either 423 Kennedy or Developer RE1 after December 2022?

MR. ORENSTEIN: Can you explain --

MR. HUERTAS: (Indiscernible) --

MR. ORENSTEIN: -- what this has to do -- can you explain what this has to do with the finances of JPK? I mean, I don't like to step in and instruct witnesses not to answer questions. I just am a little sensitive because there is ongoing litigation between the parties, and this is pretty far afield from what typically gets asked at a 341 meeting. Obviously, there's not a judge here who's going to rule on any objection. So I don't want to take an adversarial position, but I'm just trying to understand.

MR. SADOWSKI: Yeah, I'm just trying -- they said they had difficulty collecting debts, and they were in the business

Case 25-01032-EJC  Doc 3  Filed 08/17/25  Page 212 of 446


of loaning money. And I'm trying to figure out if -- also, that's one thing, and then the other thing is they list assets here of three million dollars. And I'm trying to figure out how they came up with the basis for those assets and whether that was just the face value of the notes or whether that was potentially, if they collected those notes, the value of the properties they were going to acquire.

MR. ORENSTEIN: I can tell you that in preparing the schedules, what was used was the amounts due on the note with a component for built in interest that was due as of the time.

MR. SADOWSKI: Okay. All right. Well, that might answer it. And then getting back to -- one second.

Mr. Huertas, what specific loan documents were assigned to JPK NewCo?

MR. ORENSTEIN: Mr. Huertas, if you know the answer to that, you can answer that.

MR. HUERTAS: I don't recall exactly what the specific loan documents was there at closing.

MR. SADOWSKI: Other than the loan documents that JPK NewCo owns, aren't there senior liens on those two properties as well, the two properties owned by Developer RE1 and 423 Kennedy?

MR. HUERTAS: I -- I'm going to ask my lawyer.

Jeff, is this related to this case or not?

MR. ORENSTEIN: You can answer that to the best of

your knowledge.

MR. HUERTAS: Well --

MR. ORENSTEIN: I thought that was addressed -- I thought that that is addressed in the schedules. If you look at schedule A/B, it does reflect that both the notes to 423 Kennedy and -- I'm sorry, I'm drawing a blank at the moment -- the Developer RE1 are junior liens. That's reflected on the schedules.

MR. SADOWSKI: Yeah. Do you remember the question, Mr. Huertas?

MR. HUERTAS: So both loans are junior liens, so there's a senior lien for only child -- only child asset.

MR. SADOWSKI: Right. So let's assuming the plan plays out as you expect that and then you're going to go and collect on those loans, what do you expect to realize on those loans if there's already senior debt that's going to be more than the value of the loans that you're going to collect on? Like, how is --

MR. HUERTAS: Paying that back --

MR. SADOWSKI: -- JPK NewCo going to make any money at all, ever, if it has to pay off senior debt?

MR. HUERTAS: That's your assumption. I don't share your assumption.

MR. SADOWSKI: Okay. What's wrong with my assumption?

MR. HUERTAS: My assumption is that when we collect

Case 25-00250-ELG Document 01 Filed 08/17/25 Page 214 of 446


the amounts that are the -- only the two loans, we will be able to pay our debts and continue with operations.

MR. SADOWSKI: Okay. Well, how are you going to collect on the two notes to JPK and 423 Kennedy? If those entities have no money to pay, how are you going to collect on the debts on the notes?

MR. HUERTAS: Like I said, that's what you ask. Your -- that's your assumption, and that's -- I don't share your assumption.

MR. SADOWSKI: Okay. So why do you assume that those debts will be paid?

MR. HUERTAS: Like I said, our plan will be to collect the two notes. And when we're able to, we'll continue to pay off our debts and continue the operations. All right. So both JPK NewCo, Developer RE1, and 423 Kennedy turn out to not have any money to pay any debts, then the debtor will have no ability to pay anybody, right?

MR. ORENSTEIN: That's not correct, Mr. Sadowski. There is a third loan, which is disclosed on the schedules, from Energy Morocco. The plan doesn't provide for payment for a hundred percent to creditors. And I mean, the plan hasn't been filed yet, but to the extent that substantively it's the same as the first plan, it provides for payment to creditors from the collection on the loans. Whether or not that turns out to be a hundred percent or two percent, we don't know at

this point so -- but I think it's false to say that there will be no payment to creditors because there are other loans, even if the position on these two properties that you're discussing turns out to have no equity, which we don't know to be the case presently.

MR. SADOWSKI: So Mr. Huertas, why does the debtor, which is wholly owned by WCP Fund and SF NU, why does the debtor need to collect those debts in bankruptcy in a bankruptcy court, as opposed to just collecting those debts in another court?

MR. HUERTAS: I don't have answer to your question.

MR. SADOWSKI: Okay. But you could, if you wanted to? WCP Fund I and SF NU, they could try to collect those debts in D.C. Superior Court, right?

MR. HUERTAS: I'm not a lawyer. I already explained to you, I don't have an answer your question, sir.

MR. SADOWSKI: All right. Well, how would WCP Fund I go about collecting a debt if it wasn't in bankruptcy court? (Indiscernible) request --

MR. ORENSTEIN: WCP Fund I --

MR. SADOWSKI: Yeah, WCP Fund I, yeah, it would send a payoff request first, right? Wouldn't happen. Maybe it'll send a demand letter. Then what would WCP Fund I do next to collect a debt that it was owed?

MR. ORENSTEIN: WCP Fund I is not the debtor in this

case. And this question clearly doesn't have anything to do with the finances of the debtor, which now clarifies that these questions are being asked for the purpose of discovery in the litigation. If you want to ask questions --

MR. SADOWSKI: No, I --

MR. ORENSTEIN: -- about the finances of WCP, that's fine. Go ahead and do that. But you're asking hypothetical questions about collection practices of an entity that's not the debtor in this case.

MR. SADOWSKI: Okay. I'll ask it a different way. Why does JPK NewCo need the bankruptcy court to help it collect its debts when there are other courts available to do that?

MR. HUERTAS: I'm not a lawyer, sir. You're asking a legal question. I'm not a lawyer. I cannot answer your question.

MR. SADOWSKI: Well, I'm asking you why you need to utilize the bankruptcy court to collect debt. That's what my question.

MR. HUERTAS: Like I said to you before, I'm not a lawyer. I'm not in the position to answer your question.

MR. SADOWSKI: All right. So is it the business people or the legal people who made the decision to put JPK NewCo into bankruptcy?

MR. HUERTAS: I already mentioned to you, I'm not in position to answer your question.

MR. SADOWSKI: All right. You don't know who made the decision to put JPK NewCo into bankruptcy.

MR. ORENSTEIN: The record that's --

MR. HUERTAS: Jeff.

MR. ORENSTEIN: -- in this case, the docket reflects a resolution that's filed by the debtor authorizing Mr. Huertas to put the debtor into bankruptcy. So clearly, the answer to your question is that Mr. Huertas, on behalf of his company, put the debtor into bankruptcy.

Whether or not he got legal advice is a different question. And certainly, I wouldn't allow him to answer that here.

MR. SADOWSKI: Okay. Did Mr. Shrensky participate in the decision to put JPK NewCo into bankruptcy?

MR. HUERTAS: I'm trying to recall.

MR. SADOWSKI: Is there an --

MR. HUERTAS: I'm trying to recall. Sorry. This was a while ago.

MR. SADOWSKI: Well, JPK NewCo just filed for bankruptcy a month ago.

MR. HUERTAS: No, I understand. I understand. Mr. Shrensky was aware of -- aware of the bankruptcy. Yes.

MR. SADOWSKI: Okay. He's aware of it, but did he participate in the decision?

MR. HUERTAS: He participated in the decision.

MR. SADOWSKI: Okay. And how did that decision get made, other than through the resolution? Is that how it got made? There was a resolution. How did he participate in that decision?

MR. HUERTAS: I don't recall how -- I don't recall how, sir. Like, that -- I -- literally, I just don't quite understand the nature of your question. So I don't understand what you mean by participation. He -- he was part of the decision, and he collectively made the decisions to -- to proceed as -- as such.

MR. SADOWSKI: Okay. And do you remember what --

MR. HUERTAS: (Indiscernible) I -- I just don't have an answer to your question.

MR. SADOWSKI: Okay. So the decision making process involved what? A phone call? Email? Text?

MR. HUERTAS: I don't recall how we did it. Sorry.

MR. SADOWSKI: And Developer RE1 and 423 Kennedy are listed as creditors in the schedules. Why are they listed as creditors?

MR. ORENSTEIN: Well, I can tell you, having prepared the schedules, that as you've indicated, JPK is a defendant in the case, which I guess is an oversight. We didn't correct that. But we knew that claims were being made, and so we believed that it was appropriate to list them as a creditor in the case.

MS. EUSTIS: Mr. Orenstein, this is Kristen Eustis. I've been extremely patient, but this is a -- this is a 341 meeting. So unless you're testifying, you've been answering more as on an attorney, as I have heard in any 341 meeting that I've conducted over the past six years. So if your client knows the answer to a question that is being asked of him, he can answer it. If he can't, he doesn't. And if you and Mr. Sadowski want to clarify things off the record, you can do that. But the questions -- or and the answers need to come from Mr. Huertas.

MR. ORENSTEIN: That's fine. I just think that Mr. Huertas is not going to have sufficient knowledge to answer a lot of these. And I want to give Mr. Sadowski as much information as we can. But that's fine. I won't jump in.

And Mr. Huertas, if he asks you a question and you don't know something because it's a legal issue, then you should just say that. And then I won't jump in.

MR. HUERTAS: Okay. Sorry. Okay. Thank you.

MR. SADOWSKI: All right. Mr. Huertas, I think in part Mr. Orenstein is trying to be helpful, but the questions really are for you. Why are Developer RE1 and 423 Kennedy listed as creditors on the debtor's schedules? And I'm looking at page 6 of 45.

MR. HUERTAS: I think that's more of a legal question. So I don't have -- I -- I don't have a good answer for you.

MR. SADOWSKI: Okay. There's also a page that lists the codebtors. Have to turn to that page, folks. Just give me a second. My computer is, of course, going slow. It's page 28. Let me get back to that. Almost there. Okay.

Schedule H codebtors, page 23 of 45, it lists Russell Drazin, WCP Fund I, and Daniel Huertas. Why are those people listed as codebtors?

MR. HUERTAS: That's a legal question. I don't think I'm able to answer you that question.

MR. SADOWSKI: Okay. Does Russell Drazin owe any money to JPK NewCo?

MR. HUERTAS: No.

MR. SADOWSKI: And how about WCP Fund? Does that have entity owe money to JPK NewCo?

MR. HUERTAS: WC (sic) Fund I made a contribution, not a loan.

MR. SADOWSKI: Okay.

MR. HUERTAS: That was an trans made long time ago.

MR. SADOWSKI: Sure. And when that contribution was made, was there any increase in its ownership interest in the entity?

MR. HUERTAS: No.

MR. SADOWSKI: Okay. And one second. Ms. Eustis, I'm almost done. I'm just looking over my notes.

MS. EUSTIS: Okay. Thank you.

MR. SADOWSKI: Yeah. What, if any, consideration was paid by the WCP Fund I or SF NU to get their percentage ownership interest in JPK NewCo?

MR. HUERTAS: Sorry. I -- I -- I had already answered your question before. It was a percentage of interest.

MR. SADOWSKI: Okay. So there was no money -- no money changed hands when the loan documents got assigned; is that right?

MR. HUERTAS: I don't -- I don't (indiscernible).

MR. ORENSTEIN: I don't believe that's what you said.

MR. SADOWSKI: So how do you -- how do you value an ownership interest in JPK NewCo? Does it have value, or is it valueless?

MR. ORENSTEIN: Again, I'm not going to answer the question, but I don't understand what this has to do with the financial condition of JPK. And this sounds more like it is a discovery request in a matter pending in litigation. If you can tie how this has to do with the finances and not the litigation issues, I'll have him answer. But otherwise I don't think it's an appropriate question for a 341.

MR. SADOWSKI: I'll withdraw the question at the moment, Mr. Orenstein. Let me just look through my notes.

Yeah. Why did JPK lend money to Energy of (sic) Morocco?

MR. HUERTAS: JPK is in the business of doing business

professional loans. That was one of the loans.

MR. SADOWSKI: Okay. So what other loans did JPK NewCo make besides the loan to the Energy of Morocco?

MR. HUERTAS: Think that it's the only loan that we were able to make with the funds available.

MR. SADOWSKI: Why didn't JPK NewCo -- if it was in the business of loaning money, why did it just have one customer? What other customers was JPK NewCo considering loaning money to, if any?

MR. HUERTAS: When our plan is completed, I think we'll be able to resume operations? That's the only thing we were able to do with the money available.

MR. SADOWSKI: Is that the only business that JPK NewCo conducted since inception? One loan to one customer?

MR. HUERTAS: That's correct.

MR. SADOWSKI: Has Mr. Sariri made any claim against JPK NewCo to collect his money? When I say made any claim, has he sent a demand letter? Has he made any effort to take that money out of you guys?

MR. HUERTAS: I do -- I do not recall.

MR. SADOWSKI: Okay. Ms. Eustis, those are all the questions I have at this time. We're obviously going to reserve our right to do a Rule 2004 or take a deposition with respect to another claim. That's another contested matter that's pending.

MS. EUSTIS: Thank you, Mr. Sadowski.

Mr. Metz, do you have any questions for Mr. Huertas?

MR. METZ: I do not. Thank you.

MS. EUSTIS: Thank you. So with that, I will conclude the 341 meeting today.

Again, Mr. Huertas, just a reminder that monthly operating reports are due on the 21st of the month for the prior month. And this is a subchapter V case, so quarterly fees will not be due. But you still need to get those monthly operating reports timely filed because that's really the only insight that my office, the Court, and parties-in-interest have into what's going on in the case.

So with that, I will conclude the meeting. Thank you all for your time.

MR. ORENSTEIN: Thank you very much.

(Whereupon the hearing was adjourned)

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ ______________________________ Date: July 31, 2025

ESCRIBERS LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF COLUMBIA**

PDF FILE WITH AUDIO FILE ATTACHMENT

2025-00200

JPK Newco, LLC

---

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2025-00200 |
| Case Title : | JPK Newco, LLC |
| Audio Date\Time: | 7/30/2025 11:31:05 AM |
| Audio File Name : | 1bk2025-00200_20250730-113105.mp3 |
| Audio File Size : | 18176 KB |
| Audio Run Time : | [00:37:52] (hh:mm:ss) |

---

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public. In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF COLUMBIA**

PDF FILE WITH AUDIO FILE ATTACHMENT

2025-00200

JPK Newco, LLC

---

| | |
|---|---|
| Case Type : | bk |
| Case Number : | 2025-00200 |
| Case Title : | JPK Newco, LLC |
| Audio Date\Time: | 7/31/2025 1:07:20 PM |
| Audio File Name : | 1bk2025-00200_20250731-130720.mp3 |
| Audio File Size : | 50376 KB |
| Audio Run Time : | [01:44:57] (hh:mm:ss) |

---

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file, click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

**This digital recording is a copy of a court proceeding and is provided as a convenience to the public. In accordance with 28 U.S.C. § 753 (b) "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."**

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ____________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☑ | ☐ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*. + $ 0.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Case 1:25-cv-03250-SLS Document 25 Filed 08/17/25 Page 229 of 446

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** *(Exhibit F)* $ 0.00

## 5. Employees

26. What was the number of employees when the case was filed? 0
27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00
30. How much have you paid this month in other professional fees? $ 0.00
31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A*<br>**Projected**<br>Copy lines 35-37 from the previous month's report. | – | Column B<br>**Actual**<br>Copy lines 20-22 of this report. | = | *Column C*<br>**Difference**<br>Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00
36. Total projected cash disbursements for the next month: - $ 0.00
37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- ☐ 39. Bank reconciliation reports for each account.
- ☑ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- ☐ 41. Budget, projection, or forecast reports.
- ☐ 42. Project, job costing, or work-in-progress reports.



Print Save As... Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

**OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION**
**MONTHLY OPERATING REPORT**
**CHAPTER 11 - BUSINESS DEBTORS**
**Form 2-A**
**COVER SHEET AND QUESTIONNAIRE**

For Month Ended Jul-25

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document: Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|---|
| x | | 1. | Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. | Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. | Disbursements Summary for the Month (Form 2-D) |
| x | | 4. | Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. | Balance Sheet (Form 2-F) |
| x | | 6. | Profit and Loss Statement (Form 2-G) |
| x | | 7. | Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. | Bank Statements for All Bank Accounts |
| x | | 9. | Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 8/18/2025 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

08/18/25

# JPK NewCo LLC
# Balance Sheet
### As of July 31, 2025

| | | Jul 31, 25 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 935.00 |
| **Total Checking/Savings** | | 935.00 |
| **Other Current Assets** | | |
| **1230 Notes Receivable** | | |
| **Energy Morocco LLC** | 26,000.00 | |
| **Total 1230 Notes Receivable** | | 26,000.00 |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 46,000.00 |
| **Total Current Assets** | | 46,935.00 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,127,449.86** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |

08/18/25

# JPK NewCo LLC
## Balance Sheet
### As of July 31, 2025

| | Jul 31, 25 |
|---|---|
| **Equity** | |
| **SF NU, LLC** | 899,861.88 |
| **WCP Fund I LLC** | 2,177,587.98 |
| **Total Equity** | 3,077,449.86 |
| **TOTAL LIABILITIES & EQUITY** | **3,127,449.86** |

08/18/25

**JPK NewCo LLC**

# Profit & Loss

**January through July 2025**

| | Jan - Jul 25 |
|---|---|
| **Net Income** | **0.00** |

**JPK NewCo LLC**

08/18/25

# Statement of Cash Flows

**July 2025**

| | Jul 25 |
|---|---|
| **Cash at beginning of period** | 935.00 |
| **Cash at end of period** | **935.00** |

**UNITED BANK**

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

**Account Number:** XXXXXX8700
**Statement Date:** 07/31/2025
**Page:** 1 of 1

6017 W18493REG08012503405 01 000000000 223255 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

## Customer Care Information

Phone: 800.327.9862

Mailing Address: P.O. Box 393
Charleston, WV 25322-0393

Visit Us Online: BankWithUnited.com

6017 0006017 0001-0001 0000000000000000

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

## Balance Summary

| | |
|---|---|
| **Beginning Balance as of 07/01/25** | **$935.00** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 07/31/25** | **$935.00** |
| Number of Days in Statement Period | 31 |
| Low Balance | $935.00 |
| Average Balance | $935.00 |
| Average Collected Balance | $935 |

## Overdraft\Return Item Fees

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC



6017 0006017 0001-0001 W18493REG08012503405 01 L 223255

THIS FORM IS PROVIDED TO HELP YOU BALANCE YOUR BANK STATEMENT

CHECKS OUTSTANDING—NOT CHARGED TO ACCOUNT

| No. | $ | | No. | $ | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Checks Outstanding | $ | |

| | | |
|---|---|---|
| BANK BALANCE SHOWN IN THIS STATEMENT | | $ ________ |
| ADD DEPOSITS NOT CREDITED IN THIS STATEMENT | + | $ ________ |
| TOTAL | | $ ________ |
| SUBTRACT CHECKS OUTSTANDING | - | $ ________ |
| BALANCE | | $ ________ |

The balance should agree with your checkbook balance after deducting any service charge and adding any interest earned shown on this statement.

## In case of errors or questions about your electronic transfers.

Write us at:
United Processing Center
500 Virginia Street, East
P. O. Box 393
Charleston, WV 25322-0393

Call: 800.327.9862

Email us through the "Contact Us" link on our website: www.BankWithUnited.com

### Electronic Fund Transfers (Consumer Accounts Only)

In case of errors or questions about your electronic fund transfers, if you think your statement or receipt is wrong or if you need more information about a transfer listed on a statement or receipt, please contact us as soon as possible by visiting your nearest United Bank branch or by calling 800-327-9862. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. You must:

1. Tell us your name and account number;
2. Describe the error or the transfer about which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information; and
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. After we hear from you, we will determine whether an error occurred within 10 business days (5 business days for United Check Card point-of-sale transactions and 20 business days if the transfer in question occurred within 30 days of your initial deposit to that account, i.e., a "new" account) and will correct any error promptly.

If we need more time, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or foreign-initiated transfer) to investigate your complaint or question. If we decide to do this we will recredit your account for the amount you think is in error, minus a maximum of $50, so that you have use of the funds during our investigation. If we ask you to put your complaint in writing and we do not receive it within 10 business days, we may not credit your account. We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error or that the error occurred in a manner or amount different than you originally described, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you think your statement shows transfers that you did not make, tell us as soon as possible. If you do not inform us within 60 days after the statement was mailed or made available to you, you may not get back any money you lost after 60 days. This will occur if we can prove that we could have stopped the transaction(s) with proper notification from you within the 60 days.

EQUAL HOUSING LENDER

Member FDIC

The order below is hereby signed.

Signed: September 2 2025

Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br>**JPK Newco, LLC,**<br>**Debtor.** | **Case No. 25-00200-ELG**<br>**Chapter 11** |

**ORDER DENYING MOTION TO DISMISS CASE**

On June 23, 2025, Developer RE1, LLC and 423 Kennedy St. Holdings, LLC filed a *Motion to Dismiss Chapter 11 Petition Filed in Bad Faith* (ECF No. 19) (the "Motion to Dismiss"). On July 23, 2025, WCP Fund I LLC filed an *Opposition* (ECF No. 29), and on July 24, 2025, JPK Newco, LLC (the "Debtor) also filed an *Opposition* (ECF No. 30). These matters were heard by the Court on July 30, 2025 and July 31, 2025 (the "Hearing").

For the reasons stated on the record at the Hearing, it is **ORDERED** that:

1. The Motion to Dismiss is **DENIED**.

2. The Court reserves the right to supplement its oral ruling and/or this Order with written findings of fact and conclusions of law.

[Signed and dated above.]

Copies to: recipients of electronic notice.

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700
Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br>Chapter 11 |

# NOTICE OF APPEAL

**Part I: Identify the Appellants:**

1. Name of appellants: Developer RE1, LLC and 423 Kennedy St Holdings, LLC

2. Position of appellant in the bankruptcy case that is subject of this appeal: Parties-in-interest / Creditors.

**Part 2: Identify the Subject of this Appeal:**

1. Describe the judgment, order, or decree appealed from: Order Denying Motion to Dismiss Case [Docket Entry No. 59].

2. State the date the judgment, order, or decree was entered: September 2, 2025 [Docket Entry No. 59].

**Part 3: Identify the Other Parties to this Appeal:**

Party: JPK NewCo, LLC

Attorney: Jeffrey M. Orenstein, Esq.
15245 Shady Grove Road
Suite 465
Rockville, MD 20852
(301) 250-7232
JOrenstein@wolawgroup.com

Party: JPK NewCo, LLC

Attorney: Maurice B. VerStandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., #665
Henderson, NV 89012
(301) 444-4600
mac@mbvesq.com

Dated: September 16, 2025

DEVELOPER RE1, LLC AND 423 KENNEDY ST HOLDINGS, LLC,

/s/ Alexandria J. Smith
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Emails: ajs@gdllaw.com; jds@gdllaw.com;

and

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Fax: (804) 783-6192
Email: jeremy.williams@kutakrock.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2025, a true copy of the foregoing Notice of Appeal should be served electronically by a Notice of Electronic filing on all persons receiving notices via the Court's CM/ECF system.

/s/ Alexandria J. Smith
Alexandria J. Smith

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700; Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax: (202) 452-1410

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br>Chapter 11 |

**MOTION FOR LEAVE TO FILE APPEAL OF AN INTERLOCUTORY ORDER**

**INTRODUCTION**

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy") (collectively the "Movants"), have filed a Notice of Appeal of the Order Denying Movants' Motion to Dismiss Chapter 11 Petition Filed in Bad Faith (the "Order Denying Motion to Dismiss," a copy of which is appended hereto as **Exhibit 1**) entered on September 2, 2025 by the U.S. Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"). The Movants request that the Court exercise its discretion to grant an interlocutory appeal of the Order Denying Motion to Dismiss pursuant to 28 U.S.C. §158(c)(3). The Bankruptcy Court erred by denying the Movants the fundamental right to take discovery in a contested matter under Rule 9014.

## MEMORANDUM OF LAW

### I. Background of the Bankruptcy Cases, the Parties, and the Debtor's Attempt to Misuse the Bankruptcy Process to Avoid Pending State Court Litigation.

A. The Bankruptcy Cases.

On May 27, 2025, JPK NewCo (the "Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. This was the second bankruptcy case involving the Debtor that was filed in the span of less than one year. In July of 2024, the Debtor was the subject of an involuntary bankruptcy petition that the U.S. Trustee's office moved to dismiss as a bad faith filing. *See In Re: JPK NewCo, LLC,* Case No. 24-00262-ELG ("*JPK NewCo I*"), ECF # 37. In *JPK NewCo I,* the Bankruptcy Court issued a Scheduling Order permitting discovery and setting an evidentiary hearing on the US Trustee's motion to dismiss. Before the U.S. Trustee's Office's motion to dismiss was decided, however, the Debtor and the U.S. Trustee's office signed off on a consent order dismissing *JPK NewCo I* based upon the Debtor's failure to pay fees to the U.S. Trustee's office.

B. The Movants and the State Court Litigations.

The Movants are sole-purpose limited liability companies that were formed to develop different real estate projects in the District. RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property"). 423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property" and together with the RE1 Property, the "Properties"). Both Properties were financed through loans with a hard money lender named the WCP Fund I, LLC (the "WCP Fund"). The WCP Fund is controlled by Washington Capital Partners, the trade name used by DP Capital, LLC (the "WCP"). The WCP Fund and the WCP are controlled by Daniel Huertas. The loans from the WCP Fund to the Movants were secured by a first promissory note, second

promissory note, first deed of trust, and second deed of trust for each of the respective Properties. The second promissory notes for each of the Properties will hereinafter be referred to as the "Second Notes". The Trustee under the deeds of trust is Russell Drazin. For convenience, the WCP Fund, the WCP, Mr. Drazin, and Mr. Huertas will be referred to as the "Lender Defendants."

After the WCP Fund improperly asserted in December 2022 that the loans were in default, and later tried to foreclose on the Properties, the Movants filed separate lawsuits against the Lender Defendants in the D.C. Superior Court in the cases known as *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.,* Case No. 2023-CAB-004260 (D.C. Super. Ct.) and *Developer RE1, LLC v. the WCP Fund I, LLC, et al.,* 2022-CAB-005935 (D.C. Super Ct.). In both state court cases the Movants sought and obtained temporary restraining orders that prohibited the Lender Defendants from foreclosing on the Properties until after the Movants lender liability claims were decided. The two cases were consolidated in June of 2024 (hereinafter the "Consolidated Superior Court Cases")

C. The Debtor's Formation -- and Its Attempt to Avoid State Court Litigation -- via the DC Version of a "Texas Two-Step"[1].

The Debtor entity was created not for purposes of restructuring a debtor in need of the benefits of the Bankruptcy Code, but solely to create bankruptcy jurisdiction. Well into the pendency of the Consolidated Superior Court Cases, on or around April 15-26, 2024, and unbeknownst to the Movants, the Lender Defendants arranged for the Second Notes to be transferred to the Debtor. The WCP Fund then schemed to put the Debtor into bankruptcy not once, but twice. Once in bankruptcy, the WCP Fund then bootstrapped the Consolidated Superior Court Cases into the Bankruptcy Court's jurisdiction via the Debtor. The WCP Fund and the

---

[1] "Texas Two-Step" cases involve an existing company creating a separate entity in order to gain access to benefits only available in bankruptcy court. *See In re Bestwall LLC*, 658 B.R. 348 at FN 29 (Bankr. W.D.N.C. 2024).

Debtor engaged in all these things for the improper purpose of: (a) delaying a trial on the Movants' claims in D.C. Superior Court and hindering their ability to pursue their claims in their chosen jurisdiction; and (b) permitting the Lender Defendants to relitigate prior decisions from the D.C. Superior Court in the Bankruptcy Court – a Court that they consider to be their "home court."

## II. The Motion to Dismiss Chapter 11 Petition Filed in Bad Faith.

On June 23, 2025, the Movants filed the Motion to Dismiss for Bad Faith (ECF No. 19). On July 23, 2025, WCP Fund I filed an Opposition (ECF No. 29), and on July 24, 2025, the Debtor also filed an Opposition (ECF No. 30). The Bankruptcy Court heard oral argument on the Motion to Dismiss for Bad Faith from the parties on July 30, 2025 and July 31, 2025 (the "Hearing"). On September 2, 2025, the Bankruptcy Court issued its Order Denying the Motion to Dismiss. The Order Denying the Motion to Dismiss did not contain any written findings of fact and conclusions of law, however, the Bankruptcy Court reserved the right to supplement its oral ruling with such findings. *See* Ex. 1.

During the oral ruling, the Bankruptcy Court noted that there is no binding authority on the Bankruptcy Court as to the appropriate standard for motion to dismiss for bad faith. Accordingly, the Bankruptcy Court determined that it would implement the dual analysis of objective futility and subjective bad faith used in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), in deciding whether to dismiss or convert a Chapter 11 case. The Bankruptcy Court stated that both objective futility and subjective bad faith must be satisfied to dismiss the case for bad faith. Without accepting any evidence, the Court reasoned that because the Debtor had satisfied the objective requirements for a voluntary petition, then subjective bad faith was irrelevant under *Carolin Corp.* The Bankruptcy Court determined that because it believed there was no objective futility, it need not reach the issue of subjective bad faith. As a result, the Bankruptcy Court prohibited the

Case 25-01200-EL-G3250-S65 Document 20 Filed 08/12/25 Page 245 of 446

Movants from conducting any discovery related to their motion to dismiss. This decision unfairly restricted the Movants from developing additional facts to support their motion.

The Bankruptcy Court also seemingly ignored the fact that the Debtor was not a legitimate company that needed to reorganize but was organized instead for the sole purpose of creating bankruptcy jurisdiction, which is evidence of objective futility. The Bankruptcy Court also improperly interpreted *Carolin Corp.* by shutting down the Movants' rights to conduct discovery with respect to either subjective bad faith or objective bad faith, which is directly contrary to the *Carolin Corp.* decision. In contrast to the Bankruptcy Court's ruling, the *Carolin Corp.* decision specifically held that:

> At the outset we note that though *separate inquiries into each [subjective and objective bad faith] are required, proof inevitably will overlap. Evidence of subjective bad faith in filing may tend to prove objective futility, and vice versa.* Indeed it could be that some of the courts ostensibly holding that dismissal is warranted upon a finding of either have considered that proof of either implicitly proves both. [citation omitted]. We also note preliminarily that despite widespread judicial acceptance and application of the good faith filing requirement, *no generally accepted proof requirements have emerged* . . . Instead, courts have relied upon various "indicia" and "recurring patterns" of conduct *thought to suggest either or both subjective bad faith and/or objective futility*.

*Carolin Corp.*, 886 F.2d at 701 (citing *In re Victory Constr. Co.*, 42 B.R. 145, 149 (Bankr.C.D.Cal. 1984) (*Victory IV*) (deploring absence of guiding principles) and *In re Little Creek Dev. Co.*, 779 F.2d 1068 at 1072-73 (5th Cir. 1986) (italic emphasis added).

The Bankruptcy Court also failed to explain why the Movants were denied any discovery when full-blown discovery rights were granted, and an evidentiary hearing was scheduled, after the U.S. Trustee's office raised identical issues of bad faith regarding the Debtor related to the filing of an involuntary petition in *JPK NewCo I.*



8161\0002\4898-9221-8730.v1

Case 25-01205-EL-G3250-S65 Document 26 Filed 08/17/25 Page 246 of 446

**III. Statement of the Questions and of the Relief Sought.**

Movants seek an immediate appeal of the Order Denying the Motion to Dismiss. The Movants' acknowledge that the Order Denying the Motion to Dismiss and related orders are generally treated as interlocutory in nature. *Bauer v. Commerce Union Bank,* 859 F.2d 438, 440 (6th Cir. 1988) (citations omitted); *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322 (10th Cir. 1978). The resolution of the Order Denying the Motion to Dismiss is nonetheless essential to resolution of the proceedings and Movants request an immediate appeal pursuant to 28 U.S.C. § 158(c)(3) to seek reversal of the relief granted in the Order Denying the Motion to Dismiss.

**IV. Statement of the Reasons Why the Right to Appeal Should be Granted Pursuant to 28 U.S.C. § 158(c)(3).**

In determining whether to grant leave to appeal an interlocutory order of bankruptcy courts pursuant to 28 U.S.C. § 158(c)(3), the district courts have applied the standards under 28 U.S.C. § 1292(b). *Herrington v. Swyter (In re Swyter)*, 263 B.R. 742, 748 749 (E.D. Va. 2001) (Ellis, J.); *KPMG Peat Marwick, L.L.P. v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 78 (E.D. Va. 2000) (Spencer, J.) *citing Atlantic Textile Group, Inc. v. Neal*, 191 B.R. 652, 653 (E.D. Va. 1996); *see also Americare Health Group, Inc. v. Melillo*, 223 B.R. 70, 73 74 (E.D.N.Y. 1998) (citations omitted); *Trustee of Jartan, Inc. v. Winston & Strawn*, 208 B.R. 898, 901 02 (N.D. Ill. 1997); *North Fork Bank v. Abelson*, 207 B.R. 382, 387 (E.D.N.Y. 1997) (citations omitted).

Pursuant to § 1292(b), an interlocutory appeal may be granted when (i) the order appealed from involves a controlling question of law; (ii) as to which there is substantial ground for difference of opinion, and (iii) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Nelco,* 250 B.R. at 78 79 *citing Atlantic Textile*, 191 B.R. at 653; *Swyter*, 263 B.R. at 748 749; *Alexander v. Bank of Woodstock*, 248 B.R. 478, 483 (S.D.N.Y. 2000).

A. <u>Controlling Question of Law.</u>

The term "controlling question of law" refers to a question of pure law, the resolution of which will be dispositive of the litigation, either as a legal or practical matter. *Nelco*, 250 B.R. at 78 (citing *Fannin v. CSZ Transportation Inc.*, 873 F.2d 1438 (4th Cir. 1989) (unpublished)). In determining this element of the test, the answer about the controlling nature of the question of bankruptcy law should not hinge upon any specific fact of the case but should rest instead upon principles of bankruptcy law applicable to all bankruptcy cases. *Nelco*, 250 B.R. at 80. In other words, the question must not be so fact specific as to make an interlocutory appeal inappropriate. *Nelco,* 250 B.R. at 82.

Here, the controversy in the instant case stems from the provisions of the Bankruptcy Code and the authority granted thereunder to the Bankruptcy Court. The controlling questions to be addressed on appeal are: (i) whether a bankruptcy court may categorically deny discovery in connection a dismissal motion, which constitutes a contested matter governed by Rule 9014(c) and (ii) whether the Debtor's Chapter 11 petition was filed in bad faith warranting dismissal under 11 U.S.C. § 1112(b). Both questions are controlling because they directly impact whether the Chapter 11 case may proceed at all. Moreover, Rule 9014(c) expressly makes the discovery rules in Part VII of the Federal Rules of Bankruptcy Procedure applicable to contested matters brought on by motion. *Phillips v. Lehman Bros. Holdings, Inc. (In re Fas Mart Convenience Stores, Inc.*), 318 B.R. 370, 372 (Bankr. E.D. Va. 2004). The denial of discovery prevented Movants from adequately developing the factual record, which is essential to determination of bad faith. If the Debtor did in fact file the petition in bad faith, then the case should be dismissed now so that judicial resources are not wasted unnecessarily. The Bankruptcy Court's decision to deny Movants

the opportunity to conduct discovery strikes at the very heart of the substantive right to seek dismissal of a bad faith filing.

The predicate procedural facts necessary to adjudicate the appeal can be ascertained from the hearing on the Motion to Dismiss held by the Bankruptcy Court on July 30, 2025 and July 31, 2025. Thus, this Court need only consider questions of pure law in adjudicating this appeal.

B. Substantial Ground for Difference of Opinion.

To satisfy the second element of § 1292(b), there must be a "substantial ground for a difference of opinion" as to the controlling question of law. *Nelco*, 250 B.R. at 79, *citing Atlantic Textile*, 191 B.R. at 653. The divergent opinions must be between the courts, not merely the parties, as to the law and the application thereof underlying the appealed decision. *Nelco*, 250 B.R. at 79 *citing Atlantic Textile*, 191 B.R. at 653. An interlocutory appeal will lie if a difference of opinion exists between courts on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split of authority or clarify the law. *Nelco*, 250 B.R. at 82 83 (citations omitted). Although substantial grounds for differences of opinion must involve more than the strong disagreement between the parties, this prong will be satisfied if the issue is difficult and of first impression. *Alexander*, 248 B.R. at 483 (citations omitted).

First, the ability to conduct discovery is a paramount right when important, fact-dependent issues are raised in a contested matter as serious as a motion to dismiss. Rule 9014 was designed to allow discovery to a litigant in a contested matter as a matter of right, not to shut it down. The "unless otherwise ordered" text is included to allow a bankruptcy judge to put reasonable limits on the scope of discovery, not to prohibit discovery completely as the Bankruptcy Court did here. Discovery is permitted in connection with a contested matter and "fairness dictates allowing [the movant] a reasonable opportunity to develop predicate facts supporting its legal contentions in



8161\0002\4898-9221-8730.v1

Case 25-00205-ELG-03250-SCS Document 16 Filed 03/17/25 Page 249 of 446

contested matters to which it is a party."). *See, e.g., In re Ascentra Holdings, Inc.*, 657 B.R. 339, 344 (Bankr. S.D.N.Y. 2023); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987) ("The underlying purpose of incorporating Federal Rules of Procedure into contested matters is to provide due process protections to all parties of a dispute even though it does not rise to the status of a formal adversary proceeding."). The importance of preserving due process is why the appropriate remedy for discovery that is overly burdensome is a limitation, not a prohibition. *See In re Donnelly*, No. 17-03213-CL13,, at *1 (Bankr. S.D. Cal. May 18, 2018) ("While potentially broad, the scope of discovery under the federal rules is not boundless. Discovery must be relevant and proportional to the amount at issue. Fed. R. Civ. P. 26(b)(1). And, especially in contested matters, courts must be vigilant in balancing the due process protections that discovery sometimes enhances against the need and proportionality of discovery.").

Second, with respect to dismissal of the Motion to Dismiss for Bad Faith, bankruptcy courts differ on the legal standard for dismissing a petition filed in bad faith. On a request by a party in interest, after notice and hearing, the Court may dismiss or convert a Chapter 11 case to a case under Chapter 7, whichever is in the best interests of the creditors and the estate for "cause". 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) contains a non-exhaustive list of circumstances that may constitute "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(4).

The Second Circuit used a multi-factor test to determine bad faith in *In Re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997), where it noted the following factors used in an analogous case:

> (1) the debtor has only one asset; (2) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default; (3) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors; (4) *the timing of the filing evidences an intent to delay or frustrate legitimate collection efforts;* (5) *the debtor has little or no cash flow*; (6) the

> debtor cannot meet current expenses; (7) *the debtor has no employees.*

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (italic emphasis added) (citing to the *Pleasant Pointe* factors used in *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828 (W.D. Ky. 1992).

More recently, the Third Circuit has recently announced a new rule that good-faith filing of a Chapter 11 petition requires the debtor to show it is facing financial distress "immediate enough to justify filing." *In re LTL Mgt., LLC*, 64 F.4th 84 (3d Cir. 2023). In deciding whether the petition served a valid bankruptcy purpose and was filed in good faith under § 1112(b), the *LTL Mgmt. Court* stated the following:

> "[T]wo inquiries . . . are particularly relevant": "(1) whether the petition serves a valid bankruptcy purpose[;] and (2) whether [it] is filed merely to obtain a tactical litigation advantage." *15375 Mem'l Corp. v. BEPCO, LP*, 589 F.3d 605, 618 (3d Cir. 2009) (internal quotation marks omitted) (citing *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* 384 F.3d 108, 119-20 (3d Cir. 2004). Valid bankruptcy purposes include "preserv[ing] a going concern" or "maximiz[ing] the value of the debtor's estate." *Id.* at 619. Further, a valid bankruptcy purpose "assumes a debtor in financial distress." *Integrated Telecom*, 384 F.3d at 128.

The Fourth Circuit has noted that courts are duty bound to conduct an inquiry, if requested, to determine whether a petition has been filed in good faith. *See In re United States Optical, Inc.*, 1999 U.S. App. LEXIS 6960 at *15-16 (4th Cir. 1993) (involving an involuntary petition). There is no definition of "good faith" in the Bankruptcy Code; the finding is fact-specific. *See In re Sawyer*, No. 07-10252 SSM, 2007 WL 1275627, at *5 (Bankr. E.D. Va. June 13, 2007), opinion corrected, No. 07-10252 SSM, 2007 WL 2110314 (Bankr. E.D. Va. July 17, 2007).

In *Carolin Corp.*, in deciding whether to dismiss or convert a Chapter 11 case, the Fourth Circuit looked at findings of objective futility and subjective bad faith. The *Carolin Corp.* decision noted that courts presented with the question of bad faith have uniformly held that: "[G]enerally,

an implicit prerequisite to the right to file [a Chapter 11 petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal . . . .” *Carolin Corp.,* 886 F.2d at 698 (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) and 2 L. King, *Collier on Bankruptcy* § 301.05[1] (15th ed. 1979). The *Carolin Court* further noted:

> We agree with the other courts that have so held and conclude that a good faith filing requirement is implicit in several specific provisions of the bankruptcy code, interpreted in light of established policy considerations underlying the code's provision of bankruptcy protection. …. [A] good faith requirement[:] *prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way* or to achieve reprehensible purposes. Moreover, a good faith standard *protects the jurisdictional integrity of the bankruptcy courts* by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

*Id.* p. 698 (citing *Little Creek Development)*. To make a finding of bad faith, no single factor is considered determinative and any conceivable list of factors is not exhaustive. *Id.* p. 701 (citing *In re Natural Land Corp.,* 825 F.2d 296, 298 (11th Cir. 1987); *see also In re Dunes Hotel Assocs.*, 188 B.R. 162, 169 (Bankr. D.S.C. 1995) (“In making a determination regarding allegations of bad faith, the Court must examine the totality of the facts of the case.”).

In the Fifth Circuit, the *Franklin* decision correctly quoted the eight bad faith factors from the Fifth Circuit’s decision in *Little Creek Development,* so those factors will not be repeated here. *Little Creek Development* not only noted the “clean hands” requirement for a debtor, but also noted “the bankruptcy court's responsibility to enforce a standard of good faith”:

> A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest . . . These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization. . . .



8161\0002\4898-9221-8730.v1

*Little Creek Development*, 779 F.2d at 1072 (citing *American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940) (quoting *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)).

In sum, bankruptcy courts differ on what constitutes "bad faith" under § 1112(b) and what determinations can be made without a development of the factual record. This demonstrates that there is substantial uncertainty on whether the Debtor's filing was made in bad faith and whether the Bankruptcy Court erred by shutting down the Movants right to develop more facts, through discovery, to support their motion to dismiss.

C. An Immediate Appeal from the Order Denying the Motion to Dismiss Will Materially Advance the Ultimate Termination of the Litigation.

A remand of the Order Denying the Motion to Dismiss to allow for the Movants to conduct discovery and requiring the Court to hold an evidentiary hearing on the issues of both subjective and objective bad faith, as required *by Carolin Corp,* would materially advance the ultimate termination and disposition of the case. If the Debtor's filing is determined to be in bad faith, then a dismissal would end the Chapter 11 case and the Bankruptcy Court would ultimately conserve judicial resources. Even if dismissal is not ordered, resolving the issue of whether the Movants are entitled to discovery on the bad faith issue will materially advance the litigation. If the Bankruptcy Court erred in denying discovery, delaying a decision on that error will only result in the Bankruptcy Court moving forward on a case that will be unraveled later when the Movants revisit the issues later on appeal. In sum, an immediate appeal from the Order Denying the Motion to Dismiss will materially advance the litigation by allowing for the court to reconsider its dismissal decision upon a more complete record – a record that the Movants are in fairness entitled to develop with discovery under Rule 9014.

V. **<u>Conclusion.</u>**

Discovery under Rule 9014 is a fundamental right of a litigant in a contested matter that was denied to the Movants. The District Court should immediately grant the Movants' Motion for Leave to Appeal the Order Denying the Motion to Dismiss for Bad Faith. Each of the required elements are present here under § 1292(b) for an interlocutory appeal under 28 U.S.C. § 158(c)(3). The questions on appeal are pure questions of law that are not fact-specific or fact-intensive. Allowing an appeal here should also result in answering the question of what the correct legal standard is for dismissing a bankruptcy petition filed in bad faith, for which divergent views exist across the federal circuits.

Dated: September 16, 2025

DEVELOPER RE1, LLC AND 423 KENNEDY ST HOLDINGS, LLC,

/s/ Alexandria J. Smith

James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Emails: ajs@gdllaw.com; jds@gdllaw.com;

and

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Fax: (804) 783-6192
Email: jeremy.williams@kutakrock.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2025, a true copy of the foregoing Notice of Appeal should be served electronically by a Notice of Electronic filing on all persons receiving notices via the Court's CM/ECF system.

/s/ Alexandria J. Smith
Alexandria J. Smith

# EXHIBIT 1

The order below is hereby signed.

Signed: September 2 2025

Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br>**JPK Newco, LLC,**<br>**Debtor.** | **Case No. 25-00200-ELG**<br>**Chapter 11** |

**<u>ORDER DENYING MOTION TO DISMISS CASE</u>**

On June 23, 2025, Developer RE1, LLC and 423 Kennedy St. Holdings, LLC filed a *Motion to Dismiss Chapter 11 Petition Filed in Bad Faith* (ECF No. 19) (the "Motion to Dismiss"). On July 23, 2025, WCP Fund I LLC filed an *Opposition* (ECF No. 29), and on July 24, 2025, JPK Newco, LLC (the "Debtor) also filed an *Opposition* (ECF No. 30). These matters were heard by the Court on July 30, 2025 and July 31, 2025 (the "Hearing").

For the reasons stated on the record at the Hearing, it is **ORDERED** that:

1. The Motion to Dismiss is **DENIED**.

2. The Court reserves the right to supplement its oral ruling and/or this Order with written findings of fact and conclusions of law.

[Signed and dated above.]

Copies to: recipients of electronic notice.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Case No. 25-00200-ELG |
| **JPK Newco, LLC** | ) |
| **Debtor** | ) (Chapter 11) |
| ______________________________ | ) in the Bankruptcy Court] |
| | ) |
| | ) |
| | ) |
| **IN RE: JPK Newco, LLC** | ) |
| | ) |
| | ) Civil Action No. |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**<u>TRANSMITTAL OF NOTICE OF APPEAL</u>**

Transmitted herewith to the Clerk of the District Court for docketing in the District Court pursuant to Fed. R. Bankr. P. 8003(d)(2) is the Notice of Appeal (Docket. No. 63) in the above-captioned bankruptcy case.

**Other comments:**

- The Appellant is appealing:

ECF No. 59: Order Denying Motion to Dismiss Case

The parties to the order appealed and their respective attorneys are as follows:

| **Appellant** | **Attorney** |
|---|---|
| JPK NewCo, LLC<br>8401 Greensboro Drive<br>Suite 960<br>McLean, VA 22102<br>FAIRFAX-VA | Jeffrey M. Orenstein, Esq.<br>15245 Shady Grove Road<br>Suite 465<br>Rockville, MD 20852<br>(301) 250-7232<br>JOrenstein@wolawgroup.com<br><br>Maurice B. VerStandig, Esq.<br>The VerStandig Law Firm, LLC<br>1452 W. Horizon Ridge Pkwy., #665<br>Henderson, NV 89012<br>(301) 444-4600<br>mac@mbvesq.com |

Angela D. Caesar,
Clerk of the Court

Dated: 9/17/2025

By: /s/ Megan Bleskoski
Deputy Clerk

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ____________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☑ | ☐ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*. + $ 0.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** *(Exhibit F)* $ 0.00

## 5. Employees

26. What was the number of employees when the case was filed? 0
27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00
30. How much have you paid this month in other professional fees? $ 0.00
31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00
36. Total projected cash disbursements for the next month: - $ 0.00
37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- [x] 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- [ ] 39. Bank reconciliation reports for each account.
- [x] 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- [ ] 41. Budget, projection, or forecast reports.
- [ ] 42. Project, job costing, or work-in-progress reports.



Print Save As... **APPENDIX -258** Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

**OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION**
**MONTHLY OPERATING REPORT**
**CHAPTER 11 - BUSINESS DEBTORS**
**Form 2-A**
**COVER SHEET AND QUESTIONNAIRE**

For Month Ended Aug-25

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document: Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|---|
| x | | 1. | Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. | Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. | Disbursements Summary for the Month (Form 2-D) |
| x | | 4. | Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. | Balance Sheet (Form 2-F) |
| x | | 6. | Profit and Loss Statement (Form 2-G) |
| x | | 7. | Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. | Bank Statements for All Bank Accounts |
| x | | 9. | Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | x | |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 9/16/2025 **Print Name:** Christina Araujo
**Signature:** Christina Araujo
**Title:** Vice President of Finance

Rev. 11/2012

3:01 PM
09/16/25
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of August 31, 2025

| | | Aug 31, 25 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 899,861.88 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Net Income** | | 4,589.17 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

3:03 PM
09/16/25
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January through August 2025

| | Jan - Aug 25 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Interest Income** | 4,604.17 |
| **Total Income** | 4,604.17 |
| **Expense** | |
| **6200 Bank Service Charges** | 15.00 |
| **Total Expense** | 15.00 |
| **Net Ordinary Income** | 4,589.17 |
| **Net Income** | **4,589.17** |

3:05 PM
09/16/25

# JPK NewCo LLC
## Statement of Cash Flows
### August 2025

| | Aug 25 |
|---|---|
| **OPERATING ACTIVITIES** | |
| **Net Income** | 4,589.17 |
| **Adjustments to reconcile Net Income to net cash provided by operations:** | |
| **1230 Notes Receivable:Energy Morocco LLC** | 26,000.00 |
| **Net cash provided by Operating Activities** | 30,589.17 |
| **Net cash increase for period** | 30,589.17 |
| **Cash at beginning of period** | 935.00 |
| **Cash at end of period** | **31,524.17** |

**UNITED BANK**

United Processing Center
P.O. Box 393
Charleston, WV 25322-0393

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 08/31/2025 |
| **Page:** | 1 of 2 |

4200 W18493REG08302503355 06 000000000 255227 002

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

**Customer Care Information**

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

38170 0058400 0001-0002 0000000000000000

**FREE BUSINESS CHECKING** — **Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 08/01/25** | **$935.00** |
| + Deposits and Credits (1) | $30,604.17 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (1) | $15.00 |
| **Ending Balance as of 08/31/25** | **$31,524.17** |
| Number of Days in Statement Period | 31 |
| Low Balance | $935.00 |
| Average Balance | $10,802.47 |
| Average Collected Balance | $10,802 |

**Debits**

| Date | Description | Withdrawals |
|---|---|---|
| Aug 22 | DIRECT S/C<br>WIRE TRANSFER FEE | -$15.00 |

**Credits**

| Date | Description | Deposits |
|---|---|---|
| Aug 22 | WIRE TRANSFER-IN | $30,604.17 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC

# THIS FORM IS PROVIDED TO HELP YOU BALANCE YOUR BANK STATEMENT

CHECKS OUTSTANDING—NOT CHARGED TO ACCOUNT

| No. | $ | | No. | $ | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Checks Outstanding | $ | |

| | |
|---|---|
| BANK BALANCE SHOWN IN THIS STATEMENT | $ |
| ADD DEPOSITS NOT CREDITED IN THIS STATEMENT + | $ |
| TOTAL | $ |
| SUBTRACT CHECKS OUTSTANDING - | $ |
| BALANCE | $ |

The balance should agree with your checkbook balance after deducting any service charge and adding any interest earned shown on this statement.

## In case of errors or questions about your electronic transfers.

Write us at:
United Processing Center
500 Virginia Street, East
P. O. Box 393
Charleston, WV 25322-0393

Call: 800.327.9862

Email us through the "Contact Us" link on our website: www.BankWithUnited.com

**Electronic Fund Transfers (Consumer Accounts Only)**

In case of errors or questions about your electronic fund transfers, if you think your statement or receipt is wrong or if you need more information about a transfer listed on a statement or receipt, please contact us as soon as possible by visiting your nearest United Bank branch or by calling 800-327-9862. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. You must:

1. Tell us your name and account number;
2. Describe the error or the transfer about which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information; and
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. After we hear from you, we will determine whether an error occurred within 10 business days (5 business days for United Check Card point-of-sale transactions and 20 business days if the transfer in question occurred within 30 days of your initial deposit to that account, i.e., a "new" account) and will correct any error promptly.

If we need more time, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or foreign-initiated transfer) to investigate your complaint or question. If we decide to do this we will recredit your account for the amount you think is in error, minus a maximum of $50, so that you have use of the funds during our investigation. If we ask you to put your complaint in writing and we do not receive it within 10 business days, we may not credit your account. We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error or that the error occurred in a manner or amount different than you originally described, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you think your statement shows transfers that you did not make, tell us as soon as possible. If you do not inform us within 60 days after the statement was mailed or made available to you, you may not get back any money you lost after 60 days. This will occur if we can prove that we could have stopped the transaction(s) with proper notification from you within the 60 days.

EQUAL HOUSING LENDER

Member FDIC

JPK NEWCO LLC

**Account Number:** XXXXXX8700
**Statement Date:** 08/31/2025
**Page :** 2 of 2

38170 0058401 0002-0002 0000000000000000

## Balance By Date

| Date | Balance | Date | Balance |
|---|---|---|---|
| Jul 31 | $935.00 | Aug 22 | $31,524.17 |

## Overdraft\Return Item Fees

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: | Chapter 11 |
| JPK NEWCO, LLC, | Case No. 25-00200 (ELG) |
| Debtor. | Subchapter V |
| DEVELOPER RE1, LLC, *et al*, | |
| Movants, | |
| v. | Contested Matter |
| JPK NEWCO, LLC, *et al.*, | |
| Respondents. | |

**<u>MOVANTS' MOTION TO COMPEL DISCOVERY RESPONSES</u>**

Developer RE1, LLC and 423 Kennedy St Holdings, LLC (collectively, the "<u>Movants</u>"), by counsel, hereby move (this "<u>Motion to Compel</u>") this Court for entry of an order, compelling responses from JPK NewCo, LLC ("<u>Debtor</u>") to the *First Set of Interrogatories and Requests for the Production of Documents to the Debtor* (the "<u>Discovery Requests</u>"). In support of this Motion to Compel, the Movants state as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Columbia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) of title 11 of the United States Code and Rule 7037 of the Federal Rules of Bankruptcy Procedure.

**Background**

4. The factual and procedural background is well known to this Court from certain prior cases and is hereby incorporated by reference.[1] Additional background is available in the *Motion to Dismiss Chapter 11 Petition Filed In Bad Faith* [Dkt. No. 19] and the *Motion of Developer RE1, LLC's and 423 Kennedy St Holdings, LLC for Abstention and to Dismiss or Stay Proceedings* [Dkt. No. 48].

5. On May 27, 2025, JPK initiated the above-captioned proceeding under Subchapter V of Chapter 11 of the Bankruptcy Code after its prior bankruptcy case was dismissed. [Case No. 24-00262; Dkt. No. 85].

6. On August 1, 2025, because JPK had seemingly acknowledged that it was created for and exists solely to protect WCP Fund I LLC, has no other business operations and is merely a tool for obtaining bankruptcy jurisdiction, the Movants filed *Developer RE1, LLC's and 423 Kennedy St Holdings, LLC's Objection to Subchapter V Designation* [Dkt. No. 42] (the "Designation Objection"). On August 4, 2025, the Debtor and its related entity, WCP Fund I LLC filed their opposition to the Designation Objection [Dkt. No. 43] and unilaterally scheduled the matter for hearing just over two weeks later, on August 20, 2025 [Dkt. No. 44].

7. On August 12, 2025, in connection with the Designation Objection, the Claimants served their initial set of Discovery Requests on the Debtor. The initial Deadline for the Debtor to respond to the Discovery Requests was September 11, 2025.

8. The hearing on the Designation Objection was adjourned by agreement to September 3, 2025.

9. On August 29, 2025, the Claimants filed the *Motion of Developer RE1, LLC and 423 Kennedy St Holdings, LLC to (I) Suspend Confirmation Deadlines; and (II) Adjourn Objection to Subchapter V Designation* [Dkt. No. 52] (the "Adjournment Motion"). The Adjournment Motion sought, among other things, to adjourn the hearing on the Designation Objection and establish certain deadlines in connection with the pending Discovery Requests.

10. At the hearing held on September 3, 2025, with the understanding that the Debtor intended to either move for a protective order or object to the Discovery Requests, the Court granted the relief in the Adjournment Motion in modified form. In light of the Debtor's announced opposition and in consultation with Debtor's counsel, the Court established: (i) September 18, 2025 as the deadline for the Debtor to file its objections to the Discovery Requests or seek a protective order; (ii) October 2, 2025 as the deadline for the Movants to object or seek resolution of any motion and/or objections; and (iii) October 29, 2025 as the hearing date to resolve any open issues regarding discovery. An order embodying the same was entered by the Court on September 23, 2025 [Dkt. No. 69] (the "Scheduling Order").

11. Such deadlines were established in order to allow for resolution of the underlying discovery matters in advance of the omnibus hearing scheduled for November 13, 2025 (the "Omnibus Hearing").

---

[1] *See* Case No. 24-00262-ELG and Adv. Proc. No. 24-10023-ELG.

12. No responses were received by the original deadline (September 11, 2025) and to extent the Scheduling Order could be so interpreted, by the extended deadline (September 18, 2025).

13. On October 7, 2025, the Movants contacted counsel to the Debtor to inquire about the same. Counsel for the Debtor advised that responses would be forthcoming either on October 10, 2025, or October 13, 2025.

14. As of the filing of this Motion, no responses to the Discovery Requests have been received.

15. The Discovery Requests seek information directly relevant to prosecuting the Designation Objection and in fact, the Court has previously admonished Debtor's counsel about the need to permit the discovery process to proceed. The Discovery Requests include information concerning the Debtor's alleged business operations, a necessary component for a party to be entitled to treatment as a subchapter V debtor.

16. To resolve these matters in advance of the Omnibus Hearing and to not avoid unnecessary delay in these proceedings, the Debtor should be compelled to provide, immediately, all relevant documents under the Discovery Requests.

**MOTION TO COMPEL**

17. As stated above the Debtor continues to withhold documents critical to Movants' litigation of the underlying Designation Objection. Pursuant to Rule 26 of the Federal Rules of Evidence (the "Rules"), a party is entitled to discovery regarding any nonprivileged matter that is relevant to a party's claim or defense. Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Discovery should ordinarily be allowed, under the concept of relevancy, unless it is clear that the information sought can have no possible bearing upon the

subject matter of the action. 23 Am. Jur. 2d Depositions and Discovery § 20. In fact, ". . . it is rare that a showing can be made that a particular item of requested information is not relevant under the broad definition given that word in the rule permitting discovery of relevant information." 10 Fed. Proc., L. Ed. § 26:94. In this instance, no objections have been filed, the deadline for doing so has passed and the Debtor is past due for providing its response to the Discovery Requests. At this point, the Defendant has no excuse to not produce the documents requested.

**Attorneys' Fees**

18. Pursuant to Rule 37, if this Motion to Compel is granted or the requested discovery is provided after the filing of this Motion, the Debtor is required to pay the Movant's reasonable expenses incurred in making the motion.

19. As a result of filing this Motion, the Movants seek attorneys' fees in an amount to be determined at a separate hearing.

**CERTIFICATION**

20. The undersigned hereby certifies, pursuant to Rule 37 of the Federal Rules of Civil Procedure, that the movant has, in good faith, conferred or attempted to confer with the parties subject to this motion in an effort to resolve the disputes set forth herein without court action.

**WHEREFORE** for the reasons set forth herein, the Movants respectfully requests that this Court enter an order: (i) granting this Motion to Compel; (ii) compelling the Debtors to properly respond to the Discovery Requests as set forth herein; (iii) awarding the Movants

attorneys' fees in an amount to be determined in connection with a separate hearing; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: October 14, 2025

**DEVELOPER RE1, LLC AND**
**423 KENNEDY ST HOLDINGS, LLC,**

/s/ *Jeremy S. Williams*
Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com

and

James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on October 14, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all necessary parties.

/s/ *Jeremy S. Williams*
Counsel

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11 **12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ______

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☑ | ☐ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow** + $ 0.00

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here. = $ 935.00

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Case 25-00200-ELG Doc 83 Filed 03/02/26 Entered 03/02/26 Page 279 of 446

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 0.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 0
27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00
30. How much have you paid this month in other professional fees? $ 0.00
31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00
36. Total projected cash disbursements for the next month: - $ 0.00
37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC　　　　Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- ☐ 39. Bank reconciliation reports for each account.
- ☑ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- ☐ 41. Budget, projection, or forecast reports.
- ☐ 42. Project, job costing, or work-in-progress reports.



Print　Save As...　**APPENDIX - 276**　Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

## OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION
## MONTHLY OPERATING REPORT
## CHAPTER 11 - BUSINESS DEBTORS
### Form 2-A
## COVER SHEET AND QUESTIONNAIRE

For Month Ended Jan-26

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| x | | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. Disbursements Summary for the Month (Form 2-D) |
| x | | 4. Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. Balance Sheet (Form 2-F) |
| x | | 6. Profit and Loss Statement (Form 2-G) |
| x | | 7. Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. Bank Statements for All Bank Accounts |
| x | | 9. Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 2/19/2026 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

3:25 PM
02/18/26
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of January 31, 2026

| | | Jan 31, 26 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 904,451.05 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

3:24 PM
02/18/26
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January 2026

| | Jan 26 |
|---|---|
| **Net Income** | **0.00** |

3:22 PM

02/18/26

**JPK NewCo LLC**

# Statement of Cash Flows

**January 2026**

| | Jan 26 |
|---|---|
| **Cash at beginning of period** | 31,524.17 |
| **Cash at end of period** | **31,524.17** |

UNITED BANK

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 01/31/2026 |
| **Page:** | 1 of 2 |

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

509 W18493REG01312604414 06 000000000 242190 002

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

25509 0051017 0001-0002 0000000000000000

## Customer Care Information

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

## Important Message

FOR BUSINESS CUSTOMERS ONLY: Effective February 1, 2026, United Bank will update its Business Fee Schedule. Coin orders will be charged at $0.20 per roll, and currency orders will be charged at $2.50 for every $1,000 ordered.

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

## Balance Summary

| | |
|---|---|
| **Beginning Balance as of 01/01/26** | **$31,524.17** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 01/31/26** | **$31,524.17** |
| Number of Days in Statement Period | 31 |
| Low Balance | $31,524.17 |
| Average Balance | $31,524.17 |
| Average Collected Balance | $31,524 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC



509 0051017 0001-0002 W18493REG01312604414 06 L 242190

THIS FORM IS PROVIDE[illegible] YO[illegible]OUR BANK STATEMENT

CHECKS OUTSTANDING—NOT CHARGED TO ACCOUNT

| No. | $ | | No. | $ |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Total Checks Outstanding | $ |

| | |
|---|---|
| BANK BALANCE SHOWN IN THIS STATEMENT | $ |
| ADD DEPOSITS NOT CREDITED IN THIS STATEMENT + | $ |
| TOTAL | $ |
| SUBTRACT CHECKS OUTSTANDING - | $ |
| BALANCE | $ |

The balance should agree with your checkbook balance after deducting any service charge and adding any interest earned shown on this statement.

## In case of errors or questions about your electronic transfers.

Write us at:
United Processing Center
500 Virginia Street, East
P. O. Box 393
Charleston, WV 25322-0393

Call: 800.327.9862

Email us through the "Contact Us" link on our website: www.BankWithUnited.com

**Electronic Fund Transfers (Consumer Accounts Only)**

In case of errors or questions about your electronic fund transfers, if you think your statement or receipt is wrong or if you need more information about a transfer listed on a statement or receipt, please contact us as soon as possible by visiting your nearest United Bank branch or by calling 800-327-9862. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. You must:

1. Tell us your name and account number;
2. Describe the error or the transfer about which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information; and
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. After we hear from you, we will determine whether an error occurred within 10 business days (5 business days for United Check Card point-of-sale transactions and 20 business days if the transfer in question occurred within 30 days of your initial deposit to that account, i.e., a "new" account) and will correct any error promptly.

If we need more time, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or foreign-initiated transfer) to investigate your complaint or question. If we decide to do this we will recredit your account for the amount you think is in error, minus a maximum of $50, so that you have use of the funds during our investigation. If we ask you to put your complaint in writing and we do not receive it within 10 business days, we may not credit your account. We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error or that the error occurred in a manner or amount different than you originally described, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you think your statement shows transfers that you did not make, tell us as soon as possible. If you do not inform us within 60 days after the statement was mailed or made available to you, you may not get back any money you lost after 60 days. This will occur if we can prove that we could have stopped the transaction(s) with proper notification from you within the 60 days.

EQUAL HOUSING LENDER
Member FDIC



509 0051017 0000-0002 W18493REG01312604414 06 L 242190

Case 25-00205-ELG Document 37 Filed 03/27/26 Page 287 of 446



25509 0051018 0002-0002 0000000000000000

## Overdraft\Return Item Fees

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ____________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

17. Have you paid any bills you owed before you filed bankruptcy? ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow** + $ 0.00

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** *(Exhibit F)* $ 0.00

## 5. Employees

26. What was the number of employees when the case was filed? 0
27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00
30. How much have you paid this month in other professional fees? $ 0.00
31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00
36. Total projected cash disbursements for the next month: - $ 0.00
37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☑ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.



Print Save As... Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

**OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION**
**MONTHLY OPERATING REPORT**
**CHAPTER 11 - BUSINESS DEBTORS**
**Form 2-A**
**COVER SHEET AND QUESTIONNAIRE**

For Month Ended Feb-26

**Accounting Method:** ☐ Accrual Basis ☒ Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| x | | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. Disbursements Summary for the Month (Form 2-D) |
| x | | 4. Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. Balance Sheet (Form 2-F) |
| x | | 6. Profit and Loss Statement (Form 2-G) |
| x | | 7. Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. Bank Statements for All Bank Accounts |
| x | | 9. Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 3/13/2026 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

Case 25-00205-ELG Doc 88 Document Filed 03/17/26 Page 294 of 446

12:04 PM
03/13/26
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of February 28, 2026

| | | Feb 28, 26 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 904,451.05 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

12:05 PM
03/13/26
Accrual Basis

**JPK NewCo LLC**

## Profit & Loss

**January through February 2026**

| | Jan - Feb 26 |
|---|---|
| **Net Income** | **0.00** |

12:07 PM

03/13/26

## JPK NewCo LLC

# Statement of Cash Flows

### January through February 2026

| | Jan - Feb 26 |
|---|---|
| **Cash at beginning of period** | 31,524.17 |
| **Cash at end of period** | **31,524.17** |

UNITED BANK

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 02/28/2026 |
| **Page:** | 1 of 1 |

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

6616 W18493REG02282603414 01 000000000 244395 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

**Customer Care Information**

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

6616 0006616 0001-0001 0000000000000000

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 02/01/26** | **$31,524.17** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 02/28/26** | **$31,524.17** |
| Number of Days in Statement Period | 28 |
| Low Balance | $31,524.17 |
| Average Balance | $31,524.17 |
| Average Collected Balance | $31,524 |

**Overdraft\Return Item Fees**

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC



6616 0006616 0001-0001 W18493REG02282603414 01 L 244395

CHECKS OUTSTANDING—NOT CHARGED TO ACCOUNT

| No. | $ | | No. | $ | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Checks Outstanding | $ | |

| | |
|---|---|
| BANK BALANCE SHOWN IN THIS STATEMENT | $ |
| ADD DEPOSITS NOT CREDITED IN THIS STATEMENT + | $ |
| TOTAL | $ |
| SUBTRACT CHECKS OUTSTANDING − | $ |
| BALANCE | $ |

The balance should agree with your checkbook balance after deducting any service charge and adding any interest earned shown on this statement.

## In case of errors or questions about your electronic transfers.

Write us at:
United Processing Center
500 Virginia Street, East
P. O. Box 393
Charleston, WV 25322-0393

Call: 800.327.9862

Email us through the "Contact Us" link on our website: www.BankWithUnited.com

Electronic Fund Transfers (Consumer Accounts Only)
In case of errors or questions about your electronic fund transfers, if you think your statement or receipt is wrong or if you need more information about a transfer listed on a statement or receipt, please contact us as soon as possible by visiting your nearest United Bank branch or by calling 800-327-9862. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. You must:

1. Tell us your name and account number;
2. Describe the error or the transfer about which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information; and
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days. After we hear from you, we will determine whether an error occurred within 10 business days (5 business days for United Check Card point-of-sale transactions and 20 business days if the transfer in question occurred within 30 days of your initial deposit to that account, i.e., a "new" account) and will correct any error promptly.

If we need more time, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or foreign-initiated transfer) to investigate your complaint or question. If we decide to do this we will recredit your account for the amount you think is in error, minus a maximum of $50, so that you have use of the funds during our investigation. If we ask you to put your complaint in writing and we do not receive it within 10 business days, we may not credit your account. We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error or that the error occurred in a manner or amount different than you originally described, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

If you think your statement shows transfers that you did not make, tell us as soon as possible. If you do not inform us within 60 days after the statement was mailed or made available to you, you may not get back any money you lost after 60 days. This will occur if we can prove that we could have stopped the transaction(s) with proper notification from you within the 60 days.

EQUAL HOUSING LENDER

Member FDIC

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025
MM / DD / YYYY

Line of business: Private Lender

NAISC code:

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

17. Have you paid any bills you owed before you filed bankruptcy? ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*. + $ 0.00

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 0.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 0

27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00

30. How much have you paid this month in other professional fees? $ 0.00

31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00

36. Total projected cash disbursements for the next month: - $ 0.00

37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC

Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- [x] 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- [ ] 39. Bank reconciliation reports for each account.
- [x] 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- [ ] 41. Budget, projection, or forecast reports.
- [ ] 42. Project, job costing, or work-in-progress reports.



Print Save As... Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

# OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION
## MONTHLY OPERATING REPORT
## CHAPTER 11 - BUSINESS DEBTORS
### Form 2-A
## COVER SHEET AND QUESTIONNAIRE

For Month Ended Mar-26

**Accounting Method:** ☐ Accrual Basis ☒ Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document: Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| x | | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. Disbursements Summary for the Month (Form 2-D) |
| x | | 4. Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. Balance Sheet (Form 2-F) |
| x | | 6. Profit and Loss Statement (Form 2-G) |
| x | | 7. Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. Bank Statements for All Bank Accounts |
| x | | 9. Bank Statement Reconciliations for all Bank Accounts |

**QUESTIONNAIRE**

Please answer the questions below:

| | Yes | No |
|---|---|---|
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 4/20/2026 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

11:36 AM
04/20/26
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of March 31, 2026

| | | Mar 31, 26 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 904,451.05 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

Case 25-30250-ELG Document 89 Filed 04/21/26 Page 7 of 9

11:35 AM

04/20/26

Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January through March 2026

| | Jan - Mar 26 |
|---|---|
| **Net Income** | **0.00** |

11:37 AM
04/20/26

# JPK NewCo LLC
## Statement of Cash Flows
### January through March 2026

| | Jan - Mar 26 |
|---|---|
| **Cash at beginning of period** | 31,524.17 |
| **Cash at end of period** | **31,524.17** |

UNITED BANK

United Processing Center
P.O. Box 393
Charleston, WV 25322-0393

Account Number: XXXXXX8700
Statement Date: 03/31/2026
Page: 1 of 1

5972 W18493REG04012605422 01 000000000 322666 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

**Customer Care Information**

Phone: 800.327.9862
Mailing Address: P.O. Box 393, Charleston, WV 25322-0393
Visit Us Online: BankWithUnited.com

5972 0005972 0001-0001 0000000000000000

## FREE BUSINESS CHECKING

**Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 03/01/26** | **$31,524.17** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 03/31/26** | **$31,524.17** |
| Number of Days in Statement Period | 31 |
| Low Balance | $31,524.17 |
| Average Balance | $31,524.17 |
| Average Collected Balance | $31,524 |

**Overdraft\Return Item Fees**

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

Less Paper. More Convenience.

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ____________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

17. Have you paid any bills you owed before you filed bankruptcy? ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow** + $ 0.00

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 0.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 0

27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00

30. How much have you paid this month in other professional fees? $ 0.00

31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00

36. Total projected cash disbursements for the next month: - $ 0.00

37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- [x] 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- [ ] 39. Bank reconciliation reports for each account.
- [x] 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- [ ] 41. Budget, projection, or forecast reports.
- [ ] 42. Project, job costing, or work-in-progress reports.



Print Save As... Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

## OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION
## MONTHLY OPERATING REPORT
## CHAPTER 11 - BUSINESS DEBTORS
### Form 2-A
## COVER SHEET AND QUESTIONNAIRE

For Month Ended Apr-26

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document: Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| x | | 1. Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. Disbursements Summary for the Month (Form 2-D) |
| x | | 4. Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. Balance Sheet (Form 2-F) |
| x | | 6. Profit and Loss Statement (Form 2-G) |
| x | | 7. Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. Bank Statements for All Bank Accounts |
| x | | 9. Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 5/19/2026 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

1:07 PM
05/19/26
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of April 30, 2026

| | | Apr 30, 26 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 904,451.05 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

1:06 PM
05/19/26
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January through April 2026

| | Jan - Apr 26 |
|---|---|
| **Net Income** | **0.00** |

1:08 PM

05/19/26

# JPK NewCo LLC
## Statement of Cash Flows
### January through April 2026

| | Jan - Apr 26 |
|---|---|
| **Cash at beginning of period** | 31,524.17 |
| **Cash at end of period** | **31,524.17** |

**UNITED BANK**

United Processing Center
P.O. Box 393
Charleston, WV 25322-0393

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 04/30/2026 |
| **Page:** | 1 of 1 |

5860 W18493REG05012604061 01 000000000 226694 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

5860 0005860 0001-0001 0000000000000000

**Customer Care Information**

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 04/01/26** | **$31,524.17** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 04/30/26** | **$31,524.17** |
| Number of Days in Statement Period | 30 |
| Low Balance | $31,524.17 |
| Average Balance | $31,524.17 |
| Average Collected Balance | $31,524 |

**Overdraft\Return Item Fees**

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC

The order below is hereby signed.

Signed: June 12 2026

Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br><br>**JPK Newco, LLC,**<br>**Debtor.** | **Case No. 25-00200-ELG**<br><br>**Chapter 11** |

**MEMORANDUM OPINION ON MOTION TO DISMISS**

The Court has before it the *Motion to Dismiss Chapter 11 Petition Filed in Bad Faith* (the "Motion to Dismiss") filed by Developer RE1, LLC and 423 Kennedy St Holdings, LLC (the "Movants") and the oppositions filed by WCP Fund I LLC ("WCP") and JPK Newco, LLC (the "Debtor").[1] The Court heard arguments on July 30 and 31, 2025 (the "Hearing"). Upon consideration of the pleadings and the arguments from the Hearing, and for the reasons set forth in an oral ruling at the conclusion of the Hearing, the Court denied the Motion to Dismiss. An *Order Denying Motion to Dismiss Case* (the "Dismissal Order") was entered on September 2, 2025, memorializing the Court's oral ruling.[2] This Memorandum Opinion documents the Court's

[1] *Developer RE1, LLC and 423 Kennedy St. Holdings, LLC's Mot. to Dismiss Chapter 11 Petition Filed in Bad Faith*, ECF No. 19; *Opp'n of WCP Fund I LLC to Developer RE1 LLC's and 423 Kennedy St. Holdings, LLC's Mot. to Dismiss Chapter 11 Petition Filed in Bad Faith*, ECF No. 29; *Debtor's Opp'n to Developer RE1 LLC's and 423 Kennedy St. Holdings, LLC's Mot. to Dismiss Chapter 11 Petition Filed in Bad Faith*, ECF No. 30.

[2] ECF No. 59. The Dismissal Order stipulated that the Court "reserve[d] the right to supplement its oral ruling and/or [the] Order with written findings of fact and conclusions of law." *Id.* After the Dismissal Order was entered, the Movants timely filed an appeal and corresponding *Motion for Leave to File Appeal of an Interlocutory Order*. *Notice of Appeal*, ECF No. 63; *Mot. for Leave to File an Appeal of an Interlocutory Order*, ECF No 65 (the "Motion for Leave"). At the time of entry of this Opinion, the appeal and Motion for Leave remain pending.

Case 1:25-cv-03250-SLS Document 22 Filed 08/12/25 Page 318 of 446

oral ruling as to the denial of the Motion to Dismiss, and to the extent that there is any inconsistency or conflict, this Memorandum Opinion shall control.

## I. Background

### *A. Motion to Dismiss Hearing*

The Court is familiar with the long, sordid history of litigation between the Movants and the Debtor.[3] In many cases, the Court has had a front-row seat to the continuing litigation, including the extensive motions practice in both a previous chapter 11 case and numerous adversary proceedings. Much of this history is repeated and detailed in the pleadings by the parties herein. However, for the purposes of the Motion to Dismiss, as discussed below, the relevant facts are much narrower.

At the Hearing, and for the limited purpose of the Court's consideration of the Motion to Dismiss, the Debtor and WCP both stipulated to the Court's consideration facts in the Motion to Dismiss as pled by the Movants while reserving all rights to oppose or defend the factual allegations in the future. Despite the stipulation to all of their facts as alleged, at the onset of the Hearing, the Movants argued that they needed discovery prior to a hearing on the merits of the Motion to Dismiss.[4] However, when questioned by the Court as to their general declarations regarding the need for discovery, the Movants could not identify one factual area that, if their allegations as pled were taken as true, would require additional discovery prior to consideration of the question of dismissal.[5] Further, the Movants could not articulate any portion of the legal

---

[3] The Debtor and Movants have been embroiled in a number of legal disputes before this Court that are not relevant to the Motion to Dismiss but provide context for the current litigation, as described in both the Motion to Dismiss and *Opposition*. ECF No. 29; *see* Case Nos. 24-00262-ELG, 24-10023-ELG, 25-10015-ELG, 25-10037-ELG.
[4] Hearing Recording at 5:10–34:59, ECF No. 40; *see also* ECF No. 19, at 2. As noted at the Hearing, despite having over a month to do so, the Movants did not propound discovery on WCP and the Debtor until a week prior to the Hearing, which the Movant's self-scheduled. Furthermore, the Movants questioned the Debtor's representative at the § 341 Meeting, which was concluded a month prior to the Hearing.
[5] Hearing Recording at 5:10–34:59, ECF No. 40.

argument on the appropriate standard to consider the requested dismissal based on a bad faith filing that required discovery, instead pointing to tangential issues of jurisdiction or collusion between non-debtor parties related to WCP. Therefore, the Court ordered that argument would go forward on the legal question of whether the case should be dismissed as a bad faith filing based on the stipulated facts, specifically the Court ordered it would first address the legal standard to be applied to such argument. The Court reserved the right to enter a scheduling order so that discovery could be conducted, if necessary. Based on this ruling, argument proceeded with the legal question of the standard to apply to the question of whether the Debtor's filing was a bad faith filing, and then the application of the stipulated facts to the standard. Because the Court found there was no objective futility to the filing of the Petition, the Court found that no discovery was necessary as the Movant's solely identified areas regarding subjective intent for which they desired to conduct discovery.

*B. Summary of Relevant Stipulated Facts*

The Debtor filed a voluntary petition under chapter 11 (the "Petition") on May 27, 2025.[6] The Debtor is a limited liability company whose principal place of business is in McLean, VA. The Debtor has no secured claims and three unsecured claims, two of which are contingent, unliquidated, and disputed claims from the Movants arising out of prepetition litigation.[7] The Debtor is a special purpose entity formed to own and hold two junior promissory notes (the "Promissory Notes"), one from each of the Movants, secured by corresponding junior liens on 419–423 Kennedy St. NW and 55501 1st St. NW, parcels of real property located in Washington, DC. The Debtor's only other asset is an unsecured note payable from an entity known as Energy Morocco, LLC, which originally matured in December 2024 (the "Energy Morocco Note"). At all

[6] *Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1.
[7] *See Schedule E/F: Creditors Who Have Unsecured Claims*, ECF No. 1.

times the Debtor has been candid that this case was filed in an attempt to resolve the ongoing litigation between the Movants and the Debtor as to the Promissory Notes.[8]

The Debtor filed a previous chapter 11 case ( "JPK I"), which was dismissed consensually after a *Motion to Dismiss* filed by the United States Trustee (the "UST") remained pending for approximately nine months.[9] The Movants' arguments and factual recitation implicitly raise issue with the entry of the consensual dismissal in JPK I because it was entered without a hearing thereon, despite the fact the Movants had not filed their own motion, only "supported" the UST's motion.[10] The Movants had the opportunity to, but did not, engage in discovery against the Debtor and WCP in JPK I in connection with the UST's motion.[11]

On June 23, 2025, less than one month into this case, the Movants filed the Motion to Dismiss seeking dismissal for cause, specifically alleging that the Debtor's case was not filed in good faith. The Movants self-scheduled the hearing on the Motion to Dismiss for July 30, 2025, with responses due July 23, 2025.[12] The Debtor and WCP timely objected to the Motion to Dismiss, creating a contested matter for which discovery was immediately available.[13] On June 30, 2025, the UST held and concluded the § 341 meeting of creditors (the "§ 341 Meeting"), where counsel for the Movants appeared and had the opportunity to question the Debtor's representative under oath.[14] On July 28, 2025, the Debtor timely submitted its *Chapter 11 Small Business Subchapter V Plan* (the "Plan").[15] The funding of the Debtor's plan is contingent upon the

[8] ECF No. 29, at 21.
[9] *Consent Order Granting the U.S. Tr.'s Mot. to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b), In re JPK Newco LLC*, No. 24-262-ELG (Bankr. D.D.C. Feb. 24, 2025), ECF No. 85.
[10] *Statement in Supp. of the U.S. Tr.'s Mot. to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b), In re JPK Newco LLC*, No. 24-262-ELG (Bankr. D.D.C. Oct. 14, 2024), ECF No. 57.
[11] *Scheduling Order, In re JPK Newco LLC*, No. 24-262-ELG (Bankr. D.D.C. Nov. 13, 2024), ECF No. 70.
[12] These periods were significantly longer than the 21-day notice period required by Federal Rule of Bankruptcy Procedure 2002.
[13] *See* Fed. R. Bankr. P. 9014(c).
[14] *See* ECF No. 37-1 (§ 341 Transcript).
[15] ECF No. 31; *see also* 11 U.S.C. § 1189 (requiring a debtor to file a plan within 90 days after filing).

resolution of litigation with the Movants and recovery on the Promissory Notes and the Energy Morocco Note. The Movants objected to confirmation of the plan and filed an objection to the Debtor's eligibility under subchapter V.[16]

## II. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.[17] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.[18] Subject to the caveat that the facts in the Motion to Dismiss were stipulated to for the limited purpose of consideration thereof and reserving all rights to contest the same in the future, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[19]

---

[16] *Obj. to Subchapter V Designation*, ECF No. 42; *Obj. to Plan of Reorganization*, ECF No. 58.

[17] Despite the fact that the Motion to Dismiss avers that the Court has jurisdiction, in the argument section of the Motion to Dismiss and at the Hearing, the Movants contended that the Debtor, along with other entities, "colluded to manufacture federal jurisdiction" over the proceedings between the Movants; WCP Fund I, LLC; DP Capital, LLC d/b/a Washington Capital Partners; Daniel Huertas; Russell Drazin; SF NU LLC; and the Debtor. ECF No. 19, at 31. The argument appears not to challenge the Court's 28 U.S.C. § 1334 jurisdiction over the case but instead is part of the Movant's argument on subjective bad faith and/or challenge to the Court's jurisdiction over the removed related adversary proceedings. The authorities cited by the Movants focus not on the eligibility of an entity to be a debtor but on the limitations on parties to litigation to collude to manufacture federal jurisdiction under 28 U.S.C. § 1359. Furthermore, §109(a) establishes that "a person that resides or has domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title," and § 101(41) defines "person" as any "individual, partnership, and corporation." The Debtor is a limited liability corporation and voluntarily filed a petition for relief under title 11 over which this Court has jurisdiction through 28 U.S.C. § 1334 and DCt.LBR 5011-1 ("Pursuant to 28 U.S.C § 157(a), all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this District").

[18] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as the "Civil Rules," and the Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

[19] *See* Fed. R. Bankr. P. 7052.

## III. Analysis

*A. Standard to Determine Bad Faith Under § 1112*

Under § 1112, on request of a party in interest, a court may dismiss a case "for cause."[20] Section 1112(b)(4) provides a non-exhaustive list of circumstances that constitute "cause" including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," "failure to comply with an order of the court," and "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by [title 11] or by order of the court."[21] Courts have also identified an implicit "good faith filing" requirement for chapter 11 cases whereby a finding that a petition has been filed absent good faith may be sufficient cause to dismiss a case.[22] While the Court has previously recognized that a lack of good faith may be sufficient cause to dismiss a petition, there is no controlling precedent in the District of Columbia Circuit as to the standard that must be applied to determine whether a case was not filed in good faith.[23]

There is a split among the circuit courts on what standard to apply to determine whether a case was filed in bad faith.[24] In one of the earliest circuit-level opinions, the Fourth Circuit adopted a two-part test for determining bad faith filing in *Carolin Corp. v. Miller*, which requires movants to prove that a bankruptcy was filed with both objective futility (*i.e.*, whether a reorganization was realistically possible) and subjective intent of bad faith based on the totality of the circumstances

---

[20] 11 USC § 1112.
[21] *Id.* § 1112(b) (4) (A), (B), (E), (J).
[22] *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989); *see also Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").
[23] *In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295, 302 (Bankr. D.D.C. 1992).
[24] *See id.*

(the "*Carolin* Test").[25] Similar standards have been adopted by the Second[26] and Third Circuits.[27] Conversely, the Eleventh Circuit held that subjective intent based upon the totality of the circumstances alone may establish bad faith for dismissal, expressly declining to include an objective futility element.[28] Somewhat in the middle, the Fifth Circuit articulated that courts must conduct a fact-specific inquiry of all factors – objective and subjective.[29] Regardless of the test used, all circuits that have considered this issue agree that the subjective intent component is a totality of the circumstances analysis, although there are different articulated lists of factors for consideration.[30]

---

[25] *Carolin Corp.*, 886 F.2d at 700–01. In 2023, the Fourth Circuit reaffirmed the requirement of both subjective intent and objective futility. *In re Bestwall LLC. Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168 (4th Cir. 2023).

[26] *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous.") (citing *Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991)).

[27] *In re LTL Mgmt. LLC*, 64 4th 84, 100–01 (3d Cir. 2023) ("Though a debtor's subjective intent may be relevant, good faith falls more on [an] objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11."); *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 n.8 (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)). "[T]wo inquiries . . . are particularly relevant": "(1) whether the petition serves a valid bankruptcy purpose [;] and (2) whether [it] is filed merely to obtain a tactical litigation advantage." *Id. at 618* (internal quotation marks omitted) (citing *NMSBPCSLDHB L.P. v. Integrated Telecom Express Inc. (In re Integrated Telecom Express Inc.)*, 384 F.3d 108, 119–20 (3d Cir. 2004)).

[28] *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("Instead, the courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'") (citing *Albany Partners Ltd. v. Westbrook (In re Albany Partners Ltd)*, 749 F.2d 670, 674 (11th Cir. 1984)).

[29] *In re Little Creek Dev. Co.*, 779 F.2d at 1071 ("Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum.")

[30] The Court has previously identified factors that courts have looked to:

> [1.] The debtor has one asset, such as a tract of undeveloped or developed real property.
>
> [2.] The secured creditors' liens encumber this tract.
>
> [3.] There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or make adequate protection payments . . . .
>
> [4.] Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.
>
> [5.] The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation . . . .

This Court has two published opinions considering the standard of dismissal for bad faith. In both opinions, the Court recognized the *Carolin* Test, but found that the case before it involved very fact-specific, limited exceptions to the applicability of the *Carolin* Test. The most recent opinion, *In re Allen*, involved the question of a "good faith test" in the context of annulment of the automatic stay in the case of a serial bankruptcy filer.[31]. In stating the standard to be applied when analyzing whether a serial bankruptcy filer was proceeding in "bad faith," *Allen* stated that "both objective evidence of a fundamentally unfair result and subjective evidence that the debtor filed a petition for a fundamentally unfair purposes . . . are relevant to the good faith inquiry."[32] *Allen* found that that when applied to serial filers, the *Carolin* Test may be modified to eliminate the need to consider objective futility when the debtor's actions inherently constitute an abuse of the bankruptcy system.[33]

*Allen* relied upon the Court's previous case of *In re Franklin Mortgage & Investment Company, Inc.*, where the question of the debtor's good faith filing was framed by another exception to the application of the *Carolin* Test — the "new debtor syndrome" debtor.[34] Specifically, *Franklin* found that in a case with the inherent unfair delay of a debtor who meets the

---

[6.] Bankruptcy offers the only possibility of forestalling loss of the property.
[7.] There are sometimes allegations of wrongdoing by the debtor or its principals.
*In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295 at 299–300.

[31] 300 B.R. 105 (Bankr. D.D.C. 2003).

[32] *Id.* at 123 (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)) (considering the standard for good faith filings in chapter 13, adopting a totality of the circumstances test. The good faith requirement was later codified by amendments to § 1325 by the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005). The Court specifically stated in a heading that good faith may be found lacking when absent on objective grounds, regardless of subjective intent but went on to consider a totality of all circumstances. *Id.*

[33] *Id.* at 124.

[34] The "new debtor syndrome" – where a one-asset entity is created on the eve of foreclosure to isolate insolvent property from its creditors – might be more accurately referred to as the "new debtor exception" or "new debtor presumption" as to bad faith in very limited circumstances, the facts of which are not present in this case. *See In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295 at 300.

elements of "new debtor syndrome," it "makes no sense to require objective futility" but acknowledged in cases without the syndrome objective futility should be required.[35]

The Court is also guided by two District of Columbia District Court (the "District Court") cases that implicitly adopt elements of the *Carolin* Test.[36] In the more recent case, *In re Rudd,* the District Court affirmed the bankruptcy court's denial of a motion to dismiss because the petition was not objectively futile.[37] Similarly, *1210-1216 Massachusetts Ave.*, explicitly held that "[o]bjective futility must be determined based on the totality of the circumstances."[38] The *Massachusetts Ave* opinion further upheld the bankruptcy court's dismissal of a petition for cause on the basis of objective futility as well as subjective bad faith and emphasized:

> Since the court finds adequate support for the conclusion that the *Carolin* standard for dismissal based on bad faith was met in this case, it need not decide if, as [opposing creditor] argues, the standard in this circuit is less stringent than that set forth in *Carolin*.[39]

Based upon the foregoing, including the consistent explicit and implicit recognition and adoption of the *Carolin* Test by both this Court and the District Court in all but certain, limited, enumerated, and specific circumstances such as the abusive serial filer and "new debtor syndrome" cases, the Court finds that the appropriate standard for a motion to dismiss for bad faith is the *Carolin* Test requiring a movant to prove both (1) objective futility and (2) subjective intent for bad faith based upon the totality of the circumstances.[40]

---

[35] *Id.* at 301.
[36] *In re 1210-1216 Massachusetts Ave.*, No. 92-0074, 1992 U.S. Dist. LEXIS 8912 (D.D.C. June 23, 1992); *In re Rudd*, No. 94-0751, 1995 U.S. Dist. LEXIS 7855 (D.D.C. Apr. 13, 1995).
[37] *In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *15. The underlying decision in *Rudd* was not published; however, the recitation of the underlying bankruptcy opinion clearly evidences that the bankruptcy court applied the *Carolin* Test analysis considering both objective futility and subjective bad faith based on a totality of the circumstances. *Id.* at *12–15.
[38] *In re 1210-1216 Massachusetts Ave.,* No. 92-0074, 1992 U.S. Dist. LEXIS 8912 at *23 (D.D.C. June 23, 1992).
[39] *Id.* at *24.
[40] *Carolin Corp.*, 886 F.2d at 700–01.

*B. The Debtor's Case is Not Objectively Futile*

Under the *Carolin* Test adopted herein, if a movant is unable to prove objective futility, the court need not reach the analysis of subjective intent of bad faith.[41] Objective futility is designed to ensure that "some relation to the statutory objective of resuscitating a financially troubled debtor" is embodied in the petition and the analysis requires assessing whether or not there is a going concern to preserve and/ hope of rehabilitation.[42] In general, in considering the question of objective futility, a court must look to whether the debtor is moving towards confirming a plan and/or whether there exists a realistic possibility of an effective reorganization.[43]

The Debtor filed the Petition electing treatment under subchapter V on May 27, 2025. Since filing, the Debtor has met all of its debtor in possession procedural requirements, including attending the § 341 Meeting; filing all required schedules, statements, and other case initiation documents; filing its monthly operating reports; filing its required subchapter V status report; hiring counsel and special counsel; and timely (in fact, almost 60 days prior to its deadline) filing the Plan.[44] At the time of the Hearing, a scheduling order had been entered setting a confirmation hearing, and the Debtor had timely noticed and served the Plan and ballots.[45]

The Plan is necessarily contingent upon the resolution of the litigation between the Debtor and the Movants. While the determination of whether the Plan is ultimately confirmable was not before the Court at the Hearing, the Court examined the Plan prior to the Hearing to ensure it was not simply a "placeholder" document. Without making any specific findings, the Court notes that

---

[41] *Id.* at 701.
[42] *See id.* at 701–02 (quoting *In re Coastal Cable TV, Inc.*, 709 F.2d 762, 765 (1st Cir. 1983) and *Little Creek*, 779 F.2d at 1073) (citation modified).
[43] *Id.* at 698 (quoting *In re Albany Partners, Ltd.*, 749 F.2d at 674); *see also In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *14–15 (affirming bankruptcy court finding that the filing was not objectively futile because "reorganization was possible and . . . there was a confirmable plan in prospect").
[44] *See Chapter 11 Plan of Reorganization*, ECF No. 31.
[45] These dates were later suspended while the parties pursued mediation.

the Plan is not patently unconfirmable on its face as it contains (i) the history of the Debtor, (ii) a liquidation analysis, and (iii) projections, as required by § 1190. The Debtor's case is unlike most cases evaluating objective futility where the only available evidence on the likelihood reorganization are a debtor's representations as to potential reorganization plans.[46]

The objective factors in this case, such as the filing and timing of the petition and the fact that the Debtor was created as a holding company used for reorganization to repay creditors, do not point to objective futility. While the reorganization may provide the Debtor with a litigation advantage, such factor itself does not lead to a finding of objective futility. As the Third Circuit acknowledged in *In re LTL Management*, the purpose of filing a petition may very well be to beat litigation, but "still, it is not bad faith to seek to gain an advantage from declaring bankruptcy — why else would one declare it?"[47] Therefore, examining the totality of the facts and circumstances, the Court finds that the Debtor has a reasonable likelihood of reorganization and there is a potentially confirmable plan pending. As such, the filing of the Debtor's case is not objectively futile, the Movants have failed to meet the first element of the *Carolin* Test, and the Motion to Dismiss must be denied.

*C. The Court Need Not Reach Subjective Intent, the Element for Which the Movants Seek Discovery*

Because the Court denies the Motion to Dismiss for the Movants' failure to establish objective futility, it does not need to reach the question of subjective intent – the element on which the Movants assert they needed additional discovery and sought to continue the Hearing. Denial of the Motion to Dismiss does not deprive the Movants from seeking discovery on and arguing the

---

[46] *See e.g.*, *Md. Port Admin. v. Premier Auto. Servs. (In re Premier Auto. Servs.)*, 492 F.3d 274, 280 (4th Cir. 2007); *In re WSG Dulles L.P.*, No. 12-11149, 2013 Bankr. LEXIS 34, at *20–25 (Bankr. E.D. Va. Jan. 3, 2013) (finding a proposed plan that was patently unconfirmable was insufficient to overcome the objective futility standard); *In re Rudd*, 1995 U.S. Dist. LEXIS 7855, at *14–15; *In re Tucker*, 5 B.R. 180, 184 (Bankr. S.D.N.Y. 1980).

[47] *In re LTL Management*, 64 F.4th at 110 n.19 (quoting *In re James Wilson Assocs*., 965 F.2d 160, 170 (7th Cir. 1992)).

Case 25-03250-ELG Document 20 Filed 08/12/26 Page 328 of 446

Debtor's good faith during the pendency of the case.[48] The Movants have objected to confirmation, thus creating a contested matter in which they are entitled to discovery.[49] Therefore, the Court need not enter a scheduling order to allow for further discovery on the question of subjective bad faith in the filing of the petition due to its above findings.

## IV. Conclusion

For the reasons stated herein, the Motion to Dismiss filed by Developer RE1, LLC and 423 Kennedy St Holdings, LLC is **DENIED**.

[Signed and dated above.]

Service to: recipients of electronic notice.

---

[48] The Bankruptcy Code provides for ample opportunity to assess the good faith of the Debtor, including, but not limited to, as part of the consideration of confirmation of the Plan as required by § 1129(a)(3) (incorporated into subchapter V by § 1191(a)).

[49] Fed. R. Bankr. P. 9014(c).

**Fill in this information to identify the case:**

Debtor Name JPK NewCo LLC

United States Bankruptcy Court for the: District of Columbia

Case number: 25-00200

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

**12/17**

Month: 5/27/25-5/31/25

Date report filed: 07/02/2025 (MM / DD / YYYY)

Line of business: Private Lender

NAISC code: ___________

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: Christina Araujo

Original signature of responsible party: *Christina Araujo*

Printed name of responsible party: Christina Araujo

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |
| **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name JPK NewCo LLC Case number 25-00200

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☑ | ☐ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 935.00

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ 0.00

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. - $ 0.00

22. **Net cash flow** + $ 0.00

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 935.00

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 0.00

*(Exhibit E)*

Debtor Name JPK NewCo LLC Case number 25-00200

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 0.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 0

27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00

30. How much have you paid this month in other professional fees? $ 0.00

31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 34. **Net cash flow** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |

35. Total projected cash receipts for the next month: $ 0.00

36. Total projected cash disbursements for the next month: - $ 0.00

37. Total projected net cash flow for the next month: = $ 0.00

Debtor Name JPK NewCo LLC Case number 25-00200

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- ☐ 39. Bank reconciliation reports for each account.
- ☑ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- ☐ 41. Budget, projection, or forecast reports.
- ☐ 42. Project, job costing, or work-in-progress reports.



Print Save As... **APPENDIX - 328** Reset

**DEBTOR:** JPK NewCo, LLC **CASE NUMBER:** 25-00200

## OFFICE OF THE UNITED STATES TRUSTEE - BALTIMORE DIVISION
## MONTHLY OPERATING REPORT
## CHAPTER 11 - BUSINESS DEBTORS
### Form 2-A
## COVER SHEET AND QUESTIONNAIRE

For Month Ended May 31 2026

**Accounting Method:** [ ] Accrual Basis [X] Cash Basis

***THIS REPORT IS DUE 20 DAYS AFTER THE END OF THE MONTH***

Mark One Box for Each Required Document:

Debtor must attach each of the following reports/documents unless the U. S. Trustee has waived the requirement in writing. File the original with the Clerk of Court.

| Report/Document Attached | Previously Waived | | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|---|
| x | | 1. | Cash Receipts and Disursements Statement (Form 2-B) |
| x | | 2. | Post-petition Taxes and Aging Schedules (Form 2-C) |
| x | | 3. | Disbursements Summary for the Month (Form 2-D) |
| x | | 4. | Income and Disbursement Recap - Case to Date (Form 2-E) |
| | | | *Submit the form or attach one generated by company's accounting system* |
| x | | 5. | Balance Sheet (Form 2-F) |
| x | | 6. | Profit and Loss Statement (Form 2-G) |
| x | | 7. | Cash Receipts and Cash Disbursements Detail (Form 2-H1 and 2-H2) |
| x | | 8. | Bank Statements for All Bank Accounts |
| x | | 9. | Bank Statement Reconciliations for all Bank Accounts |

| QUESTIONNAIRE | Yes | No |
|---|---|---|
| Please answer the questions below: | | |
| 1. Is the business still operating? | x | |
| 2. Were any assets (other than inventory) sold this month? | | x |
| 3. Were all employees timely paid this month? | x | |
| 4. Are all insurance policies and operating licenses current and in effect? | x | |
| 5. Did you open any new bank accounts this month? | | x |
| 6. Did you deposit all receipts into your DIP account this month? | x | |
| 7. Have all taxes been timely paid (payroll, sales, etc.)? | x | |
| 8. Are you current on U.S. Trustee quarterly fees payments? | x | |

***I declare under penalty of perjury that the following Monthly Operating Report, and any statements and attachments are true, accurate and correct to the best of my belief.***

**Executed on:** 6/19/2026 **Print Name:** Christina Araujo

**Signature:** Christina Araujo

**Title:** Vice President of Finance

Rev. 11/2012

4:11 PM
06/19/26
Accrual Basis

# JPK NewCo LLC
## Balance Sheet
### As of May 31, 2026

| | | May 31, 26 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1001 DPA Account - 8700** | | 31,524.17 |
| **Total Checking/Savings** | | 31,524.17 |
| **Other Current Assets** | | |
| **1400 Prepaids** | | 20,000.00 |
| **Total Other Current Assets** | | 20,000.00 |
| **Total Current Assets** | | 51,524.17 |
| **Other Assets** | | |
| **1240 Notes Receivables** | | |
| **419-423 Kennedy St** | 2,169,087.98 | |
| **5505 1st St NW** | 911,426.88 | |
| **Total 1240 Notes Receivables** | | 3,080,514.86 |
| **Total Other Assets** | | 3,080,514.86 |
| **TOTAL ASSETS** | | **3,132,039.03** |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Other Current Liabilities** | | |
| **2600 Notes Payables** | | |
| **Shaheen Sariri** | 50,000.00 | |
| **Total 2600 Notes Payables** | | 50,000.00 |
| **Total Other Current Liabilities** | | 50,000.00 |
| **Total Current Liabilities** | | 50,000.00 |
| **Total Liabilities** | | 50,000.00 |
| **Equity** | | |
| **SF NU, LLC** | | 904,451.05 |
| **WCP Fund I LLC** | | 2,177,587.98 |
| **Total Equity** | | 3,082,039.03 |
| **TOTAL LIABILITIES & EQUITY** | | **3,132,039.03** |

4:11 PM
06/19/26
Accrual Basis

# JPK NewCo LLC
## Profit & Loss
### January through May 2026

| | Jan - May 26 |
|---|---|
| **Net Income** | **0.00** |

**4:12 PM**

**06/19/26**

# JPK NewCo LLC
## Statement of Cash Flows
### January through May 2026

| | Jan - May 26 |
|---|---|
| **Cash at beginning of period** | 31,524.17 |
| **Cash at end of period** | **31,524.17** |

UNITED BANK

**United Processing Center**
P.O. Box 393
Charleston, WV 25322-0393

| | |
|---|---|
| **Account Number:** | XXXXXX8700 |
| **Statement Date:** | 05/31/2026 |
| **Page:** | 1 of 1 |

6009 W18493REG05302603480 01 000000000 225350 001

JPK NEWCO LLC
DEBTOR IN POSSESSION ACCOUNT
8401 GREENSBORO DR SUITE 960
MC LEAN VA 22102-5149

**Customer Care Information**

| | |
|---|---|
| Phone: | 800.327.9862 |
| Mailing Address: | P.O. Box 393<br>Charleston, WV 25322-0393 |
| Visit Us Online: | BankWithUnited.com |

6009 0006009 0001-0001 000000000000000

**FREE BUSINESS CHECKING** **Account Number:** [redacted]8700

**Balance Summary**

| | |
|---|---|
| **Beginning Balance as of 05/01/26** | **$31,524.17** |
| + Deposits and Credits (0) | $0.00 |
| - Checks Posted (0) | $0.00 |
| - Withdrawals and Debits (0) | $0.00 |
| **Ending Balance as of 05/31/26** | **$31,524.17** |
| Number of Days in Statement Period | 31 |
| Low Balance | $31,524.17 |
| Average Balance | $31,524.17 |
| Average Collected Balance | $31,524 |

**Overdraft\Return Item Fees**

| Fee Type | Total For This Period | Total Year-To-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

**Less Paper. More Convenience.**

Simplify your life by signing up online for eStatement and eNotices – they're fast, convenient and completely secure.

Scan the QR code to sign up for free eStatements today through Online Banking or the Bank With United app.



MEMBER FDIC



6009 0006009 0001-0001 W18493REG05302603480 01 L 225350

Case 1:25-cv-03250-SLS Document 20 Filed 08/16/26 Page 338 of 446

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700; Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400;
Fax: (202) 452-1410

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC,<br><br>*Debtor*. | Case No.: 25-00200-ELG<br>Chapter 11 |

**NOTICE OF FILING OF TRANSCRIPT**
**FROM THE JULY 30, 2025 AND JULY 31, 2025 HEARINGS PURSANT TO RULE 8009**

Developer RE1, LLC and 423 Kennedy St Holdings, LLC ("Movants") hereby notify Court and counsel that on July 14, 2026, Movants ordered a transcript of the hearings held on July 30, 2025 and July 31, 2025 concerning Movants' Motion to Dismiss. *See* Rule 8009. A copy of the formal purchase confirmation is attached hereto as Exhibit 1 to serve as evidence that the Movants ordered the transcripts. Upon receipt of the transcripts, Movants will file the same with the Court.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 16, 2026

/s/ Alexandria J. Smith
James D. Sadowski, DC Bar. No. 446635
Alexandria J. Smith, DC Bar. No. 1673542
801 17th Street, N.W. - Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400 ext. 5407
Email: jds@gdllaw.com | ajs@gdllaw.com

8161\0002\4914-4436-0637.v1

*Counsel for Defendants Developer RE1, LLC and*
*423 Kennedy St. Holdings, LLC*
Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July, 2026, a true copy of this Notice of Filing of Transcript was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ Alexandria J. Smith
Alexandria J. Smith

**Alex J. Smith**

---

**From:** eScribers Sales <sales@escribers.net>
**Sent:** Tuesday, July 14, 2026 1:32 PM
**To:** Alex J. Smith; Margaret E. Reynolds
**Cc:** sales@escribers.net; webapp@escribers.net
**Subject:** eScribers Transcript order no [BKDC00284] : JPK NewCo, LLC, Debtor; 25-00200-ELG; 07/31/2025;

**CAUTION:** This is an external message. Please verify that it is a trusted source before replying, clicking links or opening attachments.

To Margaret Reynolds,

We are contacting you regarding your transcript order in the case: **JPK NewCo, LLC, Debtor; 25-00200-ELG; 07/31/2025;**

**We received your deposit. The transcript will be completed by July 21, 2026.**

eScribers LLC

Phone: 800-257-0885

Email: sales@escribers.net

7227 N 16th Street
Suite 207
Phoenix, AZ 85020

**Alex J. Smith**

**From:** eScribers Sales <sales@escribers.net>
**Sent:** Tuesday, July 14, 2026 1:32 PM
**To:** Alex J. Smith; Margaret E. Reynolds
**Cc:** sales@escribers.net; webapp@escribers.net
**Subject:** eScribers Transcript order no [BKDC00283] : JPK NewCo, LLC, Debtor; 25-00200-ELG; 07/30/2025;

**CAUTION:** This is an external message. Please verify that it is a trusted source before replying, clicking links or opening attachments.

To Margaret Reynolds,

We are contacting you regarding your transcript order in the case: **JPK NewCo, LLC, Debtor; 25-00200-ELG; 07/30/2025;**

**We received your deposit. The transcript will be completed by July 21, 2026.**

Thank you,

eScribers LLC

Phone: 800-257-0885

Email: sales@escribers.net

7227 N 16th Street
Suite 207
Phoenix, AZ 85020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: | . Case No. 25-00200-ELG |
| | . Chapter 11 |
| JPK NEWCO, LLC, | . |
| | . Washington, D.C. |
| Debtor. | . July 30, 2025 |
| . . . . . . . . . . . . . . . | . |
| JPK NEWCO LLC, ET AL., | . Adv. Proc. 25-10015 |
| | . |
| Plaintiffs, | . |
| | . |
| -against- | . |
| | . |
| DEVELOPER RE1 LLC, ET AL., | . |
| | . |
| Defendants. | . |
| *************************** | . |

STATUS HEARING
MOTION TO DISMISS FILED BY 423 KENNEDY ST. HOLDINGS LLC,
DEVELOPER RE1 LLC
BEFORE HONORABLE ELIZABETH L. GUNN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor | Wolff & Orenstein, LLC<br>By: JEFFREY M. ORENSTEIN, ESQ.<br>15245 Shady Grove Road<br>Suite 465<br>Rockville, Maryland 20852 |
| For U.S. Trustee: | U.S. Department of Justice<br>By: KRISTEN S. EUSTIS, AUST<br>Office of the United States Trustee<br>1725 Duke Street<br>Suite 650<br>Alexandria, Virginia 22314 |
| For Subchapter V Trustee: | Offit Kurman, P.A.<br>By: STEPHEN A. METZ, ESQ.<br>7501 Wisconsin Avenue<br>Suite 1000W<br>Bethesda, Maryland 20814 |

APPEARANCES, cont'd:

| | |
|---|---|
| For 423 Kennedy St. Holdings, LLC and Developer RE1 LLC: | Greenstein DeLorme & Luchs, P.C.<br>By: JAMES SADOWSKI, ESQ.<br>801 17th Street, N.W.<br>Suite 1000<br>Washington, DC 20006 |
| Special Counsel for the Debtor: | The Belmont Firm<br>By: MAURICE VERSTANDIG, ESQ.<br>1050 Connecticut NW<br>Suite 500<br>Washington, DC 20036 |
| Also Present: | Daniel Huertas<br>Debtor representative<br><br>Russell Drazin<br>Named Plaintiff in Adv. Proc. |

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

(Proceedings commenced at 11:31 a.m.)

THE CLERK: Thank you, Judge. Next, we have Case No. 25-200, JPK NewCo, LLC. Matters before the Court are the status hearing and the motion to dismiss case filed by 423 Kennedy St. Holdings, LLC and Developer RE1 Holdings LLC.

We also have the related adversary proceeding, 25-10015, JPK NewCo, LLC, et al. v. Developer RE1, LLC, et al. Matters before the Court in that are a status hearing and the Defendants' motion to stay and suspend all deadlines.

Will the parties please state your name for appearances?

MR. ORENSTEIN: Good morning.

THE COURT: Let me get --

MR. ORENSTEIN: Jeff Orenstein on --

THE COURT: Go ahead, Mr. Orenstein.

MR. ORENSTEIN: -- the Debtor.

THE COURT: All right. Thank you. Good morning. I'll take the -- and then the people on the Zoom. So, Mr. Sadowski, you're next. Good morning.

MR. SADOWSKI: Oh. Good morning, Judge Gunn. James Sadowski for Developer RE1, LLC and 423 Kennedy St. LLC.

THE COURT: Good morning. Ms. Eustis?

MS. EUSTIS: Good morning, Your Honor. Kristen Eustis on behalf of the United States trustee. And just to note, we are entering our appearance in the main case and not the

adversary proceeding.

THE COURT: Understood. Thank you.

All right. In the courtroom?

MR. VERSTANDIG: Good morning, Your Honor. Maurice VerStandig, special counsel for the Debtor in connection with the adversary proceeding, representing WCP Fund I, LLC in connection with the motion to dismiss, and representing the other named Plaintiffs in connection with the adversary proceeding. I'm joined in the courtroom by Russell Drazin and Daniel Huertas. Mr. Drazin is one of the named Plaintiffs in the adversary proceeding. Mr. Huertas is the principal of WCP Fund I, LLC.

THE COURT: Good morning. Mr. Metz?

MR. METZ: Yes. Good morning, Your Honor. Stephen Metz, Subchapter V trustee.

THE COURT: All right. Good morning.

Well, Mr. Orenstein, let me start with the easy stuff which is this Chapter 11 status hearing. Anything on status specifically before we move to all the motions?

MR. ORENSTEIN: Not too much, Your Honor. I think you're basically familiar with the nature of this case from its predecessor. We have filed a status report. I indicated in the status report I anticipated that we would need an extension to file our plan. And in fact, we did file the plan on Sunday. The Court has already entered a scheduling order. Service of

the plan documents, the Court's order and the ballots are going out today. And we're ready to go forward, but I think that we're all waiting to see what's going to happen with the motion to dismiss and the adversaries and related litigations. That's obviously going to have a significant impact on the case.

THE COURT: All right. Anything on status specifically before we go on to everything else?

MR. ORENSTEIN: Not unless Your Honor has any questions?

THE COURT: All right. Any other party? All right. Because I have a scheduling order on the plan, I would normally pull statuses off in the case at this point in time unless any party wishes for me to keep them in on the main case. No?

MR. VERSTANDIG: No. Not the main case. The adversary is a different matter.

THE COURT: The adversary is a different matter. This is the main case. Ms. Eustis?

MS. EUSTIS: Your Honor, I would just note I understand that the order setting a hearing on confirmation has been entered. To the extent that confirmation, however, does not go forward on October 1st for whatever reason that may happen, I would just request that status be set contemporaneous with that. I don't know how that would be done, but I hope you understand what I'm just trying to get to. If it doesn't go forward, I don't want --

THE COURT: You don't want it continued with the docket entry. You want to at least call it and see where things stand?

MS. EUSTIS: Exactly.

THE COURT: All right. I'm happy to just put that condition. The Plaintiffs' schedule for October I think -- I can't remember what day I set it at. October 1st. So we will -- in any event, we will call this case whether it's to move forward, confirmation or to be heard and about why we're not moving forward with confirmation on that date. We'll put a note on our system and that -- we'll handle it that way. And Ms. Eustis, I think that's probably going to alleviate the concerns of your office with respect to that.

MS. EUSTIS: All right. Thank you, Your Honor.

THE COURT: Yeah. October 1st at 11. So we'll make sure we note that'll be called no matter what. And we'll move forward.

All right. With that, Mr. Sadowski, you've got the rest of the main things here. So let's -- what are we doing with the motion to dismiss and the motion to stay?

MR. SADOWSKI: Judge, I -- thank you. I filed the current -- I think what the Court was inclined to do the last time we had this issue. I feel like Poltergeist II, they're back. We're back.

THE COURT: Let me tell you.

MR. SADOWSKI: I think --

THE COURT: Read your audience. I don't watch horror movies. So that reference has zero -- other than II, has zero reference for me. I -- they're too scary.

MR. SADOWSKI: Yeah. Okay. Only I -- I'll stay away from Jaws then, too.

I think the most efficient means of advancing a ball on this is as I proposed in the motion to dismiss. It (indiscernible) easily contested. We would like to get further discovery so that you have -- we already sent, by the way, interrogatories and requests for production. We did that last week. I think there were 23 interrogatories or so. So we'll have those answers hopefully by the end of this month. But I think for efficiency purposes, we should pick a date for the evidentiary hearing because I do think it's important for you to have a complete record on this decision because it I think has future impacts and across the board.

And then --

THE COURT: Well, let me ask you that because ostensibly -- hold on. I have a question. Sorry. Reading the response, I don't see much, if anything, in the responses that doesn't accept as true for the purposes of the hearing on the motion to dismiss the allegations of your client. So can you point to me where we think we have factual issues that are needed for trial?

MR. SADOWSKI: Well, Judge, the -- I think part of the strategy here is to prevent us from ever getting anyone on the WCP side to speak. If Mr. VerStandig is going to accept as true all the allegations that were made in my motion for bad faith --

THE COURT: Well, again, all the factual allegations not the legal conclusions. That's my job. But the factual timeline, who said what to whom, what was filed, when and where, all of the factual allegations I think, if I'm not mistaken, have been accepted as true for the purposes of the motion to dismiss.

MR. VERSTANDIG: Your Honor, for the limited purpose of the motion to dismiss and not for any other purpose --

THE COURT: Right.

MR. VERSTANDIG: -- in the adversary. We're not disputing factual allegations. In fact, we came out in our position and we said we were informed on the advice of counsel with cognizance that the entity may soon thereafter petition for bankruptcy relief and even went so far as to acknowledge that when JPK then sought financing from a third party, it felt the need so as to prevent any allegations of fraud to wantonly disclose to the third party that the financing was very likely going to be used in part to retain the services of insolvency counsel.

THE COURT: Right. So let me go back to Mr. Sadowski.

So again, like Mr. VerStandig longwindedly confirmed what I had read in his papers which is for purposes of the motion to dismiss in the main case, they will accept as true the factual allegations. And I guess, in some ways, he's also saying and we supplemented it with extra facts.

MR. SADOWSKI: Well, Judge, there may be additional things we'll learn through the course of the interrogatory answers and the documents that are produced and a live deposition to find that there are additional facts that we don't know about to further support that this was a sham company. And I just -- I don't know. I don't have the documents that were submitted to the trustee. I haven't seen any documents related to the organization company. So -- and they're contesting it.

So I do believe that we're entitled to and should be able to develop even further evidence to support that this company was a sham, that there was a collusion to create federal jurisdiction, who was involved. And frankly, Judge, there may be a sanctions motion coming as well depending on where your decision goes on that that's going to be relevant to that issue. Was it just SF NU and WCP? How was Mr. Sariri involved? And they carefully, Judge, in my view, entered into a consent order -- and I don't know the facts surrounding that issue as well. I believe to avoid a sanctions decision from your Court. And so there's allegations beyond the bad faith

filing. And we're entitled to find out and fully support our motion with as best facts as we can when we come before you on an evidentiary hearing. And there may be very well additional facts that you would want to know and that we would want to know about to support our position.

MR. VERSTANDIG: Your Honor, may I be heard briefly?

THE COURT: In a second.

MR. VERSTANDIG: Thank you.

(Pause)

THE COURT: Okay. So what I'm taking the time to do, Mr. Sadowski, is I went back to the very bottom of your brief, which starts at page 35, which is your legal argument about -- the legal argument what exactly the basis for the bad faith allegations is. And it talks about creating federal jurisdiction which cites to not Title 11 stuff but that -- I don't think so I'm not sure how applicable that is but we can get to that legal argument later.

But I wanted to find exactly what the factual allegations were that were being relied upon in the argument. Now there are 30 something pages of factual allegations prior but, essentially, it says collusion to channel litigation to the federal court, colluded to the loan documents. So we have they filed -- they were in litigation and they came to bankruptcy court. There was loan documents, assignments, transfers, and then the invoking of the bankruptcy court's

jurisdiction. And then, it was the creation of JPK NewCo with -- potentially, that would be a bankruptcy filing. Mr. VerStandig just conceded was stipulated to. A loan, which was discussed, and the involuntary filing.

Those are all of the facts in summary form. If you missed it earlier, Judge Gunn storytime today apparently. Those apparently are the -- all of those facts have been either part of a record somewhere. I could take judicial notice of or stipulated to for the purposes of the motion to dismiss on the bad faith question. So again, I'm trying to figure out where there -- where this isn't a legal argument, where there is a contested fact that hasn't been agreed to by the parties. I guess that's the thing I'm asking for.

MR. SADOWSKI: Judge, I can give you one clear example. We are told that the purpose of this company was for settlement and to take soiled assets and get them off the books. Right? I don't know whether that ever happened, whether they took the assets off the books. That could be a fabrication. On top of that, Judge, in this case, they transferred the junior notes. There are two senior notes and two senior deeds of trust that did not get transferred. So if the objective of this company was to transfer our soiled assets to get them off the books, why didn't they transfer the other soiled assets off the books? Right? I don't know the answer to that question. I think I'm going to get it --

THE COURT: Is that answer to that question material to whether or not the JPK NewCo entity is -- has filed a petition in bad faith, though? I understand that that may be very relevant to some of the other litigation but I'm talking just as to the dismissal motion at this point.

MR. SADOWSKI: Knowing the answer to that question would further the evidence that we would present that this was a bad faith bankruptcy filing. Another example. Right? They say this was -- and by the way, Judge, I didn't attach the transcript from the meeting of creditors. I didn't have time to get it, but there are a number of questions I asked at that that led to a whole slew of other questions. Another one is an example. SF NU, LLC. What's their role in this case? Who participated in the decision? Were they just a patsy for WCP? I don't even know who they are.

THE COURT: Well, again, we're conflating issues again because they're in the litigation. What I'm talking about is the question as to whether a single entity, JPK NewCo LLC, filed a voluntary petition in bad faith. What other parties did is not necessarily material.

MR. SADOWSKI: If they colluded to create federal jurisdiction, of course that's a material fact. And --

THE COURT: I want to be careful --

MR. SADOWSKI: Anyone that participated in that scheme --

THE COURT: -- on this, Mr. Sadowski because federal jurisdiction, under diversity jurisdiction or a monetary amount is significantly different than federal jurisdiction for a case filed under Title 11. I mean, anybody --

MR. SADOWSKI: You're --

THE COURT: If you meet 109, you can come to my doors, bring your tired, your weak, whoever the hell qualifies under 109 and that's a jurisdiction issue right there.

MR. SADOWSKI: So what you're asking me to do, Judge, is prove an issue on facts that I don't know about that probably exist.

THE COURT: Well, no. I'm not asking you to prove anything.

MR. SADOWSKI: You're just tying --

THE COURT: I'm asking --

MR. SADOWSKI: You're tying my hands.

THE COURT: I'm asking you to tell me what factual questions on JPK NewCo's bankruptcy filing are not -- are still necessary for an evidentiary proceeding. Why there's -- what facts would need to be determined at trial?

MR. SADOWSKI: Who was involved? Okay? Whether they discussed it. Did this company have a business plan? Did this company have business records? What records exist at all that this company did? What business did it do? Why did it do it? All those things are questions that need to be asked. Why did

they loan this money to Energy of Morocco? Was that a sham transaction? Why did they loan money to Shaheem Sariri? Was that a sham transaction? Those people may tell me that. Daniel Huertas called me up on the phone and said, hey, I need you to loan me some money. I'm not going to tell you why, but just loan me some money. Right?

What Mr. Huertas talked about when Mr. Sariri and Jason Swenski at SF NU in between them. All the -- and Judge Teel said it right. You're not going to find direct evidence of collusion or bad faith. It's hard. You have to draw inferences. But to not allow me to discover additional facts to further support our motion, you're just saying, you've just got to go on what you know here, Mr. Sadowski. You don't get to learn anything else when --

THE COURT: All right. Okay. I mean, I --

MR. SADOWSKI: Mr. VerStandig has all the cards. He knows everything. He has all the legal bills. He did --

THE COURT: He's going to pull that transcript now where that says Mr. VerStandig knows everything. That's going to be print on the wall in his office. I understand your point, Mr. Sadowski, and I see where you're going.

All right, Mr. VerStandig.

MR. VERSTANDIG: Thank you. Your Honor, I'll start with a cliché, and then I'll be a little more specific. You don't get to shoot first and ask questions later. There's an

analogy, and this is just an analogy. It is not a legal argument.

In the court down the hall, in order to get to discovery, you must file a complaint that satisfies the rigors of Rule 12(b)(6). You must allege facts in good faith that, if true, would show an entitlement to relief and then you get to go poking around.

The facts alleged in this motion, if true -- and we're willing to accept them as true for the sole limited purpose of this motion, again, using the 12(b)(6) analogy, will not change this Court's analysis. I'll go one step further. You can take the worst case implication from everything Mr. Sadowski just suggested. You can -- and I'm, by no means, proffering this. I'm simply arguing this for purposes of why we ought to move forward. You could assume that JPK, as we've indicated, was formed of the cognizance it was going to enter bankruptcy, that was formed with the cognizance that there was some benefit to entering bankruptcy and that everything it did before it entered bankruptcy was aimed at strategically entering bankruptcy. That's not going to change the question under Bestwall, LTL or even the totality of the circumstances analysis.

Now I'll be more specific. And I think you hinted at this in your questions to Mr. Sadowski. What matters if we even get to Bestwall, LTL or totality of circumstances? No one

is alleging that JPK NewCo is a railroad. No one's alleging that JPK NewCo is a stockbroker. No one is alleging that JPK NewCo is a sovereign state above the municipal level. So there is no question but that JPK NewCo, as a matter of federal law, is entitled to petition for bankruptcy relief. And without getting into the sum and the substance of the argument, because that can be much more loquacious in a few minutes when we get there, that means that there is the working presumption that any entity can come before this honorable court and seek to reorganize. There's no insolvency requirement in the Bankruptcy Code. And I just rattled off the prohibitions putting aside some eligibility things that are clearly immaterial to this case.

So we're here. Now, I'll be even more specific. This motion was filed five weeks and two days ago. If the movant wished to take discovery, Federal Rules of Civil Procedure allow such to be done in thirty days and this Court has a mechanism to shorten time. That was not done. As Mr. Sadowski indicated, document requests and interrogatories were sent out last week. The reason that is most relevant is we're here on a subfive case. We're here on a case that was filed on May 27th, where the meeting of creditors was concluded thirty days ago today. This is a case that is moving along that is supposed to move on an expedited pace. So the idea that we are going to hold everything up so that a creditor who doesn't have a good

faith basis to make any allegations beyond what it has can go on a fishing expedition to see if there's any unsavory matter they might just happen to be able to uncover, if they ask the right questions and pound the table hard enough during the right depositions, is completely inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and practice in this honorable court.

Again, though, for purposes of the motion, we can assume that everything therein is true and it's not going to alter the analysis. I would also point out, without prematurely arguing the merits of the motion, that if this Court adopts the Bestwall analysis out of the Fourth Circuit, many of the issues Mr. Sadowski is referencing, to the extent they are relevant -- and I suspect I'm going to contest that down the road -- can be properly raised at confirmation for which we now have a date. I will also point out that some of those issues go to the 1129 criteria and can be properly raised at confirmation.

We are looking to expeditiously move a Subchapter V case in a manner consistent with congressional intent and four and a half years of case law. This motion ought not be an impediment to doing so and we're prepared to go forward on the merits today.

THE COURT: Mr. Metz, you have a dog in this fight?

MR. METZ: I do not, Your Honor. I will say that a

couple of weeks ago, I sent an email out saying, hey, maybe we can try to resolve all these things and I'm sort of here to help try to do that if possible. I don't think anybody wants to take me up on that until the Court decides this threshold issue.

THE COURT: All right. Thank you. Ms. Eustis, do you have any position?

MS. EUSTIS: No, Your Honor.

THE COURT: Mr. Sadowski?

MR. SADOWSKI: Sure, Judge. All that Mr. VerStandig says presumes that you have a legitimate bankruptcy case before you. All this Subchapter V stuff rush. You do not have a legitimate bankruptcy case before you. You have a bankruptcy case that was manufactured by Mr. -- why we believe Mr. VerStandig and his clients for the only purpose of getting out of a Superior Court decisions and litigating state law cases in this case. That is not a permissible use of the bankruptcy court process under the cases we cited and the totality standard we cited as well. The Rule 9014 says in contested matters, you're entitled to discovery. We served them. Sure, I didn't serve them right off the bat. I was on vacation for two weeks in July and I do like to take a vacation, but you're essentially making us go into this motion argument blind. Right? Blind. I didn't get any of the documents from the U.S. trustee's office that they presented. I have never --

THE COURT: You can't call it blind. You have thirty-two pages of factual allegations. I mean, there's clearly history here.

MR. SADOWSKI: Based on what only I know from the record. There could be a dozen other facts to support our motion that are there that I don't know about because you're going to say, well, no, you can't --

THE COURT: I love that you're putting words in my mouth. Did I just give you my robe because, clearly, you think I've already made up my mind. I mean --

MR. SADOWSKI: I'm sorry, Judge.

THE COURT: I'm willing to let you talk me --

MR. SADOWSKI: I'm sorry, Judge.

THE COURT: -- of not having my mind made up yet. But if you want to go ahead and put words in my mouth, I'm happy to --

MR. SADOWSKI: No.

THE COURT: -- allow you to do it, I guess.

MR. SADOWSKI: No, Judge. As you probably know, the frustration that my clients have with this particular group of Defendants is just bleeds over. Right? And this entire exercise of bankruptcy has been an effort by them to prevent us from taking their depositions, to bring us over here, to drown us on legal expenses. I still have yet to take a deposition of any of their witnesses in the main case because of their

shenanigans. And to now have the bankruptcy court say, no, Mr. Sadowski, I don't think you should be able to develop further evidence of a sham bankruptcy. I just think that cuts against the core of your responsibilities to ensure that you have federal jurisdiction. And the Court, I think, has an independent obligation --

THE COURT: Okay. You keep --

MR. SADOWSKI: -- to make sure --

THE COURT: -- conflating this question of federal jurisdiction with whether it was a bad faith filing. I will tell you, your motion is denied on the question of federal jurisdiction. These guys are an eligible Debtor. The question of whether it's a bad faith filing, which should be dismissed, is a separate and distinct question. I absolutely have jurisdiction over this company. The question of whether or not I should dismiss it because they came to it and filed it in a different thing, different state, is a separate and distinct legal question. You've made that argument. There are a number of different tests. I haven't -- this Court hasn't -- this circuit hasn't set out what bad faith test it wants to use. But there's an implied requirement of good faith for the filing of a bankruptcy petition. But that is separate and distinct from the question of whether I have jurisdiction. I absolutely have jurisdiction. The question is whether or not I choose to dismiss the case for bad faith which is a legal question.

MR. SADOWSKI: I do not disagree, Judge, that we're here. You have jurisdiction to hear the motion. Once they file a petition, of course. It's created. Right? But what you have here, in my opinion, is a sham company. Right? And the more evidence you have before you about whether this is a sham company or not, the better you're able to make an informed decision about whatever test you decide to use. There are 12, 11, 13 factors. Unless Mr. VerStandig is prepared to say today this was a sham company. This was set up for an improper purpose. We never intended to conduct any business. These loans were all --

THE COURT: Again, those are legal conclusions I have to make. Right? The question is whether or not the formation of JPK NewCo, and then the filing of the petition has indicia of bad faith in the filing. I know you've looked at and part of the argument goes along with the Texas two-step question. Now the important distinction between this case and Texas two-step cases is that in Texas two-step cases, you have operating entities that take out bad debts while keeping their assets. This was a company formed to take assets not debts. It has a lawsuit pending which could result in a debt but they're actually fundamentally different ways of doing things. In fact, it's pretty common for there to be many different SPEs and real estate to put -- to segregate assets.

And so the argument being made isn't that this was an

operating multibillion dollar company that got in trouble for one product and tried to put all of that liability in one thing. You have instead -- what you're arguing is you have these operating loan -- lenders who have put an asset or two assets into one company and then didn't put the other assets into a company. And maybe one of the arguments is why did they put some and not the others but whether or not that's bad faith. It's not the same legal question as the Texas two-step case, to be completely honest. I think it's completely a different question here.

MR. SADOWSKI: Right. But you're not even allowing me to ask those questions of them if you prohibit us from covering discovery. You're not allowing me to develop a better record for you to make a decision on whether this was a bankruptcy filed in bad faith. And every single one of those tests says was this -- involved a tactical advantage. Was this bankruptcy filing for a tactical advantage? And there's a limited record on those facts unless Mr. VerStandig is going to sit here and tell you, yes, we created this company to gain a tactical advantage because we thought this Court would be better deciding the issues for us. And that's -- it shows from the record already with that.

But I don't -- I'm not sure, Judge. And I'm sorry I got a little hot under the collar earlier. We've been very frustrated by our inability to take discovery, complete

discovery, finish our cases. And there's a whole number of those tests -- that I could go into the motion and tick through them where we can develop facts to support the elements of bad faith in addition to what we already know.

And I totally reject the argument this is some sort of fishing expedition. We already know from the trustee's motion, which they apparently are now admitting to, that there were a series of facts supporting bad faith. That's what we already know. There may be even more. There may be a lot more.

MR. VERSTANDIG: Your Honor, briefly?

THE COURT: You're good. Go ahead.

MR. VERSTANDIG: Thank you. I'm sorry. I'm just gathering my thought for a moment.

I don't know that it's material for today's purposes, but to the extent that the creditors feign frustration with the slowed advancement --

THE COURT: Now, you're -- they're the ones who filed a motion to suspend. I --

MR. VERSTANDIG: We're about to argue their motion to stay.

THE COURT: I know.

MR. VERSTANDIG: But it's more substantive things. There was a 341 meeting. Mr. Huertas appeared at the 341 meeting. Just as Mr. Sadowski indicated, he could get a transcript. He had an opportunity to question Mr. Huertas

there. But much more substantively, I tried to be clear about this at the outset, you can assume for today's purposes that I am the mastermind, -- and, wow, I love that word -- of this. You can assume for today's purposes that an attorney advised entities to put certain assets into a special purpose entity with cognizance that it would soon thereafter seek to reorganize in bankruptcy. We're not fighting over that today. You can assume for today's purposes that that was done because for whatever reason those entities thought that anything that may infect those assets was better adjudicated by a court with expertise in the matter of the secured Debtor/Creditor relationship.

Now, you can't assume the legal assumptions. As you indicated, those are yours to make. Those are not ours to proffer. And I think Mr. Sadowski is conflating the line. But we are trying to stipulate to every cognizable fact that could be in any way relevant in a manner that favors the movants because we don't think it moves the needle one iota. You can assume that I had an evil grin on my face when I gave the advice, if that helps in any way, shape or form, but it doesn't change the analysis.

So we're ready to move forward today. We've briefed this. And the fact that they went five weeks and two days, had a 341 meeting, didn't move to shorten time on discovery, didn't issue discovery with thirty days to go and so on and so forth,

shows that they are attempting to slow the progression of a sub V case. That is not a reason to countenance and reward said conduct.

So we would argue that we should go forward today. And then obviously, I'm prepared to expound upon the argument as we go forward today. Thank you, Your Honor.

MR. SADOWSKI: Judge, I have to respond to part of that. I was at the 341 meeting. And I think Ms. Eustis will back me on this. Mr. Orenstein answered more questions than any other attorney in a 341 meeting that she had seen. And I believe she said that on the record. I was prevented from asking various questions by Mr. Orenstein because he objected and said, Mr. Sadowski, take that up when you do the motion to dismiss. So I did not get a full and fair opportunity to examine Mr. Huertas at the 341 meeting. I was prevented from doing so.

And that's been the entire strategy in this case from the minute I set forth in your courtroom to talk about it. They were trying to prevent us from discovery in the main case, and now they're trying to prevent us from discovery in this case. Because I suspect they know there are going to be some bodies buried in there that I'm going to discover, and they don't want you to learn about it. And this decision, Judge, you damn sure it's going to be appealed if the case is not dismissed -- or is dismissed.

THE COURT: That's part of my job. I don't care.

MR. SADOWSKI: And I think you should have as complete a record as possible.

THE COURT: If you want to fast case --

MR. SADOWSKI: And they agreed to a scheduling order.

THE COURT: -- appealing is not the great way to do it around here apparently. But okay.

MR. SADOWSKI: Yeah. I know.

THE COURT: All right. I have a --

MR. SADOWSKI: And they agreed to discovery in the prior JPK I. We had a scheduling order. We had discovery schedule. Where was all this complaining about, well, gosh, we can't do discovery, you can't do this? There was an agreed scheduling order.

THE COURT: All right.

MR. SADOWSKI: That set the precedent.

THE COURT: All right.

I think this is carts, and horses, and chickens, and eggs, frankly. I can't decide whether or not there are disputed legal issues until I hear the arguments as to exactly what all the elements and the evidence -- what we believe the evidence would show for bad faith. So I'm going to -- I'm going to call the rest of my docket and you all can go grab some lunch and come back, but I'm going to hear the legal argument today. And if I decide there are factual matters that

are either not stipulated to or contested to by the Debtor or the special counsel then I will enter a discovery order. If I believe that the argument is based solely on what the allegations are that have been stipulated to then I'll rule on the motion. But I don't think I -- I have a feeling I know what the arguments are going to be, and I've clearly, obviously, read and studied the briefs. But I'm not sure where the line is going to be drawn in the sand.

And so you all can either come back later this afternoon and we can set a hearing on tomorrow for a virtual argument however you want to do it on the merits. But we're going to hear the merits, and then I'll make the decision as to whether there are contested -- it's kind of a summary judgment motion. I have to read it and hear it before I go, yes, there's materially disputed facts or not. I think it's the same thing I've got here to determine whether there's materially disputed facts on dismissal.

So I'm going to -- I'm going to step off for a brief moment. You all discuss with Ms. Lee whether you're going to go forward. And then, after that, we will take up the rest of my docket and figure out when we're going to hear you guys again.

MR. SADOWSKI: Thank you, Your Honor.

THE COURT: Thank you.

MR. VERSTANDIG: Your Honor, just -- Your Honor?

THE COURT: Nope. I got --

THE CLERK: Thank you, Judge. We'll take a quick recess.

(Recess 12:06 P.M./Reconvene 12:20 P.M.)

THE CLERK: Please be seated and come forward. All right. Are we recalling the JPK? Oh yes, because we have to handle the motion to suspend. Right?

MR. VERSTANDIG: Your Honor, there is a consensus amongst the parties that we would like to rejoin you via Zoom only at 1 p.m., prevailing Eastern time tomorrow, with the following caveat. Mr. Metz may not be able to join us for all or even part of the hearing and we would jointly ask that he be excused from so doing.

THE COURT: I have no problem with that.

MR. VERSTANDIG: Okay.

THE COURT: So are we taking up the -- I guess the motion to stay and suspend deadlines really hinges on whether I -- what I do with the motion to dismiss in the main case. Right?

MR. VERSTANDIG: Your Honor, I think I disagree with that but I will also say this. I can't argue any cognizable prejudice is going to accrue in the next 24 hours.

THE COURT: Oh, good. So we're going to move that to tomorrow, too.

MR. VERSTANDIG: Yes.

THE COURT: Okay. Fantastic. Mr. Metz, the only thing I -- go ahead, Mr. Orenstein. Or was it Mr. Sadowski? Sorry.

MR. SADOWSKI: Yeah. Judge, there is, I think, a deadline today to object to their Subchapter V designation. I believe that deadline is today. So if we could get an agreement to just postpone that one deadline by 24 hours.

MR. VERSTANDIG: Absolutely not. The Rule 1020 deadline --

MR. SADOWSKI: I can file --

THE COURT: Well, hold on. Mr. Orenstein is lead Debtor's counsel. Mr. Orenstein?

MR. ORENSTEIN: Well, I don't see any reason to extend the time if they think there's a basis to object. Tomorrow, they're not going to have any different information.

MR. SADOWSKI: There is no prejudice by a one-day extension. But, Judge, if you want me to file the objection --

THE COURT: It's not me, Mr. Sadowski. I don't have a motion to extend time other than the oral motion that's being contested. So if the parties aren't going to consent then the deadline is what it is unless something is filed for me to consider.

MR. SADOWSKI: I can meet the deadline tonight, Judge.

THE COURT: All right. Well, we'll take you all up then on everything else with Mr. Metz being excused tomorrow at

1 p.m.

MR. VERSTANDIG: Thank you, Your Honor.

THE COURT: All right. Thank you.

MR. VERSTANDIG: Do Zoom instructions exist for tomorrow? Meaning, was it a docket day?

THE COURT: It was not. So they will be coming out later today and we will circulate to all parties.

MR. VERSTANDIG: Thank you, Your Honor.

THE COURT: You're welcome.

MR. ORENSTEIN: Thank you.

(Whereupon, at 12:23 p.m., the hearing was adjourned.)

I N D E X


| RULINGS: | PAGE | LINE |
|---|---|---|
| Defendants' motion to dismiss on federal jurisdiction grounds denied | 20 | 11 |

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Lisa Bel

____________________________ Date: July 16, 2026

ESCRIBERS LLC

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: | Case No. 25-00200-ELG |
| | Chapter 11 |
| JPK NEWCO, LLC, | |
| | Washington, D.C. |
| Debtor. | July 31, 2025 |
| . . . . . . . . . . . . . . . | |
| JPK NEWCO, LLC, ET AL., | Adv. Proc. 25-10015-ELG |
| Plaintiffs, | |
| -against- | |
| DEVELOPER RE1, LLC, ET AL., | |
| Defendants. | |
| ************************** | |

MOTION TO DISMISS
BEFORE HONORABLE ELIZABETH L. GUNN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Wolff & Orenstein, LLC<br>By: JEFFREY M. ORENSTEIN, ESQ.<br>15245 Shady Grove Road<br>Suite 465<br>Rockville, Maryland 20852 |
| For the Office of the U.S. Trustee: | U.S. Department of Justice<br>By: KRISTEN S. EUSTIS, ESQ.<br>1725 Duke Street<br>Suite 650<br>Alexandria, Virginia 22314 |
| For Subchapter V Trustee: | Offit Kurman, P.A.<br>By: STEPHEN A. METZ, ESQ.<br>7501 Wisconsin Avenue<br>Suite 1000W<br>Bethesda, Maryland 20814 |

| | |
|---|---|
| For the Debtors in Adversarial Proceeding: | The Belmont Firm<br>By: MAURICE VERSTANDIG, ESQ.<br>1050 Connecticut, Northwest<br>Suite 500<br>Washington, District Of Columbia 20036 |
| For 423 Kennedy St Holdings, LLC, and Developer RE1, LLC: | Greenstein DeLorme & Luchs, P.C.<br>By: JAMES D. SADOWSKI, ESQ.<br>801 17th Street, Northwest<br>Suite 1000<br>Washington, District Of Columbia 20006 |
| Also Present: | Russell Drazin (TELEPHONICALLY)<br>Debtor Representative<br><br>Daniel Huertas (TELEPHONICALLY)<br>Debtor Representative |

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

(Proceedings commenced at 1:07 p.m.)

THE CLERK: On today's calendar, we have case number 25-200, JPK Newco, LLC. Matter before the Court is the motion to dismiss filed by 423 Kennedy St Holding, LLC, and Developer REI, LLC.

We also have the related adversary proceeding, 25-10015, JBK Newco, LLC, et al. v. Developer REI, LLC, et al. Matters before the Court are the status hearing and the Defendant's motion to stay and suspend all deadlines.

Will the parties please state your name for appearances?

MR. ORENSTEIN: Good afternoon, Your Honor. Jeff Orenstein on behalf of JPK Newco, the Debtor.

THE COURT: Good afternoon.

MR. VERSTANDIG: Good afternoon, Your Honor. Maurice VerStandig, special counsel for JPK Newco, LLC. in the adversary, appearing on behalf of WCP Fund I, LLC, the largest equity holder in the main case, and representing the Other Plaintiffs in the adversary as well. And I'm by Russell Drazin and Daniel Horton via Zoom today.

THE COURT: All right. Good afternoon.

MR. HUERTAS: Good afternoon, Your Honor.

THE COURT: Good afternoon.

MR. METZ: Yes. Good afternoon, Your Honor. Stephen Metz, Subchapter V Trustee. And I will have to sign off at 2

o'clock if we're still going.

THE COURT: Okay. That's all right. Good afternoon.

Good afternoon, Mr. Sadowski.

MR. SADOWSKI: Good afternoon, Judge. Jim Sadowski for the movement's developer, RE1, LLC, and 423 Kennedy St Holdings, LLC.

THE COURT: Good afternoon.

Good afternoon, Ms. Eustis.

MS. EUSTIS: Good afternoon, Your Honor. Kristen Eustis, on behalf of the United States Trustee.

THE COURT: All right. So after yesterday's hearing, I noted the praecipe that was filed with respect to the deadline, which is fine. The Court will accept the praecipe filed on that deadline. But we continued the hearing with respect to the motion to dismiss to determine, based upon argument, whether there are any factual issues for determination or whether or not the Court can make a legal ruling based upon stipulated facts.

So in that sense, that's where I believe we are today, unless anybody has anything else in a preliminary matter before we begin with Mr. Sadowski's motion on the argument thereon.

MR. ORENSTEIN: Your Honor, before we get started. My son has some challenges and typically walks to work. We are having some storms here, and they're supposed to get pretty bad this afternoon. Would the Court mind if I might have to step

out at some point for about ten minutes if I need to take him to work?

THE COURT: Yeah. I mean, it's your call, Mr. Orenstein. You can jump in, we can take a brief recess, or if it's someone else arguing, and you are happy with catching back up, I'm fine. Either way, I understand the, dear mom, I have to get to work. It's storming out motion of the day, so I can appreciate the requirement. So.

MR. ORENSTEIN: So thank you, Your Honor. And Mr. VerStandig will be arguing, I will not, so it won't interrupt the proceedings.

THE COURT: All right. Thank you.

MR. ORENSTEIN: Thank you, Your Honor.

THE COURT: Anything else on a preliminary matter today?

MR. SADOWSKI: No, Judge, other than thanking Mr. Orenstein for the extension. He called me after yesterday's hearing. That was very much appreciated, given all that's on my plate today and tomorrow.

THE COURT: All right. Well, Mr. Sadowski, if you're ready, let's take up the motion to dismiss, then.

MR. SADOWSKI: Sure. Judge, give me just a sec. Judge, I have to kind of move you over just, so I can call on my outline in front of me. Judge, we filed a motion on June 23rd. I think the Debtor's bankruptcy filing was on Memorial

Day weekend, as I recall, so what I would say is promptly got that issue before you. Because it's a contested matter under Rule 9014, we believe we're entitled to the full range of discovery that goes with that.

And I tried to follow the model that the U.S. Trustee set the plate for me and the Court set for me when the last time this motion became before on what I called JPK Newco 1. And that is, let the Court know that we haven't developed a full record on our facts that we believe will support our motion, ask for an evidentiary hearing, get a hearing date, enter a scheduling order, and conduct ourselves in that fashion.

And I remember from the first JPK Newco hearing that the Court had some concerns that the Trustee's office filed their opposition further into the case, which didn't happen here, and hadn't served discovery already, so I went ahead and served that as best I could. I was out on vacation early July, and as the Court knows, that opposition I filed was a doozy.

And I sort of apologized for the length, Judge, but because of the various different moving parts in this case and the fact that you inherited the removed cases from another judge, I felt it was important for you and the U.S. Trustee's Office to have a complete timeline of everything and everything that went down. And I also wanted to show that I too could create a table of authorities with cites like Mr. VerStandig

does. So our ask, Judge, is that we be allowed to fully develop the record on what we believe is a bad faith bankruptcy filing.

From the opposition that Mr. VerStandig filed -- and by the way, that opposition did not object to discovery or did not object to the request for an evidentiary hearing. And I had informal conversations with Mac about reaching out to your chambers and getting a hearing date and coming to you yesterday with an agreed scheduling order. And then your courtroom clerk advised us, no, that you wanted to hear those requests today.

So I was trying to efficiently manage what I believe is a very important decision for you that's going to have consequences not just for this case, but other cases that people will be relying on, on bad faith test. I think it will likely lead to appeal, whichever decision is made on that. And the sort of good news about all that is, we may finally get an answer from the D.C. Circuit, probably to you, three years from now as to what test this court should be using, fourth, fifth, sixth, eighth, eleventh, et cetera.

So our request, Judge, is that -- and we are handicapped, in my opinion, Judge, in setting forth the various factors by not having a benefit of discovery and further providing evidence that this company was created for the only sole purpose to create bankruptcy jurisdiction that the loan from Mr. Sariri was a sham transaction to further that effort,

as well as the loan to the Energy Morocco.

We believe the company was also intentionally underfunded, so that the company could make the precise arguments that they're making here, and that is that, oh, no, this is not a two step, this is not an LTL, because this company doesn't have any money. On top of that, Judge, we believe you're entitled to see what we call the badges of fraud, transfers among insiders. We also believe we're going to prove with further discussion that this entity is not a real entity.

It is just a shell, and it is an alter ego of the WCP Fund, and we've seen that play out in this case based on who's doing the arguments and who's filing things. And all of those things are important for you when you consider whatever factors you're going to consider, and I'm not sure what you're going to. I did tune in, Judge, or retuned into a couple hearings that I could find on this issue to kind of get a sense for what test you are using. But as I indicated, perhaps to aggressively on Wednesday, really, we are entitled to discovery under Rule 9014. We should get it.

And as far as that discovery goes, Judge, I have my list of interrogatories that I can display. I did not go wild and ask all sorts of crazy questions. I asked for a very specific, targeted pieces of information. And why we're handicapped by not having discovery is, of course, we're

entitled to call witnesses at an evidentiary hearing. And I don't, sitting here today, know who all those witnesses will or could be. And so one of my initial interrogatory questions was, tell me about everybody who's involved in the company.

I don't want this to become a mini trial. I just want the rights that are for my clients, want the rights that are afforded to any litigant in a contested matter under Rule 9014. If you wanted me, Judge, to now dive into the factors and the legal arguments, I'm happy to do that. At this point, I just want to just note an objection that I really believe our argument is handicapped by not having the benefit of any of the discovery at this moment.

THE COURT: Well, that was the point I made yesterday, Mr. Sadowski. In reading the brief, all of the -- and reading the responses, if they admit for purposes of this hearing, I'm still not sure where the discovery and where the hidden gems are going to lie. So what I wanted to hear today was the argument and where you can say, and we think there may be more on this point, and here's why. Or we want to do discovery on this point, and here's why. So that I at least understand whether or not there are factual issues, if they are not conceded for the purposes of motion to dismiss.

So that's why we continue this to have a more fulsome argument on the merits.

MR. SADOWSKI: Sure. All right. And I have some of

those arguments. I will just say just sort of this caveat, Judge, when I lay out my discovery strategy ahead of a deposition, that is really diluting the effect of a deposition, because I'm essentially giving them the questions in advance that I'm going to ask. And the deposition is supposed to be spontaneous, where they can't sort of hide behind where's the prepared interrogatory answers? But for example -- and again, you have to go back to my outline -- I believe that the evidence will further be developed that this was not a legitimate business. That this company --

THE COURT: Instead, why don't we start with the legal argument. What factors do you believe you can rely on and want to rely on in arguing it's a bad faith? I mean, as you said, I have authority in the Campbell case, where I was looking at a bad faith filing argument. There are other factors I've never said that was -- in the Campbell opinion, it said that they were the most relevant to that case, meaning that there may be other factors that you want to point me to from other tests, which is fine.

MR. SADOWSKI: Sure.

THE COURT: I haven't said there's a be all, end all test. But I'm still floating out here, and you don't like that we're back in bankruptcy land. And we want to develop more facts on something, but what I don't understand is if those are relevant to any factors and how I bridge that gap. And that's

why I wanted to have argument today to understand the factors you want me to look at and where you think the record as conceded isn't deficient, isn't sufficiently built out.

MR. SADOWSKI: Sure. Well, as I read the WCP's opposition, which has been adopted by the Debtor, they do not concede that this factor is present, and this factor is present, and this factor is present. I didn't see that in our opposition. Maybe I missed it. But in terms of the factors, I'm just going to scroll through the opposition, Judge, where the tests are. They're not in my outline, but if you just give me a couple secs here to get to that.

THE COURT: Okay. Take your time.

MR. SADOWSKI: First of all, even though I think the Court has given the indication that it doesn't think that the code provision I cited on collusive obtaining of jurisdiction applies in the bankruptcy context, I kind of got that drift from you yesterday. I believe that we would be able to provide evidence that SF NU and the WCP Fund and perhaps even Mr. Huertas and Mr. Drazin colluded to create jurisdiction. And whether that statute that I cited -- and I'm almost there.

It's in the -- I think the Court's familiar with -- we would, I think, find that there was strong evidence that they did have conversations together about, hey, let's do this, so that we can get into bankruptcy court, and that's the only reason we did it. I think we may find documents that show that

one or more of those people came to some sort of agreement, so I think discovery would help us prove that aspect of our argument.

THE COURT: But what factor does that go to bad faith filing?

MR. SADOWSKI: Well, there's a general -- my view of that statute, Judge, is that Congress expressed a general, quite clearly, right, that parties should not collude to create federal jurisdiction, right, and that could be a new factor for you in whatever test you decide to adopt. And there's the Eleventh Circuit test that says there are no factors. It could be one. It could be a number of things.

So I think that's an additional factor that should be added to whatever test that you adopt for bad faith and given the clear congressional intent in a federal statute that colluding to create jurisdiction is wrong. And I also brought this up, I think, Judge, on the remand decision, the second one, the case that went to the Fourth Circuit with Mr. Fasano (phonetic) and Mr. VerStandig. And the Fourth Circuit said parties can't collude to create an appeal or jurisdiction for appeal.

So I think that is a general equitable principle embodied in the statute that you should add to whatever bad faith factor test that you come up with. That may be a new factor. We might get a longer list --

THE COURT: Okay. But again, that's under 28 U.S.C. 1359 which gives federal courts jurisdiction over civil actions. It's not Title 11, Section 109, which says who may be a debtor. So I want to understand your argument. Is your argument that 28 U.S.C. 1359 limits the applicability of 11 U.S.C. Section 109 for the purposes of who may be a debtor, and that in addition to what the Bankruptcy Code specifically put out in Title 11, we also have to apply the general civil standard for that. Again, I'm not talking about an adversary proceeding.

I'm solely talking about for who may be a debtor and what the standard is to determine what jurisdiction I have over a debtor.

MR. SADOWSKI: Can you just give me those two cites again, Judge?

THE COURT: Yeah. So it's from your brief. It's from thirty-five out of thirty-nine. So 28 U.S.C. 1359 is the section you quoted to me.

MR. SADOWSKI: Right.

THE COURT: And what I'm telling you is 11 U.S.C. Section 109 is who may be a debtor under the Bankruptcy Code. And I'm asking you what your argument is, is that in some way that if there's any authority other than your argument today, that 28 U.S.C. 1359 is intended to supersede or otherwise add language to Title 11 that isn't there under Section 109?

MR. SADOWSKI: I haven't found that that case law, Judge -- and if I did, I cited it -- that says that -- I haven't found, I don't think, a bankruptcy court decision that applied it in the way that you did. Our argument is that this whole, hey, the adversary proceeding is a civil action, and it certainly is a product of the collusive stuff that I've mentioned. And the Court under the case law in the bad faith cases and the case I cited under 28 U.S.C. 1359, talked about maintain the jurisdictional integrity of the Court.

So I think that the Court has an obligation in every case to make sure that its jurisdictional integrity is not being played around with by litigants. And I think that factor can be factored into your calculus under the totality of the circumstances. The totality of the circumstances are the totality of the circumstances. And one of the circumstances here is a collusive attempt to obtain bankruptcy court jurisdiction over purely state law claims --

THE COURT: And has there ever been a court that's utilized that in the bad faith factoring when they consider whether or not that debtor has filed in bad faith this question of alleged collusive action to obtain bankruptcy jurisdiction?

MR. SADOWSKI: Not that I found, Judge, but my position on that is it's a fairly obvious thing given that the bankruptcy court is a specialized court that's supposed to help real companies get a fresh start. And it's an inherent -- it

has more equitable powers than any other court on the planet, probably both in the statutory underpinnings of the authority of the Court. So as a fundamental matter of equity, I think that has to be considered in the bad faith test. You may disagree.

I honestly did not look at every case cited by the U.S. Trustee in their bad faith filing where there were like twenty of them. I will look hard for it and supplement our brief if I can find it, but I haven't to date. But again, I think it's in a totality of the circumstances test, you consider everything, including that factor. And I'll take through the Franklin factors again and why we need discovery on that. Ledbetter (phonetic) has one asset. They've told us that they have these loans. Maybe they have something else. I don't know.

Whether the asset is encumbered by secured liens, I don't think it is. They haven't disclosed it on the schedule. See whether it has any business operations. And this is from the Little Creek Development factors cited by Judge Teel. I have a record on some of the business operations they do not have, but I don't have answers to questions about, do they have a phone line? Do they have paper clips? Did they have meetings --

THE COURT: Are those material facts, though, for the determination of bad faith? I mean --

MR. SADOWSKI: Yeah, whether the Debtor has any business operation. And that's part -- a normal business has employees, a normal business has a business plan, a normal business goes into business to make money.

THE COURT: I love that you think businesses have business plans. Every debtor I've ever had in here has not had a business plan, other than a hope and a prayer and to pay their bills, for the most part. But okay.

MR. SADOWSKI: But this is a sophisticated lender, Judge, that's been in business for however many years. So this is not a couple of guys who sit around talking about, hey, let's go make pizza, that's small size, and someone can make it on their own.

I mean, this is -- and again, the lack of any of this stuff ties into that alter ego argument, and I think that also should be considered in the totality of circumstances test that you will develop when you issue your opinion, whether it really is a company or whether it's just a shell that was created so the WCP Fund and SF NU could just sit there and say -- could nominally create another company just to do their dirty laundry for them that they were supposed to be doing in superior court. Right. Remember, WCP Fund and SF NU were in that case.

WCP Fund was already trying to collect those notes through a foreclosure action and a counterclaim. And JPK Newco, as far as I can tell, didn't make a demand on the person

who owed them the money first. But I'm getting a little outside of the factors. Whether the Debtor has few unsecured creditors with small claims, it's another factor. There are often times when debtors make mistakes in their schedules, and they don't schedule everything.

And if you looked at the transcript that I sent you, you'll find that there was a couple of mistakes in there, so I'd like to ask follow up questions on. And I did in interrogatory questions. What are all your assets? Whether the Debtor in one trial had litigated to a standstill in state court, I kind of know the answer to that. It wasn't exactly a standstill, but that's the factor we have here that this Debtor, really all these other two companies, that were already involved in heavily contested state court litigation.

F. Whether bankruptcy was the only viable way to forestall loss of the property. Right. I asked the question at the meeting of creditors to Mr. Huertas. I said, what efforts did you make to collect these debts? And his answer was vague or nonresponsive. And the bankruptcy court is not the only viable way to forestall loss of these notes. They could have just continued in the superior court case as defendants in that case, and that is the viable way, and that is the collections court.

The bankruptcy court was not created as a private collection court for lenders that don't want to collect their

debts in superior court or involuntary petitioners, either, in the case of Mr. Sariri. So discovery is related to factor F.

G. Whether there are any allegations of wrongdoing by the Debtor or its principles. Right. That ties into my argument, Judge, that the collusive creation of jurisdiction was wrongdoing. You will also remember from our amended complaint that we've alleged that these are fraudulent transactions to JPK Newco, because they were specifically designed to delay the superior court case and then get us over here, so I would like discovery on that. And then whether it differs from new debtor syndrome, we sort of have the answer from that. It was formed in February.

But what did it do from February until it loaned this money? Did it do anything? And then there also was a representation, Judge, in one of the position papers filed by either the Debtor or the WCP Fund, probably the WCP Fund, that this entity was created for settlement purposes. Okay. What settlement purposes does that entity achieve? I don't know. I wasn't involved in the settlement discussions. I didn't get any emails from JPK Newco. So that the discovery is related to that factor. So that takes us to the Little Creek factors, Judge.

On the Second Circuit test, Debtor has only one asset. Again, I want a full explanation of all the assets this debtor had, whether it's subject to a foreclosure action or default.

I know that the notes are already subject to ongoing litigation, so I'm not sure if factor 2, the second circ test, that we need discovery on that, and I didn't ask a question on that. The Debtor's financial condition, possession of two-party dispute. I have a, what I call, not so strong argument that this really is a two-party dispute between lenders and debtors over the same instruments.

But I don't know that I need discovery on that, the two-party dispute issue. I think that's a legal argument. Four, the timing of the filing of evidence is an intent to lay or frustrate legitimate collection efforts. Right. I want to ask the Debtor under oath, were you attempting to delay the superior court litigation? Right. That's a question I'm supposed to be able to ask, because it goes to question 4. I haven't asked that question of the Debtor, and I didn't at the meeting of creditors.

The Debtor has little or no cash flow. I think I know the answer to that, but I'm not sure. And I haven't seen their bank statements. I don't know if the money flowed from the WCP Fund to the to Energy Morocco or whether they routed that through a bank account or whether they routed that through Mr. VerStandig's bank account. But obviously, if the money came directly from the WCP Fund, that would support our position that this is an alter ego company of the WCP Fund and SF NU. The Debtor has little or no cash flow. Again, I'd like to see

the banking statements as well to find out the answer to that question.

The Debtor cannot meet current expenses. As far as I know, they have no expenses. So their only expense that they had to meet was paying off the loan to Mr. Sariri, which they know they weren't able to pay, because they knew at the time that loan was made, there was no way, Jose, that they were going to collect on those notes within the short period of time of the lifetime of that loan.

7. The Debtor has no employees. That, in fact, I believe, has been admitted in one of the meeting of creditors. But there's this Ms. Heragio (phonetic) who does some work for them, and I'd like to know what she considers to be her role for this company, if anything. That's the Second Circuit test, Judge. On the Third Circuit test, factor 1 is not, I don't think, applicable, except there is going to be an objection filed to the Subchapter V designation, and that is because -- and you'll see that on August 1st. Thank you, Mr. Orenstein.

This is not a legitimate debtor that carried on business. I've got a draft objection from an associate who's working on that right now, but that would be another reason why we're going to be entitled to discovery as to the objection for the Subchapter V designation. Whether the petition was meritorious, I think this petition was a sham. That's factor 2. And discovery would further support, I believe, evidence we

obtain discovery would further support our being able to support that factor. Whether the creditors made reasonable inquiry and relevant facts and pertinent law before filing.

Don't think I'm going to find anything on that, but I just don't know.

4. Whether it was --

THE COURT: Well, I think it doesn't appear like they are actually for an involuntary petition. These aren't the factors for a voluntary petition.

MR. SADOWSKI: I can't remember if Forever Green was involuntary or not --

THE COURT: I'll tell you, it's an involuntary petition case. So these are the factors to look at whether an involuntary petition was appropriate, not whether a voluntary petition was appropriate.

MR. SADOWSKI: Okay. All right. But well, hold on. What was swept under the rug, right, was whether the original JPK Newco case was filed in bad faith. Right. I think all this --

THE COURT: And that case got dismissed, so that was dismissed. Is that relevant to this case?

MR. SADOWSKI: It got dismissed by consent order, Judge. But if the Court -- when the Court takes into account the totality of the circumstances, you have to take into account that there was a prior dismissed, involuntary Chapter 7

case that may have also been filed in bad faith. Whether that case was filed in bad faith or not, the dismissal of it did not erase those facts, and it did not erase those bad faith factors. So with respect to -- I don't expect to grill Mr. Sariri on these factors.

But I believe, Judge, that the consent order was issued as another legal maneuver by the WCP Fund, because they knew that Developer RE1 and 423 Kennedy were about to join the U.S. Trustee's motion to dismiss with their own motion to dismiss, and they were going to seek sanctions. And the exception to sanctions under the statute for sanctions under an involuntary petition is if the case is dismissed by some other means other than an order, I believe. And so what they did is, I think, discovery would show this --

THE COURT: Would sanctions have been available to WCP or any of the other entities as a result of about an invalidly filed involuntary petition? Aren't those sanctions limited solely and only to the Debtor being able to seek sanctions against the petitioning creditor? How would you all have had standing to seek sanctions at all?

MR. SADOWSKI: Well, Judge, you may recall from that Raymond Rahbar case, we were a creditor. And you had Carl Pierre file an involuntary petition, and you sanctioned not only the person that filed the involuntary petition, but the other two people who were really the driving force of that,

which was Raymond Rahbar and PF Chinatown, LLC. So there is precedent for you awarding sanctions in favor of a creditor. And the creditor in that case was Terrell Place Property, LLC. I didn't bring that brief, Judge. I don't have it up on the screen, but it was --

MR. SADOWSKI: It wasn't monetary sanctions. I simply barred them from filing a future case, I believe.

MR. SADOWSKI: Oh, no, Judge, we got --

THE COURT: Yeah. You got you got legal fees.

MR. SADOWSKI: $20,000 in legal expenses. And that makes perfect sense, Judge, under the case law, because bad faith filings are supposed to be punished in some way. And --

THE COURT: But that's not available under Section 303. I sanctioned them under under Section 9011, because I'd given them formal notice of the intent. Is that what the sanctions were going to be?

MR. SADOWSKI: I don't think they were under 9011, Judge.

THE COURT: They certainly weren't under Section 303, because Section 303 sanctions are only available to the Debtor. I've actually made that ruling in a different case in which you weren't involved.

MR. SADOWSKI: Okay. Judge you'll soon be seeing that sanctions order, because we're about to ask you to convert that sanctions to a judgment, but I don't have that in front of me.

But --

THE COURT: I'm shocked they haven't paid that. I'm so shocked they haven't paid you yet.

MR. SADOWSKI: Yes. Right. Well, if you want to really get the better news on that. It's one of the reasons Mac and I are friends. Because when the decision came out finding a bankruptcy fraud, he's going to be sentenced in about three weeks. But anyway --

THE COURT: They finally picked him up in the Eastern District of Virginia, huh?

MR. SADOWSKI: He's still filing litigation, Judge. He's sued me. He sued my law firm. He's just improperly removed another case, but I'm getting -- anyway --

THE COURT: Sorry. No. I was just curious as to what happened. Thankfully, he's no longer here. Apparently, I scared him off, so I'm going to take a win on that front. Let's get back to your case.

MR. SADOWSKI: Well, you only gave him a year, Judge. His year is almost up. I'm sorry. I think the Court has the inherent authority under its --

THE COURT: Well, that's not before me today. Let's get back to the question of bad faith.

MR. SADOWSKI: Right. Yeah. Whether the filing was used as a substitute. Or let me skip now for the Forever Green standards, the Fourth Circuit. Now, I don't -- the Fourth

Circuit standard, and I'm in Carolin Corp v. Miller. And let me see if that was involuntary before I start wasting time here. I'm citing Little Creek. I highlighted that text in there that

"The good faith requirements prevents abuse of the bankruptcy process by debtors whose overriding motives is to delay creditors without benefiting them in any way."

I think the overriding motive here was to delay Developer RE1 and 423 Kennedy from prosecuting their claims against the WCP Fund and Washington Capital Partners and Mr. Huertas and his arraignment in D.C. superior court, so that's why I gave you that quote. And in that case had no single factor is exhaustive citing the Eleventh Circuit case. And Mr. Rasheny (phonetic) is going to get up here, and he's going to say, I believe, because he does know everything when it comes to bad faith standards, you got to follow Bestwall. You got to follow Bestwall, right.

Of course, he wants you to follow Bestwall, because there's that, two-prong part of it that says you have to find object futility. Right --

THE COURT: Well doesn't Bestwall supplement the earlier -- I mean Bestwall's also Fourth Circuit, so wouldn't Bestwall supplement or be added to the authority that was an earlier Fourth Circuit authority, which is what you're pointing

me to now?

MR. SADOWSKI: I agree. Yes.

THE COURT: Okay. All right.

MR. SADOWSKI: And I just want to talk about Bestwall briefly, because I think that as this scheme was being developed, Mac being the very bright bankruptcy lawyer that he was, said, I've got to create just enough of a business here for JPK Newco to get over these bad faith humps, including this having this one customer, one loan, one transaction to say they were, quote, conducting business. But I don't think he should follow Bestwall, I think the Eleventh Circuit approach is probably the best.

You're never going to be able to list the factors, because some new development could happen, and some new misconduct could occur that didn't make it into all these factors. But you've got a good list. Fifth Circuit, Little Creek, we already covered. Eleventh Circuit, any factors test used for bad faith. And here's, again, my point about colluding to create jurisdiction. They just say there's no particular test. You consider any factors which evidence an intent to abuse the judicial process for purposes of the reorganization provisions.

And I think this case is a poster-child example of state court litigants intending to abuse the judicial process by gaining a tactical advantage that they perceive to be with

you in your decisions versus the superior court. And I'm not sure where the tactical advantage factor came in, but I know it's in here. McDow v. Smith, bankruptcy court, not binding, of course. But that's the, I believe, Judge Kindred or the other judge in the -- and I highlighted the ones, Judge, and I think the discovery would further reveal, just as I did in the opposition.

Factor 3, whether they have sufficient resources to pay its debts.

4. Whether they're trying to avoid us in superior court through conduct akin to fraud, and I believe this conduct is akin to fraud, transferring assets for the purpose of delaying creditors, its statutory akin to fraud by D.C. code. And also, if you look in the regular preference statute under Section 548 where the Trustee can go avoid fraudulent transfers. That also says transactions with the intent to delay creditors are fraudulent. Whether the Debtor's pattern is a deliberate and persistent pattern.

Don't have a huge pattern here, but we do have now two bankruptcy filings. Whether they're over protection of the Code to the detriment of creditors, I believe that factor is present, and discovery will further enhance that. Lack of attempt to repay creditors, and here they created a debt that they knew they weren't going to pay. Payment of debts to insider creditors, I haven't seen money leave the door to

insiders, but this whole thing was an insider transaction. And Judge, you may remember from your law school days that there are badges of fraud, right, in transactions.

And one of the badges of fraud is a transaction to a family member or an insider. Another badge of fraud is, did they transfer something after you've been sued? And both of those factors are present here. And then procedural gymnastics to have the effect of frustrating creditors, just go back and look at our motion for remand, Judge. We about to take depositions when this whole fiasco started with JPK Newco in bankruptcy. And then unfairness of the Debtor's use of the bankruptcy process, I can make unfairness arguments without discovery.

Number one is, our firm does not have a regular full-time practicing bankruptcy lawyer. I'm the best they got, and I'm definitely not as familiar with the Court's local rules and process. I have no associates that have bankruptcy court experience, and so we have actually have to learn as we go, in a way. And our clients are considering, and they may also file, a local bankruptcy counsel here. Because if we have to defend the adversary proceeding, we might do that.

But that gets back to my whole kind of swimming pool argument, Judge, is they wanted to come over to this pool where they have their expert, Mr. VerStandig, and he is an expert, to take us out of our familiarity with the superior court practice

and procedures there where these cases are -- where these types of disputes are supposed to be litigated. Somewhere in here, Judge -- and I don't know how I missed it, let me do a search -- is the attempt to obtain a tactical advantage.

I know I saw it in the case, and perhaps I missed it when I was preparing the opposition, but using the bankruptcy court to gain a tactical advantage in one of the cases discussing bad faith elements. And that was the, I think, overriding theme of the U.S. Trustee's motion, aside from the fact that they also believed that this Debtor was a phony company. So Judge, I think discovery would further enhance what we know on those elements, that we're entitled to it under Rule 9014. We're not going to go wild. These attorneys know how to object.

I found that out at the meeting creditors. They know how to file a motion for a protective order if for some reason Jim goes wild. But for all those reasons, Judge, we are, I believe, entitled as of right to discovery in this very significant issue that should be fully briefed to you on a full record where we are able to complete the record with the best available evidence that we have and that and we will find to show that this was a bad faith filing.

THE COURT: All right. I think Mr. Orenstein said Mr. VerStandig was going to argue, but I'm going to turn to make sure. He's nodding his head, so I'll turn then. Mr. Metz was

just going to watch, if I remember right. He was not taking position.

All right. Mr. VerStandig, then we'll hear the opposition.

MR. VERSTANDIG: Thank you, Your Honor. Let me answer the question that Mr. Sadowski did not so crisply answer. We believe that this court should apply the Carolin Corp. standard out of the Fourth Circuit, as expounded upon by subsequent Fourth Circuit case law, including Bestwall, and we believe that for two reasons. It is the most sensible standard, for reasons I'll touch upon in a moment.

But two -- and I owe credit to the good people at Cadwalader in their swing landing briefing last night for pointing this out -- it is also the standard that has been most frequently referenced by the U.S. District Court for the District of Columbia in two cases from the mid '90s. And while there is not an express opinion adopting it in either of those cases, it does appear to be the standard that they most frequently invoke and that they seem closest to following. And before I get there, I'll also indicate I don't think it matters.

There appear to be three plausible standards in front of you, the Fourth Circuit standard, the Third Circuit standard, and whatever it is that we wish to refer to as the Franklin Mortgage standard. And under any of those standards,

this is a good faith filing. I'll also indicate that I believe Mr. Sadowski was errant in that he said we didn't address the factors in our briefing. We addressed the factors of every one of those three standards in pretty good detail. That is the reason I have the reputation for being loquacious.

Part of what appears to be afoot here is sort of a fundamental misapprehension. I think Mr. Sadowski and his clients are looking at a bankruptcy filing that disrupts a counterparty's efforts as being indicative of bad faith or somehow at odds with the congressional intent underlying Title 11 of the United States Code.

As someone who is in this court on behalf of creditors probably half the time, and on behalf of debtors probably half the time, I think what's being missed is that almost every bankruptcy filing has that precise impact, whether it is a consumer seeking Chapter 13 protection so as to stave off a foreclosure that is days away; whether it is someone seeking Chapter 7 protection so as to get thirty days of automatic stay protection to try to hold on to their vehicle; or whether it is a company trying to avoid enforcement of a judgment, enforcement of a lien, enforcement of a collection action, that is regularly what comes in front of Your Court.

I can't say that is every single case, but that is certainly the predominance of cases. So --

THE COURT: I can say that every Chapter 13 isn't

days. It's hours before for enforcement, but nonetheless, points taken.

MR. VERSTANDIG: So let's take a step back to the congressional intent. We know from Section 109 who can and who cannot file for bankruptcy protection. No one's alleging my client's a railroad. No one's alleging my client's a bank. No one's alleging my client's a domestic insurance company. So the presumption from the congressional language, which is plain and not ambiguous, is that JPK Newco is eligible to be a Debtor in Chapter 11.

There is no different standard for sophisticated parties versus nonsophisticated parties, as we just pointed out -- we meaning my firm, not my clients -- in a case where I represent very different parties, Title 11 actually openly contemplates that you're going to have business debtors who are so unsophisticated as to not have a balance sheet, not keep records of profit and loss, and not have filed tax returns. That is the reason there is the statutory exception for docketing those items.

I don't know that Mr. Sadowski was seriously suggesting it is a different bad faith standard based upon the putative sophistication, or lack thereof, of a debtor's principles. But there is simply no foundation in the Bankruptcy Code or applicable law for applying a differentiated bad faith standard based upon the subjective sophistication of

related parties. I'd also point out with the attack on, quote/unquote, shell companies, shell companies file somewhere in the United States every day.

Almost every single asset real estate company we see is a shell, a predominance of them. Not all, but the predominance are owned by one person. The predominance of them are set up for a single purpose, to pursue a single asset and consistent with the Limited Liability Company Act to shield the principle thereof from any liability. What, we have here is actually much more sophisticated. It's an entity holding three separate notes with three separate obligors with fifteen months of business operations.

But even if it was a shell, that cannot be evocative of the standard or that would undermine single asset cases. We know the Bankruptcy Code intended for single asset companies to file for two reasons. One, you have the definitional provision for single asset real estate in Section 101. But two, you even have the differentiated treatment of single asset real estate entities under Section 362(d). Now. Here's why the Fourth Circuit standard makes sense. Carolin Corp. and its subsequent cases and progeny recognize that companies are going to seek bankruptcy jurisdiction on a regular basis.

This frequently comes up in the context of asbestos litigation, but it's certainly not limited to asbestos litigation. And as the Fourth Circuit pointed out in Bestwall,

the jurisdiction is not being created. I think this is a fundamental misapprehension that is being espoused by the moving parties. And I'll quote from it,

> "Old GP, New GP, and Bestwall did not manufacture jurisdiction via their Texas divisional merger. This is evident because without the restructuring, the asbestos claims would have remained with Old GP. And if Old GP had filed for bankruptcy, the bankruptcy court would have had jurisdiction over those claims as it does over the same claims here."

End quote. I'm not being hyperbolic when I point to banks, stockbrokers, and railroads. Unless you see a party that is not in and of itself eligible to seek bankruptcy relief, moving assets to a party that is, there is not a creation of jurisdiction. You're simply a transfer of assets, or in the Texas cases, liabilities with which jurisdiction flows as part of the transfer. No one disputes that either parent company of JPK Newco would be eligible to seek relief under Section 109, and thus jurisdictions not being created.

Now, the two DBC cases that I'll bring up are In re Rudd and In re 1210-1216 Mass Avenue. The cite on Rudd is 1995 U.S. Dist. LEXIS 7855. The site on the Mass Avenue case is 1992 U.S. Dist. LEXIS 8912. Neither of them were published opinions, neither of them are circuit level opinions, and neither of them make a conclusive holding. I don't want to

misrepresent that. But both of them deal with situations where some determination needs to be made as to what the standard is.

And both of them, without saying as much, seem to tepidly deal with the fact that your predecessor may have been somewhat schizophrenic in going between the Franklin Mortgage standard and the Fourth Circuit Carolin Corp. standard. The thing that's fascinating about Rudd is, it is obsessed with whether or not the second prong, which is subjective bad faith, must be reached. It accepts that, of course, in order for a case to be a bad faith filing, it it must be objectively futile. The question is whether or not you also need a showing of subjective bad faith.

There's no allegation of objective futility in this case. None of the things that Mr. Sadowski has spoken about wanting to receive evidence upon would go to objective futility of reorganization. None of them concern the 1129 criteria to confirm a plan. None of them confirm what it takes to get across the finish line. They all go to some mutant-morphed version of what might be deemed subjectively bad faith in a sui generis construct on a given day.

But the problem with that is, without predictability and without clear legal bright lines in bankruptcy and every other area of law, companies cannot reasonably conform their conduct so as to adhere to the law and to understand the risks and opportunities available to them as they move forward. I

also want to point out that while Mr. Sadowski seems violently opposed to the Carolin Corp. standard, it is probably the one that would most benefit his clients, because under Carolin Corp., an attack can be made at confirmation. We don't simply clear the good faith hurdle today.

If we go the LTL route, which I'll get to in a moment, then we're done. We are here in good faith. That is the law of this case. An appeal can be taken, but it'll be adjudicated far down the road. Whereas under Carolin Corp., because of the objective futility requirement, and because of the Fourth Circuit's urging that it is important to let these matters proceed to confirmation, these things can be collaterally raised at a later juncture.

And that is part of the reason that the Bestwall court, which is the Fourth Circuit, speaks to why it is essential to give a debtor the opportunity in the early days of a case and to allow things to be taken up later, because you do not want to be wrong. And I don't mean you specifically, I mean any judge in any context. You want to always give a debtor that may have the possibility of reorganizing the opportunity to do so, and that is why you look at subjective bad faith as one of the two conjunctive rigors.

If a debtor can make it through confirmation, then they did have a role in Chapter 11. If they can't make it through confirmation, a much more serious discussion needs to

be undertaken. I'll touch on LTL, because it is one of the possibilities, and it's something we touched on in our brief, and it's certainly the flashiest, most in vogue topical case law of late. There, the question is whether a petition serves a valid bankruptcy purpose and whether it is merely filed to obtain a tactical litigation advantage. That's where Mr. Sadowski was getting his tactical --

MR. SADOWSKI: Here it is. Sorry. Thank you.

MR. VERSTANDIG: Now, LTL points out, though, that a valid bankruptcy purpose includes preserving a going concern or maximizing the value of an asset, and it stresses both LTL-1 and even more so LTL-2, the, quote/unquote, "need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it's faced with a hopeless situation." End quote. And LTL-2 truly stresses -- I know I just had to stress this twice in a row -- that when future insolvency is a realistic possibility, you don't have to wait. You do not have to wait for an adverse judgment in state court.

You don't have to wait for summary judgment briefing in state court when your existence is threatened by litigation that is extinct as opposed to imagined, which was the problem with LTL. You have every good faith rationale to go to bankruptcy court and to endeavor to reorganize. And we see that from the EMP case out of Delaware that we cited in our papers, where the U.S. District Court for the District of

Delaware said a company need not wait until after a massive judgment has been entered against it before filing for bankruptcy.

I'll also point out that there has been no elucidation of a tactical litigation advantage, and I think there's a fundamental misnomer as to what that means in the context of this case and other cases. In a bankruptcy context -- and I'm not referring to the Trump administration with certain regulatory issues that have nothing to do with insolvency -- when you see tactical litigation advantage or forum shopping, what you normally see is a reference to going to a circuit that has a different prevailing threat of case law, where there exists a split that hasn't been resolved by the supreme court.

So by way of hypothetical only, and I'm making this up, if the Fourth Circuit said that negligence no longer requires a showing of reasonable, whatever it may be, but the Fifth Circuit said that is still required, someone may desire to be in the Fourth and not the Fifth and forum shop their way there. Here we've barely moved two blocks. This court's going to be asked to apply District of Columbia law to state law claims and is going to be asked to apply Title 11 law to the turnover claims.

The adversary proceeding in this case, the first two causes of action arise under Title 11 of the U.S. Code, the 542 claims. So there is no forum shopping. What there is, and

we've been very upfront about this, is there is a desire to have a dispute between a debtor and a creditor adjudicated by a court with topical expertise on the adjustment of the Debtor, creditor relationship. That is not a tactical advantage. That is not forum shopping. That is an effort to reach a more streamlined resolution that will not be as likely to result in protracted appellate work thereafter.

There is nothing forbade about that under LTL, under Bestwall, under Carolin, under Franklin, or under any of the other standards we are talking about today. I'll tick through the Franklin standards, because that is the third test, but based on what I just shared about the DDC cases, I think that is a test that is probably seen its day in this court. The first is a single asset debtor. This is not a single asset debtor. This is a debtor that has three assets that's on Schedule AB. The second is whether or not secured creditors liens encumber attractive property.

This Debtor doesn't own property, and this debtor has no secured creditors. The third is whether or not there is cash flow and available sources of income to sustain a plan of reorganization. As is evident from the plan that is on file, this Debtor has a note receivable that it anticipates will be paid, and upon conclusion of the turnover litigation, will have funds from that that can be used to further fund the plan of reorganization. The fourth question is whether or not there

are few, if any, unsecured creditors. All the creditors in this case are unsecured.

The fifth is whether or not there's property that's been posted for foreclosure. There's no foreclosure here, because again, there are no liens. That also assumes a one creditor relationship. Here there are three creditors, and as Mr. Sadowski acknowledged, no one was at a standstill in state court. There was no allegation that things had come to a standstill. The sixth question is whether bankruptcy offers the only possibility of forestalling a loss of an asset. Here, no one's asserting that bankruptcy is the only possibility.

We're simply asserting that bankruptcy is the most economically sensible, streamlined, and synergistic means of addressing the issues that confront this entity. The seventh is allegations of wrongdoing by the Debtor or its principals. No question there's a lot of nefarious allegations here, but these are blurry allegations that are difficult to credit. These are allegations that seem to go to this persistent theme, where Mr. Sadowski's clients are urging that the consumer lending standards ought to be applied to commercial paper, and there's really no foundation in the law for that.

The final standards, new debtor syndrome, in which a one asset entity has been created or revitalized on the eve of foreclosure. Well, here, we're not that new. We are fifteen months old at this juncture. There is no foreclosure, there's

no scheduled foreclosure, there can't be a foreclosure, and it's not a one asset entity. So I don't think any of the Franklin Mortgage standards would get us there either. We think Carolin Corp. makes the most sense. We think Carolin Corp. has stood for the longest period of time. It is the one that has the most extensive case law.

And while I know there's no geographic preference, it is worth pointing out the District of Columbia is, of course, surrounded by the Fourth Circuit, and there is some synergy in that. I would also point out that a lot of the comparisons Mr. Sadowski made to the first JPK bankruptcy seemed to miss important nuance and relevant facts. The issue that the U.S. Trustee truly stood upon in filing its motion to dismiss in that case was an allegation of a collusive and improper involuntary filing, and that may be why Mr. Sadowski was looking at some involuntary case law as he racked through various factors today.

This, of course, wasn't an involuntary petition. The dismissal of that case was for not paying a quarterly fee. If someone wanted to appeal that dismissal and suggest that it ought to have been for something else, or that there was some other infirmity, the time to do so has long since come and gone. And I would argue that there's not much relevance to anything beyond that. That is a final order in a closed case that has well since seen its day. I think the Court's comments

about Section 303 sanctions are well taken.

I'm simply not aware of how you could sanction a debtor for a punitive, involuntary bankruptcy, but that's neither here nor there. We have stipulated to just about every fact that has been suggested in the motion, and certainly to every relevant fact. I will go one step further, and I will stipulate JPC Newco does not have a phone line, and JPK Newco does not have any paper clips, and that doesn't change things one iota. Single asset real estate entities don't have a phone line and don't have paper clips for the most part.

So no matter which test you adopt, I believe the motion should be denied. If you go the Fourth Circuit route, Mr. Sadowski is welcome to reraise many of these issues at confirmation. And while we don't think there is a good foundation for them, that is certainly his prerogative. But we would ask the Court to deny the motion. If you have any questions, I'm happy to answer them.

THE COURT: What's the time frame of facts I'm supposed to consider when considering whether a debtor has filed a case in good faith or bad faith?

MR. VERSTANDIG: It depends which standard you go by. Franklin Mortgage gives you a longer runway, but Franklin Mortgage also makes clear that new debtor syndrome talks about the very recent foundation. The other facts are not normally temporal, but I'd point out the LTL debtor had filed within a

few days of formation.

I think if you look at other good faith, bad faith questions by analogy in this court, it normally arises in the context of repeat filings, where there was a bar order, past bad acts, and specifically where you see Chapter 13 debtors file, promptly dismissed, and then come back however far henceforth. But I would urge that while it is appropriate to look at the entire life of a corporation, it is inappropriate to look at the resolution of a prior case where there's a final order for any purpose beyond what is contained therein. If you want me to give an --

THE COURT: Mr. Sadowski's argument is that he needs to do a bunch of discovery with respect to things that I think -- or remind me of my timeline now -- I think something like fifteen months pre-petition the formation, the transfer, the what happened in the business over those fifteen months. What's your position as to whether or not those are relevant to my analysis as to bad faith?

MR. VERSTANDIG: Your Honor, I don't believe they're relevant as long as we go the Third or Fourth Circuit route. The bad faith question doesn't turn on the age of the Debtor or the past dealings of the Debtor in any manner relevant to this case. In a drug case or something along those lines, it might be different. LTL makes clear that what was done a few days ago is all that matters. What was done just before a

bankruptcy case was filed is all that matters. There is no relevance to how sorted or not sorted the history of a debtor may be.

Now, if Mr. Sadowski is going to launch an attack under Rule 1020 and argue that the Debtor has never been in business, for the narrow purpose of that attack, which is not a bad faith attack, but a Sub V eligibility attack, there may be a longer runway. But we would urge the matters that are relevant are what are embraced within the schedules, the Debtor's financial condition on the date that it filed for bankruptcy relief, and the resolution of the Debtor's members authorizing the petition for bankruptcy relief. The rearview mirror should go no further.

THE COURT: All right. Thank you. Mr. Sadowski, I'm going to ask you the very same question. What's the runway I'm supposed to consider when looking at whether a bankruptcy petition was filed in bad faith?

MR. SADOWSKI: I think you have to look at the entire course of the history of the Debtor, what it did, when it filed. And here you have a pretty short runway to begin with, Judge, because it's only a established in February 2024. But I think Mr. VerStandig made the case for me for discovery. He said my allegations are blurry, right? I'm entitled to clean up my, quote, blurry allegations, if there are any, through discovery. Judge, I didn't want to -- I was leaning into

responding to his argument. So I answered your question. Do you want me to respond to --

THE COURT: Okay. Go ahead.

MR. SADOWSKI: Yeah. So no elucidation of tactical advantage, Judge, that takes everything out of context. Right. This company, its alter ego, its parent, its puppet master, the WCP Fund, and Mr. Huertas were in active litigation with our clients since December of 2022. And they didn't start creating the machinations to pretend that they were a legitimate company and then to pretend that they had legitimate transactions and debts until right around the time I was going to take the depositions of their people, two of them who are here, in this --

THE COURT: So I just asked you, though, what the time frame was, and you said the entire life of the company. And now you're going back two or something years before that. So let me rephrase my question. What am I supposed to look at as the runway for questions of whether a filing was a bad faith as of the petition date?

MR. SADOWSKI: Well, for terms of gaining a tactical advantage, you have to look all the way back to what happened in the superior court. And what happened in the superior court is, they lost two TRO hearings. They lost a motion to dismiss. They filed a counterclaim, and that motion was out there and pending. And the superior court was where they should be

trying to collect this debt. And that's where you go to collect a breach of -- that's where you go to file a breach of contract claim. That's where they should be.

And they got to a point they're like, okay, Sadowski's about to take our depositions. We got to get out of this court, because we don't like the way things are going for us. That's what they did. That's the entire reason this whole bankruptcy charade was created, because they were unhappy with the decisions, and they're now trying to end run around them. Right. Those two judges issued an order saying you cannot foreclose, right, which is how they're going to collect on the notes until our claims are decided.

And it was only after they lost those decisions and weren't getting their way in superior court and had to face the depositions that they created this whole charade to get the case over to you. And the tactical advantage judge is real. And I haven't looked at those cases, and I'm sure they say what Mac says they say. Right. But we are severely disadvantaged in this court based on our experience of our alone. Right. That's a disadvantage --

THE COURT: Wait. Where in the law says that I'm supposed to judge the merits of a case by the lawyer that have been chosen -- that the lawyer that the parties have chosen to represent them? I mean, I frankly think that's a really, really not persuasive argument. If that's the case, then I'm

supposed to give every pro se party anything they want, because they're not lawyers. I understand that you don't like that they've brought you to bankruptcy court, but that's not anything I consider as to who the people choose to hire.

Trust me, I've had my fair share of cases where I have wondered why people have hired certain people in bankruptcy court, whether or not they claim to be bankruptcy specialists or not. But that's not what I judge. I judge the merits of the case, and so I don't think that getting to bankruptcy court is anything other than than being in bankruptcy court. I just don't find any persuasive nature of that argument.

MR. SADOWSKI: A fair point, Judge, that you don't consider it persuasive, but my clients are entitled to ask the question of their people and in deposition, did you do this to gain a tactical advantage? They can say yes. They can say no. Right. That's why you have depositions. So we may not develop the best evidence on that factor, but it exists. And that forum shopping, I believe that you may have made a finding that that was one of the factors that favored the remand judge, so I think you've already found that they were forum shopping in that decision.

And then, we weren't litigated to a standstill. We were already involved in two years of litigation. And in the superior court, Mr. VerStandig could have filed all the motions that he wanted to come to have you determine. He could have

filed all those things over here. And what he did instead was, I think I'm going to have a better shot at getting correct decisions on these motions from you than I'm going to get from Judge Scott Williams -- I forget which one had the consolidated cases -- and I think I can get those decision faster.

He's probably right about that, because that Court does move a little slower. That's why all those things came over here to you, Judge, because they're using Your Court as a sort of quasi appellate court to end run the prior decisions in superior court. And that's not a legitimate bankruptcy purpose on the -- this stuff is all not relevant --

THE COURT: Wait. Hold on. Let's take all the layers off of this. I have an individual. They've had a foreclosure filed against them. It hasn't fully gone to judgment. They decide to file a bankruptcy to try and cure their arrears. They come over here, there's a proof of claim, and they file an objection to the proof of claim. Is that somebody trying to get an end run around superior court? Because that is ten percent of my Chapter 13 docket is whether or not there's a right claim amount or whether they're being paid the right amount or whatever.

I mean, if there's not a final judgment, bankruptcy is an alternative forum that is provided by Article 1, Section 8 of the constitution, a uniform law of bankruptcy, all that stuff. That's why it's there. I don't see how them choosing

to come to bankruptcy if it is an option -- and bankruptcy comes, yes, I like to say it's the Aladdin factor, phenomenal cosmic powers, but it's also an itty-bitty living space. You have to disclose all of your dirty laundry in filing. And so there has to be a cost benefit analysis by a debtor.

I mean, that's why we get the LTL's, because the parent companies didn't want to file. But that's not necessarily what's happened here. We have assets that have been put into a, I'm not going to say single purpose entity, but let's say specific purpose entity that has filed, its a subsidiary, and they're having to disclose all of the relevant documentation and information with respect to that. And then they're also getting the benefit of bankruptcy court jurisdiction for certain litigation.

I'm trying to see how that utilization of the laws is some sort of abuse.

MR. SADOWSKI: Well, because the --

THE COURT: Not subjectively. I'm talking objectively. Let's talk objectively for a while. I realize that you want a lot of discovery on subjective factors. But what I want to focus on today is objective, because I think if I don't find objective under almost any test, subjective is not material. So if I think that there's no objective basis on any of the factors, then I don't think we get to discovery. We don't get to subjective, because you have to have -- I may say,

you have to have both. So I'm trying to talk objectively now for the moment.

MR. SADOWSKI: Of the objective factors here, you have a company that was created solely to file for bankruptcy and avoid litigation in superior court. Right. And he talked about -- why didn't the WCP Fund file for bankruptcy? The holder of the notes. Why didn't SF NU file for bankruptcy? The holder of the notes, right, who had been involved in activation. This was a a spin-off entity that they created, so they could get decisions that were not going their way from you in superior court.

And all these other cases about LTL, that assumes a legitimate company that has been operating and has debts and has customers and has all the other things --

THE COURT: Let me tell you that LTL did not assume a legitimate company. LTL assumed a Texas two-step spin-off of the debt obligations to shield all of the assets from the creditors, so from the asbestos talc creditors. It wasn't it wasn't assumed to be a valid -- in fact, by using the Texas divestment statute, it necessarily almost comes with a presumption of no business purpose. But that's not here nor there.

MR. SADOWSKI: This Debtor objectively had no business to reorganize. It had no business in the meeting of creditors. We had one customer, Energy Morocco, one customer, one loan.

That's the full extent of their business from February 2024 to whenever they made the loan. Right. They did nothing in between there. Nothing. Nothing. Okay. And that loan was created so they could say we were doing business. Right. So you take away the phony loan that they created so they can get to you, you have no business. Zero. Nothing, no customers, no revenue, no plan, nothing. Right.

And the people that did that were were the controlling principle of the WCP Fund. After two years of litigation and two judges' finding misconduct and TROs, and by the way, oh, we have to do this Sub 5. We have to really collect on these notes. Well this is rush, rush, rush, rush, rush. Right. The collection on those notes was already occurring and happening since 2022 when they pulled the funding on the loans and when they instituted foreclosures. That was the collection of notes. And then is this objectively sustainable? No. It's not. Right.

Collecting on those notes, where somehow you're going to have to undo the current foreclosure stay -- these companies have nothing, Judge. Nothing. They're wiped out in terms of money. There's no big bank account there where they're going to collect on these notes. The only way they collect on the notes is if they foreclose on the property over which there is a stay already, and then sell the properties. Right. And even then, there are senior loans that have to be paid ahead of

those or have to be dealt with, of course also owned by the WCP.

So I will find out from discovery that this allegation that this entity was created for settlement purposes is false. That their business operations did not exist. They were phony. Right. And then you're stripped bare. All you have is the WCP Fund standing in the shoes of somebody else, trying to do what they were unable to do in D.C. Superior Court. And on top of that, Judge, if this maneuver is allowed, as I argued at the motion for remand, they'll never have to face a case in superior court again.

Because whenever they get sued and they're getting run into trouble, they get some decisions they don't like, they'll say, hey, let's just create JPK second Newco, push everything over there, go over to Judge Gunn. Hey, we got to resolve it here. Chop, chop, chop. We got to have a Subchapter V. We got to collect these notes. That Pandora's box that you will open by allowing this D.C. hustle, as I've called it, to occur, will mean that these lenders can always come to Your Court to solve their collection problems whenever they want to and whenever they choose. And that is the danger.

And as a court of equity, sitting in equity, are you going to allow, in our view, a sham company or to take advantage of the federal bankruptcy protection? And I believe the answer to that is no, you should not, ever, on any sham

company that's created for this purpose. This is not a business. Right. It is a legal maneuver. And they have been legally maneuvering away from superior court ever July 4th, 2024, when I was trying to enjoy my 4th of July, and I got all these notices from Mr. VerStandig that he had removed the case the first time. And that's the danger.

MR. VERSTANDIG: Your Honor, may I very briefly respond?

THE COURT: Yeah. It was a long retort. Go ahead.

MR. VERSTANDIG: Thank you. One, and I don't think this is material, but I'd be remiss not to note it. Daniel Huertas was deposed by Mr. Sadowski in the superior court litigation, tut let's put that aside. You can't ask someone in a deposition if they did something to create a tactical advantage. That's tantamount to asking someone if they were negligent or if they committed fraud, and that is part of the problem we've had over the past two days. Mr. Sadowski continues to conflate factual inquiries with the legal conclusions drawn therefrom.

On the whether or not -- on the question of whether or not this is an entity doing business, I'd point the Court to the Fama-Chiarizia case under the Eastern District of New York, and the Hillman case of the Northern District of New York. Now, this is going to be more relevant if there really is a 1020 motion coming. But both of those cases stand for the

proposition that being engaged in business for supply of purposes is satisfied if you have a legal entity defending litigation. No one disputes that JPK Newco is currently defending litigation.

JPK Newco is certainly in business. And by the way, JPK Newco would be in business even without the Energy Morocco note, because holding the promissory notes on which Mr. Sadowski's clients are obligated is, in and of itself, being in business, just as a single asset real estate entity is in business by holding a single piece of property. The inverse necessarily holds true. A lender is in business by holding a single promissory note. Finally, the idea that the flood gates are going to open and that this court is going to see myriad cases, three observations.

One, I reject that's a bad thing. That's neither here nor there. Two, I think that looks past the enormous complexity and factually sui generis nature of this case. It takes in rem litigation that attacks specific assets that are legally transferable for an entity like JPK Newco to be set up. This is not going to be a run-of-the-mill matter. But three, I wish Mr. Sadowski would have said the last part aloud, because inherent in that was an attack on this court.

The suggestion is that rulings will be more creditor friendly in bankruptcy court than they would be in superior court, and that somehow a different set of laws are applied in

this court than in the court two blocks away. I have practiced in this court and several other bankruptcy courts for a number of years. And with no offense to you or your colleagues, this does not normally seem to be the place to go for creditor-friendly rulings. So unless Mr. Sadowski is intimating if there is some insecurity in the legal fidelity of what was occurring in superior court, that is a nonsensical argument.

But again, the question is what is the standard? And we go back to Carolin Corp. making the most sense. And I think your question about the objective component was really much better than anything I did in my loquacious rant. As long as a plan can be confirmed on October 1st, then the rest doesn't much matter. This is an objectively good faith case. Thank you, Your Honor.

MR. ORENSTEIN: Your Honor, if I could be heard, too? I wasn't going to argue any of the points, but since you asked about the objective view of this case, and Mr. Sadowski got into a discussion of the plan that's been filed and the intent of the plan, I know the plan was only filed the other day, and I don't know if the Court has had an opportunity to review the plan yet. Certainly it's --

THE COURT: Well, I think you got to see most of the fun I had yesterday, Mr. Orenstein. So I have to admit, I haven't had time to study your plan yet.

MR. ORENSTEIN: That's fine. But I think the plan is

very simple, Your Honor, and it shows how there is an objective basis for reorganization in this case and supports why a Subchapter V was used not as a quick method to get around the litigation, as Mr. Sadowski suggests, but rather as a way to get to confirmation of a plan in the easiest possible manner. The basics of the plan, Your Honor, is that, as Mr. Sadowski says, there are three notes.

Some of which, depending on how the Court ultimately rules on the litigation, may or may not be collectable, but the plan provides for payments to creditors from the collection of the note. We certainly believe that the Energy Morocco note is collectable. The plan doesn't provide for a hundred percent payment to creditors. It provides for whatever money is available, and the plan also provides for the potential of a DIP loan, which to the extent there is either difficulty in recovering on the Energy Morocco note or a insufficient amount recovered, and there is a desire to supplement that.

That the DIP loan could be used to supplement. At this point, it's not clear how many creditors there are going to be, that are going to be eligible to vote. Ballots have been sent to Energy Morocco. They've been sent to each of Mr. Sadowski's clients. In a standard Chapter 11, we certainly would have trouble if Mr. Sadowski's clients were allowed to vote getting to confirmation. But in a Subchapter V, we don't have to have an accepting class. We have to have a

determination that we're in good faith, and I think we're there.

So I think once the Court takes a look at the plan, and given the simplicity of the plan candidly, I think there's a very objective -- the plan can very objectively be confirmed. The Court will have to, as Mr. VerStandig suggested, if it adopts Carolin get into the good faith issues. But other than that, I think this is a plan that's probably among the simplest of the plans that I've ever filed in a Subchapter V case.

THE COURT: I think whether I adopt Carolin or not, whether the plan was filed in good faith -- gosh, Ms. Eustis will know this better than me -- and not in a manner inconsistent with law -- that's not the exact quote from 1129. I think I have to go there anyway, whether or not Carolin is the actual factor. It's one of the 1129 factors.

MR. ORENSTEIN: Absolutely.

THE COURT: All right.

MR. ORENSTEIN: I have nothing to add to Your Honor.

THE COURT: Okay. All right. We're going to take a brief recess. We'll call you back.

THE CLERK: This court is in a brief recess.

(Recess 2:29 P.M./Reconvene 2:57 P.M.)

THE CLERK: This Court is again in session.

THE COURT: All right. So we've had arguments today on whether or not the Court should move forward on the merits

of the question of whether to dismiss the filing of the JPK Newco case, this voluntary case, in bad faith. Well, I guess dismissal would be under 1112, and the allegation being for cause and that cause being a lack of bad faith in the filing of the petition. Or whether the Court should set this for a full evidentiary hearing on evidentiary questions related to the issues of bad faith.

In order to necessarily answer that question, we need to step back and address which standard the Court will apply with respect to the analysis of a motion to dismiss when the allegation is a lack of good faith, because neither the term good faith nor bad faith are found in Section 1112 of the Bankruptcy Code. As noted, there are two primary schools of thought or primary standards that have been adopted.

One being adopted by a number of circuits, being referenced by a number of circuits, the Caroline Corp. standard out of the Fourth Circuit, which holds that there needs to be a finding of both objective futility and subjective bad faith in order to dismiss the case when the cause alleged is a bad faith cause. The second is the Eighth Circuit standard, which specifically declined to make both factors a finding.

The Court finds that the Eighth Circuit standard is really a minority position, and that even in LTL, where the Third Circuit created a potential insolvency standard, it nonetheless referenced Caroline Corp. and its two position

standard, saying it didn't actually have to reach some of those elements, because it had stopped at the question of insolvency in an element that it had added to the test, which were not previously utilized.

As Mr. VerStandig noted, there are two District of Columbia district court cases, both representing appeals of underlying bankruptcy court cases addressing the question of a bad faith standard dismissal. One that starts with -- both of them from the mid '90s. One that starts with the Lexington Standard one that references the Carolin Corp. standard, which came out prior to the decisions, but neither of which specifically addresses either test, but nonetheless references Carolin Corp. in the positive.

There's also a 2003 opinion from this court from Judge Teel, in which he chooses to specifically refuse to adopt dicta in Carolin Corp., which is not necessarily -- which is not controlling on me. But nonetheless, it does so in the context of a serial Chapter 13 filer, not in the context of a corporate Chapter 11 case.

That being the standard in what this court has found with respect to whether there is authority existing, I don't believe there's binding authority on this court in one way or the other as to the appropriate standard to be used when considering a motion to dismiss under Section 1112 for bad faith. With that being said I find more persuasive the

standard and the argument and the analysis from the Fourth Circuit's Carolin decision, particularly the fact that they start with the analysis of Section 1112 itself.

In that case, the Fourth Circuit started looking at Section 1112, started looking at the request, which is a dismissal for cause, and that cause being a lack of good faith or bad faith. It then looked to what is enumerated in the Bankruptcy Code under Section 1112 as examples of cause.

And in doing so, it notes that most, if not all, the subsections of 1112(b)(4) are objective factors; substantial or continuing loss or diminution of the estate, an objective factor; gross mismanagement of the estate, objective; failure to maintain appropriate insurance, objective; unauthorized use of cash collateral, objective; failure to comply with an order of the Court, objective; unexcused failure to satisfy timely filing of reporting requirements, objective; failure to attend the meeting of creditors, objective; failure to timely provide information or attend meetings reasonably requested, objective.

It may be slightly subjective on the question of reasonably requested, but for primarily an objective, did you or did you not provide information? Failure to timely pay taxes; failure to file a disclosure statement or file or confirm a plan within the time fixed; failure to pay fees; revocation of a confirmation order; inability to effectuate substantial consummation; material default with respect to a

confirmed plan; termination or failure of the Debtor to pay domestic support obligations.

In essence, as Carolin Corp., noted, those are all basically objective factors. And when looking at cause, there necessarily needs to be an objective analysis that can be applied to all filings when questioning whether a case was filed in good faith or bad faith. There are also different standards of the burden of proof. Here the code establishes that the movant must establish, and then the Debtor has to rebut. Some of the courts have held that the Debtor necessarily has to prove a negative, prove that they filed in good faith, or prove that they did not file in bad faith.

I don't think I necessarily have to weigh in on those. On the burden of proof, I'm simply going to proceed under how the code has it set out today and whether there's a different standard for proving good faith or not. But the get to the question is then, if it's necessary to prove both objective futility and subjective bad faith, necessarily failing to have one of those means that we don't have to touch on the other question.

Then the question is, for me, I think clearly the question of subjective bad faith would require further discovery, that there are lots of allegations as to who said what to whom, and who might be hiding a body in what closet, or whether the Watergate papers exist somewhere in the records of

WCP as this entity. All of that go to the factors of subjective bad faith and would, if we needed to reach that question, get to a question of extensive discovery depositions in all of the rest that are allowed under the rules.

However, on an objective level, the question on objective futility, as set out by the Carolin Corp. is the question of -- and I want to make sure I quote this correctly --

"Objective futility is designed to ensure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled debtor. Should therefore concentrate on assessing whether there is no going concern to preserve and no hope of rehabilitation except according to the debtors terminal euphoria."

That's pages 701 to 702 of the Carolin Corp. decision. In essence, we need to look whether the Debtor is moving forward towards confirming a plan, or as Judge Hillman used to say, is the eternal hockey stick of a debtor on the way down and will immediately turn back up on the way up. So in this case, I can look to the stipulated facts to make that determination, because those are all objective facts. I don't have to look at subjective analysis.

The question is whether the Debtor filed, the Debtor has met -- had the Debtor blown the ninety-day deadline, that's

a different question, because then they can't confirm a plan under Subchapter V, arguably. But now, we have a plan. It's actually scheduled for confirmation. The Debtor has filed their monthly operating reports. The Debtor has moved forward towards the utilization of creating a plan, which will either pay all creditors lots of money or pay all creditors very little amount of money.

I mean, the difference between collecting on one of the notes versus collecting on all three of the notes is significant. But the plan, as Mr. Orenstein noted, and I took a look at it during the recess, does provide all of the Debtor's income to pay out on the creditors in this case. And yes, it involves and hinges around the litigation, but nonetheless, that litigation can be ongoing in the plan appropriately, at least -- facially, I'm not making any plan findings.

Let me be very clear. But at least facially for purposes of this motion, it is arguable and satisfies the Rule 11 standard to argue that there's a moving forward towards confirmation and being able to put everything in the right box. I think one of the arguments underlying the motion or the purposes underlying is, Judge, don't do this. Everybody's going to come here. I think that's kind of what Mr. Sadowski said, implying that this is a court of last resort, I guess, but it's not. The bankruptcy court is not a court of last

resort.

It's the Court of options and a court in many times for people of extreme financial distress. That is a court of last resort for a fresh start. But for corporations, I have no case law. And I'm not making -- I clearly haven't been asked to decide the question of insolvency, but the Bankruptcy Code under Section 109 does not require anyone to be insolvent. It requires everyone to meet the standards to be a 109 debtor.

And if you are a 109 debtor, you may file a petition and proceed towards whichever relief you're seeking, and if that involves removing litigation, then that involves removing litigation or having litigation related to it. In fact, what's interesting is, LTL actually highlights this in the very last footnote, even though the Court found that LTL petition had no valid bankruptcy purpose based upon the question of insolvency. It didn't ask whether it was merely filed to obtain a tactical litigation advantage. This is this is footnote 19.

Yet it's clear that LTL filing was aimed to beat back talc litigation and trial courts. Still, quote, "It is not bad faith to seek to gain an advantage from declaring bankruptcy. Why else would one declare it?" Close quote.

And frankly, I think that's probably right. There is always some sort of advantage for a debtor filing a voluntary petition to gain some advantage, whether it's the automatic stay for breathing room, whether it's the automatic stay and

the ability to cure mortgage arrears that isn't available under state law, whether it's the ability to file and to draw tax repayment out for five years without the incurring of post-petition interest. There are lots of different tactical advantages for which people choose to file bankruptcy.

But as I noted in my questioning during the argument, it's not without its burdens, and it's not without its requirements. It's not without all of the things.

And so it does appear, from all the facts as stipulated to by the Debtor, and all of the facts that are alleged as to all of the objective pieces of the analysis, which is the filing of the case, the filing of -- the timing of the case, I think Mr. VerStandig even stipulated yesterday that it was filed to become a holding company that may or may not file for bankruptcy, depending on how the litigation went, and that would then reorganize as part of the litigation and utilize litigation to pay creditors.

None of that, on an objective standard, speaks to any type of lack or any type of objective futility or lack of use of the bankruptcy system in an appropriate way. Now, whether or not if there were subjective issues, those are still preserved for the question of 1129(a). In a brief recess, I also picked up a code since I don't have it memorized. But the 1129(a) requires that the plan has been proposed in good faith and not any means forbidden by the law.

As the Carolin Corp. in the Fourth Circuit Court, and those courts, frankly, that have cited it in subsequent opinions out of a number of different circuits, have cited that that good faith requirement is prevalent in other places in the Code, and 1129 being one of them to preserve that inquiry through the pendency of the case. But at the beginning of the case, I find that the Carolin Corp. dual analysis of objective futility and subjective bad faith is the standard that I will apply for whether or not to dismiss this case.

That because I find that there is no objective futility at this case, based upon all the evidence and the facts and the view most favorable to the moving -- I'm going to give it to the moving party, Mr. VerStandig. You've stipulated to them and give the facts and evidence most favorable to the moving party at this point. Even though that's not the standard, you've stipulated to him, so I think I can go ahead and do it that way. And I think you said yesterday take, the facts in the most favorable to them, so I'm going to take that and run with it. Thank you very much for that.

Doesn't rise to the standard to show objective futility in the filing of the Subchapter 511 petition by JPK Newco, Inc. And because similarly to the LTL case, where they didn't have to get to the other portions, because I find there is no objective futility, the Court does not need to get to the question of subjective bad faith, which means that there is no

need to conduct discovery on those subjective issues at this time.

Now, that's not preclusive to any further litigation, or frankly, what I expect will be a contested confirmation hearing and whether or not there will be discovery related thereto in an objection under 1129(a)(3). But for the purposes of 1112 and the question of cause, that's the finding of the Court. I fully realize I need to write this up, Mr. Sadowski, because I already know that there's an appeal coming, which we will do. Your appeal is not required to be filed until I file the full order, but that will be the rule.

But I will supplement with that as a memorandum as needed, and we will move forward in this case as appropriate. Any questions?

MR. VERSTANDIG: Thank you. No questions from equity, or I don't speak for Mr. Orenstein. But I believe from the Debtor, I would just note we do need to address the stay motion.

THE COURT: All right. We'll get there in a second. Okay. So then we come up to the stay motion if there's no questions on the Court's ruling on the motion to dismiss.

MR. SADOWSKI: Well, Judge --

THE COURT: Go ahead.

MR. SADOWSKI: The premise of our stay was, of course, that the Court should decide the bad faith issue first, and it

just has. So we now need to respond to the adversary proceeding. In terms of timing, Judge, depending on what happens with Mr. Rahbar, I've got a slew of depositions next week. Mr. VerStandig has asked that I respond to that within three days. More flexible in person than in writing. What are you asking for? Judge, as I indicated earlier, there's a high likelihood that I'm going to have to involve additional local bankruptcy counsel. I've reached out to Jeremy Williams in Richmond. He's kind of waiting in the queue, and so if we tie up that relationship, I'd have to talk to the clients about that. After the decision, I'd want to at least try to get a view of what his schedule is going to look like to assist with responding. So --

THE COURT: So the summons is issued with an answer due by June 30th. It's now been stayed by the filing of the motion to stay pending today's hearing. Today is July 31st. I'm not inclined to give more than maybe twenty one days.

MR. SADOWSKI: Oh, that should be enough time, Judge.

THE COURT: So Mr. VerStandig, any vociferous objection to me providing them with twenty one days to respond based upon today's ruling?

MR. VERSTANDIG: Your Honor, I will object in a nonvociferous manner solely for the record. And we respect and appreciate the twenty one days. It makes sense to the Court.

THE COURT: All right. We'll do twenty one days, Mr.

Sadowski. That means I need to look at rescheduling the status hearing, which was set for yesterday as well. Twenty one days would be the 21st. I'm looking at maybe September 10 for a status on that one.

MR. SADOWSKI: That date is available to my clients. Judge, I'm just going to look. I thought there was a proof of claim deadline coming up. I mean, let me just check that. August 5th. I haven't filed a motion to extend that deadline, Judge, but given the small number of fish in this pond on creditors, again, I'd like, if I could, get consent or relief from that so I can consult with Mr. Williams.

THE COURT: Well, I'm not going to grant that on an oral motion. If you file it or if they will stip, then that's fine. Otherwise what we'll do is I'm going to leave that. I will set it on 9/10, unless Mr. VerStandig was that available for the adversary.

MR. VERSTANDIG: That's Wednesday, right?

THE COURT: It's a Wednesday.

MR. VERSTANDIG: Yeah. I'm available. Thank you.

THE COURT: Oh, wait. Hold on, did I?

MR. VERSTANDIG: And I'll reach out to Mr. Orenstein and get with counsel --

THE COURT: Just one second. I'm actually going to be on a plane. I'm going to be on a plane that morning. It's 2 p.m. on 9/10. If we do it that day, or I can set it the week

before the week prior. I'm sorry. I didn't realize it was an afternoon docket on the 10th. And essentially, I'm setting it past what I'm setting as the response deadline. I fully expect we'll see motions, and that ultimately we'll end up rescheduling it whenever the motions are scheduled. So this is basically a glorified court placeholder, to be frank.

But I just was wanting to get -- I need to reschedule it, because it was scheduled for yesterday.

MR. VERSTANDIG: Your Honor, I'm agnostic as to the afternoon in the 10th or the 3rd. Not asking the Court to rule, but I'm assuming the Court's not ruling on the Defendant's right to bring a motion or whether or not that was waived by the passage of time, meaning I can at least raise that in papers and argue it down the road.

THE COURT: I'm not ruling on anything other than saying he has to file an answer in twenty-one -- or a response in twenty-one days, whatever that means. You all can fight about that later, because that hasn't been asked before me. I'm just setting a deadline so we can get something on the docket.

MR. VERSTANDIG: Thank you.

MR. ORENSTEIN: Your Honor, I know this is not before you either, but I do just want to point out that given the schedule that the Court has set now with regard to confirmation, it's going to cause some issues if we extend the

time to file a proof of claim, because that's obviously going to affect what happens at confirmation. So I know that's not before you, but I just wanted to raise that issue.

THE COURT: Yeah. I know it will miss everything. Okay. Well, let's use 9/3. What I expect to see is, I'll get a motion before that, and that day will end up moving. But we're going to go -- we'll set it on 9/3 on the morning docket just to avoid any problems.

MR. SADOWSKI: 10 a.m., Judge.

THE COURT: Yeah. 10 a.m. And so Mr. Sadowski, should I deny the motion to stay as moot? Or are you withdrawing it in light of the Court's ruling? How do you want --

MR. SADOWSKI: Well, please go ahead and make a decision on it.

THE COURT: All right. I'll enter an order that in light of my ruling on the motion to dismiss, that it's moot, and we will enter that order.

MR. SADOWSKI: Yeah. The main purpose, Judge, was, as Mr. VerStandig alluded to, to make sure we preserved our right to respond to it before the deadline.

THE COURT: All right. That's fine.

MR. SADOWSKI: And Judge, I have August 21 for the response.

THE COURT: Correct. All right. I'm going to do a

brief order, which will state basically the ruling today, and that it will be supplemented by a more fulsome finding and conclusion. And that'll be entered probably tomorrow as well.

MR. SADOWSKI: Thank you, Your Honor.

THE COURT: All right. Thank you. We'll see you back here in the future. Thank you very much. Thanks for rejoining this afternoon.

THE CLERK: Thank you, Judge. That concludes the matters on our calendar for today. This Court stands and adjournment.

(Whereupon, at 3:19 p.m., the hearing was adjourned.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Kimberly Armstrong
______________________________
ESCRIBERS LLC

Date: July 20, 2026